# JAMS ARBITRATION
## Case No. 1110018238

RIVKA (REBECCA) SPIVAK,

Claimant,

vs.

GOOGLE, INC., a Delaware corporation,

Respondent.

______________________________________/

## PRE-HEARING ORDER NO. 10

## ORDERS ON MOTIONS FOR SANCTIONS

Pursuant to written notice, a telephonic hearing on Claimant's motion for sanctions, as well as on Respondent's counter-motion for sanctions, was held on Tuesday, December 18, 2018, at 9:00 a.m. Claimant Rivka (Rebecca) Spivak ("Spivak") appeared *in propria persona*. Patrick M. Sherman, Esq., of Curley, Hurtgen & Johnsrud LLP, appeared on behalf of Respondent Google, Inc. ("Google").

Having read and considered the written materials submitted in support and opposition to the motions, and having heard and considered the oral arguments, and good cause appearing, the following findings and orders are made:

BACKGROUND TO MOTIONS

By her motion Spivak seeks the imposition of sanctions, monetary and other, on Google for alleged wrongful conduct occurring during Spivak's earlier EEOC proceeding and in this arbitration proceeding. Spivak alleges six different actions warrant sanctions:

1. Before Spivak filed her demand for arbitration, Google filed an "unsupported and frivolous" petition to compel her to file that demand in Santa Clara County, in conformity with her arbitration agreement;

2. Google submitted altered documents (emails) in the EEOC proceeding and in this arbitration;

3. Google submitted "fabricated" evidence, both in the EEOC proceedings and in this arbitration;

4. Google committed a fraud upon this Arbitrator by misrepresenting the terms of Google's employee Code of Conduct;

5. Google "abused" Pre-Hearing Order No. 8; and

6. In its discussions with Spivak on discovery issues, Google "concealed" the fact that Neal Mohan was the "single decision-maker" for the adverse employment actions suffered by Spivak.

Spivak requests an array of sanctions for each of the alleged wrongdoings.

By its counter-motion, Google requests sanctions against Claimant for her bringing of the above motion, labeling it frivolous.

## SPIVAK'S MOTION

1. Did Google File an Unsupported, Frivolous, and Vexatious Petition to Compel Arbitration?

On or about June 18, 2015, Spivak's Seattle attorney wrote a twenty-one page demand letter to Google's General Counsel, alleging that Spivak had been subjected to unlawful employment discrimination both in New York and in the State of Washington, where she currently lived. The letter claimed her damages were in the millions.

The letter indicated that counsel had questions regarding the validity of certain provisions in the arbitration agreement Spivak had signed, including the provision calling for any arbitration to be venued in Santa Clara County, California. The letter implied Spivak would be filing for arbitration in Spivak's current location, Kings County, Washington, and would raise the venue issue with the arbitrator.

In response, on June 26, 2015, Google filed a Petition to Compel Arbitration. The petition was filed in the U.S. District Court for the Northern District of California, and requested enforcement of all of the provisions of Spivak's arbitration agreement, including the requirement that she file her arbitration demand in Santa Clara County.

The attorneys for Spivak and Google quickly engaged in discussions regarding the venue for Spivak's arbitration. An agreement was reached: Google dismissed its petition on July 14, 2015 and Spivak filed her Demand for Arbitration in Santa Clara County on July 29, 2015.

Spivak now contends that Google engaged in wrongful conduct by filing the petition to compel arbitration: "This lawsuit was frivolous, without evidentiary support,

and vexatious." She also contends that the filing, and the information contained therein, damaged her professional career.

Spivak's demand letter made it clear that she planned to file for arbitration in Kings County, Washington, contrary to the arbitration agreement. As such, there was nothing improper in Google's decision to promptly seek a court's ruling on the proper venue for that arbitration. Google was not required to wait for Spivak to file for arbitration in Washington and then take up the venue issue with the arbitrator. Also, contrary to Spivak's argument, Google was not required to respond to her demand letter or otherwise engage in discussions before taking action. And, Google's proactive approach resulted in a prompt resolution of the venue issue; Spivak soon filed her arbitration demand in Santa Clara County.

If Spivak's counsel felt that Google's petition was frivolous, or without evidentiary support, or vexatious, they said nothing of the sort at the time; no challenge whatever was made to the propriety of the court filing in 2015.

As to Spivak's concerns that the court filing made the public aware of her dispute with Google and some details of her employment, those concerns do not make the filing "frivolous, without evidentiary support, and vexatious." Indeed, Google could have filed Spivak's very detailed demand letter as part of its petition. If Spivak was concerned about the contents of that 2015 petition, she made no effort to seal the court file in 2015 or at any time thereafter.

In sum, Google had reason to believe that Spivak would file for arbitration in Kings County, Washington, and Google's effort to prevent that filing was successful. It was an appropriate response to Spivak's demand letter, and cannot be considered "frivolous, without evidentiary support and vexatious."

The request for sanctions is denied.

2. Did Google Submit "Altered" Evidence to the EEOC and to this Arbitrator?

In February of 2015, Google came into possession of certain emails purportedly recently authored by Spivak. The opinions voiced by Spivak in those emails were critical of Google and of Spivak's supervisors, and also expressed some of her attitudes about working there.

Spivak's supervisor in Washington, Jens Skakkebaek, received these emails; Skakkebaek has submitted a declaration stating that he received them anonymously and promptly forwarded them, un-altered, to Google's Human Resources. The emails received by Skakkebaek apparently had portions of Spivak's original emails deleted.

Some seven months later, in September of 2015, Google submitted portions of those emails to the EEOC as part of its response to Spivak's charge of discrimination.

Google also submitted portions of those emails in this arbitration proceeding as part of Google's request to stay this arbitration pending completion of the EEOC investigation.

Spivak does not deny sending the emails to a group of friends, but doubts that any of her friends would have sent them to Google, or would have made deletions before doing so. She firmly believes that Google must have been monitoring her emails, copied these, and then made "serious edits and alterations" before submitting them in the EEOC investigation and in this arbitration. She contends that Google is now lying when denying it made alterations to these emails.

Spivak has retained copies of her original emails. This has made it possible to determine that the emails submitted in the EEOC investigation and in this arbitration indeed had portions missing. However, Spivak's contention that Google obtained these emails by monitoring her email accounts and that Google made the deletions is based solely on suspicions and suppositions. This is insufficient to support a finding that Skakkebaek did not receive the emails from an anonymous source (as he has declared under penalty of perjury), or that it was Google that made deletions before submitting them to the EEOC and this Arbitrator.

Spivak points out that Skakkebaek received copies of the same emails on two different days (February 12th and 13th, 2015), and that there were modest differences between the contents of some of the duplicate ones, i.e., portions that appear on one day were absent on the other. From this she argues that Google should have realized that the anonymous sender had made deletions and thus Google should have had doubts about the authenticity of what it received and not submitted them to the EEOC or to this Arbitrator. However, when submitting these emails, Google did not make any representations other than that they appeared to be authored by Spivak. As it does not appear that Google did anything other than submit the emails it received, the fact that Google should have been more suspicious does not mean that Google knowingly altered those emails.

Also, importantly, there is no evidence of harm to Spivak's EEOC proceedings or to this arbitration from Google submitting the emails in the form it received them. As soon as Spivak saw the emails submitted by Google in the EEOC proceeding, she promptly submitted the full originals to the EEOC. That was done of October 15, 2015 -- over a year before the EEOC completed its investigation. And in this arbitration, the same occurred: Spivak, in opposition to Google's stay motion, promptly pointed out the difference between her original emails and those submitted; this was before any decision on the stay motion was made. More importantly, the undersigned's decision to stay this arbitration proceeding was based on avoiding simultaneous parallel proceedings; it was not based in any way on the emails or an assessment of the merits of either side's case.

Finally, if either party decides to offer these emails in evidence at our arbitration hearing, we will have the full originals as preserved by Spivak pursuant to the preservation request made by Google in September of 2015. If they are offered in evidence, their admissibility, and their weight, can be argued at that time.

In sum, Spivak has not demonstrated that Google did not receive the emails anonymously, or that Google made alterations to the emails it received. Sanctions are not warranted.

3. Did Google "Fabricate" Evidence Regarding the Peer Review Process:

On this sanctions request, Spivak alleges that supervisor Skakkebaek "fabricated" evidence that was then submitted in the EEOC investigation.

On September 24, 2014, as a part of conducting a performance review of Spivak, supervisor Skakkebaek requested feedback from Spivak's peers. The emails he sent to her peers requested their evaluations of her work, and included language to the effect: "I urge you to be completely honest."

Spivak viewed this language as an attempt by Skakkebaek to solicit negative reviews. She complained to others at Google about this. Also, a few days later, on September 29, 2014, she complained to her friends in an email group: "my boss proactively asked people to be negative on my performance review this cycle." She specifically reported that, when seeking feedback from Spivak's engineering manager, Skakkebaek had written: "It would be helpful if you would be **extremely** honest in Rebecca's review. Please don't hold anything back."

The following day, September 30, 2014, Skakkebaek sent out approximately sixteen emails to a number of employees as part of a "calibration" review. In each of these emails, irrespective of the employee under review, Skakkebaek included the language: "I urge you to be completely honest, as always."

A year later, during the EEOC investigation, Spivak contended that Skakkebaek's September 24, 2014, request for "completely honest" feedback on her was a thinly disguised attempt to solicit negative reviews. The investigator asked Google to respond to this accusation; Google responded by producing Skakkebaek's sixteen or so emails of September 30, 2014, in which he had requested peer evaluations of other employees and included the "I urge you to be completely honest, as always" language.

Spivak now contends that Skakkebaek's September 30th emails were "fabricated," i.e., sent by Skakkebaek to create a false impression that his September 24th request for "completely honest" reviews of Spivak was commonplace and not discriminatory. In making this argument, Spivak contends that Skakkebaek or someone at Google must have monitored Spivak's September 29th complaint to her email group and decided that Google needed to make it appear that Skakkebaek's September 24th request for honest feedback was normal. This, Spivak argues, was the true reason that Skakkebaek sent the emails of September 30th. She also points out that one of the first of Skakkebaek's September 30th emails did not include a "be honest" request, but was followed up two minutes later by another email to that same reviewer, now encouraging honesty.

Even if Spivak's suspicions about Google's monitoring of her emails were shown to be true, and even if what was learned by that monitoring became the motivation for Skakkebaek's September 30th emails, that does not mean those emails were "fabricated;" there is no dispute the emails in question were sent out by Skakkebaek, as represented by Google.

What Spivak is actually contending is that these September 30th emails should not have been given any evidentiary weight by the EEOC because of the allegedly improper motivation for Skakkebaek to include the "be honest" language. This is very different from claiming that Google "fabricated" those emails.

We, of course, do not know what weight, if any, the EEOC investigator gave to Skakkebaek's September 30th emails. However, we do know that if they are offered in evidence at our arbitration hearing, Spivak will be free to point out the timing of those emails and to argue what weight, if any, should be given to them. Obviously, too, Skakkebaek's (and other supervisor's) use of the "be honest" language in review requests made *before* Skakkebaek's September 24th emails would be relevant to the issue of the weight to be given to the September 30th emails.

In sum, Spivak has not demonstrated that Google "fabricated" evidence that was submitted to the EEOC in 2015; no sanctions are warranted.

4. Did Google Perpetrate a Fraud on the Arbitrator Regarding the Terms of Google's Employee Code of Conduct?

Not long after Spivak'e separation from Google, Google obtained evidence, from Spivak's work computer, that Spivak, while working at Google, had engaged in substantial trading in the shares of Facebook, one of Google's main competitors. Google believes that Spivak's investment in Facebook was substantial, i.e., in the seven figures.

Google contends that Spivak's investment in Facebook violated its employee Code of Conduct. Google also contends that if this investment were known at the time, it would have warranted discipline. Google has tendered an affirmative defense involving this after-acquired evidence, arguing it supplies another basis for Spivak's termination. Accordingly, Google has sought discovery regarding the volume and extent of Spivak's trading in Facebook.

The undersigned previously determined that Google could have discovery on this issue, and urged the parties to agree on a stipulation that would describe the nature and extent of Spivak's Facebook trading activity, and thus avoid the need for Google to subpoena Spivak's trading records. Unfortunately, no stipulation has been reached.

By this sanctions motion, Spivak now seeks to revisit this discovery issue, contending that Google misrepresented the provisions of its Code of Conduct. In essence, Spivak contends that Google selectively quoted portions of the Code, and that if the full Code had been submitted, no discovery would have been allowed on this topic.

The undersigned has reviewed the full Code of Conduct (as submitted by Spivak), and does not find that Google made any material misrepresentations as to its scope or its intent.

When determining whether a conflict of interest arises from an employees personal investments in "a customer, supplier, partner or competitor of Google," the Code first states the general "appearance of a conflict" test, i.e., whether "the investment is significant enough (either in absolute value or in relation to the Googler's net worth) that someone might reasonably think it could cause the Googler to act in a way that benefits that personal investment at the expense of Google."

The Code goes on to provide more specific provisions for investments in competitors as compared with investments in customers, suppliers, or partners:

The test for investments in competitors is as follows:

> "Is the investment in a competitor?
> If the answer is yes, the investment creates a conflict of interest."

The test for investments in customers, suppliers, or partners is:

> "Do you have a job or responsibilities at Google that let you affect Google's actions in ways that could help your investment at the expense of Google?
> If the answer is yes, the investment creates a conflict of interest."

As noted, Google obtained information indicating that Spivak may have made investments in Facebook during her employment at Google. And, there appears no dispute that Facebook is a competitor of Google. As such, Google is entitled to discovery to verify Spivak's investment in Facebook, and the nature and extent of that investment. That was the undersigned's previous conclusion on this discovery issue, and it remains so. There was nothing in Google's prior citations to the Code of Conduct that misled the undersigned as to its prohibition on investing in competitors.

There being no evidence of a material misrepresentation of the Code of Conduct, there has been no "fraud" perpetrated on this Arbitrator, and thus no basis for sanctions.

5. Did Google "Abuse" Pre-Hearing Order No. 8?

Spivak contends that Google abused Pre-Hearing Order No. 8 by misrepresenting which current Google employees had expressed a desire not to be contacted by Spivak. She contends that employee Paul McClinton, whose name appears on the list of employees declining contact, has told her that he did not tell Google's lawyers that he did not want to be contacted by Spivak. According to Spivak, at best he told the Google lawyers that he "didn't want to be involved in the legal case."

Putting aside the obvious problem of Spivak contacting employees on the "no contact desired" list, and putting aside any dispute over semantics, this simply is not a matter calling for sanctions. At best, Spivak is arguing that Google either misunderstood McClinton's response,[1] or that he has changed his mind.

During oral argument on this motion, the undersigned offered to instruct Google to re-contact Mr. McClinton to ascertain his current wishes on the "contact" issue. Ms. Spivak declined the offer.

Without evidence that Google intentionally misrepresented Mr. McClinton's prior response on the no-contact issue, there is no basis for sanctions, and none are ordered.

6. Did Google Conceal Neal Mohan's Role as the "Single Decision Maker" for Spivak's Performance at Google?

In this sanctions request, Spivak contends that Google "concealed" the fact that Neal Mohan was the "single decision maker" regarding her work status at Google, and this concealment has limited her discovery rights in that regard.

Apparently, Google has maintained, in discovery discussions with Spivak, that Mohan, a high level manager, had little if any involvement in the adverse employment actions of which Spivak complains (e.g., the gender-based denial of stock option grants and denial of proper credit for her work). Spivak alleges that Google's position is not accurate, and that Mohan was the "single decision maker" for her at Google. She points out, or example, that she had a December 2014 meeting with him in which she requested a promotion, and that he rejected it, allegedly for gender-biased reasons.

In her arbitration claims, however, Spivak specifically named those supervisors who allegedly engaged in gender-biased conduct towards her; Mohan was not mentioned. Obviously, if the discovery she obtains from the named supervisors reveals that they were not the ultimate decision-makers, she will be permitted appropriate discovery regarding any ultimate decision makers involved in any of the discriminatory actions complained of by Spivak.

At this juncture, no sanctions are appropriate on this claim of Google's "concealment" of Neal Mohan's role in the adverse employment actions.

## GOOGLE'S REQUEST FOR SANCTIONS

Given the highly inflammatory nature of Spivak's motion (i.e., accusing the opposing party or its attorneys of altering evidence, fabricating evidence, and committing

[1] Google offered to submit to the Arbitrator, *in camera*, Mr. McClinton's prior written response on the contact issue, provided this would not deemed a waiver of the attorney-client privilege. Spivak did not request that this be done.

fraud on the Arbitrator), Google, in its opposition papers, reasonably requested sanctions to deter Spivak from making future misguided motions.

Google renewed its request for sanctions at the conclusion of the hearing, after the undersigned had denied each of Spivak's motions.

Google requested sanction of $12,500, as and for attorneys' fees incurred in defending against these motion. The requested sanctions are hereby deemed reasonable, and appropriate. Spivak's motions were not well-taken, and were more in the nature of name-calling attacks than addressing the issues of the case.

Although not currently a practicing attorney, Spivak has a law degree and for a period of time was a member of the California State Bar. She also has other advanced degrees and obviously understands the nature of the tactics in which she has engaged. She knows how to act professionally, and previously was instructed by the undersigned to conduct her case in a more professional manner,[2] yet has chosen not to do so.

Sanctions of $12,500.00 are ordered. They need not be paid at this time, but will be incorporated into any Final Award issued herein.

DATED: December 19, 2018.

Hon. Robert A. Baines
Judge of the Superior Court (Ret.)
Arbitrator

[2] See Pre-Hearing Order No. 8.

**PROOF OF SERVICE BY EMAIL & U.S. MAIL**

Re: Spivak, Rivka vs. Google Inc.
Reference No. 1110018238

I, Michelle Penuliar, not a party to the within action, hereby declare that on December 19, 2018, I served the attached Pre-Hearing Order No. 10 on the parties in the within action by Email and by depositing true copies thereof enclosed in sealed envelopes with postage thereon fully prepaid, in the United States Mail, at San Jose, CALIFORNIA, addressed as follows:

Brian L. Johnsrud Esq.
Patrick M. Sherman Esq.
Curley, Hurtgen & Johnsrud LLP
4400 Bohannon Dr.
Suite 230
Menlo Park, CA 94025
Phone: 650-600-5300
bjohnsrud@chjllp.com
psherman@chjllp.com
Parties Represented:
Google Inc.

Ms. Rebecca Spivak
128 N. E. 51st Street
Seattle, WA 98105
Phone: 617 519-1100
rebeccaspivak@outlook.com
Parties Represented:
Rebecca Spivak

I declare under penalty of perjury the foregoing to be true and correct. Executed at San Jose, CALIFORNIA on December 19, 2018.

Michelle Penuliar
mpenuliar@jamsadr.com