**From:** Brian Johnsrud <BJohnsrud@chjllp.com>
**Date:** Tuesday, May 22, 2018 at 2:14 PM
**To:** Rebecca Spivak <rebeccaspivak@outlook.com>
**Cc:** Patrick Sherman <PSherman@chjllp.com>
**Subject:** FW: Spivak - Stip on e-discovery

Ms. Spivak,

I am writing directly to you given your prior counsel's instruction to do so given her firm's withdrawal. If you have new counsel, please let me know and I will communicate with them.

We had several substantive conversations and exchanges with your prior counsel and had reached a stipulated compromise on various discovery issues, see below and attached (updated to reflect your signature). The compromise resulted in Google having to do a tremendous amount of e-discovery collection, review, and production.

We are not going to re-negotiate this protocol at this time. We encourage you to sign it and send it back to us by 5 pm today. If you do not, we will submit it to the Arbitrator as a proposed Order.

Best regards,

Brian

---

**From:** Rebecca Spivak [mailto:rebeccaspivak@outlook.com]
**Sent:** Tuesday, May 22, 2018 3:28 PM
**To:** Brian Johnsrud
**Cc:** Patrick Sherman
**Subject:** Re: Spivak - Stip on e-discovery

Hello Brian,

Thank you for your email. I appreciate that we are talking directly now.

I understand that you proposed this stipulation to my former counsel with the hope that it would be signed quickly.

I do not agree to the stipulation that you proposed, and I'm afraid we will need to back up in the process in order to reach something that I can agree to. I am asking for your good faith here at reaching a fair proposal to send to the arbitrator.

I understand that you are voicing concerns with what you perceive to be a high volume of discovery. I don't agree that this is a high volume of discovery on Google's end, especially given the very high stakes in this case, but regardless, there are things in this proposal that may be unnecessary and could possible be removed. I'm open to that. At the same time, there is quite a bit of important content that is missing from Google's discovery, and an unreasonable and concerning amount of overreaching on mine.

Backing up in the process to start a new e-discovery conversation, which we will need to do, is about focus, not necessarily quantity. We need to define the approach to retrieving the evidence that I actually need for my case

and that I have a right to discover. The proposal you sent my former counsel seems to point in every other direction. Whether this was intentional or not (and I make no assumptions), I would be glad to work with you to try to come to agree on a better focused proposal that is more on point to the issues in my case - for both my discovery and Google's. I hope you will find this reassuring.

Let's have a call as the next step to figure out timelines for beginning a new conversation.

As to your stated 5pm deadline, I understand that your plan was to reconnect with my former counsel for a call next week. So I don't understand why there is a sudden urgency and a 5pm deadline. It seems pretty aggressive to make this demand of me directly, in your first email to me, when this wasn't the timeline you were even working with before. You did not, as far as I know, make this demand/ threat to my counsel. Why have you made it to me?
As I switch to pro-se, I'd have thought you might offer more time for an intro conversation and to give me some ramp up time on the procedural elements. I'm surprised to receive a sudden demand and deadline without any stated reason or justification. Can you help me understand this urgency? This is a pretty critical part of the process - is it reasonable for you make this demand of me just a couple of hours into my self representation? I was hoping for a bit more good faith here.

Still, you have stated your intent. To be clear, I will not be signing this stipulation that you proposed now or at any later date. Nor will I be able to sign it subject to minor edits. It needs to be redrafted and I want to work with you in good faith to do that. If you plan to send this to Judge Baines anyway, as you have insisted, please let me know so I can start working on a response.

Best Regards,
Rebecca

---

**From:** Brian Johnsrud <BJohnsrud@chjllp.com>
**Date:** Tuesday, May 22, 2018 at 3:53 PM
**To:** 'Rebecca Spivak' <rebeccaspivak@outlook.com>
**Subject:** RE: Spivak - Stip on e-discovery

Ms. Spivak:

We can communicate by email though I won't be having a phone conversation with you.

You are mistaken on the timing. We were told by your former counsel last week that the stipulation was agreed upon after many cycles of negotiations. Then, your former counsel told us late **last** week we would be having a conversation early **this** week. Yesterday, I emailed your now former counsel and did not hear back. Today, we learned they are withdrawing.

Further, we have a deadline of this week to communicate the e-discovery protocol to the Arbitrator. That deadline is well known. We are not going to spend more cycles on something that was negotiated in good faith between experienced counsel, especially when you suggest there needs to be a "redraft." The existing protocol certainly gets you what you need without prejudice to request even more documents as necessary.

You have our position and we won't be cycling back and forth with you on it.

Best regards,

Brian Lee Johnsrud

---

**From:** Rebecca Spivak <rebeccaspivak@outlook.com>
**Date:** Tuesday, May 22, 2018 at 5:51 PM
**To:** Brian Johnsrud <BJohnsrud@chjllp.com>
**Subject:** Re: Spivak - Stip on e-discovery

Thank you for the clarification.

As you submit this to the Arbitrator (or assuming you already have), will you be representing it as an agreement reached between parties? Or will you be clarifying that it is most certainly not something that we agree upon. Please confirm that you will not be misrepresenting this as an agreement between parties.

Additionally, please confirm that I am not misunderstanding you. Is it your position that:

- We cannot confer by phone now or at any point in this process.
- You will not consider working with me to attempt to reach a stipulated agreement on e-discovery, even as I give you assurances of good faith
- You refuse to hear the concerns I have with the propriety of the e-discovery "conversations and exchanges" to date.
- You will ask the Arbitrator to make all the terms and waivers in the stipulation binding - despite my lack of agreement

Is that accurate?

Best Regards,
Rebecca

---

**From:** Rebecca Spivak <rebeccaspivak@outlook.com>
**Date:** Tuesday, May 22, 2018 at 9:33 PM
**To:** "Brian Johnsrud (BJohnsrud@chjllp.com)" <BJohnsrud@chjllp.com>
**Subject:** Conference Call with Judge Baines

Hello Brian,

I would like to schedule a call with Judge Baines as soon as possible so we can all figure out how the change in representation impacts the schedule, as well as to plan out the next steps.

How would you prefer we go about requesting that call? I have some additional flexibility over the next week or two, and can try to work around your schedule. I also want to make sure that i don't miss anything on a technicality or a deadline.

Best Regards,
Rebecca

P.S. Please call me "Rebecca" rather than "Ms. Spivak." If you must use my last name instead of my first, I would ask that you drop the gendered title, and simply use "Spivak" or "Plaintiff Spivak" - but I do hope you will just use "Rebecca." Likewise, I will certainly address you using any title or appropriate honorific that you might prefer. I recognize, based on prior communications to former attorneys, that you think quite poorly of me and this currently gets in the way of cooperation and good faith (and first-name-basis informality.) But I ask you to please consider that Google has given you quite a bit of distorted information, as well as some things that go beyond distortion and that have been fully and materially altered/doctored (I must assume that when you submitted this altered evidence, it was because you trusted the evidence that Google handed to you with an assertion that it was authentic). But give me a chance and you will see I am far more reasonable, competent, and cooperative than you might expect me to be. I am hopeful that you will come to recognize this in time and be more open to figure out how to make this process work as intended.

---

**From:** Rebecca Spivak <rebeccaspivak@outlook.com>
**Date:** Wednesday, May 23, 2018 at 11:17 PM
**To:** "Brian Johnsrud (BJohnsrud@chjllp.com)" <BJohnsrud@chjllp.com>
**Subject:** Communication

Hi Brian,

I don't understand why you won't respond to my emails and why you ignore them. I can understand why you might worry about spoken communication. But you are even ignoring my written communication.

If you believe in your case and the things you've asserted about me, then this is a bonus opportunity to get me to say things against my interest that you can introduce as evidence. You just have to ask. And I will respond - honestly and in good faith. I promise you both of those things. And you can use it as evidence. You don't even need a subpoena. I'm emailing you and offering to freely respond to any questions you have. I just want to have open communication. I will freely agree that anything I say is something you can use against me. I'm not concerned about that since I am communicating in good faith. Please work with me.

Rebecca

---

**From:** Brian Johnsrud <BJohnsrud@chjllp.com>
**Date:** Thursday, May 24, 2018 at 9:43 AM
**To:** 'Rebecca Spivak' <rebeccaspivak@outlook.com>
**Subject:** RE: Communication

Rebecca,

There's no need for email dialog or chatter because we have a call set with the Arbitrator and we'll go from there on next steps in this arbitration.

Best regards,

Brian Lee Johnsrud

---

**From:** Rebecca Spivak <rebeccaspivak@outlook.com>
**Date:** Thursday, May 24, 2018 at 10:18 PM
**To:** Brian Johnsrud <BJohnsrud@chjllp.com>
**Subject:** Re: Communication

Hi Brian -

I wasn't interested in chatter. I wanted to try to work things out in good faith so that we don't have to dispute every single detail in front of Judge Baines.

I have not given up on the hope that Google will drop the bad faith/intimidation stuff. It doesn't work. The reason we're at this point is because Google responded to my requests for fairness with retaliation, intimidation, fabrication/falsification of evidence, gas-lighting and lots more. When I asked Caroline Bremner for help in making the situation more fair, she told Jens to PIP me. We both know that this is true -and Jens largely admitted it under oath to the EEOC. A little bit of effort to rectify things at that time, and there would be no case right now - even with all the bad stuff in NY - even with the damages at the time, I would have dropped it. I would have put everything else in the past and moved on. If Cindy Treloar had actually investigated my bias complaint instead of interrogating me and telling me she was impartial in the same breath she tried to force me to self-incriminate ... pen in hand, I would have moved on. If Google had given me credit for IB, as Michael promised me they would ... then, despite ... everything ... I would have moved on. Each time I asked for fairness ... this could have resolved. And each time Google seemed to think that the solution was to double-down on the bad faith. I gave Google about a dozen chances to just acknowledge and validate ... even just half of what was fair.

But your legal approach ... It's like trying to put out a fire by throwing kerosene on it. It won't ever work. Try to understand me ... even if just for the past 4 years. I have done so much for Google ... I can prove, with a lot of peer support, that I am in that top tier ... the ones that Lazslo Bock argues should be paid "unfairly". I can prove that, and I think you know that - which is why you're fighting so

hard on the discovery. Because the discovery will prove it too. And I have to reconcile this accomplishment with the years I spent at Google being demeaned and penalized for the same things that got men promoted ... I don't know how much you believe when it comes to the documents you send out, and how much you are just doing your "job" in trying to kill my credibility and fabricate nonsense about whether I shouldn't get credit for my multi-billion-dollar impact because you think I picked my nose in the office and wiped it on a company stapler. I just can't believe that you don't believe this bias dynamic is true for women in tech. Will you get up and say that most women in tech work on a level playing field? It's not true. Stand up and say it's true. You know it's not true. You can't believe that's true. And even if you argue it, you can't believe that I think that's true and I'm somehow fabricating all this. I can bring 100 people from my life - both inside and outside of Google - who absolutely know how much I believe this -and how much they believe this. You can try to argue that a 42 year old woman who was first in Computer Science at Yale and has an MBA from Harvard, who launched products that made Google Billions of dollars ... and who was fired for it while earning less than men 10 years her junior with half her qualifications- is just playing the gender card game and doesn't really believe any of it. That when you cut and paste sentences together from emails, it almost looks like you've made her say it. And you can plug your ears when it's pointed out that these patched-together complete distortion was submitted under oath to the EEOC. Because maybe if you plug your ears, the serious implications of having done that sort of thing will just dissipate.

You can argue this nonsense , but I can't believe that you can believe it. You can say I had a failed EEOC claim, but we both know that Google doctored evidence (submitted under oath), fabricated evidence (submitted under oath), and withheld evidence that the EEOC needed to calculate damages. We both know that while you accuse me of dragging out this process with an EEOC claim that failed, it's the fact that Google refused the EEOC request for pay data that dragged this all out... the EEOC needed this data to compute my damages, but Google never shared it ... and so eventually my EEOC claim led to the larger DOL investigation against Google.

You know you're playing a game when you keep spinning this. Don't you? Maybe it energizes you. I do understand what it's like to be energized by a hard problem and challenge. It's fun. I just don't do it when the hard problem is about how to discredit a good person. That wouldn't energize me. I get energized by hard problems that come down to figuring out how to help people and customers. It's so much more fun - I promise.

If you want to know where the missing women are in Tech leadership ... you just have to look across the aisle to the woman you are trying to destroy and demean in this process. You can try to present the email I sent to Paul Higson as evidence to discredit me. You can try to argue that when tech stomps on a woman's head hard enough and robs her of all the recognition that she would have received if she had been a man, she should just take it rather than fight back. You can add this email that I am sending you right now alongside the email I sent to Paul. And you can paint me as an angry, irrational, hysterical woman who is playing a game and a card ... in order to cover up that she's just somehow irrationally hysterical and angry, and not for any cause. If you like the game, then you might find it fun. But, of course, it's not true.

I've been a pioneer in this industry -- launching great products and setting best practices that were adopted even beyond Google I was always well-intentioned and wanted nothing more than for Google to succeed. And I helped that happen. And the people who worked with me liked me and appreciated how my work skyrocketed their careers. It's just the people looking over across the fence, and seeing a confident woman, who didn't. I launched many products that made Google billions of dollars. Billions. Really. You think the FB stock is your winning bet. It's not. It wasn't against policy and you know it, and had to cut/paste sentences (removing a critical sentence from the middle) from an employment agreement from a different year to even try to make it seem like it might-could have been. There's nothing here, and I know it and so do you. And all my coworkers know that I really cared about helping Google succeed. We already have this under oath. I wanted Google to win, to a fault. And whether trades executed on company time ... you'll have to argue that this was a problem while Pac-Man arcade games lined the walls and while boys played fuzball in the halls without a girl in sight. I wasn't hourly, was hugely focused on helping Google crush the Facebook threat (which no one besides me seemed to think was real until finally others saw it), and I made Google billions of dollars. I am not scared of the guns you think you have on this. It only further demonstrates Google's bad faith.

I will admit to a fault ... I don't understand why so many people play dirty. You don't have to play this dirty.

I am motivated by fairness. Some of the misfires are head-scratchers. You want all my emails that use the word "extortion." I'm happy to share those with you. Great. I will give you every email where I mention "extortion." I would love to give you all those emails. I don't know whether Google altered them before sharing them with you, but all of plusmail has those originals. I discussed how I expected Google to extort me. I have never thought or discussed in any way the idea of extorting Google. I wondered whether Google would try to use bad faith extortion to get me to drop the case. It seems like my concern that Google would attempt this was well founded. Regardless, I am more than happy to send all my emails that mention extortion to you, the arbitrator, and anyone who wants to see them. I'm happy to put every email where I mention "Extortion" and "Google" on a billboard. I am so happy you want to see those emails. It will only surface how much I anticipated that Google would play dirty.

Look, Brian. You are an attorney. You're smart. You have a duty to your client,. I don't know what you're planning to do next. I can only imagine that you are trying to figure out how to crush me or scare me. But please understand that good faith works a lot better than bad faith. It's been more than 4 years since I first filed the complaint with Google's ethics hotline. The attempts to crush/scare have been many. I'm still here. Look at history. There's been so much waste here. Good Faith resolves this. Bad Faith escalates it. For your client's sake, you should understand that, like many people, I respond well to good faith. Just think about it. What does a good faith path forward look like. What does a bad faith path forward look like?

Best Regards,

Rebecca

---

**From:** Rebecca Spivak <rebeccaspivak@outlook.com>
**Date:** Tuesday, June 5, 2018 at 1:05 AM
**To:** "Brian Johnsrud (BJohnsrud@chjllp.com)" <BJohnsrud@chjllp.com>
**Subject:** Ediscovery Revisions

Hello Brian -

Here are my proposed revisions to Exhibits A, B, and C.

For Exhibit C, my only change was to limit the discovery to relevance.

For Exhibit A and B - I agree with you that this discovery was quite extensive. In reviewing the proposal, I roughly calculated the time-period x custodian volume as follows:

Exhibit A: 18 Custodians - totaling ~34 custodian-years of email
Exhibit B: 15 Custodians - totaling ~24 custodian-years of email

Overall, this was 33 Custodians and 58 custodian-years. I was able to reduce this quite a bit. My revisions combine the custodian to a single set of 18 custodians, and to cut the custodian-years by half.

I think these proposed revisions are very reasonable, and help focus both sets of discovery to evidence that will be useful without being overly burdensome.

As to the stock trades and emotional distress, I do not agree to the stipulation on either of those points, but we can add additional discovery terms if relevant.

Let me know your thoughts.

Best Regards,
Rebecca

---

**From:** Rebecca Spivak <rebeccaspivak@outlook.com>
**Date:** Tuesday, June 5, 2018 at 4:01 AM
**To:** "Brian Johnsrud (BJohnsrud@chjllp.com)" <BJohnsrud@chjllp.com>
**Subject:** RFP

Hi Brian,

I am attaching my initial RFP with 21 items. When I agreed to make ediscovery available by Monday, I was not expecting to also produce the RFP. However, this is most of the way there. The intro/terms you applied in Google's RFP seem fine to me, and should apply as a preface to this doc. I will attempt to get you a more polished version in a day or so - but I believe this should more than suffice in allowing Google to move forward with the process.

Best Regards
Rebecca

---

**From:** Brian Johnsrud <BJohnsrud@chjllp.com>
**Date:** Monday, June 11, 2018 at 4:33 PM
**To:** "Rebecca Spivak (rebeccaspivak@outlook.com)" <rebeccaspivak@outlook.com>
**Subject:** FW: Ediscovery Revisions

Hi Rebecca,

We expected you to send proposed revisions to our pending e-discovery proposal given the Arbitrator's Order stating:

> The parties are ordered to meet and confer regarding an e-discovery plan appropriate for this matter, using the above-mentioned document as the starting point. Claimant Spivak shall, by the end of the day on Monday, June 4, 2018**,** forward to Respondent's counsel her proposed revisions to that document.

Instead of doing that, you created your own proposal, which would add exponentially to Google's collection, review and production.

Our reasonable revisions to your proposal are attached and we are prepared, as necessary, to argue them before the Arbitrator. We do want to note that our proposal is intended to get this process moving and is **without prejudice** to your right to seek specific documents you believe are relevant after you review the documents produced under the protocol.

Separately, since you now are refusing the stipulation that previously addressed your Facebook trading activity and alleged emotional distress, we have added those terms and others to your search obligations. We've also added the names of the custodians you are insisting that Google review to your search protocol.

Please let us know if you are okay with the updated protocols by noon Pacific this Friday the 15th.

Best regards,

Brian Lee Johnsrud

---

**From:** Rebecca Spivak <rebeccaspivak@outlook.com>
**Date:** Friday, June 15, 2018 at 7:01 PM
**To:** Brian Johnsrud <BJohnsrud@chjllp.com>
**Subject:** Re: Ediscovery Revisions

Hello Brian -

Unfortunately, I am not ok with your proposed revisions. They are largely problematic. It does not seem like you welcome my specific concerns or further negotiation, but please do let me know if this is not the case, and if I am misunderstanding your message. I also do not agree with other claims that you have made in this email.

I am also prepared, as necessary, to argue this before the arbitrator.

As you know, I am seeking more than $10 million in damages, and my actual damages are at least an order of magnitude higher than the damages I am pursuing. Given the damages and stakes in this case, the discovery burden is proportionally modest, by any measure.

If you would like to engage in further discussion and negotiation prior to the call with the arbitrator at the end of this month, I welcome the chance to do so, and hope we will be able to reach some resolution. If you are firm with your current stance, then I will focus on preparing arguments to present to Judge Baines.

Best Regards,
Rebecca

---

**From:** Brian Johnsrud <BJohnsrud@chjllp.com>
**Date:** Monday, June 18, 2018 at 11:12 AM
**To:** 'Rebecca Spivak' <rebeccaspivak@outlook.com>
**Subject:** RE: Ediscovery Revisions

Rebecca,

If you have any specific proposed revisions, we are open to reviewing them. From your message below, however, you seem intent on pressing for everything you demanded. If that's the case, we can both just prepare for the call with the Arbitrator.

Best regards,

Brian

---

**From:** Rebecca Spivak <rebeccaspivak@outlook.com>
**Date:** Monday, June 18, 2018 at 9:01 PM
**To:** Brian Johnsrud <BJohnsrud@chjllp.com>
**Subject:** Re: Ediscovery Revisions

Hi Brian -

I definitely want to work with you on specific provisions. I do believe we can find creative approaches here that will allow us to provide each other with the material evidence while minimizing the e-discovery efforts and any perceptions of overreaching.

Here are a few examples of where I can certainly compromise with a creative approach

**Neal Mohan / "Promotion"**

Compromise: The promotion announcements and packets for individuals promoted in Neal's Org

The ads organization under Neal Mohan was especially biased at Google. Men and Women were promoted under a completely different standard. In fact, the traits that I was penalized for were the same traits that were praised in men. I can concede that I don't need every email where "promotion" is mentioned - but I do need, at the very least, every promotion announcement sent out for those in Neal's organization as well as the promotion packets. I remember noticing this in the promotion announcements while I was still employed at Google. And it might very well be that I would get most of these emails anyway once you share all email that was received to rivka@google.com (so that we're on the same page - this should include all email where I was on a group list, as well as anything sent to me directly).

On your rationale for not providing these emails - Neal was not so far removed from me at all - For the majority of my time at Google Neal was my skip-manager and his approval was directly needed for any promotion I would receive. This was true in NY and in Seattle. He was my boss's boss and I also met with him directly one-on-one at least twice. If you can share the promotion announcements/packets - either as an e-discovery item or as as a document production (since I still have a few left on that list), then I think we're good.

**Scott Spencer / "Ad Meld"**

Compromise: Emails relating to staffing/ ownership of Admeld

After I told Scott I was pregnant, he told me he needed to tell Neal. And I have very good reason to believe that he asked others to step in. He would not necessarily have mentioned my name - but the proof is in the time. So, I don't need every email that Scott sent where he mentioned Admeld. But I do need the emails where he made arrangements for others to drive my projects, even though I was still there and eager to continue owning these products for the next 6 months. I'm not sure exactly how to continue to narrow this - but we can brainstorm ways to limit this just to conversations that Scott had around staffing/continuity - including emails where he did not mention my name.

**Chat/Hangouts** -- I see that you crossed this out. I'm not very flexible on this. I received chats from HR and I also received biased chats from some key individuals. I saved some of those chats - but not all of them.

**My Financial Record**

I believe that Google already has most of the emails and documents that it is asking me to produce for e-discovery. Still, it is a huge overreach to ask for me to hand it over. I do not deny that I traded facebook stock and options while employed at Google, and I do not deny that there were large gains, and I do not deny that some trades executed during business hours. I may be willing to concede the factual claims that you are trying to prove. Alternatively, I may agree to a third party summarizing the pertinent data.

Those are a few of the provisions I would propose. Is there room here? Does the above seem more acceptable to Google? It should cut down on the e-discovery even more than I have already reduced it. If so, I can continue to work on revisions.

Best Regards,
Rebecca

---

**From:** Brian Johnsrud <BJohnsrud@chjllp.com>
**Date:** Wednesday, June 20, 2018 at 11:27 AM
**To:** 'Rebecca Spivak' <rebeccaspivak@outlook.com>
**Subject:** RE: Ediscovery Revisions

Rebecca,

My response are below in highlighting and please let me know if you have any follow up questions or proposals.

Best regards,

Brian

Brian Lee Johnsrud
**Curley, Hurtgen & Johnsrud LLP**
Counselors at Law
4400 Bohannon Drive, Suite 230
Menlo Park, CA 94025
(d) 650.600.5310
(c) 650.722.2733
bjohnsrud@chjllp.com
www.chjllp.com

**From:** Rebecca Spivak [mailto:rebeccaspivak@outlook.com]
**Sent:** Monday, June 18, 2018 9:01 PM
**To:** Brian Johnsrud
**Subject:** Re: Ediscovery Revisions

Hi Brian -

I definitely want to work with you on specific provisions. I do believe we can find creative approaches here that will allow us to provide each other with the material evidence while minimizing the e-discovery efforts and any perceptions of overreaching.

Here are a few examples of where I can certainly compromise with a creative approach

**Neal Mohan / "Promotion"**
Compromise: The promotion announcements and packets for individuals promoted in Neal's Org
The ads organization under Neal Mohan was especially biased at Google. Men and Women were promoted under a completely different standard. In fact, the traits that I was penalized for were the same traits that were praised in men. I can concede that I don't need every email where "promotion" is mentioned - but I do need, at the very least, every promotion announcement sent out for those in

Neal's organization as well as the promotion packets. I remember noticing this in the promotion announcements while I was still employed at Google. And it might very well be that I would get most of these emails anyway once you share all email that was received to rivka@google.com (so that we're on the same page - this should include all email where I was on a group list, as well as anything sent to me directly).
On your rationale for not providing these emails - Neal was not so far removed from me at all - For the majority of my time at Google Neal was my skip-manager and his approval was directly needed for any promotion I would receive. This was true in NY and in Seattle. He was my boss's boss and I also met with him directly one-on-one at least twice. If you can share the promotion announcements/packets - either as an e-discovery item or as as a document production (since I still have a few left on that list), then I think we're good.

CHJ: Relevance is defined in large part by the pleadings. Your Amended Demand for Arbitration specifically identifies Mr. Skakkebaek and Mr. Rothman as alleged discriminators, and your manager in NY was Scott Spencer. Our understanding is that you barely interacted with Mr. Mohan – you cite just 2 meetings and no alleged wrongful conduct by Mr. Mohan. We thus won't be agreeing to broad discovery into the many employees who reported into Mr. Mohan while he was the SVP for Display and Ads. Further, you never went through the promotion process so these promotion requests are not relevant, let alone for Mr. Mohan's entire organization.

**Scott Spencer / "Ad Meld"**
Compromise: Emails relating to staffing/ ownership of Admeld
After I told Scott I was pregnant, he told me he needed to tell Neal. And I have very good reason to believe that he asked others to step in. He would not necessarily have mentioned my name - but the proof is in the time. So, I don't need every email that Scott sent where he mentioned Admeld. But I do need the emails where he made arrangements for others to drive my projects, even though I was still there and eager to continue owning these products for the next 6 months. I'm not sure exactly how to continue to narrow this - but we can brainstorm ways to limit this just to conversations that Scott had around staffing/continuity - including emails where he did not mention my name.

CHJ: We agreed to produce email for Scott where he uses your name and Admeld. That would certainly seem to cover emails where he made arrangements for others to allegedly drive your projects. If after reviewing the email we produce you believe there would be something else, we would agree to meet and confer on it.

**Chat/Hangouts** -- I see that you crossed this out. I'm not very flexible on this. I received chats from HR and I also received biased chats from some key individuals. I saved some of those chats - but not all of them.

CHJ: This should be a non issue. We informed your former counsel of this and we assumed it was shared: chats/hangouts are preserved only if they are saved in email. And, if they were saved in email, they will be picked up by the search terms and produced as part of the email review.

**My Financial Record**

I believe that Google already has most of the emails and documents that it is asking me to produce for e-discovery. Still, it is a huge overreach to ask for me to hand it over. I do not deny that I traded facebook stock and options while employed at Google, and I do not deny that there were large gains, and I do not deny that some trades executed during business hours. I may be willing to concede the factual claims that you are trying to prove. Alternatively, I may agree to a third party summarizing the pertinent data.

CHJ: We do not agree with your attempt to shield these facts because these facts relate directly to our after-acquired evidence defense as well as the nature and extent of your alleged economic damages, and we need to prove our defense with specific facts, not generalized concessions on your part.

Those are a few of the provisions I would propose. Is there room here? Does the above seem more acceptable to Google? It should cut down on the e-discovery even more than I have already reduced it. If so, I can continue to work on revisions.

Best Regards,
Rebecca

---

**From:** Rebecca Spivak <rebeccaspivak@outlook.com>
**Date:** Wednesday, June 20, 2018 at 12:43 PM
**To:** Brian Johnsrud <BJohnsrud@chjllp.com>
**Subject:** Re: Ediscovery Revisions

My responses below in green

In addition, here are some other questions/revisions

My Discovery:

1) What is your justification for insisting on discovery going back more than 3 months prior to my start date with Google?

2) "Emotional State or Condition." I will not agree to this except when it is relevant to my claims against Google.

Google's Discovery

1) re: Cindy Treloar: I will not agree to limiting this discovery to things directly related to me. I made a protected ethics complaint and Cindy Treloar - who asserted that she was impartial and from Employee Relations - was assigned to handle my complaint. The evidence will show that Cindy Treloar actually prided herself on forcing undesirable employees out of the company. She ran a course on how to get people to quit. She openly bragged about this on group chats and on her internal Google

resume. Cindy Treloar's communication prior to her being assigned to investigate my complaint (where she certainly would not have mentioned my name) establish Google's early retaliation and bad faith.

2) Lauren Ewing: Lauren's communications regarding Rothman's performance/ management mistakes/ remedial-training is relevant to my claims even if that communication was not directly about me.

3) Lainey Dailo: I need more than just IB to establish differential treatment in the relocation offer

4) Dustin Jackson: "Relocation" so long as it relates to IB - OR FRONTLINE

Best Regards,
Rebecca

---

**From:** Brian Johnsrud <BJohnsrud@chjllp.com>
**Sent:** Wednesday, June 20, 2018 11:27 AM
**To:** 'Rebecca Spivak'
**Subject:** RE: Ediscovery Revisions

Rebecca,

My response are below in highlighting and please let me know if you have any follow up questions or proposals.

Best regards,

Brian

Brian Lee Johnsrud
**Curley, Hurtgen & Johnsrud LLP**
Counselors at Law
4400 Bohannon Drive, Suite 230
Menlo Park, CA 94025
(d) 650.600.5310
(c) 650.722.2733
bjohnsrud@chjllp.com
www.chjllp.com

**From:** Rebecca Spivak [mailto:rebeccaspivak@outlook.com]
**Sent:** Monday, June 18, 2018 9:01 PM
**To:** Brian Johnsrud
**Subject:** Re: Ediscovery Revisions

Hi Brian -

I definitely want to work with you on specific provisions. I do believe we can find creative approaches here that will allow us to provide each other with the material evidence while minimizing the e-discovery efforts and any perceptions of overreaching.

Here are a few examples of where I can certainly compromise with a creative approach

**Neal Mohan / "Promotion"**

Compromise: The promotion announcements and packets for individuals promoted in Neal's Org

The ads organization under Neal Mohan was especially biased at Google. Men and Women were promoted under a completely different standard. In fact, the traits that I was penalized for were the same traits that were praised in men. I can concede that I don't need every email where "promotion" is mentioned - but I do need, at the very least, every promotion announcement sent out for those in Neal's organization as well as the promotion packets. I remember noticing this in the promotion announcements while I was still employed at Google. And it might very well be that I would get most of these emails anyway once you share all email that was received to rivka@google.com (so that we're on the same page - this should include all email where I was on a group list, as well as anything sent to me directly).

On your rationale for not providing these emails - Neal was not so far removed from me at all - For the majority of my time at Google Neal was my skip-manager and his approval was directly needed for any promotion I would receive. This was true in NY and in Seattle. He was my boss's boss and I also met with him directly one-on-one at least twice. If you can share the promotion announcements/packets - either as an e-discovery item or as as a document production (since I still have a few left on that list), then I think we're good.

CHJ: Relevance is defined in large part by the pleadings. Your Amended Demand for Arbitration specifically identifies Mr. Skakkebaek and Mr. Rothman as alleged discriminators, and your manager in NY was Scott Spencer. Our understanding is that you barely interacted with Mr. Mohan – you cite just 2 meetings and no alleged wrongful conduct by Mr. Mohan. We thus won't be agreeing to broad discovery into the many employees who reported into Mr. Mohan while he was the SVP for Display and Ads. Further, you never went through the promotion process so these promotion requests are not relevant, let alone for Mr. Mohan's entire organization.

RS: Neal Mohan was directly responsible for the biased culture of his organization and the actions of his direct reports, who made it very clear that Neal was involved in the decisions they made. The culture and bias within the Ads organization and within Google as a whole - along with the policies that enabled these biases - is absolutely relevant to

If you are referencing the Notice of Claims filed back in July of 2015 while I was still employed at Google, then I agree that this notice should be updated to better reflect the actual claims we have been discussions for the past 3 years. I will raise this with the arbitrator on our call. Google has had notice in multiple legal documents and in the EEOC process of claims that go beyond this notice. In

fact, in Google's mediation letter, it acknowledges and attempts to refute claims that go beyond the claims in the July 2015 notice.
We should update the claims to include the damages we have actively been discussing - including the NY damages, the Compare role, and Google's public disclosure that I was on a PIP

**Scott Spencer / "Ad Meld"**
Compromise: Emails relating to staffing/ ownership of Admeld
After I told Scott I was pregnant, he told me he needed to tell Neal. And I have very good reason to believe that he asked others to step in. He would not necessarily have mentioned my name - but the proof is in the time. So, I don't need every email that Scott sent where he mentioned Admeld. But I do need the emails where he made arrangements for others to drive my projects, even though I was still there and eager to continue owning these products for the next 6 months. I'm not sure exactly how to continue to narrow this - but we can brainstorm ways to limit this just to conversations that Scott had around staffing/continuity - including emails where he did not mention my name.

CHJ: We agreed to produce email for Scott where he uses your name and Admeld. That would certainly seem to cover emails where he made arrangements for others to allegedly drive your projects. If after reviewing the email we produce you believe there would be something else, we would agree to meet and confer on it.

RS: It is important that I receive emails where Scott discussed Admeld staffing regardless of whether he mentioned my name (and especially when he did not mention my name). We can limit the time frame. This should not be controversial.

**Chat/Hangouts** -- I see that you crossed this out. I'm not very flexible on this. I received chats from HR and I also received biased chats from some key individuals. I saved some of those chats - but not all of them.

CHJ: This should be a non issue. We informed your former counsel of this and we assumed it was shared: chats/hangouts are preserved only if they are saved in email. And, if they were saved in email, they will be picked up by the search terms and produced as part of the email review.

RS: Are you confirming that Google did not preserve relevant chat/ instant message communications post June 2015?

**My Financial Record**
I believe that Google already has most of the emails and documents that it is asking me to produce for e-discovery. Still, it is a huge overreach to ask for me to hand it over. I do not deny that I traded facebook stock and options while employed at Google, and I do not deny that there were large gains, and I do not deny that some trades executed during business hours. I may be willing to concede the factual claims that you are trying to prove. Alternatively, I may agree to a third party summarizing the pertinent data.

CHJ: We do not agree with your attempt to shield these facts because these facts relate directly to our after-acquired evidence defense as well as the nature and extent of your alleged economic damages, and we need to prove our defense with specific facts, not generalized concessions on your part.

RS: I am not attempting to shield any facts. I would be happy to work with a 3rd party who can summarize the facts that you need, subject to the arbitrator's ruling.

Those are a few of the provisions I would propose. Is there room here? Does the above seem more acceptable to Google? It should cut down on the e-discovery even more than I have already reduced it. If so, I can continue to work on revisions.

Best Regards,
Rebecca

---

**From:** Brian Johnsrud <BJohnsrud@chjllp.com>
**Date:** Wednesday, June 20, 2018 at 12:56 PM
**To:** 'Rebecca Spivak' <rebeccaspivak@outlook.com>
**Subject:** RE: Ediscovery Revisions

Rebecca,

This is supposed to be a meet and confer about specific search terms and custodians, not a mish mash of argument and questions on custodians as you happen to bring them up in scattershot approach. Because we're not making (and have not made) material progress here, we'll submit our position to the Arbitrator by this coming Wednesday by 5 pm, copying you. We assume you will do the same.

Best regards,

Brian

---

**From:** Rebecca Spivak <rebeccaspivak@outlook.com>
**Date:** Wednesday, June 20, 2018 at 1:45 PM
**To:** Brian Johnsrud <BJohnsrud@chjllp.com>
**Subject:** Re: Ediscovery Revisions

You asked me to let you know if I had any questions or proposals, and I have been addressing your specific points and sharing my justifications.
However, I can recognize, as you point out, that we do not seem to be making much progress (although I have offered a few concessions already), then we can go through the more formal process.

Best Regards
Rebecca

---

**From:** Rebecca Spivak <rebeccaspivak@outlook.com>
**Date:** Wednesday, June 27, 2018 at 3:03 AM
**To:** Brian Johnsrud <BJohnsrud@chjllp.com>
**Subject:** Re: Ediscovery Revisions

Hi Brian,

Can we agree on a deadline of 8:00 am Thursday morning instead of 5:00 pm Wednesday evening? This is an extension of 15 hours ("non-working hours"), which I anticipate will have either no impact, or only very minimal impact, on anyone else in the process.

It's been a busy week. My younger child, [redacted]

I understand that position papers are expected by 5pm today (Wednesday). I would expect that Google would consider an extension of 15 hours - to 8:00 am on Thursday morning - inconsequential. Please let me know whether you have any objections to moving the deadline from 5pm Wednesday to 8am Thursday.

Best Regards
Rebecca

---

**From:** Brian Johnsrud <BJohnsrud@chjllp.com>
**Date:** Wednesday, June 27, 2018 at 9:17 AM
**To:** Rebecca Spivak <rebeccaspivak@outlook.com>
**Subject:** Re: Ediscovery Revisions

Rebecca,

Tomorrow (Thursday) by 8 am is fine by us.

Brian

---

**From:** Rebecca Spivak <rebeccaspivak@outlook.com>
**Date:** Sunday, July 1, 2018 at 11:50 PM
**To:** "Brian Johnsrud (BJohnsrud@chjllp.com)" <BJohnsrud@chjllp.com>, "Patrick Sherman (PSherman@chjllp.com)" <PSherman@chjllp.com>
**Subject:** follow up to pre-hearing conference

Hi Brian and Patrick -

I would like to send a follow-up to our pre-hearing conference on Friday -

Google has been ordered by the arbitrator to produce evidence that Google proposed in, what I interpret as, an attempt to control the narrative of my case. But to be clear, I did not ask for the evidence that Google has been ordered to discover (by its own request). I do not value it, do not want it, and would waive access to it. Should Google find the burden of producing this evidence to be very high, I would relieve Google of this burden so that we can proceed to round two.

However, I believe I cannot waive this right, as I have been directed to receive this (relatively useless) evidence and to review it in good faith before I am allowed to ask for any evidence. Before I can ask for evidence that fits the theory of my claim, I must review hundreds of thousands of documents (that don't fit the theory of my claim) that Google demands I review. So I will (somehow) do so because I have been ordered to. But for all the burden that Google cites in having to produce this magnitude of evidence, I equally object to having to receive and review evidence that I do not want and did not ask for and that distorts the theory under which I am filing my claim.

In any future conversation where Google asserts the burden of this discovery, I will equally assert the burden of having to review piles of evidence that I did not ask to receive and do not want to have to review. My burden in being forced to review this unrequested evidence at least matches, and more likely exceeds, Google's burden in having to produce it. Google's production of this discovery hurt me, because I have been ordered to review it even though I don't want it. It does not help me.

This discovery is Google's attempt to control the narrative, and to the extent that Google subsequently argues about the great efforts it took in producing this discovery, I will note that I did not want or ask for it, and that it was an attempt to control and craft a fiction.

I just want to be transparent and up-front about this, so that we're on the same page and so there are no surprises later.

Best Regards,
Rebecca

---

**From:** Patrick Sherman <PSherman@chjllp.com>
**Date:** Monday, July 2, 2018 at 4:58 PM
**To:** "Rebecca Spivak (rebeccaspivak@outlook.com)" <rebeccaspivak@outlook.com>
**Cc:** Brian Johnsrud <BJohnsrud@chjllp.com>
**Subject:** Google's Responses to Requests for Production

Ms. Spivak,

Attached please find Google’s responses to your requests for production of documents.

Best regards,

Patrick

---

**From:** Rebecca Spivak <rebeccaspivak@outlook.com>
**Date:** Monday, July 2, 2018 at 5:04 PM
**To:** "Patrick Sherman (PSherman@chjllp.com)" <PSherman@chjllp.com>, "Brian Johnsrud (BJohnsrud@chjllp.com)" <BJohnsrud@chjllp.com>
**Subject:** Spivak Response to Google's RFPs

Hello Brian and Patrick

I am sharing my best effort to respond to your RFPs in the given time frame.
The overwhelming majority of your requests fall into 4 categories

1. Documents that Google already has, such as my performance reviews, PIP, etc.
2. Documents that have previously been shared via letters from my attorneys and the EEOC file
3. Documents that I do not have in my possession but that Google has, and that I have requested via Discovery/RFP
4. Documents that will be shared via the ediscovery Protocol

**RFP 1-19, 21-24**
Covered by categories 1-4 listed above

**RFP 20, 26**
These seem to be asking the same thing. I have attached my Amazon offer - and it fully captures my Amazon income. Google already has the pay that I received from Google. And I object on the stock
Amazon Income s nce 2010:
Annua zed approx mate y $225,000/year s nce May 8, 2018

Se f-Emp oyment Income s nce 2010:
No Se f Emp oyment Income

Stock/Opt ons Trad ng Income:
No earned ncome from stock trades
Object on to request for stock ga ns/ osses

**RFP 25**
I object to this request for multiple reasons, including its lack of relevance

---

**From:** Rebecca Spivak <rebeccaspivak@outlook.com>
**Date:** Friday, July 6, 2018 at 1:39 AM
**To:** "Brian Johnsrud (BJohnsrud@chjllp.com)" <BJohnsrud@chjllp.com>
**Subject:** This is, at least, a little bit funny

Some of the funniest spam I've ever received ... :D Figured you might get a kick out of it.

**Avvo** <email@mail5.avvo.com> Unsubscribe
to me

12:29 AM (58 minutes ago)

Avvo

Hi there,

Here at Avvo, it's our mission to get you the legal help when and how you need it. Take the next step in **getting your legal issues resolved** -- send a message to attorney Brian Johnsrud.

**The attorney you viewed yesterday:**

Brian Johnsrud
Palo Alto, CA
650-617-3268

Avvo Rating
7.8

Reviews
Not yet reviewed

Send message

Want more options? Search our extensive directory for rated and reviewed attorneys near you.

Making legal easier,

Team Avvo

---

**From:** Brian Johnsrud <BJohnsrud@chjllp.com>
**Date:** Wednesday, July 11, 2018 at 9:48 AM
**To:** "Rebecca Spivak (rebeccaspivak@outlook.com)" <rebeccaspivak@outlook.com>
**Subject:** Spivak v. Google - Your Contact With Google Employees

Rebecca,

It has come to our attention that you have recently contacted current and former Google employees. We want to make sure you understand that we represent both current and former Google employees regarding your allegations and Google's defenses.

In light of our representation, and in light of you representing yourself in this case, please refrain from further contact with current and former Google employees who are in any way connected with this case. You are permitted to take certain depositions in this case and we'll defend those employees at their depositions.

Please confirm by noon Pacific tomorrow, July 12, 2018, that you will honor this request. To the extent you do not, we will request an Order from the Arbitrator during our call on Friday the 13th.

Thank you.

Brian

---

**From:** Rebecca Spivak <rebeccaspivak@outlook.com>
**Date:** Wednesday, July 11, 2018 at 11:00 AM
**To:** Brian Johnsrud <BJohnsrud@chjllp.com>
**Subject:** Re: Spivak v. Google - Your Contact With Google Employees

Hi Brian,

For the sake of all of us being on the same page, can you me a list of the individuals that I should refrain from contacting?

I do not have a problem honoring this request, moving forward - with the following exceptions:

- I would not agree to refrain from contacting former Google employees who are potential plaintiff-side witnesses
- If I bump into anyone in a park or playground, I would consider generic pleasantries ("Hi. Wow your kid got so big!") acceptable.

I also want to let you know that I plan to create an audio recording of our conference on Friday, per JAMS arbitration rule 22-k.

Rebecca

---

**From:** Brian Johnsrud <BJohnsrud@chjllp.com>
**Date:** Wednesday, July 11, 2018 at 11:11 AM
**To:** 'Rebecca Spivak' <rebeccaspivak@outlook.com>
**Subject:** RE: Spivak v. Google - Your Contact With Google Employees

Thank you, Rebecca. I will get you that list and address your proposed exceptions when I send it to you.

In the meantime, we do not consent to an audio recording of Friday's conference. A stenographic recording (i.e., court reporter) is standard, and you will need an Order from the Arbitrator/JAMS permitting audio recording.

Best regards,

Brian

---

**From:** Brian Johnsrud <BJohnsrud@chjllp.com>
**Date:** Friday, July 13, 2018 at 9:38 AM
**To:** 'Rebecca Spivak' <rebeccaspivak@outlook.com>
**Subject:** RE: Spivak v. Google - Your Contact With Google Employees

Rebecca,

Below please find a list of current and former employees whom you should refrain from contacting regarding this case (nearly all of whom are identified in the parties' initial disclosures):

1. Jen Fitzpatrick
2. Barbara Stanley
3. Judy Hsu
4. Scott Spencer
5. Jens Skakkebaek
6. Doug Bengtson
7. Aaron Rothman
8. Scott Silver
9. Dustin Jackson
10. Emily Rapp
11. Vince Lacey
12. Michael English
13. Cindy Treloar
14. Lauren Thomas Ewing
15. Nina Sakellariou
16. Ariana Tortorici
17. Paul Higson
18. Caroline Bremner
19. Carlos Fecanha
20. William Kunz
21. Bill Reardon
22. Thomas Williams
23. Paul McClinton
24. Nicholas Weng Kan
25. Peter Wilson
26. Neal Mohan

27. Noam Wolf
28. Nir Margalit
29. Jacob Baskin
30. Drew Bradstock

As to your questions below, we did not include Matt Jones on this list as we understand that you plan to call him as a cooperating witness. Other than Mr. Jones, please do not assume that any current or former employee of Google is cooperating with you, and please check with us before attempting to contact any other current or former Google employees.

If you bump into someone socially, we have no objection to you exchanging pleasantries so long as you do not discuss this case.

Best regards,

Brian

---

**From:** Rebecca Spivak <rebeccaspivak@outlook.com>
**Date:** Monday, July 16, 2018 at 12:22 AM
**To:** Brian Johnsrud <BJohnsrud@chjllp.com>
**Subject:** Re: Spivak v. Google - Your Contact With Google Employees

Hi Brian,

Thank you for this list. It helps with clarity.

To make sure that we are on the same page:

My understanding is that you actively represent the individuals listed below.Please rest assured that I agree to not discuss my claims or my case with these individuals, as long as you continue to assert that you represent them.
If at any point you find that you do not (or no longer) actively represent these named individuals, please do let me know.

I do acknowledge that you have requested that I also check with you before contacting other individuals beyond this set of individuals that you represent. I acknowledge that you would prefer that I contact you before discussing my case with any past or current Google employees, and I will thoughtfully consider this request along with any other requests that you make.

Best Regards,
Rebecca

---

**From:** Rebecca Spivak <rebeccaspivak@outlook.com>
**Date:** Thursday, July 19, 2018 at 9:59 PM

**To:** "Brian Johnsrud (BJohnsrud@chjllp.com)" <BJohnsrud@chjllp.com>
**Subject:** Rescheduling

Hi Brian,

I haven't forgotten about this. Apologies for the delay. It's been a busy week. My car was broken into and my daughter suffered a concussion when she ran into a metal pole at camp. These both threw things off quite a bit. Can you tell me some times late next week or early the next week that might work for you for a rescheduled call?

Best Regards,
Rebecca

---

**From:** Brian Johnsrud <BJohnsrud@chjllp.com>
**Date:** Monday, July 23, 2018 at 1:07 PM
**To:** 'Rebecca Spivak' <rebeccaspivak@outlook.com>
**Subject:** RE: Rescheduling

Hi Rebecca,

I'm sorry to hear about the below.

I can do a call this Thursday or Friday at 10 am, or Monday the 30th or Tuesday the 31st at 10 am.

I will say that I don't see us being able to conclude the e-discovery, take depositions, and still proceed with December 3 hearing date.

Best regards,

Brian

---

**From:** Rebecca Spivak <rebeccaspivak@outlook.com>
**Date:** Wednesday, July 25, 2018 at 10:59 PM
**To:** Brian Johnsrud <BJohnsrud@chjllp.com>
**Subject:** Re: Rescheduling

Thank you, Brian.

Either Monday or Tuesday work for me. Would you like to pick which date works best for you and propose it to see if it works for Judge Baines?

I agree that Dec 3 no longer seems feasible. 2019 or bust?

Let's raise that on the call so we're all on the same page.

Best Regards,
Rebecca

---

**From:** Rebecca Spivak <rebeccaspivak@outlook.com>
**Date:** Saturday, August 11, 2018 at 12:14 AM
**To:** "Brian Johnsrud (BJohnsrud@chjllp.com)" <BJohnsrud@chjllp.com>
**Subject:** Neal Mohan and timeline

Guy behind Neal kind of looks like you. That's not you ... is it?
Neal ... what a misogynist .... Man, look at this picture. Of all the pictures, this is what he choose for his cover on twitter. Bunch of attractive girls gleefully reaching towards him while he smirks at the camera. Makes you kind of want to scrub yourself all over with steel wool, doesn't it?

How's it going on the timeline? You owe me a couple of things. Please let me know.

Best Regards,
Rebecca

---

**From:** Patrick Sherman <PSherman@chjllp.com>
**Date:** Friday, August 17, 2018 at 12:56 PM
**To:** "Rebecca Spivak (rebeccaspivak@outlook.com)" <rebeccaspivak@outlook.com>
**Cc:** Brian Johnsrud <BJohnsrud@chjllp.com>
**Subject:** Declaration and Stipulation

Dear Ms. Spivak,

Pursuant to the Arbitrator's order, attached please find a declaration regarding chats and hangouts, along with a proposed stipulation regarding your Facebook trading activity. Please return a signed copy of the stipulation by Thursday, August 23.

Best regards,

Patrick

---

**From:** Rebecca Spivak <rebeccaspivak@outlook.com>
**Date:** Saturday, August 18, 2018 at 11:14 PM
**To:** Patrick Sherman <PSherman@chjllp.com>
**Cc:** Brian Johnsrud <BJohnsrud@chjllp.com>
**Subject:** Re: Declaration and Stipulation

You guys think I'm an authority on who was a competitor of Google? I'm flattered, I guess ... ?

Stipulation #2 ... you need me to declare who Google's competitors are? You think you're going to get that from my financial record? If you somehow otherwise get access to my financial record, it will establish who Google's competitors are? This has nothing to do with my financial record.

Sloppy work, boys. Very sloppy. Embarrassingly so. It's not that I have any real objections to content of the stipulation -- but it's just full of stupid. If you're trying to propose an alternative to getting my financial record, the stipulation should be limited to that which my financial record might otherwise uncover. I have no problem agreeing that Facebook and Google were competitors ... but it offends me from a perspective of basic competence. Like, whoever drafted this stipulation is just not smart and competent enough to understand how a stipulation works. Was it you, Patrick? Or Brian? This is a big fail ... and mock-worthy.

---

**From:** Rebecca Spivak <rebeccaspivak@outlook.com>
**Date:** Sunday, August 19, 2018 at 8:31 PM
**To:** Patrick Sherman <PSherman@chjllp.com>
**Cc:** Brian Johnsrud <BJohnsrud@chjllp.com>
**Subject:** Re: Declaration and Stipulation

You are going to lose Google. Even though you're just a front for Google.
And it's going to be because of this case.

---

**From:** Rebecca Spivak <rebeccaspivak@outlook.com>
**Date:** Sunday, August 19, 2018 at 8:34 PM
**To:** Patrick Sherman <PSherman@chjllp.com>
**Cc:** Brian Johnsrud <BJohnsrud@chjllp.com>
**Subject:** Re: Declaration and Stipulation

But that may be irrelevant given the ethical and legal violations. I don't know how that works. But in a fair world, you'd be blocked from continuing to practice law, given the gross misconduct.

---

**From:** Brian Johnsrud <BJohnsrud@chjllp.com>
**Date:** Monday, August 20, 2018 at 5:30 PM
**To:** 'Rebecca Spivak' <rebeccaspivak@outlook.com>
**Cc:** Patrick Sherman <PSherman@chjllp.com>
**Subject:** RE: Declaration and Stipulation

Rebecca,

The contents of the declaration are directly relevant to Google's affirmative defense regarding after-acquired evidence. If you don't have any real objection to the content of the declaration, as you state below, we would expect you to sign it.

If you have any proposed revisions to the stipulation, let us know, and we will consider them in good faith and respond. Please let us know by 5 pm Pacific on Tuesday, August 22, 2018.

If we cannot reach a stipulation on these basic points, then we will need to take the discovery on them, and get to the bottom of your actual Facebook equity gains while employed at Google.

Regarding the insulting nature of your email below, we kindly refer you to point 2 on page 3 of the Arbitrator's Order today.

Best regards,

Brian

---

**From:** Rebecca Spivak <rebeccaspivak@outlook.com>
**Date:** Monday, August 20, 2018 at 8:15 PM
**To:** Brian Johnsrud <BJohnsrud@chjllp.com>
**Cc:** Patrick Sherman <PSherman@chjllp.com>
**Subject:** Re: Declaration and Stipulation

Dear Brian and Patrick,

I will sign the stipulation as proposed.
Would you like a hard copy, or will a digital version suffice?

Best Regards,
Rebecca

---

**From:** Brian Johnsrud <BJohnsrud@chjllp.com>
**Date:** Tuesday, August 21, 2018 at 10:25 AM
**To:** 'Rebecca Spivak' <rebeccaspivak@outlook.com>
**Cc:** Patrick Sherman <PSherman@chjllp.com>
**Subject:** RE: Declaration and Stipulation

Thank you, Rebecca.

Please send a scanned copy of the signed version by email and drop the hard copy in the mail to the address below.

Best regards,

Brian

---

**From:** Rebecca Spivak <rebeccaspivak@outlook.com>
**Date:** Friday, August 24, 2018 at 12:07 AM
**To:** "Brian Johnsrud (BJohnsrud@chjllp.com)" <BJohnsrud@chjllp.com>
**Subject:** Further Contact With Paul Higson

Hi Brian -
Sharing.

Best Regards,
Rebecca

- 
  View Rebecca's profile
  Rebecca Spivak

  Rebecca Spivak 10:02 PM
  Hey Paul - if you would prefer that I not contact you again, please let me know, and I won't.
- View Rebecca's profile
  Rebecca Spivak

  Rebecca Spivak 10:08 PM
  I mean, it didn't seem like I was harassing you in our last conversation. You seemed receptive and engaged. But google's lawyers filed a motion for a restraining order based on it.
- View Rebecca's profile
  Rebecca Spivak

  Rebecca Spivak 10:10 PM
  Quite the mess. They submitted a 5-page brief -- urgent. I submitted a 4-page reply. Google then submitted a 2-page-reply. So much process. I'm representing myself these days, by the way. No lawyers. Just me. Google has the best lawyers that money can buy, of course.
- Anyway, so it was a lot of process. Just me against Google's lawyers. And the arbitrator ruled in my favor. No restraining order. Actually helped to clarify things in many ways.
- View Rebecca's profile
  Rebecca Spivak

  Rebecca Spivak 10:16 PM
  But what confused me is that Google argued that I was harassing you and they you needed to be protected from me. So weird all things considered and the historical power imbalance. And you seemed to welcome my contact. I only responded because you seemed to invite it. If you think this is harassment ... and if you feel threatened by this ... please just say so. I will note that you consider my contact harassment. And I will certainly not contact you anymore given that you feel harassed and/or vulnerable. I

mean, I'd be happy to share the legal ruling with you if you'd like to see it. And I'd also make sure to not contact you again outside of a deposition - if that's your request. Just let me know if you prefer to receive no further contact from me on the grounds that you consider it harassment. I certainly do not intend that. Thanks.

- View Rebecca's profile
  Rebecca Spivak

  Rebecca Spivak 10:21 PM
  Download Spivak (2).pdf
  **Spivak (2).pdf**
  225 KB
  Download
- View Rebecca's profile
  Rebecca Spivak

  Rebecca Spivak 10:24 PM
  This was google's original motion, based on my contact with you!
  Download Spivak - Brief re Order Ex Parte Contact (1).pdf
  **Spivak - Brief re Order Ex Parte Contact (1).pdf**
  372 KB
  Download
- View Rebecca's profile
  Rebecca Spivak

  Rebecca Spivak 10:29 PM
  But here's the basic point. The more that Google thinks they can rest their case on the fact that I called you out for your bad acts, the more I am going to prove that you engaged in bad acts. Because you did. If Google thinks that this is their smoking gun - that I called you out on this - then this will be the key issue in the case. I'm ok with that.
- But again - if you feel harassed and vulnerable - please let me know.
- Paul Higson sent the following message at 10:44 PM
  View Paul's profile
  Paul Higson

  Paul Higson 10:44 PM
  Hi Rebecca. As I said last time, I have high integrity and do what I believe is right. I'm intrigued on what bad acts you thought I did. I think you and I only ever spoke 2-3 times.
- Rebecca Spivak sent the following messages at 10:58 PM
  View Rebecca's profile
  Rebecca Spivak

  Rebecca Spivak 10:58 PM
  I'm glad to discuss this with you, but I don't want to harass you.

- View Rebecca's profile
  Rebecca Spivak

  Rebecca Spivak 10:59 PM

  So if you say that you're intrigued and want to hear from me- I will share. But I ask that you agree that sharing is not against your request.
- Honestly, I want closure and fairness on this more than anything else. I want to discuss it. I want to be able to have an open exchange with you and anyone else involved.
- But you can't say you welcome the conversation and intrigued by it, and then have Google file a motion that I'm harassing you
- View Rebecca's profile
  Rebecca Spivak

  Rebecca Spivak 11:02 PM

  So please tell me whether you want me to stop contacting you because you feel harassed by me.
- I do feel you engaged in bad acts - absolutely I do feel that way.
- View Rebecca's profile
  Rebecca Spivak

  Rebecca Spivak 11:05 PM

  Google named 30 people that they requested I not contact (and again, the arbitrator ruled against them). Of the 30 named individuals, I do consider you in the top 10% / top 3 individuals.
- View Rebecca's profile
  Rebecca Spivak

  Rebecca Spivak 11:06 PM

  Caroline is probably the single most culpable individual
- Simply because she started the ball rolling on retaliation rather than looking into the legitimacy of my concerns
- But then you acted on that -- you called me into a 1:1 where you kept trying to egg me on to say something to support the pip that wasn't yet written
- do you remember that meeting in April 2014? I have nightmares about it.
- View Rebecca's profile
  Rebecca Spivak

  Rebecca Spivak 11:09 PM

  You asked me questions like "So, you think we should fire all the engineers?"
- which is not remotely what I said.
- View Rebecca's profile
  Rebecca Spivak

  Rebecca Spivak 11:11 PM

you also described what would happen if I got fired. "We will walk you into a room. You will hand over your laptop. You will be escorted to the door." I told you "I have pictures and videos of breastfeeding my daughter on that laptop. You won't give me the chance to remove them?" You shrugged your shoulders. You probably have no idea how much that haunted me.

- Do you remember that conversation?
- View Rebecca's profile
  Rebecca Spivak

**Rebecca Spivak** 11:13 PM

I have spent $300,000 out of pocket on this lawsuit. There is a very good chance I will lose my house. I have a harvard MBA and 2 Yale degrees, and I can't cover my basic living expenses because of what Google did to my career and my life.

- I am a single mother to two kids, [redacted] I am spending down my savings. And the industry looks to my career at Google and dismisses me because of it.
- View Rebecca's profile
  Rebecca Spivak

**Rebecca Spivak** 11:17 PM

Drew Bradstock got all the credit for my work in NYC when I worked on AdX. I stopped him from doing a TON of unethical crap on AdX. And I proposed a bunch of Ethical and awesome stuff. He got all the credit for the good stuff I did, and wasn't held liable for all the bad stuff he wanted to do - because I stopped him from doing it. He got all my stock grants. HE was recruited to be SVP for Index Echange. Google has argued that Drew isn't a comparator because he was a superstar and I wasn't. He just destroyed that company. He destroyed Index Exchange and he would have done major damage to AdX if I hadn't stopped him.

- View Rebecca's profile
  Rebecca Spivak

**Rebecca Spivak** 11:18 PM

Look him up. He's hot news this week. He's currently the biggest scandal in advertising. And he's the superstar that Google argued was so much better than I was - and that's why he got my stock grants. Just read up on him. He didn't just destroy his company - he shocked the entire ad industry. I stopped him from doing this TWICE at Google.

- View Rebecca's profile
  Rebecca Spivak

**Rebecca Spivak** 11:23 PM

The work I did in Seattle made Google Billions of dollars. Aaron Rothman and Jens were programmed to find dirt on me rather than consider the value of my work.

- View Rebecca's profile
  Rebecca Spivak

**Rebecca Spivak** 11:24 PM

I lived for the work I did. I loved what I did. I wanted Google to win so much. I can't stress how much this was true. If Google just gave me half as much credit as I deserved ... I would have been grateful and continued to make Google tons of money.

- It was like my management chain was so programmed to find dirt on me, that the more I added value, the more they penalized me for it. Even as the people I worked directly with recognized the value I added.
- View Rebecca's profile
  Rebecca Spivak

  **Rebecca Spivak** 11:26 PM
  I'm not playing a game, Paul. If you really value integrity - then step back and think about the possibility that everything I'm saying is true. Because it is. And if you can't even imagine that it is - then something is wrong with you.
- View Rebecca's profile
  Rebecca Spivak

  **Rebecca Spivak** 11:27 PM
  Paul, you're not the only person I contacted - but you're the one who handed everything over to the lawyers. I'm not stupid. I know that.
- You don't have some secrete trap where you're earning my trust and getting me to keep talking. When you want me to stop talk to you, tell me so.
- View Rebecca's profile
  Rebecca Spivak

  **Rebecca Spivak** 11:31 PM
  I absolutely think you sold out. That you decided to play this game. I don't retract anything I've said to you in the past. I just want to convince you that you were wrong. To consider a different approach and path forward. Don't do this to people. I don't retract anything I've said to you in the past. If you want to discuss it and understand why I feel this way - I will talk about it. When you think it's harassment, tell me.
- View Rebecca's profile
  Rebecca Spivak

  **Rebecca Spivak** 11:32 PM
  Or if you think this communication isn't sufficiently professional, then tell me that too.
- TODAY
  View Rebecca's profile
  Rebecca Spivak

  **Rebecca Spivak** 12:03 AM
  I am a 42 year old woman with a Harvard MBA, having graduated first in the computer science department at Yale, with a Bachelors and Master's degree - only the 3rd person to ever earn both degrees in 4 years. Google Pipped me and fired me - even though they claim they didn't really fire me. And I ... really, really, really ... can prove ... really ... that I made google BBBBillions during this time period.
- View Rebecca's profile

Rebecca Spivak

**Rebecca Spivak** 12:04 AM

Google can argue that this wasn't gender based. And they will lose. I have no reason to think you are gender biased. You fall into the retaliation part.

---

**From:** Brian Johnsrud <BJohnsrud@chjllp.com>
**Date:** Friday, August 24, 2018 at 1:45 PM
**To:** 'Rebecca Spivak' <rebeccaspivak@outlook.com>
**Cc:** Patrick Sherman <PSherman@chjllp.com>
**Subject:** RE: Declaration and Stipulation

Rebecca,

If you have some downtime this weekend to send back the signed declaration, that would be great.

Best regards,

---

**From:** Rebecca Spivak <rebeccaspivak@outlook.com>
**Date:** Friday, August 24, 2018 at 10:19 PM
**To:** Brian Johnsrud <BJohnsrud@chjllp.com>
**Cc:** Patrick Sherman <PSherman@chjllp.com>
**Subject:** Re: Declaration and Stipulation

I will try to find time for this.

Meanwhile,

https://www.google.com/search?q=that+would+be+great&tbm=isch&tbo=u&source=univ&sa=X&ved=2ahUKEwiJu8OouYfdAhXog1QKHbD9DsMQsAR6BAgFEAE&biw=2593&bih=1273

---

**From:** Brian Johnsrud <BJohnsrud@chjllp.com>
**Date:** Friday, September 7, 2018 at 9:31 AM
**To:** 'Rebecca Spivak' <rebeccaspivak@outlook.com>
**Cc:** Patrick Sherman <PSherman@chjllp.com>
**Subject:** RE: Declaration and Stipulation

Hi Rebecca,

Hope you've had a good week.

I wanted to follow up on the declaration as we need to resolve that one. Can you please send it on?

Thank you and best regards,

Brian

---

**From:** Brian Johnsrud <BJohnsrud@chjllp.com>
**Date:** Friday, September 7, 2018 at 10:01 AM
**To:** "Rebecca Spivak (rebeccaspivak@outlook.com)" <rebeccaspivak@outlook.com>
**Subject:** Current List of Individuals To Refrain From Contacting

Hi Rebecca,

At this time, we have confirmed with the following people that they do not want to be contacted by you:

1. Barbara Stanley
2. Scott Spencer
3. Jens Skakkebaek
4. Dustin Jackson
5. Emily Rapp
6. Lauren Thomas Ewing
7. Nina Sakellariou
8. Ariana Tortorici
9. Caroline Bremmer
10. Carlos Facanha
11. Paul McClinton
12. Nicolas Weng Kan
13. Neal Mohan
14. Brad Bender
15. Andrew Rope
16. Paul Higson

We may hear from additional individuals and will let you know if and when we do.

Best regards,

Brian

---

**From:** Rebecca Spivak <rebeccaspivak@outlook.com>
**Date:** Friday, September 7, 2018 at 11:56 PM
**To:** Brian Johnsrud <BJohnsrud@chjllp.com>
**Subject:** Re: Current List of Individuals To Refrain From Contacting

Very helpful. Thank you.

Best Regards,
Rebecca

---

**From:** Rebecca Spivak <rebeccaspivak@outlook.com>
**Date:** Sunday, September 9, 2018 at 8:57 PM
**To:** Brian Johnsrud <BJohnsrud@chjllp.com>
**Cc:** Patrick Sherman <PSherman@chjllp.com>
**Subject:** Re: Declaration and Stipulation

Hi Brian,

In an effort to mitigate my damages, I have done what I could to focus on my career and prioritize it above the case. I was recently presented with a potential opportunity to increase my responsibility and compensation by quite a bit. If it works out, it would lead to a sizable reduction in my damages - and would be best for all involved. I sincerely believe that. I would really like it to work out. The process will require 2-3 more weeks, but so far all signs are positive.

Focusing on this opportunity meant I fell behind on the case. And since it is still in process, I need to give it my full attention. I would like to postpone the September 20 call and September 13 position paper by around 4 weeks, to mid-October. Will you agree to that? I will share further details with you once the process is complete regardless of how it turns out. Delays aren't good, but this is probably the best possible reason for a delay. So I'm hoping everyone can get on board.

Upon further consideration regarding the stipulation, I'm less sure about signing it, but I will either sign it or send some other kind of response at least one week before the position papers are due (assuming everything does get pushed out ~4 weeks). I also need to send you a proposal for revised e-discovery. But right now my focus is elsewhere.

If you're ok with the postponement, would you like to send the request to JAMS? Or should I?

Best Regards,
Rebecca

---

**From:** Brian Johnsrud <BJohnsrud@chjllp.com>
**Date:** Monday, September 10, 2018 at 3:09 PM
**To:** 'Rebecca Spivak' <rebeccaspivak@outlook.com>
**Cc:** Patrick Sherman <PSherman@chjllp.com>
**Subject:** RE: Declaration and Stipulation

Hi Rebecca,

Thank you for your message.

As you know, we deny any and all alleged damages.

Regardless, we are happy to hear about your potential opportunity and hope it works out.

We agree to and will let JAMS know about the continuance and copy you on our message.

Best regards,

Brian

---

**From:** Brian Johnsrud <BJohnsrud@chjllp.com>
**Date:** Wednesday, October 3, 2018 at 12:52 PM
**To:** 'Rebecca Spivak' <rebeccaspivak@outlook.com>
**Subject:** RE: Declaration and Stipulation

Hi Rebecca,

I sincerely hope the potential work scenario you outlined below has turned out well for you.

If it has, there is no harm (from our perspective) in you dismissing your arbitration demand with prejudice and I assume that Google would waive its costs and fees (though would have to confirm that, obviously.)

To the extent we will continue with the arbitration process, we should hear your position on the open discovery matters by this Friday, if possible.

Thank you and best regards,

Brian

---

**From:** Rebecca Spivak <rebeccaspivak@outlook.com>
**Date:** Friday, October 5, 2018 at 7:46 PM
**To:** Brian Johnsrud <BJohnsrud@chjllp.com>
**Subject:** Re: Declaration and Stipulation

Hi Brian -

Thank you for the note.

I want to send you a response today, but need to be informal at the moment. I have been to the ER and multiple specialist/doctor appointments with my 2-year old daughter in the past 2 weeks . She gets very sick every time we take her off steroids, and she is having trouble breathing and sleeping, amongst other things. She is now scheduled for an endoscopy/tonsillectomy on November 5 and spends most nights alternating between gasping and crying. No one in my house is getting any sleep.

As to open issues

1. FB options: I have decided to more formally raise the objection to the discovery order, which was based on misleading and altered evidence regarding the Google's actual code of conduct.
2. For Comparators, I believe that Payam Shodjai and Drew Bradstock were less qualified that I was, and had far less impact than I did. Still, their compensation would be telling. Aaron Rothman and Jens Skakkebaek were also less qualified and less accomplished - but better rewarded. I would also like to use as comparators individuals in product management who match the following criteria: Computer Science degree from (Ivy League + Stanford + MIT +Carnegie Mellon + Berkeley) + MBA from (Harvard, Stanford, Booth, Wharton, Kellog, MIT/Sloan, Haas, Columbia, NYU-Stern) and who started at Google between 2007 and 2013 and who graduated from business school between 2002 and 2008
3. As to the potential scenario - it has not worked out as I had hoped, although I would not have dismissed this case regardless of how that would have turned out. I would have adjusted my damages or considered settling, but would not have dismissed. This is what happened: A former manager of mine who knows my work very well is now a director at a large familiar tech company. He wanted to hire me for an open ads-integrity PM role he had that would pay in the $750k - $800k range. He had seen my work firsthand in this space. Since this is substantially more than the ~$220k I currently make at Amazon, it would significantly reduce my frontpay damages. It would still be less than I would have been earning if I had been fairly compensated/recognized/promoted at Google - but it would go a long way towards reducing the gap. It seemed to be a no-brainer, since he was the hiring manager and he knew my work and wanted to hire me at this pay. For technical non-solicit reasons, he had to step back from the interview process. I interviewed and did really well, and the team was very enthusiastic about making me an offer. However, based on what they knew of my Amazon level and pay, they came back with an offer that was far lower than what the role would otherwise have paid. At $360k, It was even lower than what I earned at Google, though they said there was room to negotiate it up to the low $500's if I could provide some justification to support that. Their argument is that given that this is a 60% bump in pay from my Amazon pay, there's no support for them to offer more. This is a common approach to corporate recruiting, but I think companies need to do better to not reap the benefits of another company's bias. You know how much I care about fairness. I believe more women need to turn down unfair offers. So I turned down the $360k offer and have chosen to stay at Amazon for now. It's not clear that this is over, since they have been asking me to reconnect and have additional conversations. I suppose it's possible there will be a revised offer down the road. I don't know. But that is where this stands.

I believe you have some answers there. Apologies for format/structure - and please allow me to clarify anything that is otherwise ambiguous. It's been a rough couple of weeks, and I'm running on fumes right now.

Rebecca

---

**From:** Brian Johnsrud <BJohnsrud@chjllp.com>
**Date:** Tuesday, October 9, 2018 at 11:02 AM
**To:** "Rebecca Spivak (rebeccaspivak@outlook.com)" <rebeccaspivak@outlook.com>
**Subject:** FW: Declaration and Stipulation

Rebecca,

You offered to stipulate to the facts regarding your Facebook trading activity in order to avoid producing all of your Facebook trading records, and Google has provided you with a stipulation. If you have specific proposed changes to the stipulation, please let us know, but the passage of time and your disagreement with the relevance of your Facebook trading activity don't mean you get to re-argue it.

Your comparator proposal is vastly overbroad. The principal liability question in this case is whether your specific managers treated you differently because of a protected category during the time you reported to them. It is not about unrelated employees who were not supervised by your managers but instead were supervised by other managers. We will be submitting to the Arbitrator our short letter brief on this issue by this Thursday and expect you will do the same. Can you exchange briefs at 5 pm Pacific on Thursday?

Finally, please save all records and communications regarding the opportunity you appear to have turned down (which apparently could have lead to an even larger compensation package in the future) along with all other records and communications regarding your efforts to mitigate your alleged damages.

Thank you,

Brian

---

**From:** Patrick Sherman <PSherman@chjllp.com>
**Date:** Thursday, October 11, 2018 at 6:27 PM
**To:** 'Rebecca Spivak' <rebeccaspivak@outlook.com>
**Cc:** Brian Johnsrud <BJohnsrud@chjllp.com>
**Subject:** RE: Spivak, Rivka vs. Google Inc. - REF no. 1110018238

Ms. Spivak,

Attached please find a copy of Google's brief.

Best regards,

Patrick

---

**From:** Rebecca Spivak <rebeccaspivak@outlook.com>
**Date:** Wednesday, December 5, 2018 at 12:30 AM
**To:** "bjohnsrud@chjllp.com" <bjohnsrud@chjllp.com>
**Subject:** ediscovery

Hi Brian,

We had originally agreed on a call that you would provide some direction on how I could get the requested emails to you. That never happened, so I've been trying to figure it out on my own. I've bought various utilities and plug-ins. The conversion of gmail to PDF is going very slowly. There are over 70,000 emails, and the utilities I thought I could use to get it all into a pdf file are limited. I'm using CloudHQ now … and it seems like it can do it … but again, very very slowly. In the last hour it seems to have only processed 173 of the emails.

Another option is that I can try to create a new gmail account and find a way to bulk-forward all the emails to that account, and then hand that account over to you. But you asked for PDF, so that's what I'm trying to get done at the moment. There's nothing more I'd rather do right now than get these 70,000+ emails to you so I don't have to spend more time on it. If you know of any reasonable way for me to get 70,000 emails out of gmail and into a searchable PDF for you, I would be glad to follow your preferred approach.

I can also, in the meantime, grab the specific emails that we both know that you already have (because you've shared them), and which your terms are clearly designed to catch, and send you those immediately while I wrap up figuring out how to get you the rest of the 70,000.

These are the options, as I see it:

1) I can send you PDF files with 100-emails in them. This would basically be 700 files. So far it seems that things start to break when I want to get more than 100 emails into a single PDF
2) I can send you the high-value emails immediately, and work on the remaining emails – which could take a few more days of processing through cloud HQ (it least appears that way)
3) I can explore creating a dedicated gmail account and attempt to bulk forward the emails to that account – and then hand you control.

I'm doing what I can. Please let me know if you have a preference among these 3 options, or if you have another suggestion,.
Rebecca

---

**From:** Rebecca Spivak <rebeccaspivak@outlook.com>
**Date:** Wednesday, December 5, 2018 at 2:19 PM
**To:** "bjohnsrud@chjllp.com" <bjohnsrud@chjllp.com>
**Subject:** Re: ediscovery

Hi Brian,

Update: After repeated failed attempts to generate a searchable pdf, I'm using gmail now to create a mail archive on the matching emails, and my plan is to send you the archive once it's complete (it's been running for a few hours and it said it could take hours or days). I think I can just send you a link to the download when it's done. I can also send you a physical drive. Please let me know how you'd like to receive it once it's done.

I know a mail archive is not a searchable pdf, but I imagine you have the tools to do that conversion. Or perhaps having it as a mail archive is more powerful anyway? Lastly, I could also just send you 70,000+ individual PDFs, but my working assumption has been that that wouldn't be useful to you.

I had not anticipated that a process that has worked in the past would not work when dealing with very high volumes of email. This has been the cause of this delay. But maybe you weren't expecting a single PDF anyway? I honestly don't know what format /structure you find acceptable. My goal is to get these emails to you in a way that works for you. I can't get everything into a single PDF and so any guidance as to what alternatives you will accept would be very helpful. If I don't hear back from you, I will also attempt to send you whatever I can when the various archive/conversion jobs complete (and I will also continue to wait for guidance regarding your preferred format, if the formats I send you are not acceptable).

Rebecca

---

**From:** Brian Johnsrud <BJohnsrud@chjllp.com>
**Date:** Wednesday, December 5, 2018 at 2:27 PM
**To:** 'Rebecca Spivak' <rebeccaspivak@outlook.com>
**Subject:** RE: ediscovery

Hi Rebecca,

I will review your email with Google and get back to you, likely tomorrow.

In the meantime, I will note that the Arbitrator previously ordered that the documents be produced in searchable PDF format.

Best regards,

Brian

---

**From:** Rebecca Spivak <rebeccaspivak@outlook.com>
**Date:** Wednesday, December 5, 2018 at 3:41 PM
**To:** Brian Johnsrud <BJohnsrud@chjllp.com>
**Subject:** Re: ediscovery

Ok, thank you.

That's actually helpful, I think.

My interpretation of this is that I should just make sure to convert the emails to searchable PDF format, and that I shouldn't assume any other requirements.

---

From: **Brian Johnsrud** <BJohnsrud@chjllp.com>
Date: Fri, Dec 7, 2018 at 12:48 PM
Subject: RE: takeout-20181206T234528Z-001.zip
To: Rebecca Spivak <rspivak@gmail.com>

Hi Rebecca,

I have not opened the link to the .mbox folder. Before I possibly do so, can you please explain in detail (by the end of today) the process by which you created this .mbox folder? That is, what did you do to comply with the Arbitrator's Order regarding the specific data you are to produce and how did you do it?

As I understand it, there is nothing easy or quick about converting a production of this magnitude into searchable PDFs.

Best regards,

---

**From:** Rebecca Spivak <rebeccaspivak@outlook.com>
**Date:** Friday, December 7, 2018 at 6:30 PM
**To:** Brian Johnsrud <BJohnsrud@chjllp.com>
**Subject:** Re: takeout-20181206T234528Z-001.zip

Hi Brian,

It seems unreasonable of you to first ask for this detailed explanation now, and expect it by the end of the day. You are certainly aware that I have a day job. This requirement wasn't in the order, and to my recollection, it's not something you requested previously – even though I asked you on a prior call for guidance on your expectations regarding what would be delivered with eDiscovery and how. (You promised to provide this guidance but never did). Still, I have produced this file in good faith and with integrity, and will do my best given the time pressure to provide you the explanation you are asking for.

Here it goes:

1. I created a tag called "___Discovery" in my gmail account.

2. Then, I ran the search below in my gmail account, and tagged the results with the ____Discovery label. I created this search using the terms in Google's eDiscovery brief, as adjusted through the arbitrator's orders.

{doug bengtson michael English Judy Hsu Dustin Jackson Vince Lacey aaron Rothman baron Roth Scott Silver Barbara Stanley Scott Spencer Jens Skakkebaek neal Mohan Drew Bradstock Emily Rapp Nick Nicholas weng Kan Caroline Bremner Cindy Treloar Paul Higson Lauren Thomas Ewing Ariana Tortorici Lainey Dalio Google Extort Extortion Blackmail gamble gambler desperate problematic dirt freedom yell scream pressure emotion emotional codename saga EEOC toni haley fire fired unfireable terminate discriminate retaliate skewer insubordinate insubordination Re-org reorg reorganization re-organization relocate transfer Fucktard retard dumb stupid clueless idiot incompetent hate boss manager Diary Journal application network linkedin "own company" "job search" "code name"} after:2010/04/10

3. I added the term "linkedin" even though it was not one of the terms, but I added it in as a backup means of capturing linkedin chats, which is part of the ediscovery request.

<u>This overly broad search resulted in over 160,000 emails for me to review</u>

4. I then filtered unrelated and privileged emails from the result set, including:
    a. Emails sent to or from my lawyer
    b. Statements/transactions/confirmations from Ameritrade, Vanguard, Wells Fargo, Chase, American Express, turbotax, Mint, paypal, ebates, and various bills and utilities. (The only employment income I have received since April 2010 has come from Google and Amazon. You have my Google pay history, and I have already provided you with my Amazon employment offer)
    c. Many mass-marketing/retail emails/spam, as I did not want to be accused of dumping a bunch of irrelevant mail on you. I removed things from homedepot.com, zulily, gilt, various restaurants, online toy stores, AmazonMom, groupon, carters, etc. There were many, many of these. Probably 200+ different retail senders. I don't remember everything I removed in this category, but they were all commercial mass-marketing or order/shipping confirmations. I double-checked to make sure that I was not removing any emails from recruiters from these companies. I did not remove all the retail stuff, but I tried to remove most of it.
    d. Messages to the group "GreenlakeMoms" which is a local high-volume for-sale list. I have over 100,000 messages under that label alone, and many of them were caught by the query. I also excluded emails from other mom/for sale/meetup like groups groups as I encountered them in my review of 8+ years of received-email that happened to match terms as generic as "problematic" or "dirt" or "fire" or "hate" or "desperate". I never

discussed my case or claims in these groups, and posted rarely, if ever, to most of them (and when I did, it was to sell kid items, etc)

e. Messages from [redacted] and [redacted] teachers /school/daycare
f. Personal messages sent to family members that were unrelated to my case/claims
g. my own medical records
h. diary entries that were not related to my employment, case, or claims.
i. I also spot-removed other emails that were not relevant, such as emails related to a November 2016 car accident or social playdates, etc. In going through 160,000 emails caught by this set of shockingly generic keywords, I did not record every obviously irrelevant email that I removed or the ad-hoc searches I put together to try identify them (such as subject:"Black Friday Sale"). Still, despite removing around 90,000 matching emails, I erred on the side of retaining emails rather than removing them from the set, as I was more worried about being accused of under-disclosing than I was about any of the emails (which I believe you already have anyway).

5. I retained some mass emails to comply with the order
   a. I left in emails from Industry journals, like the subscription publication theInformation.com, as they almost certainly related to my job or prospective employment in some way. I was worried about removing emails that talk about tech or advertising or discrimination/bias. Many also discussed job opportunities and trends, and I did not want to be accused of trying to under-disclose prospective employment, since Google has pointed to mass generic job listings as evidence that I allegedly had no damages.
   b. I tried to remove News articles and daily alerts from the Washingtonpost and other news sources like CNN unless they specifically mentioned Google
   c. I left in all emails from employment-related companies like GlassDoor
6. <u>I **added** some "high-value" emails that didn't strictly match:</u>
   - All my messages to plusmail from May 2014 to May 2015 even if they didn't match on the terms: I wanted to be sure that I didn't inadvertently remove something or miss something that gmail didn't quite match on. I did this in good faith. In reviewing the messages that gmail matched to the query, I found that it seemed to miss some messages that it should have matched. I don't know whether this had to do with character encoding or some imperfection in gmail's search algorithm. So I added everything I sent to <u>plusmail</u> for the time period between May 2014 and May 2015, regardless of whether it matched the terms, since I know you are especially interested in what I said on plusmail during this time period. I definitely didn't want to risk being accused of purposely leaving out any message. After I added all my plusmail emails from this time period, I removed 13 individual messages discussing [redacted] This addition added less then ½ % to the total volume of emails, and was done in proactive good faith, believing that this provided information that Google wanted, without any meaningful increase to the volume email. See numbers below:
     - Emails I sent to plusmail during this time that matched the terms= 554
     - Total Emails I sent to plusmail during this time period = 828
     - Net addition = 274 emails = less than ~ 0.4% of total 70,000+ emails produced
   a. Emails related to Facebook Interviews: Paragraph 32 on Google's discovery request was stricken pending resolution of the issue of my facebook trading activity. When I was reviewing emails that weren't tagged with my discovery label to make sure I hadn't missed anything, I was surprised to see some email exchanges with facebook recruiters –

including the ones related to my September 2018 facebook job offer. These would have matched if paragraph 32 had not been stricken. Since you have separately told me to preserve these communications with Facebook, and since they otherwise would have matched paragraph 32, and since you'd be entitled to discover this information anyway, I proactively included them when I saw that they weren't caught by the query.

7. After this, I used Gmail's takeout tool to build an archive of my discovery label.
8. Then I sent you the link

I did my best to comply with the order in good faith given that you did not provide me with guidance despite promising to do so. As I said above, I approached this with Google faith and with high integrity. I don't play games, and have nothing to hide.

Furthemore, as you know, I am confident that Google already has a cache of these emails. Given the history of bad faith, it has been my expectation that Google would be cross-checking my discovery against its own version of the same. So I also approached this defensively, erring on the side of inclusion, especially given the lack of guidance.

I had to deal with competing concerns. First, I was worried that I'd be accused of providing bloated results if I included all 160,000+ emails that matched the generic terms. The competing concern was that in trying to remove the irrelevant results at any kind of scale, I'd inadvertently remove something that would then be caught on the cross-check with Google's cache. And I certainly wanted to make absolutely sure that that didn't happen.

If you object to my approach, process, or any assumptions I made about what to include/exclude, then please let me know and I'll rerun the process using whatever guidance you provide. I'll add the homedepot.com emails back in. I'll take the exchange with the facebook recruiter or the extra 274 plusmails out. Tell me what works or doesn't work for you in the process I used, and I'll change it. The last thing you will find me doing is purposely excluding anything. Because it's not the sort of thing I would do, even if I wasn't confident (as I am) that it would immediately be caught on the cross-check anyway.

Sorry for the long email. The short notice gives me no time to edit this down. My kids are eating dinner, and I need to get back to them so I can spend some time with them before getting back to work to catch up on my day job. I also still owe you the non-gmail portions of ediscovery, though that will be, relatively, a drop in the bucket. Again, please let me know if you have any concerns or questions or would like me to use a different approach here. All I want is guidance so I can follow it.

Best regards,
Rebecca

P.S. A lawyer friend of mine told me that there are countless commercial tools available that can convert a .Mbox to searchable PDFs in a matter of minutes. He cites using a product called Logikcull, and claims that any reputable law firm would have access to several such products. I know CHJLLP is a relatively small firm, but it might be worth looking into getting software that can efficiently convert a mail archive into searchable pdf. I might look into this myself, despite not being a partner in a modern tech-focused law firm …

**From:** Rebecca Spivak <rebeccaspivak@outlook.com>
**Date:** Thursday, December 27, 2018 at 12:48 PM
**To:** Brian Johnsrud <BJohnsrud@chjllp.com>, Patrick Sherman <PSherman@chjllp.com>
**Subject:** eDiscovery Files

Hi Brian and Patrick,

I have not been able to access the files on the drive that Google sent me as part of eDiscovery. They appear to be encrypted. Can you let me know if this is correct – that they are encrypted, compressed or locked, and if so, what I need to do to unlock and read these files?

Additionally, can you please explain in detail (by the end of today) the process by which these files were created? That is, what did Google do to comply with the Arbitrator's Order regarding the specific data Google was to produce, and how did Google do it?

Best Regards,
Rebecca

---

**From:** Brian Johnsrud <BJohnsrud@chjllp.com>
**Date:** Thursday, December 27, 2018 at 12:56 PM
**To:** Rebecca Spivak <rebeccaspivak@outlook.com>
**Cc:** Patrick Sherman <PSherman@chjllp.com>
**Subject:** Re: eDiscovery Files

Rebecca:

We produced those files some time ago and you are just now asking for further guidance, during a time when many people are out of the office, including Patrick and myself. We will respond to your email after January 1.

Very truly yours,

Brian Johnsrud
Curley, Hurtgen & Johnsrud LLP

---

**From:** Rebecca Spivak <rebeccaspivak@outlook.com>
**Date:** Thursday, December 27, 2018 at 1:01 PM
**To:** Brian Johnsrud <BJohnsrud@chjllp.com>
**Cc:** Patrick Sherman <PSherman@chjllp.com>
**Subject:** Re: eDiscovery Files

Hi Brian,

I would have expected that you might have already prepared this, since you asked the same of me. Certainly you should be able to send me the password to the files, if nothing else? Would you please just send me the password now, and I'll wait on the explanation until after January 1? Thank you.

Best Regards,

Rebecca

---

**From:** Patrick Sherman <PSherman@chjllp.com>
**Date:** Thursday, December 27, 2018 at 7:08 PM
**To:** 'Rebecca Spivak' <rebeccaspivak@outlook.com>
**Cc:** Brian Johnsrud <BJohnsrud@chjllp.com>
**Subject:** RE: eDiscovery Files

Hi Rebecca,

The passwords for the two volumes of data produced by Google (over three weeks ago) are as follows:

PROD001.TC: [redacted]

PROD002.TC: [redacted]

Google's production complied with the Arbitrator's Orders, including Pre-Hearing Order Nos. 6 & 7. Your untimely production did not. We have held off on further correspondence regarding the various deficiencies in your eDiscovery production in light of the briefing schedule on your sanctions motion and the holidays, and will follow up on that in the New Year.

Best regards,

Patrick

---

**From:** Rebecca Spivak <rebeccaspivak@outlook.com>
**Date:** Thursday, December 27, 2018 at 8:46 PM
**To:** Patrick Sherman <PSherman@chjllp.com>
**Cc:** Brian Johnsrud <BJohnsrud@chjllp.com>
**Subject:** Re: eDiscovery Files

Thank you, Patrick. Your response is genuinely unexpected in multiple ways, but I will also address this in January.

In the meantime, I wish you a happy New Year. Let's hope we can do better in 2019. I think we probably all recognize that this case is, unfortunately, headed towards appeal in 2020 … even as, I imagine, that's not what any of us want. It's not what I want, even though I'm feeling pulled into it.

I've been really sad that your firm has – all this time- been totally unwilling to meet and confer – or even have a basic phone conversation - with me, even while arguing that the arbitrator treat me as though I were a licensed attorney. If you believe this about me, why not treat me accordingly? Why not be willing to talk to me about the various concerns I've had? What could have been avoided with basic common courtesy – with a phone call or a conversation? It's all just really confusing to me. It feels like you treat me like an unqualified pro-se that you won't talk directly to - while asking the arbitrator to treat me like a sophisticated attorney. I don't know how to reconcile this inconsistency. Maybe 2019 will be different. I hope so. Please, let's all figure out a way to make 2019 better.

Best Regards,
Rebecca

---

**From:** Brian Johnsrud <BJohnsrud@chjllp.com>
**Date:** Wednesday, January 9, 2019 at 8:45 AM
**To:** 'Rebecca Spivak' <rebeccaspivak@outlook.com>
**Subject:** RE: eDiscovery Files

Hi Rebecca,

Happy New Year to you, and hope yours is off to a good start.

Patrick will follow up with you on the open discovery issues.

As we've previously stated, we're not going to talk live with you because of our concern that our words will be misconstrued. Email has been just fine.

I wonder if you thought over the Holidays whether this is something you really want to continue to pursue. At this time, you have gone through two sets of lawyers and been sanctioned in the amount of $12,500. I believe that Google would agree to waive those sanctions (and its attorneys fees and costs) if you agreed to dismiss your claims with prejudice and signed a written settlement agreement to be drafted by our firm, though of course I would have to confirm that.

In short, we're very happy to continue proceeding with discovery and the arbitration process, though if you want to resolve this case in the short term, you should let me know that and we can determine next steps.

Best regards,

Brian

---

**From:** Patrick Sherman <PSherman@chjllp.com>
**Date:** Thursday, January 10, 2019 at 9:35 AM
**To:** "Rebecca Spivak (rebeccaspivak@outlook.com)" <rebeccaspivak@outlook.com>
**Cc:** Brian Johnsrud <BJohnsrud@chjllp.com>
**Subject:** RE: your eDiscovery production

Hi Rebecca,

We wanted to follow up on your email below regarding the process you used for your initial eDiscovery production. The description in your email does not comply with Pre-Hearing Order Nos. 6 & 7, which required

you to produce all of the data identified in Exhibit D to our prior eDiscovery brief, for all of the identified accounts, in searchable PDF format by December 3.

It seems you waited several months to start the process of gathering and processing your responsive data. Please do not attempt to blame us or Google for your lack of planning. In that regard, we note that every time you have asked us in advance for a reasonable extension of a deadline, we have granted it in good faith and without much if any pre-condition, delay, or hassle. Going forward, please plan further ahead and request extensions in advance if you need one, instead of waiting until after the deadline has passed to create your own extension.

Regarding the format for the data, the Arbitrator ordered that it be produced in searchable PDF format (at your request) on July 31, 2018, over five months ago, in Pre-Hearing Order No. 7. You have not come close to complying with the Arbitrator's Orders. Instead, it appears that you have provided a subset of data, for a single account, and have then excluded categories of data that you deem not to be relevant.

While we are fine with the .mbox extraction you have provided as a starting point, we are not ok with you imposing your own relevance restrictions on the search results. In particular, we are not willing to agree to the additional restrictions you have imposed in Sections 4(f), (h), and (i) of your email below. You should produce the documents responsive to the search terms and we will cull these categories for further relevance. Please produce all non-privileged data, subject to the above limitation, for all of the accounts covered in the protocol, in .mbox format by no later than January 25.

In the interests of keeping things moving while you work on complying with the Arbitrator's Orders, we will start working with the .mbox data you have provided.

As to your condescending comment below regarding Logikcull, that is not a conversion tool. It is a rather expensive processing and review platform, and it doesn't convert anything in "minutes." If you wanted to use it, you probably should have looked into purchasing a license back in June or July.

Please confirm by this Friday that you will fully comply with the Arbitrator's eDiscovery Orders by the dates set forth above. If you are not willing to do so, then we will have no choice but to raise your ongoing failure to comply with the Arbitrator.

Best regards,

Patrick

---

**From:** Patrick Sherman <PSherman@chjllp.com>
**Date:** Thursday, January 10, 2019 at 9:46 AM
**To:** 'Rebecca Spivak' <rebeccaspivak@outlook.com>
**Cc:** Brian Johnsrud <BJohnsrud@chjllp.com>
**Subject:** RE: eDiscovery Files

Hi Rebecca,

We wanted to follow up regarding your question below as to what Google did to comply with the Arbitrator's eDiscovery orders. Google produced responsive emails in searchable PDF format as ordered by the Arbitrator, except as to a small subset of documents that would be unwieldy and unusable in PDF format (such as

spreadsheets), and Google produced that subset of documents in Native format. There are some remaining documents that are being redacted to protect third party privacy, and we will produce those as soon as the redactions are complete.

Best regards,

Patrick

---

**From:** Rebecca Spivak <rebeccaspivak@outlook.com>
**Date:** Thursday, January 10, 2019 at 12:59 PM
**To:** Brian Johnsrud <BJohnsrud@chjllp.com>
**Subject:** Re: eDiscovery Files

Hi Brian,

Happy new year to you to. Thank you for your note.
I am working on some other responses, and will try to respond to this one in the coming days.

Best Regards,
Rebecca

---

**From:** Rebecca Spivak <rebeccaspivak@outlook.com>
**Date:** Thursday, January 10, 2019 at 1:00 PM
**To:** Patrick Sherman <PSherman@chjllp.com>, Brian Johnsrud <BJohnsrud@chjllp.com>
**Subject:** Your claims of after-acquired evidence

Hi Patrick and Brian

I wanted to bring some things to your attention regarding Google's claims of after-acquired evidence.
Please note: File numbers below reference the eDiscovery produced by Google.

<u>File 9098 – A Male Google employee publicly recommended that coworkers sell Google Stock and use the proceeds to purchase Facebook Stock</u>

> On June 27, 2014, Male employee [redacted] @google sent a message to a corporate email list, advising google employees to sell their GSUs and buy a disproportionate amount of AAPL and FB stock. He closes his email with "Thoughts, anyone?" There does not appear to be any response to him or the group that this was a violation of the code of conduct. Using one's employee access to an internal corporate email group to advise masses of employees to sell the company stock and buy a <u>disproportionate</u> amount of competitor stocks goes well past simply owning the stock individually.
>
>> On Fri, Jun 27, 2014 at 12:20 PM, [redacted] wrote:
>>
>> I've seen enough discussion on this list which suggests people sell all their GSUs when they vest in the name of diversification.

While I'm a firm believer of diversification and indexing, I also have a different thought.

Basically what you should minimize your risk on is not your absolute wealth, but your relative purchasing power, especially in the local environment.

If there are enough people around you holding disproportionate amount of GOOG, AAPL, FB and etc, you should probably do the same. Basically, the GOOGs/ AAPLs/FBs become partially your local currency, whether you like it or not. And we all know the importance of avoiding currency risks.
Thoughts anyone?

In Google's 10k filings of 2013 and 2014, Google lists Facebook as a competitor.

Files 115658 – I shared evidence of my Amazon Option Trading with a Google Manager who was subsequently purportedly involved in my PIP. The trades are not mentioned in my PIP

On January 17, 2014, I freely and openly forwarded evidence of my trading in Amazon stock options to Michael English. Michael English was the Google manager who mostly closely oversaw my work. I had no concerns sharing this evidence with Michael. According to Google, Michael and I were not getting along, and so Michael would have every cause to act on or share any evidence of misconduct.

Michael did not warn me or make any mention of the fact that he believed that this was against the code of conduct.

Three months later, Google placed me on a performance improvement plan, and made no mention of my trading in Amazon stock options.

According to Google's 10-K report filed with the SEC in 2013 and 2014 Amazon and Google are competitors.

Files 164043, 164044, 164045, 164685, 178632 – Evidence of my FB stock trading was shared with my manager, Employee Relations, and Global Investigations. This was not raised with me as a concern at any time, and I was not terminated. Four months later, I received a warning for alleged misconduct that made no mention or inclusion of the stock trades

During March 2015, evidence of my facebook stock trading activity was received by the following Google employees.

- Jens Skakkebaek – my manager
    - Jens Forwarded this evidence to Ariana
- Ariana Tortorici – Employee Relations
    - Ariana forwarded this evidence to Robin Stearns
- Robin Stearns

It is worth noting that Jens and Ariana received the email directly from an anonymous sender. I had not shared Ariana's corporate email address ([redacted] with anyone on plusmail. It is interesting

that an anonymous sender with access to my plusmail account would manage to figure out Ariana's email address.

The evidence that I engaged in stock and option trading of Google competitor stock was not after-acquired. This is sufficient to make the claim that it was unfounded. Furthermore, a male employee who engaged in behavior that was far less of a stretch for violating the code of conduct was not disciplined, nor were his recommendations called out as violations. In light of these findings – and either one stands alone as sufficient - Please withdraw your claim of after-acquired evidence by January 25, and rectify any documents making reference to the mistaken facts. Please confirm by this Friday that you will do this. If you are not willing to do so, then I will have no choice but to raise this with the Arbitrator

Best Regards,
Rebecca

---

**From:** Rebecca Spivak <rebeccaspivak@outlook.com>
**Date:** Thursday, January 10, 2019 at 1:18 PM
**To:** Brian Johnsrud <BJohnsrud@chjllp.com>, Patrick Sherman <PSherman@chjllp.com>
**Subject:** Your claims on the timing of my gender bias complaint

Hi Patrick and Brian

I want to bring evidence to your attention regarding Google's claims that I first complained of gender bias in February 2015.

Please see: GOOG-SPVK-00139711.PDF in Google's eDiscovery

In this email, dated October 6, 2014, Lauren (HRBP) informs Neal Mohan (VP of Display Ads) that I have been complaining of gender bias. Lauren coaches Neal with "recommended talking points" on what to say to me in the upcoming 1-on-1 that I had requested.

> From: Lauren Thomas [redacted]
> To: Neal Mohan [redacted]>
> Sent: Mon, 6 Oct 2014 10:10:40 -0700
> Subject: TIME SENSITIVE: Info for your meeting with rivka@
> <snip>
>
> There is continued concern that she's litigious, and she's very quick to attribute much of the feedback she receives to gender bias or something other than taking ownership for her actions.
>
> <snip>

In light of this finding, Please correct and rectify all claims and statements that assert that I first complained about Gender Bias in February 2015 and/or that I made that complaint in bad faith. Please confirm by this Friday that you will do this. If you are not willing to do so, then I will have no choice but to raise this failure to

rectify with the Arbitrator. Additionally, please note that I will be revisiting my retaliation claims in light of this evidence.

Best Regards,
Rebecca

---

**From:** Rebecca Spivak <rebeccaspivak@outlook.com>
**Date:** Thursday, January 10, 2019 at 2:14 PM
**To:** Patrick Sherman <PSherman@chjllp.com>
**Cc:** Brian Johnsrud <BJohnsrud@chjllp.com>
**Subject:** Re: your eDiscovery production

Hi Patrick –

The data in Exhibit D limits discovery (aside from the named individuals) to:

- Spivak's claims against Google
- Spivak's employment with Google
- Any other employment, prospective employment, attempts to obtain employment, or earned Spivak's income

I complied with the arbitrator's order on inclusion (though I am confident that Google did not), and did my best to meet the format and timing.
I note that I asked for guidance from Google on multiple occasions and did not receive it. I am not placing blame.

I will also note, however, that I have a day job and two children, and both of those things create unanticipated demands on my time and availability. It's not ideal, but unfortunately, it's a reality. I am doing my best.
Also, I would much prefer mbox files to pdf. Far more efficient to search and go through, and it includes a lot more data. I would be thrilled to receive mbox files from Google. Searchable PDF was Google's request.

I will review the excluded emails and classify it more finely, and determine what I am comfortable sending over.

---

**From:** Rebecca Spivak <rebeccaspivak@outlook.com>
**Date:** Friday, January 11, 2019 at 10:58 AM
**To:** Patrick Sherman <PSherman@chjllp.com>
**Cc:** Brian Johnsrud <BJohnsrud@chjllp.com>
**Subject:** Re: your eDiscovery production

Hi Patrick and Brian,

This note truly catches me by surprise. To be clear, I complied with the arbitrator's order to produce eDiscovery with the given search terms so long as it relates to my claims against Google, my employment with Google or any other employment/prospective employment/attempts to obtain employment/ or earned income. That was the scope of the order.

If you would like to ask the arbitrator to change the order and require that I produce all email that contain these generic and broad search terms regardless of whether it relates to the case, then, of course, you may do so and I will file a response. If you file your motion and the arbitrator ultimately issues another order requiring me to produce this unrelated discovery, I will do my best to comply. However, it will take a very long time to produce and it will be in PDF format, as it will require extensive redaction, as it will include a lot of content along these lines:

- Extensive personal details and genetic information and reports from friends dealing with infertility or discussing their own embryo **transfers** with me
- Every email, no matter the content, with a signature line like "Sent from my smartphone on the Verizon Wireless 4G LTE **network**."
- A **Diary** entry where I write about [redacted]
- Emails about a family that is **desperate** for a reference to a doctor that can evaluate their child for Autism. Another email from a friend doing a **desperate** IVF attempt
- Personal details about [redacted]
- Many, many personal conversations that have nothing to do with my situation, but where I am supporting a friend
- And really, a lot more than this.

So, to repeat, I complied with the Arbitrator's orders on search terms and relatedness. If you have specific concerns and would like to try to work with me, then please do so, as I believe that's a much better path forward. As I explained in the email I sent more than a month ago

> I did my best to comply with the order in good faith given that you did not provide me with guidance despite promising to do so … If you object to my approach, process, or any assumptions I made about what to include/exclude, then please let me know and I'll rerun the process using whatever guidance you provide … Tell me what works or doesn't work for you in the process I used, and I'll change it … please let me know if you have any concerns or questions or would like me to use a different approach here. All I want is guidance so I can follow it.

Instead of responding to my request and offer to follow your guidance, you waited a month and then replied to my good-faith offer with a surprising accusation, demand, and threat, giving me a day to respond. It's not necessary. I will work with you to produce additional discovery for any reasonable guidance you give me. I am not afraid of anything that will turn up, and, as I've said, I believe you have it all already anyway. But I can't just hand over every email from someone with the word "network" in their signature line when the content of the email is private and unrelated to my case/claims/employment. I can't send you the personal conversations I've had with friends who were desperate or feeling under pressure. And the arbitrator explicitly ordered the deletion of "Any other factors or possible causes of Spivak's alleged Emotional Distress, or which reflect Spivak's emotional state or condition" – so that's already settled.

To respond to and counter a couple of other points in your note:

1. You are mistaken when you say that I requested the searchable pdf format. I did not. *Google* requested this as the format, and I said that would be fine with me. I would certainly have preferred an .mbox file. It is easier to search and includes far more information and metadata. While I recognized that I was handing over more data than I was required to, I was not concerned about sharing the .mbox file with Google because I have nothing to hide.
2. I asked your assistance or guidance on how to convert .mbox to pdf and you did not provide it I really haven't figured out how to do it yet. It would have appreciated any guidance you might have provided. I imagine this has to be commonplace in Discovery, but I've never done it. I imagine that Google appreciates the added metadata.
3. Timeliness of Discovery – It is true that I was a few days late. I am sorry. It is my first time doing this, and I tried my best. As I've explained in the past, I have a job and two kids. Long-term advanced planning and scheduling isn't really possible. I can't always foresee emergencies at work or sick kids. It is probably not the last time I will be unforeseeably late. I am doing my best.
4. Google's Timeliness: Google sent me files in an <u>obsolete</u> <u>encryption format</u>, with no explanation of what these files were, and without sharing the password. I received the drive the day after the deadline, but it would be hard to argue that I received the files on that day since Google withheld the key necessary to access the files. Since Google had given me no notice by email or even with the drive itself that these files were password protected and were encrypted with an obsolete encryption method, I believed that I was doing something "wrong" or that I needed a PC computer to access them. It took me some time to figure out what I was doing "wrong." I had to go through multiple software packages and change my operating system just to convert and access the files – and then I still needed the password to decrypt them. A little proactive heads up from Google on this would have been appreciated. An email saying "Hi Rebecca – here are the passwords for the files on the drive you should have received today" – that would have been awesome and saved me a whole lot of time. When I reached out to ask for guidance on the file format and password, you initially refused to provide it. I had to insist in order to get the passwords. I don't know if this is standard, and haven't had the time or motive to research this. I really want to avoid unnecessary motions and accusations. So I didn't complain. But I think there's more to this than there is to my being a few days late.
5. I provided full transparency into how I generated my eDiscovery. Brian asked for this in the middle of the day and asked for me to provide him a detailed writeup by the end of that same day. I had to cancel meetings at work and take the rest of the day off to do this. I have asked the same of Google, but you have not provided this to me.
6. As to inclusiveness, I am aware of many emails that, by the arbitrator's orders, plainly should have been in the discovery that Google produced, but which are absent. I find this concerning, but am not rushing to act on it.

I again want to assure you that I am proceeding with good faith and I want to do this rather than fight. I also want to note that these demands for a response within a day are not appreciated and are very disruptive to my job at Amazon and my relationship with my kids. Please reconsider whether this level of urgency is really necessary.

Once again, I apologize for the length of this email. I don't have time to edit it down. I have to go to work. I hope you both have a good weekend.

Best Regards,

Rebecca

---

**From:** Patrick Sherman <PSherman@chjllp.com>
**Date:** Friday, January 11, 2019 at 2:32 PM
**To:** 'Rebecca Spivak' <rebeccaspivak@outlook.com>
**Cc:** Brian Johnsrud <BJohnsrud@chjllp.com>
**Subject:** RE: Your claims of after-acquired evidence

Hi Rebecca,

Thank you for your emails, we will review them and respond, but not on one day's notice. (When we have requested a response from you on a short timeline, it has been because you have not met a deadline ordered by the Arbitrator.) We anticipate providing a substantive response to your requests next week.

Hope you have a nice weekend.

Patrick

---

**From:** Rebecca Spivak <rebeccaspivak@outlook.com>
**Date:** Friday, January 11, 2019 at 5:47 PM
**To:** Brian Johnsrud <BJohnsrud@chjllp.com>
**Subject:** Re: eDiscovery Files

Dear Brian,

I've thought about your letter.

If I didn't continue to pursue this, I would have nothing left.

Like a lot of creative and smart people, I need the chance to work on things that are challenging and purposeful -- where I believe I can have positive impact. That's a critical lifeline for me. But now the industry treats me like someone who has used up all her chances.

This case is all I have. It's my only outlet. It's my only chance to do something with integrity, that keeps my mind active, and that can change the world for the better.

Pursuing this keeps me alive but that doesn't mean it's fun. It's been painful to read through Google's Discovery. It was hard to revisit the details on the things I accomplished and remember how good it felt to be innovating and building great products. I had forgotten a lot of the fun that I had. It destroys me that I will probably never get a chance to do that again. I want to do it again. I don't want to be done. I can't be done. The world tells me otherwise. I'd make my own opportunities by venturing out on my own or I'd change careers altogether and try something new if I could. But I can't. I'm a single point of failure in the lives of my kids and I don't have the financial safety net to take that kind of risk. I start to understand what drives people to live vicariously through their kids. Maybe the world will be more equitable when it's [redacted]s and [redacted]'s turn. And maybe this case will play a role in helping that happen.

There's a lot to regret and a lot to mourn. I wish that Google could have recognized that I did a lot of good while I was there. Regardless of the case or claims, I launched great products, always cared about doing the right thing, and drove a tremendous amount of value for users and shareholders. That should mean something. It should mean more than being left stripped of all opportunity to do meaningful and satisfying work. I deserved the chance to find another path forward.

Anyway, I didn't mean to ramble. I'm just answering your question on why I can't let go and keep pursuing this.

Very sincerely,
Rebecca

P.S. Since I otherwise would have explained this to you on the phone, I ask for your good faith in interpreting this email. Nothing is meant to be taken as a statement against my interest, so if you interpret anything like that, please ask me for clarification. I still think things would be better if you would be willing to have a basic conversation with me.

---

**From:** Rebecca Spivak <rebeccaspivak@outlook.com>
**Date:** Monday, January 14, 2019 at 1:59 PM
**To:** Brian Johnsrud <BJohnsrud@chjllp.com>
**Subject:** Re: eDiscovery Files

Hi Brian,

I was thinking more about this over the weekend.

Would Google consider giving me (or an LLC that I would form) a business loan so that I could have a chance to rebuild my reputation by starting something on my own? The loan would need to be substantial enough to let me hire a few people and try something big. The loan would also need to be forgivable over time in certain circumstances.

As an idea: Did you know that Autism rates vary dramatically across the US? It's not just about better identification. No one knows why it's so high in New Jersey, specifically – but there has to be some reason. It is generally believed that Autism involves a genetic predisposition triggered in part by environmental risk factors. But potential environmental risk factors aren't really understood. Perhaps they could be - if someone looked at the right data and structured it in the right way. There is so much public data (example: data.gov) that can be crunched. But there's been very little focus on this sort of macro (vs micro) approach. It's the sort of thing I could do well and maybe the world would benefit if I had the chance to try. A forgivable loan or some kind of grant would give me that chance.

If you think it's something Google would consider, please let me know. This isn't about settlement. But this kind of loan would help mitigate my damages, and that is certainly in everyone's interest.

Best Regards,
Rebecca

**From:** Patrick Sherman <PSherman@chjllp.com>
**Date:** Tuesday, January 15, 2019 at 11:50 AM
**To:** "Rebecca Spivak (rebeccaspivak@outlook.com)" <rebeccaspivak@outlook.com>
**Cc:** Brian Johnsrud <BJohnsrud@chjllp.com>
**Subject:** RE: your eDiscovery production

Hi Rebecca,

We write to follow up regarding the deficiencies in your eDiscovery production. So that we are all on the same page and looking at the controlling documents and Orders, we have attached Exhibit D hereto, which is what the Arbitrator ordered you to comply with in Pre-Hearing Order Nos. 6 and 7.

You assert below that you are trying to give us what we requested, but have then unilaterally imposed limitations that were not included in Exhibit D or the Orders, and have apparently excluded whole categories of data that you were ordered to produce.

Some of the more serious deficiencies in your production, based on your own description of what you produced, are as follows:

1. Unilaterally Limiting Accounts. It appears that you only pulled data from your gmail account, rather than pulling all responsive data from all accounts and devices in your possession, custody, or control. That conflicts with the very first paragraph of Exhibit D, which required you to produce data responsive to the search terms for all of your accounts: "(1) rspivak@gmail.com; (2) Plusmail (whether stored in Ms. Spivak's Gmail account or elsewhere); (3) Facebook Messenger; (4) LinkedIn; (5) Instagram; and (6) any text or instant messaging accounts or applications."
2. Unilaterally Limiting The Scope of Search Terms and Imposing Your Own "Relevance" Restrictions. You assert below: "I complied with the arbitrator's order to produce eDiscovery with the given search terms so long as it relates to my claims against Google, my employment with Google or any other employment/prospective employment/attempts to obtain employment/ or earned income. That was the scope of the order." Your assertion is incorrect. Instead, Exhibit D required you to produce any document that relates to any of the following, including: "Any other employment, prospective employment, attempts to obtain employment, or earned Spivak's income or compensation from any source, including her Facebook stock and option trading." While you argued for an undefined "earned" income restriction, the Arbitrator expressly rejected your argument. Instead, you were ordered to produce your "income or compensation from any source, including [your] Facebook stock and option trading."
3. Separately, while the Arbitrator initially held off on ordering the Facebook-specific search terms in Paragraph 32 of Exhibit D because you offered to enter into a stipulation about your Facebook trades, you have since refused to sign such a stipulation. The Arbitrator then definitively held in Pre-Hearing Order No. 10: "As noted, Google obtained information indicating that Spivak may have made investments in Facebook during her employment at Google. And, there appears no dispute that Facebook is a competitor of Google. **As such, Google is entitled to discovery to verify Spivak's investment in Facebook, and the nature and extent of that investment. That was the undersigned's previous conclusion on this discovery issue, and it remains so**." Pre-Hearing Order No. 10 at p. 7 (emphasis added).

You are welcome to assert your various theories at the merits hearing as to why you think your trading in the stock and options of Google's biggest competitor, in sums that appear to have greatly exceeded your annual income, did not violate the Code, or why you think it was not after acquired evidence (even though you never

sought or obtained permission from your manager and Ethics & Compliance to engage in such trading, as required by the Code).

However, you cannot continue to refuse to comply with the Arbitrator's multiple prior orders requiring you to produce all of the data described above. To the extent you persist in disregarding the Arbitrator's discovery orders, we will seek further sanctions for your failure to comply. Please confirm by this Friday, January 18, that you will produce the following by no later than January 25, 2019:

1. All of your brokerage account statements and trading records for any month in which you held any Facebook stock or options or engaged in any Facebook stock or options trading activity, from May 18, 2012 through April 1, 2017.
2. All documents and communications relating to or reflecting your Facebook stock or option trading activity, from May 18, 2012 to April 1, 2017, including requests or instructions to buy or sell, as well as your journal/diary notes relating in any way to your Facebook trading.

Please let us know by Friday whether you will fully comply with the Arbitrator's Orders, including Exhibit D and Pre-Hearing Order Nos. 6 and 7.

Best regards,

Patrick

---

**From:** Rebecca Spivak <rebeccaspivak@outlook.com>
**Date:** Tuesday, January 15, 2019 at 6:54 PM
**To:** Patrick Sherman <PSherman@chjllp.com>
**Cc:** Brian Johnsrud <BJohnsrud@chjllp.com>
**Subject:** Re: your eDiscovery production

Hi Patrick,

I ask that you please be more careful when threatening sanctions along with a demand for data that was never ordered. This is the second time in less than a week that you sent me a threatening and misleading email that did this.

I don't appreciate the attempts to trick me in this way. If you want to threaten me with sanctions for a deficiency to fully comply with an actual order, please do not wrap that threat around an unjustified demand for separate data that was never ordered. You have tried to trick me into believing that I violated the arbitrator's order by not including clearly unrelated data (despite the fact that the order clearly limited the scope to relatedness) and also tried to trick me into believing that to comply with the eDiscovery order, I must produce financial documents and statement outside the eDiscovery custodial accounts.

Your emails have following this fact pattern: The arbitrator has ordered [A] as part of eDiscovery. It seems you want [B] and/or [C], but these things were not ordered. You have sent me two emails now that follow this basic structure: accusation on minor infraction/delay →unjustified accusation of failure to produce unordered data → threat of sanctions if won't comply with order → demand to produce unordered data → repeat threat of sanctions for failure to comply with order.

Both emails read basically like this:

> Hi Rebecca –
> Your production does not comply with the arbitrator's orders. In part, the order required you to do [A] and your production didn't fully comply. You also decided on your own to not include [B] and we are not willing to agree to that.
>
> You cannot refuse to follow the arbitrator's order.
>
> Please confirm quickly that you will produce [B] and [C]. If you don't comply with the arbitrator's orders, we will seek sanctions. Please confirm that you will fully comply with the arbitrator's orders. If you don't, we'll seek sanctions.

When you send me an email like that, it feels like a game and it feels <u>wrong and unfair</u>. I imagine that since you only implied that these things were ordered along with your threat but did not technically say that directly, that it passes whatever ethical test it needs to pass regardless of how misleading it was. Still, I ask you again to please be more clear with what I need to agree to in order for you not to seek further sanctions against me, and what is merely a request. Please know that when you sandwich urgent demands like this between threats of sanctions for failing to comply with the arbitrator, there is a huge risk that I will misunderstand what I am agreeing to.

I will do my best to make progress on completing the eDiscovery that was actually ordered and that was held in pre-hearing order #10 (it's worth reading that order a few times …). I will not agree to your demands that I produce documents that weren't actually ordered.

I will also repeat my request that you try to work with me instead of threatening me.
You claim you have sufficient evidence to make the case for after-acquired evidence. So that's not why you're after this investment data – going until April 2017. You don't need my April 2017 statement to prove that Google would have fired me in December 2015. It doesn't follow, and I am concerned that you continue to insist this. A decision to fire me in Dec 2015 would have no visibility into my future trading activity. But the insistence on that scope suggests to me that you don't actually believe that the after-acquired evidence theory holds up, and that you are fishing for something else.

You don't need to fish.

What do you <u>really</u> want all the financial statements for? What do you think you can prove with it? I'm really not hiding anything and will probably offer up the evidence you need to determine whether your theory has legs. Instead of threatening me and trying to trick me, just ask me. I will work with you.

If you think you will discover that I became a professional investor and made a lot of money, you won't find that. I could let you chase that theory for as long as possible to run up expenses and distract you from pursuing a different theory, but I don't need to do that. I will assure you that I am, sadly, not a sophisticated investor. I made more trades in my <u>two weeks</u> of forced pre-pip leave in April 2014 than I made in the entire 17 months of my unemployment from 2015 – 2017. People have different ways of dealing with anxiety and fear and stress. My trades are embarrassing – not sophisticated. Regarrdless, if what you really want is summary level data for what I did and what I earned during my unemployment, I'll give that to you, even though I am not required to do that at this time. Games and threats and pretexts for why you want certain data isn't necessary.

Separately, I am still waiting for an explanation on how Google produced its discovery, and why there are so many emails missing from the production. I am also wondering why Google has not chosen to correct and rectify statements about when I first complained about gender discrimination. I am not rushing to file motions, but I am preparing them just in case they eventually become necessary. Please work with me on Google's deficiencies as well.

Best Regards,

Rebecca

---

**From:** Rebecca Spivak <rebeccaspivak@outlook.com>
**Date:** Tuesday, January 15, 2019 at 10:34 PM
**To:** Brian Johnsrud <BJohnsrud@chjllp.com>, Patrick Sherman <PSherman@chjllp.com>
**Subject:** Possible ex-parte contact

Hi Brian and Patrick –

I recognize that this is extremely unlikely. Perhaps 1-million – to – 1. But on the extremely unlikely chance that Judge Baines decided to come to Seattle and play a shopping-mall Santa Clause, it is possible that we've had unintended ex-parte contact.

I don't think there is any reasonable risk, but I'm happy to disclose anyway, and there's some comedic relief in the idea. If you have any concerns or want to explore this idea further (or just stop the posturing/threatening and collaborate over a shared good-natured laugh), let me know.

I mean, come on. It's fun.



Best Regards,
Rebecca

---

**From:** Rebecca Spivak <rebeccaspivak@outlook.com>
**Date:** Thursday, January 17, 2019 at 1:28 PM
**To:** Brian Johnsrud <BJohnsrud@chjllp.com>, Patrick Sherman <PSherman@chjllp.com>
**Subject:** Ediscovery - Facebook Messenger

Hi Brian and Patrick –

Attached please find my E-discovery for Facebook Messenger.

These are facebook chats with current/former Google employees. I am still working on going through and redacting my chats with non-google employees, though there is very little there. Plusmail was my primary outlet for everything.

Additionally, I am working on my round-2 e-Discovery requests. You already have some of my previous requests, though I will be adding to it and sharing it with you next week. Google was ordered to meet and confer with me on my next round. Please plan to spend some time on this over the next few weeks.

Best Regards,
Rebecca

---

**From:** Rebecca Spivak <rebeccaspivak@outlook.com>
**Date:** Thursday, January 17, 2019 at 2:29 PM
**To:** Brian Johnsrud <BJohnsrud@chjllp.com>, Patrick Sherman <PSherman@chjllp.com>
**Subject:** Ediscovery: Ameritrade statements, notifications and trade confirmations (1 of 7 )

Will be sending multiple files.

---

**From:** Rebecca Spivak <rebeccaspivak@outlook.com>
**Date:** Thursday, January 17, 2019 at 2:46 PM
**To:** Brian Johnsrud <BJohnsrud@chjllp.com>, Patrick Sherman <PSherman@chjllp.com>
**Subject:** Ediscovery: Ameritrade statements, notifications and trade confirmations (2 of 7 )

---

**From:** Rebecca Spivak <rebeccaspivak@outlook.com>
**Date:** Thursday, January 17, 2019 at 2:47 PM
**To:** Brian Johnsrud <BJohnsrud@chjllp.com>, Patrick Sherman <PSherman@chjllp.com>
**Subject:** Ediscovery: Ameritrade statements, notifications and trade confirmations (3 of 7 )

---

**From:** Rebecca Spivak <rebeccaspivak@outlook.com>
**Date:** Thursday, January 17, 2019 at 2:47 PM
**To:** Brian Johnsrud <BJohnsrud@chjllp.com>, Patrick Sherman <PSherman@chjllp.com>
**Subject:** Ediscovery: Ameritrade statements, notifications and trade confirmations (4 of 7 )

---

**From:** Rebecca Spivak <rebeccaspivak@outlook.com>
**Date:** Thursday, January 17, 2019 at 2:47 PM
**To:** Brian Johnsrud <BJohnsrud@chjllp.com>, Patrick Sherman <PSherman@chjllp.com>
**Subject:** Ediscovery: Ameritrade statements, notifications and trade confirmations (5 of 7 )

---

**From:** Rebecca Spivak <rebeccaspivak@outlook.com>
**Date:** Thursday, January 17, 2019 at 2:48 PM
**To:** Brian Johnsrud <BJohnsrud@chjllp.com>, Patrick Sherman <PSherman@chjllp.com>
**Subject:** Ediscovery: Ameritrade statements, notifications and trade confirmations (6 of 7 )

---

**From:** Rebecca Spivak <rebeccaspivak@outlook.com>
**Date:** Thursday, January 17, 2019 at 2:48 PM
**To:** Brian Johnsrud <BJohnsrud@chjllp.com>, Patrick Sherman <PSherman@chjllp.com>
**Subject:** Ediscovery: Ameritrade statements, notifications and trade confirmations (7 of 7 )

---

**From:** Rebecca Spivak <rebeccaspivak@outlook.com>
**Date:** Thursday, January 17, 2019 at 5:14 PM
**To:** Brian Johnsrud <BJohnsrud@chjllp.com>, Patrick Sherman <PSherman@chjllp.com>
**Subject:** Re: Ediscovery - Facebook Messenger

As a heads-up, there is a an exchange in my chat with Michael (from Feb 2015) that lends itself to possible misinterpretation (and potential unnecessary and awkward inquiry) without further background.

Me: do you realize you almost told your team that you promised to buy me underwear. Just saying

Michael: i wasn't going to

Me: I was honestly worried

Background: At some point post-PIP, I shared with Michael one of the reasons that the PIP had shaken me so hard and why I felt desperate for some kind of signal that I wasn't teetering on the edge of a cliff. I told him that I had an irrational fear of ending up homeless and unable to afford clean socks and underwear. (I was homeless for some time at age 17/18 after leaving my childhood community). Being pipped unfairly, without warning, when everything in my life was in transition, and when I didn't have a stable place to live was triggering. Michael promised me that if I ever found myself in a situation where I couldn't afford socks or underwear, he would pay for it. That promise actually meant a lot to me.

After the IB reorg was announced, Michael was talking with the team and explaining that it was natural to worry or be afraid, but that he was promising that he was going to try to make sure that everyone landed well. It then seemed like he was starting to tell the team about the promise he had made me months earlier. However, he only alluded to it and stopped short of sharing any actual details. That led to this exchange over chat.

Best Regards,
Rebecca

---

**From:** Patrick Sherman <PSherman@chjllp.com>
**Date:** Friday, January 18, 2019 at 2:02 PM
**To:** "Rebecca Spivak (rebeccaspivak@outlook.com)" <rebeccaspivak@outlook.com>
**Cc:** Brian Johnsrud <BJohnsrud@chjllp.com>
**Subject:** RE: your eDiscovery production

Hi Rebecca,

Based on your production yesterday of hundreds of automated email messages from your brokerage that do not contain any useful information about the nature and extent of your Facebook trading, we are concerned that you may be contending that you do not have electronic copies of your brokerage statements or trading records. Those documents are plainly within your possession, custody, and control.

We also direct you to JAMS Rule 17, and our prior requests for production that were served back in May 2018.

- Request No. 21 sought: "All brokerage account statements and transaction records for any month in which you held Facebook stock or options or engaged in any Facebook stock or option trading activity, from January 1, 2010 to April 1, 2017."

- Request No. 22 sought: "All documents regarding or reflecting any reason why you engaged in any Facebook stock or option trading activity, from January 1, 2010 to April 1, 2017, including but not limited to any documents reflecting your desire to leave Google's employ or start your own Company."

- Request No. 26 sought: "All documents referring to or evidencing your income from any source, including any sign-on bonus, bonus, equity, salary and other earnings and compensation from Amazon, as well as any self-employment income, including but not limited to stock or options trading income, since January 1, 2010."

In opposing your sanctions motion, Google asked the Arbitrator to order you to produce your Facebook trading records and related documents for the period from May 18, 2012 to April 1, 2017. Pre-Hearing Order No. 10 was definitive in holding that your Facebook trading records are discoverable: "Google is entitled to discovery to verify Spivak's investment in Facebook, and the nature and extent of that investment. That was the undersigned's previous conclusion on this discovery issue, and it remains so." Pre-Hearing Order No. 10 at p. 7.

While that portion of Order No. 10 focused on Google's after-acquired evidence defense, it was not time-bound, and the Arbitrator's prior Order No. 6 incorporated Exhibit D, which covered the period after your Google employment ended, and you have produced automated brokerage notifications for the period up to your Amazon start date.

Please confirm by Tuesday that you will produce all of the documents described below by no later than January 25, 2019, and please start pulling them instead of waiting until the last minute.

If you are unwilling to provide a straightforward and definitive answer and follow through with the actual production of your Facebook trading records, brokerage statements, and related documents and communications in a timely fashion, then we will file a motion for issue sanctions.

Best regards,

Patrick

---

**From:** Rebecca Spivak <rebeccaspivak@outlook.com>
**Date:** Tuesday, January 22, 2019 at 1:40 PM
**To:** Patrick Sherman <PSherman@chjllp.com>
**Cc:** Brian Johnsrud <BJohnsrud@chjllp.com>
**Subject:** Re: your eDiscovery production

Patrick, this was the third unjustified accusation and threat in 8 days. I am at a loss.

First, you are demanding that I justify why I sent you the statements and trade confirmations that Ameritrade sent to my custodial accounts. To be clear: I sent you those documents – for the (overly broad) time frame that you requested and in the format that you requested - because I was ordered to do so.

Second, you are again conflating what's been ordered with what hasn't been ordered … and doing with an unjustified threat. Again, please stop it. I was not ordered to hand over the documents you are demanding. I was ordered to produce eDiscovery for the custodial accounts. You can't keep making these misleading threats.

Third, while it seems that Ameritrade includes less information in their email confirmations than you were hoping they included, that is not at all my fault, and the data I sent you also isn't useless. At the very least, it is an indicator of the frequency of my trading, which Google has asserted is important to at least two of its defense claims. So it is not useless. For example, you should be able to see that during my unemployment, I made a stock trade on about 3-4 days of each month.

Fourth - I have repeatedly said that I would work with you and help get you the information that you need. Instead you kept insisting on this overly broad eDiscovery. If you had worked with me instead of trying to bully me, I would have worked to get you what you need.

All this said, while I know you are disappointed with the communication sent to me from my brokerage account, you will be glad to know that as I've continued to go through the custodial accounts – going beyond what the financial institutions sent to me (which is what I sent you last week) I discovered documents I sent to my mortgage banker over email as part of my 2013/2014 mortgage application. I believe these documents include the proof you need for the specific relevant element of your after-acquired evidence defense. I have attached these documents to this email. You will see that they confirm your assertion that I held a 7-figure investment in Facebook options while employed at Google, and that this investment was the majority of the investment account.

All this said, I have had to spend far too much time responding to your baseless and unfounded accusations and threats. I have kids and a job, and I also need to spend time focusing on the merits of my case.

I have responded to your rapid-clip of 3 unfounded threats. You have not answered my questions or requests and have simply ignored them.

While I fear that you will develop another unjustified accusation and threat to send my way, I need to take a break to work on everything else that needs my attention right now. Please note that for the next 2 weeks I will not have any bandwidth to respond to any threats or accusations. You should not form any conclusions based on my failure to reply. I am also taking a last-minute 4-day trip to Hawaii with my kids this weekend – to make it up to them that I have been so unavailable. And I will likely not check email at all.

I encourage you to reconsider whether you might get better results if you tried another approach here. Bullying and retaliation doesn't make me run away. Look at the last 5 years of history.

I will work with you on requests that go beyond the scope of eDiscovery. If what you are really trying to find out is whether I spent substantial amounts of time trading during unemployment and whether I had substantial investment gains during this time, the answer to both is no. And I will assemble the evidence and documents

you need to review the nature and extent of this. I will do this when you work with me in good faith, and I cannot do this when you bully me with overly broad demands and unjustified threats.

While I am catching up on everything that I have neglecting because of your onslaught of threats and demands, please make progress on my outstanding requests.
Please also provide answers to the specific questions I have previously and repeatedly asked about Google's discovery.

Best Regards,
Rebecca

---

**From:** Patrick Sherman <PSherman@chjllp.com>
**Date:** Tuesday, February 5, 2019 at 2:26 PM
**To:** "'Rebecca Spivak (rebeccaspivak@outlook.com)'" <rebeccaspivak@outlook.com>
**Cc:** Brian Johnsrud <BJohnsrud@chjllp.com>
**Subject:** RE: your eDiscovery production

Hi Rebecca,

We have held off responding to your email below because you indicated you were unavailable, though we do need to keep this process moving.

First, we have sent you multiple requests for access to your .mbox file production, but still do not have access. That production was due back on December 3. Please grant Brian and me access to the .mbox production by no later than the end of this week.

Second, as to your Facebook trade records, the Arbitrator held that we can take discovery as to the nature and extent of your trades, and we have been asking for those documents since the outset of this arbitration.

Third, to the extent you are trying to parse what is in your email accounts from the other electronic records of your trades that are plainly in your possession, custody or control, that distinction is not well taken. JAMS Rule 17 requires the parties to cooperate in the good faith exchange of non-privileged documents and information, and despite your offers to work with us, you still have not produced all of your Facebook trading records.

Fourth, we should not need to file a motion to get you to comply with your discovery obligations, and you should not be surprised when we state that we will file a motion and seek sanctions when you fail to comply. Please produce copies of all of your Facebook trading records by this Friday. It should not take more than an hour of your time.

Best regards,

Patrick

---

**From:** Brian Johnsrud <BJohnsrud@chjllp.com>
**Date:** Friday, February 8, 2019 at 12:59 PM
**To:** 'Rebecca Spivak' <rebeccaspivak@outlook.com>
**Subject:** RE: eDiscovery Files

Hi Rebecca,

Sorry, I thought I had responded to this. Any type of loan is out of the question. You have our prior guidance on a potential resolution. If you want to make a demand consistent with that, we'll review and respond. If not, we're happy to continue arbitrating the case.

Best regards,

Brian Lee Johnsrud

---

**From:** Rebecca Spivak <rebeccaspivak@outlook.com>
**Date:** Friday, February 8, 2019 at 3:53 PM
**To:** Patrick Sherman <PSherman@chjllp.com>
**Cc:** Brian Johnsrud <BJohnsrud@chjllp.com>
**Subject:** Re: your eDiscovery production

Hi Patrick,

Seattle has been blasted by multiple snowstorms this week (since Sunday). Public schools, daycares, and after-care programs were canceled for most of the week, and I've been home with my kids, cabin-fever and all. I managed to get out this morning to buy some milk, bread, and eggs at the grocery store, and the lines ran out of the store with hours-long waits. My house is almost 100 years old, and I've been working to add extra insulation around my windows and exterior doors, in case we lose power/heat.

I will try to send you further communication next week. Right now my focus is on keeping my family safe.

Rebecca

---

**From:** Rebecca Spivak <rebeccaspivak@outlook.com>
**Date:** Monday, February 18, 2019 at 9:04 PM
**To:** Patrick Sherman <PSherman@chjllp.com>
**Cc:** Brian Johnsrud <BJohnsrud@chjllp.com>
**Subject:** Re: your eDiscovery production

Hi Patrick and Brian –

I'm not sure if you followed the Seattle "Snowpocalypse" … not sure if it made national news or not … but the first full day back to school was on Friday. We had 8 snow days in a period of 2 weeks. It's generally been a disaster, and I don't say that lightly. I was in Seattle for the 2001 Nisqually earthquake. I lived in an evacuation zone in NYC, with 2-month-old [redacted], during Hurricane Sandy. This has (subjectively) been much harder to get through. Seattle didn't have the infrastructure to deal with this.

Things are finally back up and running now – fo rthe most part. But [redacted] came down with the Flu yesterday, and [redacted] just started running a fever tonight. (Of course we're all vaccinated).

My focus is on taking care of my kids and trying to keep up at work, as best as I can. Unexpectedly, at the same time that all this is happening, my manager is asking me to help out with some more strategic initiatives, and has told me that he plans to put me up for promotion this cycle. (Even if this promotion goes through, it's still a completely different ballpark than where I'd be if Google had treated me fairly. But at least it's a baby step in the right direction!)

I need to catch up at work from the weather disaster, get through taking care of my sick-at-home kids for however long these bouts of flu last, step up to get involved in additional strategic projects I'm being asked to take on, and also start to put in the extra time to work on the promotion packet – as my manager requested. This confluence of disasters and demands exhausts all of my bandwidth and reserves. I don't want to set expectations for when I'll be able to come up for air and spend time on the case – because I have no idea right now. I will do my best.

Best Regards,
Rebecca

---

**From:** Rebecca Spivak <rebeccaspivak@outlook.com>
**Date:** Wednesday, February 20, 2019 at 9:09 PM
**To:** Patrick Sherman <PSherman@chjllp.com>
**Cc:** Brian Johnsrud <BJohnsrud@chjllp.com>
**Subject:** Re: your eDiscovery production

Patrick – I am sending you my unedited draft response because I genuinely don't have any time to review or edit it right now. My kids are home. They have the flu. I probably have the flu. We are still recovering. I acknowledge your request/claim on February 5 and want to let you know why I am very concerned by it. I started this draft 2 weeks ago … it's still a draft that I'd otherwise clean up and condense and error-check. But I'm taking the stance that it's better to send an imperfect response than to be radio silent. Please interpret this with that understanding.

------------
Patrick, I have to admit that I am at a loss for how to respond to this. I sent you my Discovery on December 6, and Google acknowledged receipt of it multiple times, threatened me for all the ways it was nonconforming, and asserted that it was already being worked on, to justify a demand that I provide further discovery in the same .mbox format. February 5 was the first time you made ANY claim that that you had never actually received it.

To recap: Ediscovery was due on December 3rd. Google was supposed to provide me guidance, but did not. I did my best to figure out how to get things formatted properly, and asked Brian for Guidance. I received a portable drive by mail on December 4, 2018. I sent Brian a link to download my production (in .mbox format) on December 6. I was late because of technical issues in trying to convert my files to pdf, but I did my best and in good faith. Google bears at least some responsibility for not providing the guidance it promised, but it doesn't matter. This delay was not material.

More importantly, Google's discovery production was, in practice, more untimely. Google's production was encrypted and did not include the password or any note on the fact that it was locked in an obsolete format requiring me to acquire specialized software to access it. My production to Google was unencrypted, and in up-to-date .mbox format, easily opened by almost any modern email software program. Google could have been reviewing my production within minutes. I had to update my operating system, research obsolete file formats, acquire new software, and then send a request for the password. If Google and I both attempted to access the files the minute we received them, Google would have had access sooner than I did. I didn't play any games.

More on the timeline:

December 4, 2018:

- I receive a portable drive in the mail with no instructions or guidance

December 6, 2018:

- After a delay due to formatting issues (and asking Brian for guidance/help), I send google a link to download my ediscovery in unencrypted .mbox format

December 13, 2018:

- In my response to my motion for sanctions, I reference an email that I sent to Google as part of eDiscovery. "In an email I sent to my friends on August 2014 – that Google has certainly seen and that they received in eDiscovery – I summarized one of the conversations I had with Michael"
- At no point does Google deny receiving this email as part of eDiscovery. At no point does Google argue that they didn't have access to my production.

December 27, 2018:

- Google implies that the 2-day delay in my discovery production was material "Google's production complied with the Arbitrator's Orders, including Pre-Hearing Order Nos. 6 & 7. Your untimely production did not. "
- Still, Google practically received my production first. After 3 weeks of trying to figure out how to access the files in the drive and acquiring the right (obscure) software (and associate operating system change) to do so, I recognized that I still needed a password, and asked Google to provide it.
- Google's initial response was to refuse, chastising me for waiting this long

  > " We produced those files some time ago and you are just now asking for further guidance, during a time when many people are out of the office, including Patrick and myself. We will respond to your email after January 1. "
- I repeated my request and Google finally sent me the password – but only because I insisted
- Given Google's guidance on the reasonable and expected timeframe for accessing discovery (and my apparent unreasonableness),and given the emphasis placed on the fact that my production was 2 days late, and given the incredibly sensitive nature of my .mbox file, I reasonably concluded that Google had successfully downloaded and accessed my discovery, and retired the file share.
- I was certain Google had already spent weeks going through my discovery, even as I was first getting the password now.

December 27, 2018 – January 8, 2019

- Believing that Google has had a head start on discovery review, I prioritized it over everything else. Over the course of 12 days, I spent approximately 150 hours going through Google's

100,000 emails, the vast majority of which are irrelevant. I also noted that many emails are missing from the production

January 10, 2019

- I sent Google requests that they withdraw certain claims, with references to specific emails in their ediscovery production
- Google makes various threats about the deficiencies of my ediscovery
- Google unequivocally affirms receipt of my ediscovery: "we are fine with the .mbox extraction you have provided as a starting point"
- Google argues that I produce further discovery in .mbox format as well, explaining "we will start working with the .mbox data you have provided. "

January 15, 2019

- Google continues to make threats: "It appears that you only pulled data from your gmail account, rather than pulling all responsive data from all accounts"

January 18, 2019

- More sanctions threats from Google, still without any mention or suggestion that Google never accessed my eDiscovery production.

February 5, 2019

- Google claims - for the very first time - they have never had access to my eDiscovery production.

I really don't know how to process this totally unexpected accusation. It feels like a trap – like if I set up the file share again, you will use that to argue that I was 2+ months late on eDiscovery. I truly and fully believe that Google downloaded and accessed my eDiscovery production shortly after I produced it on the file share. I believe that well over a month later, you noticed that I retired the download link, and are trying to get me to put it back up so that you can use the new timestamp against me. I believe that if I simply put the share up without objecting, you will take that as an admission of guilt.

I am concerned about this being some sort of trap.

If Google has never had any access to the emails in my discovery (outside the emails that Google produced as part of its ediscovery to me), then please affirm that. Please also make it clear when you first tried to use my download link. I will swear under oath that it was fully available for download – and unencrypted and not blocked in any way – between December 6 and December 27 2018.

---

**From:** Rebecca Spivak <rebeccaspivak@outlook.com>
**Date:** Thursday, February 21, 2019 at 4:13 PM
**To:** Brian Johnsrud <BJohnsrud@chjllp.com>, Patrick Sherman <PSherman@chjllp.com>
**Subject:** Binding Arbitration

Hi Brian,

It is my understanding that Google has decided to end binding arbitration – and that this applies even to claims in active arbitration that have not yet settled … so long as the plaintiff is still actively employed with Google.

Is this correct? Can you explain the reasoning/justification for this distinction?

Best Regards,

Rebecca

---

**From:** Rebecca Spivak <rebeccaspivak@outlook.com>
**Date:** Thursday, February 21, 2019 at 7:38 PM
**To:** Brian Johnsrud <BJohnsrud@chjllp.com>, Patrick Sherman <PSherman@chjllp.com>
**Subject:** Request

Hi Brian,

I request that Google agrees that, as of March 21, 2019, I will have the choice to rightfully and justly (and without any objection from Google) withdraw from arbitration and bring a lawsuit in pursuance of my claims instead.

Please let me know Google's position by March 1st. If I do not hear from you (even if just to let me know you are thoughtfully considering the request and need more time), I will take this to mean that Google is refusing this request.

Best Regards,
Rebecca

---

**From:** Brian Johnsrud <BJohnsrud@chjllp.com>
**Date:** Friday, February 22, 2019 at 10:10 AM
**To:** 'Rebecca Spivak' <rebeccaspivak@outlook.com>, Patrick Sherman <PSherman@chjllp.com>
**Subject:** RE: Request

Hi Rebecca,

Google announced its policy change on arbitration, which applies to current and future employees and for claims asserted on or after March 21, 2019. This policy change does not apply to former employees like you whose employment terminated more than 2 years ago.

Best regards,

Brian

---

**From:** Rebecca Spivak <rebeccaspivak@outlook.com>
**Date:** Friday, February 22, 2019 at 12:31 PM
**To:** Brian Johnsrud <BJohnsrud@chjllp.com>, Patrick Sherman <PSherman@chjllp.com>
**Subject:** Re: Request

Hi Brian,

I ask that Google reconsider this position and extend the policy change to my claims as well.

The concerns raised by the protestors are not somehow less applicable here. They are my concerns. I have raised the same concerns.
Why would Google change the policy in recognition of these concerns but exclude my claims?

Please let me know if Google will extend the policy change to me.

Best Regards,
Rebecca

---

**From:** Brian Johnsrud <BJohnsrud@chjllp.com>
**Date:** Friday, February 22, 2019 at 12:51 PM
**To:** 'Rebecca Spivak' <rebeccaspivak@outlook.com>, Patrick Sherman <PSherman@chjllp.com>
**Subject:** RE: Request

Privileged

Hi Rebecca,

Thank you for your message. Google has made a business decision on this policy issue and is not going to go back and forth with you on it.

Best regards,

Brian

---

**From:** Rebecca Spivak <rebeccaspivak@outlook.com>
**Date:** Friday, February 22, 2019 at 1:17 PM
**To:** Brian Johnsrud <BJohnsrud@chjllp.com>, Patrick Sherman <PSherman@chjllp.com>
**Subject:** Re: Request

Hi Brian,

I am confused by the word "Privileged" at the top of your email. So that I don't misinterpret it, can you clarify?

I was not asking for a back-and-forth. You told me what Google announced as its policy. I asked for an answer on whether Google would consider extending the policy to me, and I offered some preliminary justification for my request. I was hoping that we could discuss this and that I could share my concerns with the decision.

Best Regards,
Rebecca

---

**From:** Brian Johnsrud <BJohnsrud@chjllp.com>
**Date:** Friday, February 22, 2019 at 1:20 PM
**To:** 'Rebecca Spivak' <rebeccaspivak@outlook.com>
**Subject:** RE: Request

Sure, and sorry, "privileged" is a default header that I didn't take out and you can disregard that header.

---

**From:** Rebecca Spivak <rebeccaspivak@outlook.com>
**Date:** Tuesday, March 5, 2019 at 1:19 PM
**To:** Patrick Sherman <PSherman@chjllp.com>, Brian Johnsrud <BJohnsrud@chjllp.com>
**Subject:** Discovery, Deposition, Damages, and Rectifications

Hi Patrick,

I have been less engaged with the case recently as I have been largely incapacitated with Pneumonia. It has certainly been a rough winter. That said, I have mostly recovered and would like to move the case forward. This email covers issues and topics related to discovery, depositions, an update on Damages, as well as a repeated request that Google correct and rectify prior claims.

1. Discovery (More detail/justification in attached document): Please produce the following discovery in a timely matter, incrementally as it is ready. Please provide weekly updates and additions, and produce all of it by no later than March 31.
    a. Pay and Promotion Data for PMs in Neal Mohan's Organization
    b. Jens' history of advising peer reviewers to be "completely honest"
    c. Other documents that are referenced in Google's eDiscovery, but which were not included in that production
    d. Anonymous emails to ablute@ or jskakkebaek@
    e. Comprehensive documentation on the planning involved in the IB relocation and decision to not allow PMs to work remotely

2. Depositions: We need to get these scheduled, and I would like to get these completed prior to June 1. Please let me know when you would like to schedule my deposition. I would like my first round of depositions to include the following ten individuals:
    a. Neal Mohan
    b. Ariana Tortorici/Blute
    c. Jens Skakkebaek
    d. Dustin Jackson

e. Cindy Treloar (Backups: Nina R. Sakellariou and/or Ashley Wilson if Google is unable to compel Cindy Treloar)
f. Caroline Bremner
g. Scott Spencer
h. Lauren Thomas Ewing
i. Nicolas WENG Kan
j. Aaron Rothman

3. Damages: Please be advised that you should not rely on the damages outlined in my 2015 letter. I am seeking damages that are substantially higher than the amounts in that letter. This is partly because my damages have increased as a result of Google's public lawsuit against me, partly because discovery has surfaced additional facts that support an increased damages calculation, and partly because while my attorneys in 2015 preferred to be especially conservative given their understanding of the limitations of arbitration awards, I prefer a more realistic and genuine approach to the calculation.

4. Repeated request: Correct and Rectify: As I requested in January 2019, please correct and rectify the following claims

    a. Google's affirmative defense that knowledge of my stock/option trading was after-acquired and would have resulted in immediate termination
    b. Google's affirmative defense that I first complained of gender discrimination in February 2015

Let me know if you have any questions or need something clarified, and, as always, I apologize for verbosity, typos, and other unintentional by-products of the fact that I have too many demands competing for my time and attention.

Best Regards,
Rebecca

Attachment:

Discovery

a. Pay and promotion data for Neal Mohan's organization

Please produce the following

- Annual compensation data for the Product Managers (+ PM directors, + Neal Mohan himself) in Neal Mohan's organization, from 2011 to the present. For each year, please list
    - Individual's level that year
    - Performance review for each review period during the year – including stack rankings
    - Performance rating as submitted by their manager for each review period during the year
    - Performance rating as finalized in Calibration for each review period during the year
    - Base Salary
    - Bonus
    - Value of vesting stock
    - Stock grant awarded
- The spreadsheet (and edit history) linked in Google's email production 176120
- The contents stored at go/PMG-data in 2015

Justification

In pre-hearing order #10, the arbitrator makes the following determination:

Obviously, if the discovery she obtains from the named supervisors reveals that they were not the ultimate decision-makers, she will be permitted appropriate discovery regarding any ultimate decision makers involved in any of the discriminatory actions complained of by Spivak.

It is certainly the case that Neal Mohan was the ultimate decision maker, and thus I am entitled to discovery regarding the decisions he made across the individuals in his organization. Please consider the following in support of my claim that Neal Mohan was the ultimate decision maker for me. This is only a small subset of the evidence I have, but it is certainly sufficient. Numbers refer to Google's eDiscovery.

104627: Neal overruled Scott Spencer on whether I should represent AdX at CAB
Scott Spencer advocated that I be slotted to go to CAB to represent AdX Buyside. Neal Mohan overruled him, and chose Shamim instead. Shamim was a young Indian Male who was new to the team. I was an established expert. Neal did not even attempt to justify why he chose Shamim over me. Representing AdX at an external event is a big deal.

116123: Jens Promoted Vince Lacey to Frontline Lead (over me) at Neal's Insistence

Despite widespread doubts about Vince Lacey's lack of qualifications for Frontline Lead. – and despite members of the team objecting - Jens explains that it was Neal's decision.

116425: Less than 24 hours after nominating me for a leadership course, Jens abruptly withdraws without justification

128517: Jens gives me a harsh PIP-exit message because it's what Neal wanted
Jens explains that "Neal wants me to give her a "don't do that again' message" – meaning, Neal was quite involved in my PIP process and Jens was just the messenger. Neal was included on many other PIP emails. (see 123353- Jens confirming to Neal that he delivered the PIP)

139711: Lauren Thomas Ewing tells Neal Mohan that I've been complaining of Gender Bias

150657: Neal shuts down the recommendation from HR that I be given a spot bonus for my good work, again, with no justification.
He instead describes my attempt to show him my good work and ask for a promotion as "awkward" (see also: 150603, 150606, 150639)

152486: Lauren makes it clear that Neal, and not Jens, is the decision maker on compensation
Jens asks Lauren about my compensation. Lauren explains "there'd be a good case for NEAL to throw discretion her way." If Jens was the final decision maker, there would be no need to appeal to Neal.

b. Jens' history of advising peer reviewers to be "completely honest" – and of proactively reaching out to peer reviewers in the first place.

Please Produce the following

All emails sent by Jens Skakkebaek between September 1, 2010 and September 24, 2014 that includes the following language:

Subject: Peer Review
OR
Body: Peer Reviewer
OR
Body: "completely honest"

Justification

It wasn't typical for managers to email peer reviewers at all, let alone to request "completely honest" feedback. Jens' emails were a product of bias and retaliation. Google argues that Jens' use of "completely honest" in those emails was normal and not retaliatory or biased.

In Pre-hearing Order #10 the arbitrator makes the following determination:

Obviously, too, Skakkebaek's (and other supervisor's) use of the "be honest" language in review requests made before Skakkebaek's September 24th emails would be relevant to the issue of the weight to be given to the September 30th emails.

First, consider Jens' state of mind immediately prior to sending out the emails about me:

138223: Jens upset that my peers reviewers are unlikely to validate the PIP
Jens complains to HR that I only included the people that I actually worked with as peer reviewers and didn't include the people involved in my PIP (who didn't actually work with me). September 24.

138224: Jens sends out "completely honest" emails to my peers
Minutes after complaining to HR that my peer reviewers were not likely to provide the documentation necessary to retroactively justify the PIP (that I actively objected to and complained about), Jens sends out the "completely honest" emails to my peer reviewers

Second, consider that an employee relations investigation was triggered right after I complained to my email group about these emails:

On September 29, 2014, I complained to my email group, from my personal email account, of unfair treatment based on Jens Skakkebaek's September 24th email to my peers, requesting that they be "completely honest." Later that day, on September 29, 2014, Cindy Treloar in employee relations was assigned an "incident" to review.

138646 - ASSIGNED AN INCIDENT TO REVIEW – UNFAIR TREATMENT - 29 Sep 2014 19:53:34 +0000
Special Investigations/Employee Relations/Unfair Treatment/Unfair Perf

Google argues that Jens' emails about me were normal and typical, and not the result of a desperate attempt to retroactively justify the pip, and Google seems to argue that the subsequent emails on September 30 were not triggered by the employee relations incident triggered from my private complaint to my email group. In line with the arbitrator's determination in Pre-hearing order 10, please produce the record of emails sent by Jens in soliciting feedback from peer reviewers – both those emails that included "completely honest" language as well as those emails that did not.

c. Other documents that are referenced in Google's eDiscovery, but which were not included.

Google's eDiscovery includes reference to multiple documents that are missing from the production. Please produce the documents, files, (or performance reviews) referenced in the following emails

7660: Caroline's notes to Cindy

164152: "PIP REVISIT DOC" – see
164390: Lauren Thomas' performance review – getting feedback from Aaron Rothman
169925 – Aaron's research/committee into perf
171278 – links to various promotion documents
176120. Trix on promotion rates in Neal's org. Go/PMG-Data
184630: Deck that praises IB
137097 – Ashley Wilson's perf feedback from Cindy

d. Anonymous emails to [redacted]@ or [redacted]@ in 2014 and 2015

Please produce all emails received anonymously by Ariana Tortorici or Jens Skakkebaek in 2014 or 2015.

Justification: Evidence of whether Google used anonymous email forwarding as common HR practice.

e. IB relocation

Please produce all planning documents related to the IB relocation.

**From:** Rebecca Spivak <rebeccaspivak@outlook.com>
**Date:** Thursday, March 7, 2019 at 11:29 AM
**To:** Brian Johnsrud <BJohnsrud@chjllp.com>
**Subject:** Re: eDiscovery Files

Hi Brian –

Since parting with my previous attorneys and choosing to represent myself Pro Se, I have never made a settlement demand. I can't imagine that I ever will. As I have previously explained, this case isn't about maximizing a monetary award. I would rather lose on the truth than win on a fiction.

I also cannot help but wonder why you would encourage me to make a "demand" consistent with your "prior guidance" so that you can "respond." If you genuinely wanted to explore whether I was open to such a settlement, you could have simply advanced that as a settlement offer. Or you could have asked that we have an exploratory conversation. But you didn't. Instead you pushed me to make a demand. I suspect there's something else going on here – and it's not about Google wanting to settle - though I don't know what it is. As you've repeatedly reminded me, Judge Baines sanctioned me – pretty harshly. Patrick then wasted no time kicking me when I was down, brashly making repeated threats to get the arbitrator to issue additional sanctions against me - despite have no defensible grounds or basis for doing so. Google is clearly enjoying its upper hand in arbitration, and obviously has no reason to engage in meaningful settlement discussions. So it's hard to figure out your email.

Are you trying to provoke me to make a demand as some sort of setup? Or is this just a good-cop/bad-cop thing? I really don't get it, but I am honestly concerned. If I seem unreasonably suspicious, please let me remind you that when my lawyers sent Google a demand letter in 2015, Google "responded" by suing me. It's hard not to worry that Google is looking for an excuse to do something similar again here. Whatever you're imagining doing if I would only make a demand, please don't do it. I'm not making any demands or threats. That's not my goal here, and I'm obviously in no position to do so anyway. And if it's just a more "innocuous" game of good-cop/bad-cop with you and Patrick (where Patrick threatens sanctions while you offer kind words and the chance to settle for nuisance money), I beg you to please stop. I'm just trying to get through this case on the merits – to whatever extent that is possible.

Please no more games. Please keep the focus on moving the case forward. I've been waiting more than 3 years for Google to provide comparative pay data so that I can accurately model my economic damages. If you are interested in driving this case to resolution, please work with me on this.

Best Regards,
Rebecca

---

**From:** Rebecca Spivak <rebeccaspivak@outlook.com>
**Date:** Thursday, March 7, 2019 at 2:10 PM
**To:** Brian Johnsrud <BJohnsrud@chjllp.com>, Patrick Sherman <PSherman@chjllp.com>
**Subject:** Re: Spivak, Rivka vs. Google Inc. - JAMS Ref No. 1110018238

Hi Patrick and Brian –

I think a status call is warranted.

- We need to get dates on the calendar for the next round of discovery and depositions.
- We likely need the arbitrator to clarify various discovery obligations and make additional orders (specifically related to discovery for Neal Mohan and pay data) – and/or to schedule a call for us to make those arguments.
- I would also like to ask Judge Baines to review the claims that I have asked Google to correct and rectify, and to seek summary judgment in my favor on those.

Do you want to try to jointly come to an agreement on the agenda/topics for the call, or do you want to respond separately?
Please let me know how you would like to proceed.

Best Regards,
Rebecca

**From:** Cynthia Victory <cvictory@jamsadr.com>
**Date:** Thursday, March 7, 2019 at 1:17 PM
**To:** "bjohnsrud@chjllp.com" <bjohnsrud@chjllp.com>, "rebeccaspivak@outlook.com" <rebeccaspivak@outlook.com>, "psherman@chjllp.com" <psherman@chjllp.com>
**Cc:** "lpola@chjllp.com" <lpola@chjllp.com>
**Subject:** Spivak, Rivka vs. Google Inc. - JAMS Ref No. 1110018238

Dear Counsel,

Please provide a status update and if a status conference call is needed with the Arbitrator.

Thank you,

Cynthia

---

**From:** Patrick Sherman <PSherman@chjllp.com>
**Date:** Friday, March 8, 2019 at 8:28 AM
**To:** "Rebecca Spivak (rebeccaspivak@outlook.com)" <rebeccaspivak@outlook.com>
**Cc:** Brian Johnsrud <BJohnsrud@chjllp.com>
**Subject:** Re: Discovery

Hi Rebecca,

Thank you for your email. We are sorry that you have been ill and understand that it has been a very difficult winter. We are glad to hear that you are recovering and ready to re-engage on this case.

As an initial matter, we still need to access to your document production so that we can begin reviewing it. We have been exceptionally patient on that topic given the competing demands for your time, though we are now getting to a point where receipt and review of that production and resolution of the other outstanding discovery disputes will be a gating function in this case, particularly with regard to the scheduling of your deposition

(which will take place after we receive and review all of your documents and data, and before other depositions in this case).

As to your eDiscovery production, when you first sent us a link to your .mbox file, we indicated that we were not going to access it until we understood what you were sending and had a chance to discuss it with Google, in part because it was not in printable PDF form as required by the Arbitrator's Order. We then sent you several requests for access via gmail shortly after the holidays, though it sounds like you may have shut off access by that point. No one at Google has accessed your production, which is why we are still asking you to grant us access.

We also need you to produce all of your Facebook trading records, as we have repeatedly requested, both though our requests for production and through the eDiscovery process. The Arbitrator has plainly held that they are discoverable. Please produce all of your Facebook trading records, all brokerage statements reflecting any of your Facebook trades or holdings, and all documents and communications relating to your Facebook trades by Tuesday, March 12. It should not take more than an hour of your time.

We have held off on filing a motion to compel and for sanctions in light of your unavailability over the last two plus months. Our preference is still to resolve those disputes without the need for a motion, though we are quickly approaching a point where we will need to either receive all of the responsive documents and data or move forward with a motion and hearing.

Obviously, before we take your deposition, and before we then schedule depositions of Google employees, we will need to receive and review all of your responsive documents and data. We will respond to your email about the case management call early next week.

Best regards,

Patrick

---

**From:** Rebecca Spivak <rebeccaspivak@outlook.com>
**Date:** Friday, March 8, 2019 at 12:44 PM
**To:** Patrick Sherman <PSherman@chjllp.com>
**Cc:** Brian Johnsrud <BJohnsrud@chjllp.com>
**Subject:** Re: Discovery

Hi Patrick, please respond to my specific requests. Are you going to produce the following?

a. Pay and Promotion Data for PMs in Neal Mohan's Organization
b. Jens' history of advising peer reviewers to be "completely honest"
c. Other documents that are referenced in Google's eDiscovery, but which were not included in that production
d. Anonymous emails to ablute@ or jskakkebaek@
e. Comprehensive documentation on the planning involved in the IB relocation and decision to not allow PMs to work remotely

---

**From:** Brian Johnsrud <BJohnsrud@chjllp.com>
**Date:** Friday, March 8, 2019 at 3:20 PM
**To:** 'Rebecca Spivak' <rebeccaspivak@outlook.com>
**Subject:** RE: eDiscovery Files

Rebecca,

We don't play games. We tell you what we're going to do, and then we do it. That is why you already owe Google $12,500 in this case.

We're very happy to continue arbitrating this case and honestly don't care if you make a settlement demand. We're simply telling you that, if you want to, the time to do so is running out in light of the time and expense associated with the matter. That is not a unique message for you and instead the reality of most matters in arbitration.

Have a nice weekend,

Brian Lee Johnsrud

---

**From:** Rebecca Spivak <rebeccaspivak@outlook.com>
**Date:** Monday, March 11, 2019 at 12:45 PM
**To:** Brian Johnsrud <BJohnsrud@chjllp.com>
**Subject:** Re: eDiscovery Files

Hi Brian,

Ok, I hear you. This is a hard topic for me and it sets off all my defense mechanisms. The thing is that I genuinely can't make a settlement demand. I can't bring myself to tell Google what I think I deserve, what I think would make things right, and then voluntarily invite them to respond and try to invalidate that. I can't put myself in that kind of vulnerable position with Google. There's just too much history. I can write briefs. I can submit arguments to the arbitrator. I can handle Google sending me unsolicited insults/posturing about their opinion of my case. But I can't ask. It's visceral. I can't engage in a voluntary exchange where I invite Google to insult me / reject what I think is fair / try to invalidate my experience. From my perspective, that's what a demand letter would do. You may not understand the psychology (it's certainly some flavor of PTSD), but please trust me that the power dynamic involved in sending Google a demand and then waiting for a response would be truly intolerable for me. Please don't ask me to send in a demand. It messes with my head. I can't.

Now, this is largely moot, because I am not looking to settle. I have considered settlement to be completely off-the-table prior to getting pay data and taking depositions. That validation is too important to me. Still, your emails made me question my resolve on this and whether anything could convince me to change my mind. As an exercise to satisfy my own curiosity, I tried to see if I could stand in Google's shoes and write a settlement offer that was fair and that I would receive favorably – even prior to receiving pay data and taking depositions. I thought I would get no further than assembling some Devil's advocate arguments that would be

unconvincing. But To my genuine surprise, I was able to write a settlement offer that I would consider. I've attached it here.

Now, the words in this letter are obviously my own. I don't believe that Google is ready to say/acknowledge these things or to settle in this range. I do not imagine that Google would send me such an offer (even though that would be the right thing to do). I am not asking for this offer and absolutely do not intend this to be opening a door to negotiate. I am sharing what a settlement offer would have to look like to be compelling - for the sake of clarity. If nothing else, it can put the question of whether settlement is even possible at this point to rest. It's a distracting idea.

Best Regards,
Rebecca

---

**From:** Patrick Sherman <PSherman@chjllp.com>
**Date:** Monday, March 11, 2019 at 5:48 PM
**To:** "Rebecca Spivak (rebeccaspivak@outlook.com)" <rebeccaspivak@outlook.com>
**Cc:** Brian Johnsrud <BJohnsrud@chjllp.com>
**Subject:** RE: Spivak, Rivka vs. Google Inc. - JAMS Ref No. 1110018238

Hi Rebecca,

In terms of the agenda for the status conference and progress on this case, our perspective is as follows:

First, we agree that we need to resolve the current written discovery disputes. We will not be in a position to prepare a motion to compel until we receive and review the contents of your eDiscovery production.

Second, we would like to get a briefing schedule set for a motion to compel production of all of your Facebook trading records and account statements for any period in which you held Facebook stock, and all communications about your Facebook trades, to the extent you are refusing to produce them. They are plainly in your possession, custody, or control.

Third, to the extent all documents responsive to our prior requests for production are not being produced as part of your eDiscovery production, we will want to meet and confer with you to understand why you are refusing to produce them, and what particular objections you are relying on to refuse to produce them. Depending on how that meet and confer process goes, we may file a motion to compel production.

Fourth, as to your requests for production, Pre-Hearing Order No. 1 provided: "Discovery shall be pursuant to the JAMS Employment Arbitration Rules, supplemented by any additional discovery agreed to by the parties, or ordered by the Arbitrator following a hearing." Pre-Hearing Order No. 5 authorized you to serve requests for production back in June 2018. To the extent you wish to serve further requests for production you should request a hearing on that. We note that discovery regarding the comparator issue was already fully briefed before you raised your sanctions motion, and we can discuss re-setting that for a hearing.

Fifth, to the extent you take issue with assertions in Google's answer to your notice of claims, it will be up to the Arbitrator to resolve disputed issues of fact at the hearing on the merits. Any motion for summary judgment on your claims would be wildly premature at this point, in part because we have not even received or had the

opportunity to review your eDiscovery production or take your deposition, and that would itself be grounds for denial of any summary judgment motion.

While you are of course welcome to raise whatever issues you like with the Arbitrator, as we previously communicated, from our perspective receipt and review of your electronic discovery production and your Facebook trading records and related communications is a gating function on further progress on this case, including potential further motion practice, prior to your deposition or the deposition of Google employees.

Best regards,

Patrick

---

**From:** Rebecca Spivak <rebeccaspivak@outlook.com>
**Date:** Tuesday, March 12, 2019 at 12:18 PM
**To:** Patrick Sherman <PSherman@chjllp.com>
**Cc:** Brian Johnsrud <BJohnsrud@chjllp.com>
**Subject:** Re: Spivak, Rivka vs. Google Inc. - JAMS Ref No. 1110018238

Hi Patrick,

Let's get a briefing schedule set for your motion to compel production of my investment account statements. I would really appreciate the clarity on that. I have never been ordered to hand these over, and Google has no claims that support this discovery. This is fishing and harassment. And you continue to try to control the narrative/framing with a strawman argument about custody and control. I'm not biting, and I doubt Judge Baines will either. I cannot imagine that he will order me to produce these.

Then again, I did not imagine that Judge Baines would rule as he did on pre-hearing order #10. So he may rule in your favor despite there being no grounds to do so. If he does, I will add that order to the growing pile of evidence that I have been assembling to support an eventual appeal (as well as something else that I am not ready to discuss at this time).

Either way, regardless of how he rules, it will be better than this spinning. Thanks for moving this forward with a recommendation that we go to Judge Baines. We need that clarity. I won't need a lot of time for my brief. I imagine Google will not either? What are your thoughts on timing?

Best Regards,
Rebecca

---

**From:** Rebecca Spivak <rebeccaspivak@outlook.com>
**Date:** Wednesday, March 13, 2019 at 9:50 AM
**To:** Patrick Sherman <PSherman@chjllp.com>
**Cc:** Brian Johnsrud <BJohnsrud@chjllp.com>
**Subject:** Re: Spivak, Rivka vs. Google Inc. - JAMS Ref No. 1110018238

Hi Patrick –

Let's be efficient with scheduling motions to compel. Since you are presumably starting to work on the motion to compel my account statements, you should also consider bring a motion to compel the repetitive eDiscovery that you are demanding. Please note that I will not be duplicating this production.

I object for multiple reasons, including the fact that I have already produced this eDiscovery, and this request is duplicative. Google has already acknowledged receipt of my eDiscovery. Google already has access to this information and the contents are already within Google's knowledge. This is a violation of the scope of discovery and it is being demanded for an improper purpose. Google has already shown that it will maliciously distort, forward, and make public my private information in order to harass me and to gain an unfair advantage in this case and to discourage me from vigorously pursuing it. By pre-hearing order #10, it has been established that Google will not be held accountable for doing so and that I will instead be penalized for objecting to this. To protect my civil rights and my right to privacy, personal safety, and due process, I will not be repeating my eDiscovery production.

Should you seek a motion to compel, I will raise my list of objections with Judge Baines. Please do not wait under the assumption that I will be sending you a duplication of my eDiscovery. I will not. If this is unacceptable, you will need to being a motion to compel this repetitive eDiscovery production. I will raise my objections with Judge Baines. Once again, I realize that Judge Baines might find a way to rule in your favor, but then we will have clarity.

Best Regards,
Rebecca

---

**From:** Patrick Sherman <PSherman@chjllp.com>
**Date:** Wednesday, March 13, 2019 at 2:10 PM
**To:** 'Rebecca Spivak' <rebeccaspivak@outlook.com>
**Cc:** Brian Johnsrud <BJohnsrud@chjllp.com>
**Subject:** RE: Spivak, Rivka vs. Google Inc. - JAMS Ref No. 1110018238

Hi Rebecca,

Thank you for your emails below. In light of your failure to produce all responsive eDiscovery documents and data in the format ordered by the Arbitrator by the deadline, your refusal to re-activate access once we understood what you were purporting to produce, and your refusal to produce your Facebook trading records that the Arbitrator has previously held to be discoverable, we will be filing a motion seeking the following relief:

(1) an order for issue sanctions in Google's favor on its after-acquired evidence defense,

(2) an order requiring you to produce all responsive documents and data previously ordered by the Arbitrator as part of the eDiscovery protocol,

(3) an award of monetary sanctions, and

(4) in the alternative, to the extent all of the foregoing relief is not granted in full, an order compelling production of your Facebook trading records and related account statements and communications.

We are providing this level of specificity now so that there are no surprises when you receive our motion. We do not take this approach lightly, and are only doing so because you have been extraordinarily uncooperative throughout this process and have flaunted the Arbitrator's orders. It is clear that monetary sanctions are not enough to get you to conduct your case in a professional manner.

We propose the following briefing schedule:

Google's Motion to Compel due: March 29, 2019

Spivak's Opposition due: April 5 or 8 (if that is enough time on your end)

Google's Reply due: Five days after receipt of your opposition brief

We further note that your failure to timely serve all responsive eDiscovery documents and data as previously ordered by the Arbitrator in the format ordered by the Arbitrator, and your refusal to re-activate whatever you purport to have produced once we understood your approach, has now been dragging on since January, even though we have gone out of our way to accommodate every delay that you have unilaterally insisted upon. Every day that goes by is another day that delays our ability to start reviewing your production, which in turn delays resolution of the written discovery disputes, depositions, and the other items discussed below.

Please let us know whether the briefing schedule proposed above works for you.

Best regards,

Patrick

---

**From:** Rebecca Spivak <rebeccaspivak@outlook.com>
**Date:** Wednesday, March 13, 2019 at 5:06 PM
**To:** Patrick Sherman <PSherman@chjllp.com>
**Cc:** Brian Johnsrud <BJohnsrud@chjllp.com>
**Subject:** Re: Spivak, Rivka vs. Google Inc. - JAMS Ref No. 1110018238

Hi Patrick,

I disagree with and object to many of the foundational assertions that you have made in your email.

Regardless, I do not agree to this schedule because it is one-sided. I also need to file motions and briefs to address the following

- Comparator data for Neal Mohan's organization – as ordered by the arbitrator and supported by the evidence I have provided Google
- Google's refusal to correct and rectify prior claims
- Google's failure to produce all responsive eDiscovery documents
- Google's ongoing refusal to meet and confer with me (or even acknowledge my requests) on a second round of eDiscovery/Discovery, despite the arbitrator's repeated order

I propose that we jointly file briefs on all open discovery issues and any motions to compel or for sanctions. I propose that we then jointly file oppositions and responses.
Would the schedule you propose work for you with the understanding that we will each be filing our own motions, oppositions, and replies?

---

**From:** Rebecca Spivak <rebeccaspivak@outlook.com>
**Date:** Wednesday, March 13, 2019 at 8:24 PM
**To:** Patrick Sherman <PSherman@chjllp.com>
**Cc:** Brian Johnsrud <BJohnsrud@chjllp.com>
**Subject:** Re: Spivak, Rivka vs. Google Inc. - JAMS Ref No. 1110018238

You know, I'm actually not sure of the right process here. I realize I can just bring my motions as a counterclaim along with my opposition.
How about this:

> Google's Motion to Compel due: March 29, 2019
>
> Spivak's Opposition (and any counterclaims) due: April 12
>
> Google's Reply due: Five days after receipt of Spivak's opposition brief

Best Regards,
Rebecca

---

**From:** Rebecca Spivak <rebeccaspivak@outlook.com>
**Date:** Thursday, March 14, 2019 at 11:37 AM
**To:** Brian Johnsrud <BJohnsrud@chjllp.com>, Patrick Sherman <PSherman@chjllp.com>
**Subject:** Re: Request

Hi Brian,

Please see attachment.

Best Regards,
Rebecca

---

**From:** Patrick Sherman <PSherman@chjllp.com>
**Date:** Thursday, March 14, 2019 at 2:30 PM
**To:** "Rebecca Spivak (rebeccaspivak@outlook.com)" <rebeccaspivak@outlook.com>
**Cc:** Brian Johnsrud <BJohnsrud@chjllp.com>
**Subject:** RE: Spivak, Rivka vs. Google Inc. - JAMS Ref No. 1110018238

Hi Rebecca,

We think it is best to ask the Arbitrator to hold a status conference so that we can discuss what issues he would like briefed at this time, and the order in which he would like them briefed.

In the interests of transparency, we will ask to have the longest standing issues resolved first, especially since you have now had a three-plus month lead on reviewing our eDiscovery production while we have been waiting for access to yours. We are fine with providing you more time to respond to our motion, and can use the April 12 date you propose below for your opposition deadline.

To the extent you believe there are items missing from Google's production, please identify them with specificity; it is not enough to make general assertions about allegedly missing documents. As we previously indicated, there is a relatively small set of emails and documents that are being redacted to protect third party privacy, so if you think there are any beyond those please identify them with particularity, as Google has already produced well in excess of 50,000 documents.

As to your latest requests for production, we do think it makes sense to seek clarity from the Arbitrator as to whether and when you may serve them (as indicated in his prior orders quoted below), and what an appropriate response time would be given the delays in you providing us access to your eDiscovery production. We also note that even if the Arbitrator grants you permission to serve these additional requests for production, we would have at least 30 days to serve objections and responses, so any determination on what must be ultimately be produced would be completely premature at this time.

To the extent the Arbitrator wants briefing on the issues you have raised below, we agree to you filing and serving your own separate motion on those on April 12, though we would need at least two weeks to respond.

We will let Ms. Victory know that we would like the Arbitrator to hold a status conference to set a briefing schedule on these issues and will copy you on that message.

Best regards,

Patrick

---

**From:** Rebecca Spivak <rebeccaspivak@outlook.com>
**Date:** Sunday, March 17, 2019 at 5:58 PM
**To:** Patrick Sherman <PSherman@chjllp.com>
**Cc:** Brian Johnsrud <BJohnsrud@chjllp.com>
**Subject:** Re: Spivak, Rivka vs. Google Inc. - JAMS Ref No. 1110018238

Hi Patrick –

To reciprocate your transparency, I do want to let you know that I will ask Judge Baines that my motions to strike and my motion to compel pay data be resolved first.

We are not in agreement that I willingly agree to wait until April 12 to raise these issue. Before I understood that we could even ask Judge Baines to address the briefing schedule, I was trying to understand the practical logistics of how things worked. I was trying to figure out how I could get my motions in given that you would be proceeding with filing motions against me. Since we are going to let Judge Baines decide the order of the motions, I will make my arguments.

I do still support setting up a briefing schedule for Google's motions to compel and for sanctions if that's what needs to happen to stop the back-alley bullying and threats, but I believe that my motions to compel and to strike should come first.

Best Regards,
Rebecca