The Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| RIVKA ("REBECCA") SPIVAK, | ) | No. 2:20-cv-01480-MJP |
| | ) | |
| Plaintiff, | ) | COUNTER-CLAIMANT BAYERN'S |
| v. | ) | OPPOSITION TO SPIVAK'S |
| | ) | COMPOUND MOTION (DKT. #19) |
| ALPHABET, INC., *et al.*, | ) | AND "EMERGENCY MOTION TO |
| | ) | STAY" (DKT. #20) |
| Defendants. | ) | |
| | ) | |

Shawn Bayern ("Counter-Claimant") files this short opposition to two filings Rebecca Spivak made in close succession in the week of October 19.  The court has noted those motions as same-day motions, but as the motions have yet to be decided, Counter-Claimant hopes this opposition will aid the court's analysis.

For reference, Spivak, though acting *pro se*, is a member of the State Bar of California (Dkt. #3 at 4).

## I.    A REASONABLE DELAY IS ACCEPTABLE

The main function of Dkt. #19 is to request an extension of time to respond to Counter-Claimant's counterclaims.  That request appears to be moot, now that Spivak has filed a motion

COUNTER-CLAIMANT BAYERN'S OPPOSITION TO DKT. #19 AND DKT. #20 - 1

1  to dismiss those counterclaims (Dkt. #21).  Nonetheless, as a general matter Counter-Claimant

2  has no objection to reasonable extensions of time.  In considering what is reasonable, Counter-

3  Claimant draws the Court's attention to the following observations:

4  *First*, Spivak chose the timing of this action herself, and she knew that answers to

5  complaints may include counterclaims.  It should not be a surprise that she would need to

6  respond to claims against her, just as she has forced others to respond to her claims against them.

7  *Second*, Spivak had time to write a 90-page complaint, and she also had time to file five

8  motions (in three separate filings) in the week of October 19, one of which in fact responded to

9  the counterclaims by moving to dismiss them under Fed. R. Civ. P. 12(b)(6).

10  ## II.    AN INDEFINITE STAY IS UNWARRANTED

11  Though reasonable extensions are understandable, the indefinite stay that Spivak requests

12  (Dkt. #20; *see also* Dkt. #19 at pp. 2–3) is not justified.  Spivak seeks to use her own delays in

13  defending against criminal charges as a tactic to postpone consideration of civil counterclaims

14  against her indefinitely (presumably while seeking to move her own civil claims forward).

15  Spivak has had since March 2020 to respond to the felony charges against her in Florida and

16  since November 2019 to respond to the first criminal charges against her. (*See* Exhibit A at 2–3,

17  5.)  She has stalled her felony proceedings by flouting an arrest warrant. (Dkt. #3 ¶ 305; Dkt. #16

18  at 7 (showing the warrant outstanding since March 3, 2020).)

19  "The decision whether to stay civil proceedings in the face of a parallel criminal

20  proceeding should be made in light of the particular circumstances and competing interests

21  involved in the case. This means the decisionmaker should consider the extent to which the

22  defendant's fifth amendment rights are implicated. In addition, the decisionmaker should

23  generally consider the following factors:  (1) the interest of the plaintiffs in proceeding

COUNTER-CLAIMANT BAYERN'S OPPOSITION TO DKT. #19 AND DKT. #20 - 2

expeditiously with this litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay; (2) the burden which any particular aspect of the proceedings may impose on defendants; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the interest of the public in the pending civil and criminal litigation." Keating v. Office of Thrift Supervision, 45 F.3d 322, 324–25 (9th Cir. 1995) (internal quotation marks and citations omitted).  "[T]he extent to which the defendant's Fifth Amendment rights are implicated is a significant factor . . ., but it is only one consideration to be weighed against others." Id. at 326.

Here, Spivak's own delay since March in her felony case, and her own choice in the timing of this action, should be weighed very heavily.  Spivak has brought a frivolous[1] civil action against others while fleeing from an active arrest warrant and repeatedly violating a restraining order against her.  (*E.g.*, Dkt. #12, Exhibit B.)  She is in no position to use the criminal charges against her as a shield against civil counterclaims.

Spivak's own complaint tied her claims to the felony charges against her (*see* Dkt. #3 ¶¶ 22 (listing her felony case in Florida among "Related Cases and Investigations"), 274, 305, 334, 346–48).  Her complaint cites part of the communications that served as the basis for her first misdemeanor charges for violating a restraining order (Dkt. #3 ¶¶ 271–74), describes her initial arrest (*id.* ¶¶ 275–78), admits to sending the emails that were the basis for the restraining order (*id.* ¶ 228), and admits to sending other communications she describes as "terrible" and which form part of the basis for her criminal charges (*id.* ¶ 308).  If Spivak is correct that the counterclaims against her cannot proceed until her criminal charges are resolved, it is hard to see

---

[1] Spivak was served with a Rule 11 motion on October 13 under Fed. R. Civ. P. 5(b)(2)(C); under Fed. R. Civ. P. 11(c)(2), that motion has not yet been filed or presented to the Court.

COUNTER-CLAIMANT BAYERN'S OPPOSITION TO DKT. #19 AND DKT. #20 - 3

how her own claims in this action can proceed until that point either.  In any event, indefinite delays are strongly disfavored.  <u>Blue Cross & Blue Shield of Ala. v. Unity Outpatient Surgery Ctr., Inc.</u>, 490 F.3d 718, 724 (9th Cir. 2007) ("We agree with the majority position that lengthy and indefinite stays place a plaintiff effectively out of court.  Such an indefinite delay amounts to a refusal to proceed to a disposition on the merits.").

Counter-Claimant has a strong interest in prompt civil proceedings because Spivak has demonstrated an ongoing and inexplicable obsession with him and has significantly, maliciously, and unlawfully disrupted his life for the past 15 months.  (*See* Dkt. #12, Exhibit A at 12–27; Dkt. #12, Exhibit B.)  A restraining order and criminal charges in Florida have not deterred her, and she continues to seek new ways to harm him.  (*See* Dkt. #12, Exhibit B.)  The deterrence associated with civil compensatory and punitive damages is an important, independent avenue to prevent ongoing harms.

By contrast, Spivak's suggestion that her Fifth Amendment rights are implicated by the civil counterclaims against her is conclusory, and she gives little sense of how she would be prejudiced by the progress of civil claims against her.  For example, Spivak vaguely suggests that raising putative affirmative defenses to civil claims would compromise her defense against her criminal charges, but she offers no facts or legal arguments that justify that conclusion.  Spivak does not even state what those affirmative defenses might be, only that she "believes that there are certain affirmative defenses" (Dkt. #20 at 2).  In managing Spivak's litigation, it will be important to pin her down to consistent specifics.

Spivak's Fifth Amendment rights do not appear to be implicated at all by the civil defamation counterclaim, which does not arise from the same acts that gave rise to the criminal charges against her.  The restraining order does not prohibit her from speaking *about* Counter-

COUNTER-CLAIMANT BAYERN'S OPPOSITION TO DKT. #19 AND DKT. #20 - 4

Claimant, only from speaking directly or indirectly *to* him.  (Dkt. #12, Exhibit A at 43–44.) Spivak is charged with aggravated stalking and violations of a restraining order (Exhibit A at 3); she is not charged with criminal defamation, and it is inconceivable that she would ever be so charged.  *See* Garrison v. Louisiana, 379 U.S. 64, 69 (1964) ("Changing mores and the virtual disappearance of criminal libel prosecutions lend support to the observation that under modern conditions . . . it can hardly be urged that the maintenance of peace requires a criminal prosecution for private defamation.") (internal quotation marks and citations omitted).

Spivak's argument that the calculation of punitive damages in this case depends on criminal sentencing is unavailing.  Spivak cites no authority for the proposition that a criminal sentence mitigates or prevents an award of punitive damages under Florida law, and that proposition appears to be incorrect.  *See* Smith v. Bagwell, 19 Fla. 117, 126 (1882) ("In Hoadley vs. Watson, 45 Vt. 289, the court hold that 'exemplary damages are not given in lieu of punishment. The fact that in a civil action founded on a criminal act the guilty party had been compelled to pay exemplary damages to the party injured on account of the act would be no bar to the prosecution in a criminal proceeding for the same act, nor to any part of the fine imposed by law upon such offences. Neither should the liability to, nor the actual imposition of a fine in a criminal proceeding, bar any portion of the liability in a civil action for the same act. * * * * The liability to both criminal punishment and to such damages as a jury may impose in a civil suit, is the consequence of any act that is criminal and also creates a civil liability.'").

There is a closer relationship between the criminal charges and the counterclaim for intentional infliction of emotional distress, which includes conduct by Spivak that violates the restraining order.  (*See* Dkt. 12 ¶¶ 372–86.)  Still, Spivak has not suggested *how* her Fifth Amendment rights are implicated, and indeed she has already admitted in court (at least in the

context of her first misdemeanor charge) to actions that violate the restraining order (Dkt. #12, Exhibit C at p. 4, lines 27–30).  In any event, as discussed above, she is in a poor position to raise those concerns in the first place because the delays in her criminal case arise only from her status as a fugitive.  She should not be permitted to delay civil claims against her indefinitely while she uses civil legal process against others and while she refuses to face criminal charges.

Moreover, Spivak's motion was not an "Emergency," and labeling it as such does not justify cursory argumentation.

### III.   SPIVAK'S CONCLUSORY MOTION-TO-DISMISS ARGUMENT IS WITHOUT MERIT

Spivak's Dkt. # 19 (at 3) also contains a conclusory motion to dismiss the counterclaims, separately from her later motion to the same effect (Dkt. #21).  Counter-Claimant defers here to his fuller response to Spivak's later motion, except to note that there is no "presumption" (Dkt. #19 at 3) that a defamation plaintiff is a public official.  And there is no "maliciousness" (*id.* at 4) in seeking punitive damages for civil wrongs that warrant such damages under tort law. Indeed, it is commonplace for the same wrongful actions to lead to both civil and criminal liability.  *See, e.g.*, Parisi v. Broward Cty., 769 So. 2d 359, 363–64 (Fla. 2000) ("The same contemptuous conduct may be the subject of both criminal and civil proceedings."); J & P Transp., Inc. v. Fid. & Cas. Co., 750 So. 2d 752, 753 (Fla. Dist. Ct. App. 2000) ("It is clear [in this case that] the criminal and civil suits were based on the same wrongful acts . . . .").

Respectfully submitted on October 26, 2020,

s/Shawn Jason Bayern   (pro se)

Shawn Jason Bayern
494 Frank Shaw Road
Tallahassee, FL 32312

Telephone:       516-510-3798
Email:             bayern@gmail.com

COUNTER-CLAIMANT BAYERN'S OPPOSITION TO DKT. #19 AND DKT. #20 - 6