The Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| RIVKA ("REBECCA") SPIVAK, | ) | No. 2:20-cv-01480-MJP |
| | ) | |
| Plaintiff, | ) | DEFENDANT/COUNTER-CLAIMANT |
| v. | ) | BAYERN'S OPPOSITION |
| | ) | TO SPIVAK'S "MOTION TO DEEM |
| ALPHABET, INC., *et al.*, | ) | ALLEGATIONS ADMITTED; |
| | ) | AND STRIKE AFFIRMATIVE |
| Defendants. | ) | DEFENSES; AND DISMISS |
| | ) | COUNTERCLAIMS" (DKT. #21) |

During the week of October 19, Spivak made three distinct filings in response to Shawn Bayern's ("Defendant") answer, affirmative defenses, and counterclaims.  This brief is in opposition to the last of her filings, containing motions (1) to "deem allegations admitted," (2) to strike, and (3) to dismiss Defendant's counterclaims.  All these motions are without merit and are apparently designed merely to multiply and delay proceedings toward no legitimate end. They should all easily be denied.

Defendant responds in a separate short opposition to the motions in Dkt. #19 and Dkt. #20 because the Court noted those as same-day motions under LCR 7(d)(1).  To aid in judicial economy, however, it may be helpful to observe here that at least the first of those motions (Dkt.

DEFENDANT/COUNTER-CLAIMANT BAYERN'S OPPOSITION TO DKT. #21 - 1

#19) now appears to be moot; it was a request for an extension so that Spivak would not need to respond to Defendant's pleading on time, but Spivak has now responded to that pleading with the present motion under Fed. R. Civ. P. 12(b)(6). To the extent Dkt. #19 raises a motion-to-dismiss argument, it appears to have been superseded by Spivak's present motion (Dkt. #21).

For reference, though *pro se*, Spivak is a member of the State Bar of California (Dkt. #3 at 4).

## I.   SPIVAK'S "MOTION TO DEEM ALLEGATIONS ADMITTED" IS WHOLLY WITHOUT MERIT

### A.  Defendant's Answer Contained No "Sham Denials"

Spivak's first motion takes issue with Defendant's answer to her 90-page complaint, which alleges civil-conspiracy and RICO claims for $360 million against Defendant, Google, Facebook, and others. At least as to Defendant, Spivak's complaint (Dkt. #3) is entirely a fantasy; substantially all of it is objectively frivolous.[1] Nonetheless, in the interest of procedural justice, Defendant in fact carefully analyzed the entire complaint and responded appropriately to every factual allegation within it, individually and with all necessary specificity. Contrary to Spivak's assertion, there is no presumption that filing a prompt answer implies a lack of reasonable inquiry, and Spivak's motion shows not even the slightest shortfall in Defendant's answer (Dkt. #12).

Mainly, Spivak's motion incorrectly lays out several purported examples of "sham denials" in the form of statements that Defendant lacked information or belief about the complaint's factual allegations. As a preliminary matter, Spivak's legal argument cites and relies

---

[1] Spivak was served with a Rule 11 motion on October 13 under Fed. R. Civ. P. 5(b)(2)(C); under Fed. R. Civ. P. 11(c)(2), that motion has not yet been filed or presented to the Court.

DEFENDANT/COUNTER-CLAIMANT BAYERN'S OPPOSITION TO DKT. #21 - 2

on outdated authority (<u>Harvey Aluminum (Inc.) v. NLRB</u>, 335 F.2d 749, 751 (9th Cir. 1964)).  In fact, "[a]fter the 1983 amendments to Rule 11, absent a finding of bad faith, factual allegations in the complaint (or answer) must be tested through the normal mechanisms for adjudicating the merits. Thus, our suggestion in <u>Harvey Aluminum</u> that a district court has freestanding authority to strike pleadings simply because it believes them to be a sham is no longer valid."  <u>Rev Op Grp. v. ML Manager LLC (In re Mortgs. Ltd.)</u>, 771 F.3d 623, 631–32 (9th Cir. 2014) (citations and internal quotation marks omitted) (finding that the district court did not have the power to strike denials in an answer as sham denials, except under Fed. R. Civ. P. 11).

Though tedious, the simplest way to respond to Spivak's motion is to address every one of the paragraphs she identifies in turn, in order to demonstrate the answer's thoroughness, precision, and good faith.  It may be worth mentioning at the outset, however, that Defendant did not overuse or summarily adopt a "no information or belief" position as a general matter in his answer; he answered in that manner sparingly and appropriately, only when he genuinely had no information or belief and no way to conduct a reasonable investigation.[2]

For ease of exposition, this opposition brief follows the ordering in Spivak's motion:

<u>Paragraphs 10 and 26.</u>  Paragraph 10 of the complaint[3] alleges, in relevant part, "Plaintiff was employed by Google from April 2010 until November 2015 as a Senior Product Manager, and for most of that time she worked on Google's display and video advertising products." Paragraph 26 alleges "Plaintiff was employed by Google from April 2010 through November

---

[2] As a small example, to respond to Paragraphs 10 and 11 (Dkt. #3, p. 5), Defendant conducted a reasonable search of databases to verify, and then to admit (Dkt. #12, p. 3), basic factual allegations that the complaint made about other parties in this action to which Defendant has no relationship.  The good faith and attention to detail described in the text is evident throughout Defendant's answer.

[3] There are two paragraphs numbered 10 in the complaint.  Spivak's motion refers to the one beginning on Dkt. #3, p. 4.

DEFENDANT/COUNTER-CLAIMANT BAYERN'S OPPOSITION TO DKT. #21 - 3

2015 as a Senior Product Manager."  Defendant has an insufficient basis to evaluate the factual

accuracy of these dates and titles, and the reasonable investigation he conducted suggests that

Spivak has at times inflated or misstated her employment dates, titles, responsibilities, or job

functions.[4]  As one example, her publicly available profile on LinkedIn, which Defendant

investigated in producing his answer, claims—inconsistently with her complaint—that she

worked at Google until 2016, not 2015 (Exhibit A at 2).

In any event, in his answer, Defendant had previously averred "Defendant admits

Plaintiff worked at Google" on information and belief (Dkt. #12 ¶ 1) and was under no

requirement to parse out that statement again in reply to all the repetitive, compound, and

sometimes bizarre allegations in Spivak's complaint.  *Cf.* 1 Federal Litigation Guide § 1.34[6]

(Matthew Bender) ("[I]f a sentence in the complaint is compound, the defendant will have an

easy way out in answering. Specifically, the defendant can simply deny the allegation in its

totality, even if only one of the compound elements is untrue.")  To be clear, throughout his

answer Defendant did not play procedural games by responding generally to compound

allegations; as the answer demonstrates on its face, Defendant in fact answered Spivak's

voluminous complaint with more, not less, specificity than was required of him.

---

[4] For example, in a 403-page purported case file from the EEOC that she attached to her complaint, Spivak is reported to claim in an interview that she "began" at Google in 2010 as a "Senior Product Manager" (Dkt. #8 at 107).  But other evidence in the same exhibit indicates that "[a]s a result of her performance shortcomings, Spivak was demoted in 2011" (Dkt. #8 at 276), and the title that Google's attorneys use to describe her in one document is "Product Manager," not "Senior Product Manager" (*id.*).  Defendant's prior interactions with Spivak have led him to form the belief that Spivak is frequently not truthful, and Defendant has no reason to trust a factual allegation in her complaint merely because it corresponds to an unverified document that Spivak has submitted.  No reasonable lawyer would admit a factual allegation on that basis alone.

DEFENDANT/COUNTER-CLAIMANT BAYERN'S OPPOSITION TO DKT. #21 - 4

For reference, and as an aid to evaluating the rest of her motion, Spivak's motion describes Defendant's answers to Paragraphs 10 and 26 as "an especially egregious example" in favor of her argument that the answer was inadequate.

Paragraphs 17, 35, 47, 48, 50, 75, and 85.  Spivak argues that Defendant improperly claimed insufficient factual knowledge in responding to Spivak's allegations about documents that she filed in this action as Dkt. #8, purportedly a case file from the EEOC.  Defendant is entirely unconnected to Spivak's EEOC case.  He has no way to verify that the contents of Spivak's exhibit are accurate or germane, and he is under no duty to accept the veracity or completeness of preliminary evidence that Spivak has offered.  As background and as a further explanation for his unwillingness to trust the integrity of exhibits that Spivak has filed, Defendant has observed Spivak submit false documents to a court previously and then justify having done so with a conclusory and bizarre allegation that she was acting under "duress" when lying to the court.  (*See* Exhibit B at 2 (an email from Spivak in which she wrote, "I'm not afraid of the declaration I sent in Florida … you know, the one I encoded with proof that it was bullshit under submitted duress.").  For that declaration, *compare* Exhibit C (the declaration Spivak submitted in that prior case) *with* Exhibit D (a version of that same exhibit that Spivak marked up in a later effort to demonstrate, for unclear reasons, that she had been insincere when filing it).)

In any event, Paragraph 17 is just a statement of the purportedly related EEOC case. Paragraph 35 is an allegation about when the EEOC received a document Spivak purportedly sent to them, a matter that Defendant cannot verify.  Paragraphs 47 and 48 state Spivak's interpretation of a filing that Spivak alleges Google submitted in an EEOC case.  Paragraph 50 is an allegation about what Google submitted in an EEOC case and when they submitted it—

matters about which Defendant has no information, belief, or means to conduct an independent investigation.  Paragraph 75 is, in substance, a characterization that something is "inexplicably missing" from a document that Spivak filed, and Defendant has no basis to evaluate that characterization (which in any event may not even be a factual allegation, as he indicated in his answer).  Paragraph 85 is again about the details of Spivak's EEOC case, of which Defendant knows virtually nothing.

Paragraphs 10, 18, 20, and 238.  Paragraph 10 was addressed above.  Paragraph 18 in the complaint is just Spivak's statement of a purportedly related case; Defendant's answer admitted that the case exists in the public record, but he has no other knowledge of it.  Paragraph 20 is a statement of what Spivak calls an "apparently unrelated" case that is tied to bizarre allegations throughout the complaint (*e.g.*, Dkt. #3 ¶¶ 167–69).  Defendant cannot fully follow those allegations but obviously has no personal knowledge concerning them.  Records of proceedings in California county courts are not reasonably accessible to him, and seeking them out (for no clear purpose) would lead to undue expense, so Defendant answered accordingly.  The allegations in Paragraph 238 concern only Spivak's subjective beliefs; clearly Defendant has no way to evaluate the truth of those allegations.

Paragraphs 191, 202, 265, 267, 268, and 312.  Paragraph 191 is a rambling, compound, bizarre allegation about what Spivak "now believes."  To the extent it offers any factual allegations, they all concern Spivak's own subjective mental state, which obviously Defendant has no information about and cannot verify.  Nonetheless, Defendant interpreted the paragraph generously and answered it quite specifically:  "Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding Plaintiff's subjective beliefs in Paragraph 191. To the extent Paragraph 191 alleges a broader conspiracy among Defendant

and others, its allegations are specifically denied."  It is hard to see how Defendant could have been more specific.

Paragraph 202 in the complaint reads "Bayern repeatedly and specifically pressured Plaintiff to establish 'formal proof' that she was incompetent" and is followed by an image of a fragment of a text-message conversation in which Defendant used the phrase "formal proof" in a different context.  Defendant's answer was to deny Spivak's interpretation of the text message and to add that Paragraph 202 "includes a quotation from text messages; Defendant admits that the text-message conversation occurred and avers that the textual conversation of which it is a part speaks for itself."  Far from being inadequate, Defendant's response to these paranoid, frivolous allegations was in fact indulgent and exceedingly respectful.

Paragraph 265 refers to the existence of a bizarre "backchannel" that appears to be a fantasy that Spivak has concocted as (1) an explanation of why she was unsuccessful in an arbitration case she brought against Google and (2) an arbitrary basis for her ongoing stalking of Defendant since August 2019 (*see generally* Dkt. #12, Exhibits A–B).  The paragraph reads, in its entirety, "Through the backchannel, Plaintiff had been told that Bayern would meet her in a park near her hotel and tell her everything. Plaintiff was wary, but still blinded by a hope for answers and closure."  (To be clear, the paragraph alleges that Spivak learned information *about* Defendant—from unspecified sources—not *from* Defendant.)  The response to that paragraph in Defendant's answer speaks for itself and demonstrates the answer's characteristic care, attention, and specificity:  "In response to the first sentence of Paragraph 265, Defendant denies on information and belief that there was ever a 'backchannel.' Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations in Paragraph 265."  How could Defendant form a specific belief about an allegation that an

unspecified person had previously told Spivak that Defendant would meet her in a park?  It seems exceedingly unlikely that Spivak received such information from anyone, but Defendant has no way to evaluate the specific allegation.  Paragraphs 267 and 268 are extremely similar to Paragraph 265 and need no further explication.

Paragraph 312 of the complaint reads, "As alleged above, the conspiracy was formed by explicit agreement between Google, Johnsrud, Kayal, Bayern, and other defendants," and Defendant answered:  "In response to Paragraph 312, Defendant denies that any conspiracy involving Defendant exists."  Because Defendant challenged the premise of Spivak's allegation ("the conspiracy was formed"), not just the allegation itself (*how* the conspiracy was formed), a more comprehensive denial seemed suitable and prudent, and it provided useful notice to Spivak of Defendant's position.  Again, the pattern is that Defendant's answer was more thoughtful, not less thoughtful, than necessary.

Spivak's present motion argues that Defendant's answers in the paragraphs above "all fail to address the substance of the allegation, and should therefore also be deemed admitted" (Dkt. #21 at 4).  As should be very clear, that is an extraordinarily frivolous argument.  Indeed, as these paragraph-by-paragraph descriptions demonstrate, it is hard to discern a substantive basis for Spivak's motion except to delay or multiply the proceeding unnecessarily.  Defendant consistently answered with specificity and performed as thorough an investigation as possible in response to each factual allegation in the complaint.

## B.  A Qualified General Denial Followed by Specific Admissions and Denials Is Commonplace and Not Improper

Numbered paragraph 2 of Spivak's motion (Dkt. #21 at 2) makes a separate but equivalently baseless legal argument:  Spivak suggests it was somehow improper for Defendant's answer to include the commonly pleaded sentence "Any allegation not specifically

admitted herein is denied," followed by specific admissions and denials.  This misinterprets Fed.

R. Civ. P. 8(b)(3).  *See* <u>Snap! Mobile, Inc. v. Croghan</u>, No. 18-CV-04686-LHK, 2019 U.S. Dist.

LEXIS 28759, at *13 (N.D. Cal. Feb. 22, 2019) ("Croghan's general denial alerted Snap that any

allegation not specifically admitted is denied, which is compliant with Rule 8(b)(3). It is of no

consequence under Rule 8(b)(3) that Croghan also specifically responded to each allegation.").

Despite her suggestion, Spivak's cited authority is not to the contrary.  *See also* Richard L.

Marcus & Thomas D. Rowe, Jr., <u>Civil Procedure</u> 177 (describing this manner of pleading as a

commonplace hedge against the "negative-pregnant problem," under which a denial of a

rephrased allegation in a list of specific denials could be taken to admit an inadvertently missing

or logically non-contradicted part of a complaint's allegation).

## II.      SPIVAK'S "MOTION TO STRIKE" IS WITHOUT MERIT

"The court may strike from a pleading an insufficient defense or any redundant,

immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  "Motions to strike are

generally regarded with disfavor because of the limited importance of pleading in federal

practice, and because they are often used as a delaying tactic. . . . Given their disfavored status,

courts often require 'a showing of prejudice by the moving party' before granting the requested

relief."  <u>Cal. Dep't of Toxic Substances Control v. Alco Pac., Inc.</u>, 217 F. Supp. 2d 1028, 1033

(C.D. Cal. 2002) (quoting <u>SEC v. Sands</u>, 902 F. Supp. 1149, 1166 (C.D. Cal. 1995)).

"Ultimately, whether to grant a motion to strike lies within the sound discretion of the district

court. In exercising its discretion, the court views the pleadings in the light most favorable to the

non-moving party, and resolves any doubt as to the relevance of the challenged allegations or

sufficiency of a defense in defendant's favor."  *Id.* (internal citations omitted); *see also* <u>Prods. &</u>

<u>Ventures Int'l v. Axus Stationary (Shanghai) Ltd.</u>, No. 16-cv-00669-YGR, 2017 U.S. Dist.

LEXIS 55487, at *5 (N.D. Cal. Apr. 11, 2017) ("Because motions to strike a defense as insufficient are disfavored, they will not be granted if the insufficiency of the defense is not clearly apparent."); FDIC v. Hanson, No. C13-0671-JCC, 2013 U.S. Dist. LEXIS 189874, at *3 (W.D. Wash. Dec. 10, 2013) ("'A motion to strike is a severe measure and it is generally viewed with disfavor.'") (quoting United States v. 729.773 Acres of Land, 531 F. Supp. 967, 971 (D. Haw. 1982)).

In her motion to strike, Spivak appears to seek merely to catch Defendant on immaterial technicalities and then, ironically, fails to state those technicalities correctly. Most of Spivak's challenges are conclusory and not founded on sufficient (or in some cases any) legal argumentation. Moreover, she makes no attempt to demonstrate prejudice of any kind. In the context of her complaint and her previous motions to extend deadlines and stay consideration of Defendant's counterclaims (Dkt. #19, Dkt. #20), filed just days before the present motion, her motion to strike appears calculated only to unnecessarily delay the proceedings and increase the cost of them for Defendant. The rest of this section considers Spivak's arguments against the various affirmative defenses in turn:

First Affirmative Defense: Failure to State a Claim. In theory, failure to state a claim is not a true affirmative defense. However, it is explicitly permitted to appear in answers under Fed. R. Civ. P. 12(h)(2) ("Failure to state a claim upon which relief can be granted . . . may be raised . . . in any pleading."). It is of course common practice to list such a "defense" in an answer, even if that practice is not fully precise as a conceptual matter. See Wright v. Jacob Transp., Ltd. Liab. Co., No. 2:15-cv-00056-JAD-GWF, 2015 U.S. Dist. LEXIS 83551, at *15 (D. Nev. June 24, 2015) (noting a split in authority but holding that "[b]ecause FRCP 12(h)(2) expressly permits [the filer of an answer] to raise an alleged failure to state a claim upon which

relief may be granted in its answer, the court will permit this affirmative defense to stand. The request to strike affirmative defense #1 is denied."); Snow Covered Capital, LLC v. Weidner, No. 2:19-cv-00595-JAD-NJK, 2019 U.S. Dist. LEXIS 218648, at *12 (D. Nev. Dec. 3, 2019) (holding "that this affirmative defense is proper").   In any event. it is unclear what practical purpose underlies Spivak's challenge to this defense; even if this defense were stricken, Defendant could still bring a motion under Fed. R. Civ. P. 12(c).

Second Affirmative Defense:  No Basis for Costs and Fees.  This affirmative defense has been upheld as proper in an answer where the basis for a plaintiff's claim for fees is statutory and the statute provides (as does, for example, 42 U.S.C. § 1988, on which Spivak's claim for attorneys fees presumably rests) that fees are not awarded in all circumstances.  See PK Studios, Inc. v. R.L.R. Invs., LLC, No. 2:15-cv-389-FtM-99CM, 2016 U.S. Dist. LEXIS 116057, at *11 (M.D. Fla. Aug. 30, 2016) (because a statute provided that "attorneys' fees are not appropriate in certain circumstances—which may be implicated here—the Court disagrees that the affirmative defense is immaterial").  Moreover, the complaint's own request for "legal fees and costs of suit" (Dkt. #3 at p. 88) cites no specific authority, so Defendant sought to preserve this defense.

Third Affirmative Defense:  Reliance on Documents.  This defense is admittedly more properly part of a general prologue to an answer than an affirmative defense, but the difference is immaterial.  Cf. Fed. R. Civ. P. 8(c)(2).  Defendant consents to relabeling this text as prefatory in nature rather than as a distinct affirmative defense.  (Defendant labeled this language a "defense" because he noted that labeling in a well-constructed answer produced in an unrelated case by the Department of Justice, but he agrees in principle that it is not an affirmative defense. Nonetheless, it should not be stricken, just relabeled.)

1      Fourth Affirmative Defense: Statute of Limitations and Laches.  Spivak relies on Barnes

2   v. AT&T Pension Benefit Plan, 718 F. Supp. 2d 1167, 1172 (N.D. Cal. 2010).  That case is

3   outdated authority, and other courts within the Ninth Circuit have declined to follow it since

4   Kohler v. Flava Enterprises, Inc., 779 F.3d 1016 (9th Cir. 2015), was decided.  *See, e.g.*, Aubin

5   Indus. v. Caster Concepts, Inc., No. 2:14-cv-02082-MCE-CKD, 2015 U.S. Dist. LEXIS 82881,

6   at *15-16 (E.D. Cal. June 23, 2015) (approving of the use of "general pleading" for affirmative

7   defenses).  As a general matter, Defendant agrees that "boilerplate pleading" of affirmative

8   defenses ought normally to be minimized, but Spivak's RICO complaint for $360 million is so

9   bizarre, rambling, and fantastical that it is hard to discern, even after significant analysis of it,

10  which defenses may apply.  Defendant included several affirmative defenses in his answer in

11  order to avoid waiving them in view of different possible interpretations of Spivak's complaint.

12  In particular, laches may be appropriate because Spivak has been threatening lawsuits for more

13  than a year, with ever-changing allegations and sham requests for preservation of records (*e.g.*,

14  Exhibit B at 3).

15      Fifth Affirmative Defense:  Claim and Issue Preclusion.  Similarly, these defenses need

16  not be pleaded with particularity, but in fact Defendant alleged specific facts in support of them.

17  *See, e.g.*, Dkt. #12 ¶¶ 381–82.  Though there was no need to develop this argument in his answer,

18  Defendant's position is that Spivak's present complaint is, in significant part, an impermissible

19  collateral attack on an already-issued restraining order and on pending criminal cases against her

20  in Florida; Defendant has laid out this position in a sanctions motion already served on Spivak

21  and to be filed in the future with this Court.

22      Seventh Affirmative Defense: Fraud.  Spivak provides no legal argument here.  Contrary

23  to Spivak's assertion, fraud is indeed an affirmative defense.  *See* Fed. R. Civ. P. 8(c)(1).  The

breadth of Spivak's claims may make it relevant that she committed fraud in a prior judicial proceeding, as described *supra*, p. 5.  Moreover, the answer alleges the particular fraud. (Dkt. #12 at p. 38, line 16.)

Eighth Affirmative Defense:  Unclean Hands.  Spivak's legal argument in support of judicial estoppel is entirely meritless.  First, Spivak cites no authority for her position.  Second, Defendant never stated in court that Spivak "believed the things she was saying," and Spivak provides no evidence that he did.  Third, in any event, Spivak misunderstands the terms "frivolous" and "malice"; even if she believes her allegations, a complaint that lacks an objectively reasonable basis violates Fed. R. Civ. P. 11(b)(3), and even a plaintiff who is not lying may bring a complaint for an improper purpose under Fed. R. Civ. P. 11(b)(1). Defendant's answer alleges many facts in support of characterizing Spivak's motivations as improper. *See, e.g.*, Dkt. #12 ¶¶ 370–80.

Ninth, Tenth, and Eleventh Affirmative Defenses:  Failure to Mitigate, Comparative Fault, and Assumption of Risk.  As above, these defenses need not be pleaded with particularity, but even so, Defendant did plead many specific facts sufficient to indicate that any damages Spivak may have suffered (e.g., from her criminal cases) are her own fault, could have been avoided through later acts Spivak could have taken, and would have been approached with knowledge and acceptance of the risk by a reasonable person.  *See, e.g.*, Dkt. #12 ¶¶ 383, 388–97.  Defendant also admitted allegations in Spivak's complaint that tend to show the same comparative fault, failure to mitigate, and assumption of risk.  *E.g.*, Dkt. #12 ¶¶ 21, 217–223.

In sum, Spivak's motion to strike misstates several legal standards, cites and relies on incorrect authority, unclearly cites the sources of that authority (*e.g.*, Dkt. #21 at 5, 7),

demonstrates no prejudice to her from the inclusion of defenses in a pleading, serves only to

delay the proceedings, and harms rather than aids judicial economy.  It should be denied in full.

### III.    SPIVAK'S CONCLUSORY "MOTION TO DISMISS" IS ENTIRELY BASELESS

Spivak's motion to dismiss makes three cursory arguments.  They all are entirely

incorrect.

*First*, Spivak argues: "Bayern offers no evidence to support his allegation that he is a

private individual, despite being the Dean of a (Public) State University and government

employee for the State of Florida."  However, it is not the role of a pleading to "offer . . .

evidence"; Fed. R. Civ. P. 8(a)(2) requires only "a short and plain statement of the claim

showing that the pleader is entitled to relief."  Though some states impose more particular

pleading requirements for defamation under their own procedural rules, there is no requirement

to plead defamation with particularity under the Federal Rules of Civil Procedure.  *See* <u>Markovic</u>

<u>v. N.Y.C. Sch. Constr. Auth.</u>, 99 Civ. 10339 (AGS), 2000 U.S. Dist. LEXIS 13130, at *8-9

(S.D.N.Y. Sep. 11, 2000) ("Because plaintiff's claims do not sound in fraud, the particularity

requirement of Fed. R. Civ. P. 9(b) does not apply. In fact, defamation claims . . . have *expressly*

been found to be subject to Fed. R. Civ. P. 8(a) and *not* a more heightened standard of

pleading.") (italics in original).  Even if Defendant were a public figure for the purposes of his

defamation counterclaim—which he is not,[5] though that of course can't be determined in the

absence of evidence—Defendant did in fact explicitly allege malice (Dkt. #12 ¶¶ 400–02), the

defamation standard appropriate to plaintiffs who are public figures, and he need not do so with

---

[5] Spivak's merits argument on this point is mistaken.  *See, e.g.*, <u>Sewell v. Trib Publ'ns, Inc.</u>, 622 S.E.2d 919, 924 (Ga. Ct. App. 2005) (holding that a professor at the State University of West Georgia was a private figure for the purposes of his defamation claim against a newspaper on matters arising even from his classroom conduct).

DEFENDANT/COUNTER-CLAIMANT BAYERN'S OPPOSITION TO DKT. #21 - 14

particularity.  *Cf.* Fed. R. Civ. P. 9(b) (culpable mental states may be alleged generally even in actions that require pleading with particularity).

  *Second*, Spivak raises an argument about judicial estoppel, though she cites no authority in support of that argument.  Her position is apparently that Defendant is judicially estopped from asserting Spivak's "malice" in his defamation counterclaim because he made the following statement in state court:  "she expressed to me with intense anger her belief that, because of coded signals she was seeing in my emails and chat messages, I was part of a conspiracy."  To begin with, as a simple factual matter, a statement that one "expresses a belief" is not an admission or assertion that the expressed belief is genuine.  Spivak did express beliefs, but Defendant has never suggested she was honest in expressing those beliefs.  The other statement Spivak lists is similarly unavailing as a factual matter:  "her threats seem to be motivated by her grossly mistaken belief that I caused others to send 'coded' or 'indirect' messages to her email address."  This statement refers to what *seems* true, not to what *is* true.  Regardless, and even more importantly, publishing a "grossly mistaken" belief may be "malicious" under defamation law even if it is honestly held, because it may be reckless.  *See* Dan B. Dobbs et al., <u>The Law of Torts</u> § 555 (2d ed.) ("Constitutional 'actual malice' does not mean common law malice in the sense of spite or ill will. Instead the actual malice terminology in the Constitutional [defamation] decisions is only a label applied to the requirement of knowing or reckless falsehood.").  In any event, as an alleged private figure, Defendant need not allege malice in the first place, as discussed in the previous paragraph:  "'actual malice' is never required where . . . the defamation plaintiff is a private individual and not a public official or public figure." <u>Miami Herald Pub. Co. v. Ane</u>, 423 So. 2d 376, 382 (Fla. Dist. Ct. App. 1982).  Finally, the statements Spivak mentions do not trigger judicial estoppel anyway because they were simply part of Defendant's general

framing of his restraining-order petition, not material facts that the court adopted or relied on, and there is no inconsistency between those statements and Defendant's current position.

*Third*, Spivak argues that Defendant's counterclaim for intentional infliction of emotional distress should be dismissed under Fed. R. Civ. P. 12(b)(6) because "Bayern offers no facts to support an allegation that he had physical manifestations of his emotional distress." As discussed above, it is not the obligation of a pleading to offer evidence. "Severe" is a legal conclusion, and it is supported by the "short and plain statement[s]" that Defendant alleged in his counterclaims, including the alleged fact of physical manifestations of symptoms of anxiety. *See* Fed. R. Civ. P. 8(a)(2). Intentional infliction of emotional distress need not be pleaded with particularity under the Federal Rules of Civil Procedure. *See* <u>Brown v. Bartholomew</u>, No. SACV 10-0707 JVS (RNBx), 2010 U.S. Dist. LEXIS 151666, at *6 (C.D. Cal. Dec. 13, 2010) (denying motion to dismiss where plaintiff pleaded "great mental distress and aggravation" and noting that "Defendants provide[d] no authority suggesting that the particularity requirements of Rule 9(b) apply to claims for intentional infliction of emotional distress"). Even so, Defendant did plead facts concerning the physical manifestations of emotional distress. (*See* Dkt. #12 ¶ 387.)

Like her other motions, Spivak's motion to dismiss is entirely unpersuasive.

## IV.   CONCLUSION

Spivak's conduct, even this early in the course of the present action, demonstrates bad faith. Spivak filed a frivolous complaint, then, in response to Defendant's answer, filed five motions (in three separate filings) in a single week. The earlier two of these those filings (Dkt. #19 & #20) help establish the motive for the third (Dkt. #21): Spivak evidently felt rushed in responding to Defendant's counterclaims and initially filed a motion for an extension of time (Dkt. #19)—which Defendant would not have opposed—followed by another motion requesting

DEFENDANT/COUNTER-CLAIMANT BAYERN'S OPPOSITION TO DKT. #21 - 16

a longer delay (Dkt. #20).  When the Court did not respond quickly enough to her "Emergency Motion to Stay" (Dkt. #20) for Spivak's tastes, Spivak then followed it up with a frivolous set of motions designed to delay the litigation to suit her purposes (and demonstrated, given that she had time to write these various motions, that her earlier request for an extension of time was in fact unnecessary).[6]  As this opposition to her later three motions has shown, Spivak's motions do not have a glimmer of legal merit, nor do they plausibly serve any purpose other than to delay and add unnecessary complexity to the litigation and to increase costs for Defendant.  Spivak has failed to research the basis for her motions adequately and has failed to apply legal principles correctly.  The motions should be denied in their entirety.

Respectfully submitted on October 26, 2020,

s/Shawn Jason Bayern   (pro se)

Shawn Jason Bayern
494 Frank Shaw Road
Tallahassee, FL 32312

Telephone:     516-510-3798
Email:            bayern@gmail.com

---

[6] In addition to her three filings in the week of October 19, Spivak filed the prior week what is also apparently in substance a motion, in the form of a "declaration," to compel Defendant to redact an exhibit he attached to his answer.  (Dkt. #15.)  The "declaration" merely stated a legal conclusion—that Defendant's exhibit needed to be redacted.  Spivak failed to research or support this legal conclusion, and it was plainly incorrect under Fed. R. Civ. P. 5.2(b), which exempts from redaction various state-court records.  Despite this failure to research, Spivak accused Defendant of "multiple rule violations" in that filing (Dkt. #15 at 2).  This was a minor abuse by Spivak, but it helps to demonstrate her pattern of misstating technicalities to increase the costs for Defendant of her frivolous litigation.

Moreover, without any evidence, and ultimately relying only on an assertion of what she subjectively "questions" (Dkt. #19 at 3), Spivak baselessly asserted in one of her motions that "Bayern's Counterclaim Was Not Brought in Good Faith" (*id.*).

DEFENDANT/COUNTER-CLAIMANT BAYERN'S OPPOSITION TO DKT. #21 - 17