1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10   RIVKA SPIVAK,                                     CASE NO. C20-1480 MJP

11              Plaintiff,                              ORDER ON DEFENDANTS'
                                                       MOTION TO DISMISS AND
12         v.                                          MOTION TO STRIKE

13   ALPHABET INC, et al.

14              Defendants.

15

16         This matter comes before the Court on Defendant Alphabet Inc ("Google") and Brian

17   Johnsrud's Motion to Strike (Dkt. No. 30), Motion to Dismiss (Dkt. No. 31), and Request for

18   Judicial Notice (Dkt. No. 32). Having reviewed the Motions and Request for Judicial Notice,

19   Plaintiff Rivka Spivak's Responses (Dkt. Nos. 40, 41, 53), Google/Johnsrud's Replies (Dkt. Nos.

20   45, 46), Spivak's Surreply (Dkt. No. 50), and all supporting materials the Court GRANTS the

21   Motion to Dismiss and DENIES the Motion to Strike as MOOT. The Court DISMISSES all

22   claims in this action WITH PREJUDICE.

23

24

# BACKGROUND

**A.      Plaintiff's Allegations**

This case finds its genesis in Spivak's employment at Google between 2012 and 2015 and her accusations against Google of pregnancy and gender discrimination and retaliation. (Complaint ¶¶ 28-33.) She now pursues three claims against Google and its attorney, Johnsrud: (1) conspiracy claims under 42 U.S.C. § 1985, (2) RICO violations, and (3) invasion of privacy. Her claims involve alleged misconduct perpetrated by Google and Johnsrud during an EEOC investigation and a private arbitration of her Title VII claims. She also bases her claims on conduct related to events she claims are part of a Google-led effort to render her incapable of testifying against Google and Johnsrud. According to Spivak, Google and Johnsrud led a conspiracy to: (1) intimidate Spivak so she would stop pursuing her Title VII claims, and (2) get Spivak diagnosed as delusional so she that cannot be a witness to criminal prosecutions or civil actions against Google and Johnsrud. Spivak's invasion of privacy claim rests on allegations that Google has spied on her and sent her threatening messages through "the backchannel" to force her to abandon her EEOC claims and intimidate her as a witness. The "backchannel" refers to "various off-the-record communications that Plaintiff had with Google" which was sometimes done via "anonymous email" or "anonymous chat" for which she claims to have "evidentiary support." (Compl. ¶ 25.)

Defendants Google and Johnsrud are the only remaining defendants in this case—Spivak has otherwise dismissed her claims against all other named defendants. Google and Johnsrud seek dismissal of Spivak's claims against them. The Court reviews Spivak's allegations and several pre-hearing orders from the related arbitration.

1        **1.      EEOC and arbitration events**

2        In June 2015 Spivak filed an EEOC complaint against Google alleging discrimination

3    and retaliation. (Compl. ¶¶ 36, 44, 46.) During the EEOC investigation she alleges that Google

4    and its attorney, Johnsrud, made false allegations and statements and submitted altered and

5    falsified evidence to the EEOC. (Id. ¶¶ 17, 50-51, 59-61, 71-79, 80-82, 84.) But eighteen months

6    after starting the EEOC process, Spivak asked the Commission to close the investigation and

7    issue a Notice of Right to Sue in June 2017. (Id. ¶ 85.)

8        In May 2017, Spivak's stayed arbitration recommenced in front of Robert Baines, a

9    retired California Superior Court Judge. During the arbitration she alleges that Google and

10   Johnsrud engaged in further misconduct. First, she alleges that Google used one of the

11   Arbitrator's orders to intimidate Google employees not to speak with Spivak or serve as

12   witnesses for Spivak. (Compl. ¶ 90.) This, Spivak alleges, caused her to lose at least one witness

13   who would have supported her claims and generally made others biased against her. (Id. ¶¶ 91-

14   93.) And she was "was prohibited from contacting one or more Plaintiff-side witnesses and

15   multiple Plaintiff-side witnesses were blocked or dissuaded from being available to testify on

16   Plaintiff's behalf." (Id. ¶ 94.)

17       Second, Spivak alleges that Google "continued to lie, mislead, submit false evidence, and

18   make material misrepresentations of fact" in the arbitration. (Compl. ¶ 104.) She filed a motion

19   for sanctions detailing the alleged misconduct. (See id. ¶¶ 105-07.) The Arbitrator denied the

20   motion, though Spivak claims that the order tacitly endorsed her claims that Google had engaged

21   in misconduct. (Id. ¶¶ 108-122.) She also "believes that Google understood well before Plaintiff

22   did that, despite appearances, Plaintiff had actually won on the sanctions motion, and that

23   Google was now facing the possibility of some kind of criminal referral or future prosecution at

24

the conclusion of the arbitration." (Id. ¶ 122.) She believes Google spent years trying to discredit her because of her discrimination claims and because Google and Johnsrud feared criminal liability. She claims Google and Johnsrud "schemed to find a way to have it documented that Plaintiff had been legally insane and suffering from schizophrenia or some other previously undiagnosed psychiatric delusional disorder." (Id. ¶ 125.)

At Spivak's request, the Arbitrator dismissed the matter with prejudice in July 2019. (Compl. ¶ 211.) Spivak alleges that a now-dismissed defendant, Jason Bayern, convinced her to dismiss her arbitration in July 2019 even though she received a $100,000 settlement offer from Google. (Id. ¶¶ 195-210, 214.)

### 2.      Conspiracy allegations outside of the arbitration

Spivak alleges that Google led a conspiracy to cause her to dismiss her Title VII claims and interfere with her ability to be a witness against it. The alleged conspiratorial activities are: (1) Google invaded Spivak's privacy by listening to her home or reading her emails and sending coded or overtly threatening messages; (2) Google conspired with Facebook to scuttle Spivak job application at Facebook while the arbitration was pending; (3) Spivak received messages from a lawyer intended for another person named Spivak, but which she claims was really to intimidate her into settling with Google; and (4) a Google-involved plot that led to her arrest in Florida for stalking Bayern.

First, as part of the invasion of privacy claim, Spivak alleges that "Google sent Plaintiff harassing emails, loosely disguising them as spam or marketing messages" (Compl. ¶ 153) and that Google had hacked into her Amazon Echo, home network, laptop or "smart refrigerator" to spy on her and then send harassing emails (id. ¶¶ 143-151.) Spivak alleges that these emails were "intentionally sent to harass, intimidate, and disorient her" although she cautions that she "does

not claim to be able to identify the source or intent of every email with 100% accuracy." (Id. ¶ 151 & n.7.)

Second, Spivak alleges that Google interfered with her job application to Facebook in September 2018. (Compl. ¶ 95-96.) She alleges that Google's lawyers knew she was interviewing with Facebook and "specifically told her to make sure that she preserved all evidence related to her interview process." (Id. ¶ 96.) Facebook allegedly gave her a written offer that was "for less than half the compensation she had been told to expect when she agreed to interview" and she rejected it. (Id. ¶¶ 97-100.) She "alleges, and the circumstantial evidence strongly supports, that Facebook baited Plaintiff with promises of high compensation and then forcefully sent Plaintiff an unwanted and low written offer in violation of their own protocols because they had agreed to help Google create misleading evidence in Plaintiff's case." (Id. ¶ 103.)

Third, at some unspecified time Spivak began to receive messages from an attorney representing another person with the last name Spivak about settlement negotiations in a medical malpractice case. (Compl. ¶ 165.) Spivak concluded that the attorney had "agreed to help Google intimidate and gaslight Plaintiff in a plausibly deniable way" and that this was part of a conspiracy. (Id. ¶¶ 168, 185.) Spivak raised her concerns about the email to Google and Arbitrator. (Id. ¶ 173.) Spivak also sought help from her friends, who then suggested she obtain psychiatric assistance. (Id. ¶¶ 170-184, 187-88.) "Plaintiff asked to be admitted to psychiatric hospitalization" although she claims she "knew she was not suffering from psychosis," but was following advice of friends. (Id. ¶ 189.) As a result of this stay, she believes that this started a "paper trail so that she could be disqualified from testifying in future criminal prosecutions

1    against Google not had any kind of psychotic break." (Id. ¶ 191.) But Spivak admits she left the

2    hospital without any psychiatric diagnosis. (Id. ¶ 193.)

3         Fourth, after things soured between Bayern and Spivak in late 2019, Bayern filed for an

4    "emergency Injunction Against Stalking" in Florida. (Compl. ¶¶ 215-233.) The temporary

5    injunction was granted to Bayern and Spivak then flew to Florida in November 2019 to contest

6    the entry of a permanent injunction. (Id. ¶ 254.) Spivak claims she had been convinced to travel

7    to Florida by a person, Luke Adams, who she "quickly assumed and understood was working for

8    Google." (Id. ¶ 255.) But Spivak does not explain why she made this assumption, and she claims

9    he told her that he worked for an entirely different company from Google. (Id. ¶ 256.) Spivak

10   claims "Adams also told Plaintiff that Google needed her to be a 'Nutter and a Stalker and a

11   Criminal'" and that she should go "along with that idea long enough for it to make to

12   settlement." (Id. ¶¶ 261-62.) Spivak then traveled to Florida and was arrested on November 6,

13   2019 in Tallahassee. (Id. ¶ 277.) At the hearing on the injunction the following day the "Judge

14   told Plaintiff that Plaintiff needed to go into rehab and that it needed to be inpatient." (Id. ¶ 285

15   (emphasis in original).) Ultimately it appears Spivak was charged with a felony and she lost her

16   job a year later for failing to disclose this on her background check. (Id. ¶ 311.)

17   **B.    Arbitration Proceedings**

18        Google and Johnsrud ask the Court to take judicial notice of several orders from the

19   Arbitrator. (Dkt. No. 32.) The Court summarizes them here.

20        First, in Pre-Hearing Order No. 8, the Arbitrator ruled on Google's motion for protective

21   order to bar Spivak from contacting Google employees. The Arbitrator denied the full request,

22   noting that "[w]hile immature and likely unwelcomed by the recipients, [Spivak's]

23   communications to date have not risen to the level of actionable harassment that requires an

24

1    order." (Order at 3 (Dkt. No. 32-1).) The Arbitrator nonetheless ordered that Google could

2    "furnish [Spivak] a list of current and former employees who have requested not to be contacted

3    by [Spivak], and [Spivak] is to honor those requests." (Id.)

4         In Pre-Hearing Order No. 10 addressed Spivak's and Google's cross-motion for

5    sanctions. (Dkt. No. 32-2.) Spivak sought sanctions for various abuses she claimed Google

6    perpetrated before and during the EEOC proceedings. This included filing an "unsupported and

7    frivolous" petition to compel arbitration, submitting altered emails and fabricated evidence to the

8    EEOC and in the arbitration, misrepresented Google's code of conduct, abused the order on

9    contacting Google employees, and concealed information from her. (Id.) Google sought

10   sanctions, arguing that Spivak's motion itself was frivolous. The Arbitrator denied Spivak's

11   motion and granted Google's, awarding it fees of $12,500. The Arbitrator stated "[g]iven the

12   highly inflammatory nature of Spivak's motion (i.e., accusing the opposing party or its attorneys

13   of altering evidence, fabricating evidence, and committing fraud on the Arbitrator), Google, in its

14   opposition papers, reasonably requested sanctions to deter Spivak from making future misguided

15   motions." (Id. at 11-12.)

16        In Pre-Hearing Order No. 13 from May 2019, the Arbitrator dealt with Spivak's request

17   for a protective order seeking to stop Google from "attempt[ing] to gather evidence to support a

18   request to law enforcement to file criminal charges against her." (Dkt. No. 32-3 at 3.) Spivak's

19   motion expressed her concern for her safety and sought protection from Google's

20   "'psychological abuse/warfare.'" (Id. at 4.) She also sought to add claims for abuse of process

21   and emotional distress. (Id. at 5.) The Arbitrator rejected Spivak's request and found it baseless.

22   He wrote: "The complained-of discovery efforts are commonplace and appropriate in any

23

24

1   contested matter, whether in arbitration or in the courts, and they do not form the basis for a

2   protective order." (Id.)

3          And in the final order dated July 22, 2019, the Arbitrator granted Spivak's request to

4   dismiss the arbitration and he dismissed all claims with prejudice. (Dkt. No. 32-4 at 2.) Google

5   waived its right to collect the sanctions order against Spivak. (Id.)

6                                          **ANALYSIS**

7   **A.      Request for Judicial Notice**

8          Google and Johnsrud ask the Court to take judicial notice of four pre-hearing orders from

9   the Arbitrator and the arbitration rules. The Court takes notice of these items.

10         Federal Rule of Evidence 201(b) permits the Court to take judicial notice of facts "not

11  subject to reasonable dispute in that it is either (1) generally known within the territorial

12  jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to

13  sources whose accuracy cannot be reasonably questioned." This includes materials incorporated

14  into a complaint by reference whose authenticity cannot be questioned. See No. 84 Employer-

15  Teamster Joint Council Pension Trust Fund v. Am. W. Holding Corp., 320 F.3d 920, 925 n.2

16  (9th Cir. 2003). And "a district court ruling on a motion to dismiss may consider a document the

17  authenticity of which is not contested, and upon which the plaintiff's complaint necessarily

18  relies." Parrino v. FHP, Inc., 146 F.3d 699, 705–06 (9th Cir. 1998), superseded by statute on

19  other grounds. The Court may also take judicial notice of "[m]aterials from a proceeding in

20  another tribunal. . . ." Biggs v. Terhune, 334 F.3d 910, 915 n.3 (9th Cir. 2003), overruled on

21  other grounds by Hayward v. Marshall, 603 F.3d 546 (9th Cir. 2010) (en banc). This includes

22  filings in arbitration proceedings. See, e.g., Rachford v. Air Line Pilots Ass'n, Int'l, 284 F.

23

24

App'x 473, 475 (9th Cir. 2008), <u>as amended on denial of reh'g and reh'g en banc</u> (Aug. 11, 2008) (taking judicial notice of arbitrator's ruling).

First, Spivak specifically cites to, quotes from, and/or refers to three of the four Arbitrator orders in her complaint: (1) Pre-Hearing Order No. 8 (<u>see</u> Compl. ¶¶ 90, 315, 350), (2) Pre-Hearing Order No. 10 (<u>see</u> <u>id.</u> at ¶¶ 107-118, 124-25, 313, 315-16), and (3) Pre-Hearing Order No. 18 (<u>see</u> <u>id.</u> ¶¶ 18, 321, 334). These orders are properly subject to judicial notice because they are incorporated by reference into the complaint. <u>See</u> <u>Tellabs, Inc. v. Makor Issues & Rights, Ltd.</u>, 551 U.S. 308, 322 (2007); <u>Parrino</u>, 146 F.3d at 705–06.

Second, all of the arbitration orders are capable of judicial notice under the general principal that judicial notice applies to materials from arbitrations whose authenticity cannot be disputed. <u>See, e.g.</u>, <u>Rachford</u>, 284 F. App'x at 475. Spivak does not question the authenticity of the documents submitted. Instead, she argues that notice is inappropriate because Google asks the Court to "take disputed allegations and interpretations as fact." (Pl. Opp. to Def. RJN at 2 (Dkt. No. 53) ("Google asks this court to take notice, as 'fact,' of their purported subjective interpretation of those orders, and their unsupported and untrue allegations about what was litigated and considered.") But the Court takes notice of the Orders and the issues they address, not Google's or Johnsrud's interpretations of them.

Third, Google and Johnsrud ask the Court to take judicial notice of the JAMS Rule 25, which states:

> Proceedings to enforce, confirm, modify or vacate an Award will be controlled by and conducted in conformity with the Federal Arbitration Act, 9 U.S.C. Sec 1, et seq., or applicable state law. The Parties to an Arbitration under these Rules shall be deemed to have consented that judgment upon the Award may be entered in any court having jurisdiction thereof.

1    (Dkt. No. 32-5 at 12.) The Court takes notice of this rule and the fact that JAMS attempts to

2    conform to the Federal Arbitration Act. Spivak poses no objection to this portion of the request

3    for judicial notice.

4    **B.    Motion to Dismiss Standard**

5          In ruling on a Rule 12(b)(6) motion, the Court must accept all material allegations as true

6    and construe the complaint in the light most favorable to the non-movant. Wyler Summit P'Ship

7    v. Turner Broad. Sys., Inc., 135 F.3d 658, 661 (9th Cir. 1998). But the Court is not required "to

8    accept as true allegations that are merely conclusory, unwarranted deductions of fact, or

9    unreasonable inferences." Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).

10   The Court is also "not required to accept as true conclusory allegations which are contradicted by

11   documents referred to in the complaint." Steckman v. Hart Brewing, Inc., 143 F.3d 1293, 1295–

12   96 (9th Cir. 1998). And the Court need not "assume the truth of legal conclusions merely

13   because they are cast in the form of factual allegations." Fayer v. Vaughn, 649 F.3d 1061, 1064

14   (9th Cir. 2011) (per curiam) (quotation omitted). The Court may also "look beyond the plaintiff's

15   complaint to matters of public record" without converting the Rule 12(b)(6) motion into a motion

16   for summary judgment. Shaw v. Hahn, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995).

17         The Court may dismiss a complaint for "failure to state a claim upon which relief can be

18   granted." Fed. R. Civ. P. 12(b)(6). To survive dismissal, the complaint "must contain sufficient

19   factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft

20   v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570

21   (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the

22   court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

23   Iqbal, 556 U.S. at 678. "But where the well-pleaded facts do not permit the court to infer more

24

1    than the mere possibility of misconduct," the allegations are inadequate to satisfy Rule 8. Id. at

2    679. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it

3    stops short of the line between possibility and plausibility of entitlement to relief." Twombly,

4    559 U.S. at 557 (quotation omitted); see Adams v. Johnson, 355 F.3d 1179, 1183 (9th Cir. 2004)

5    ( "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion

6    to dismiss.").

7    **C.    The Motion to Dismiss is Timely-Filed and Procedurally Proper**

8           Spivak incorrectly argues that Google's and Johnsrud's motion to dismiss is untimely.

9    The motion was timely filed 21 days from their receipt of the Complaint and Summons.

10   (Compare Dkt. Nos. 26 and 29 with Dkt. No. 31); Fed. R. Civ. P. 12(a). This argument has no

11   merit.

12          Spivak also incorrectly argues that by moving to strike certain allegations, Google and

13   Johnsrud have admitted that they are true. But Google and Johnsrud have filed no answer and

14   their motion to strike is not an admission of any allegations. None of the authority Spivak cites

15   compels a contrary conclusion.

16          Lastly, the Court rejects Spivak's argument that by taking judicial notice of the

17   arbitration materials the Court must convert this into a motion for summary judgment. The

18   Court's consideration of the arbitration materials does not require it to decide disputed issues of

19   fact. This does not require conversion to summary judgment. See Shaw, 56 F.3d at 1129 n.1.

20   **D.    Claim Preclusion – Res Judicata**

21          The Court finds that Spivak's claims premised on Google's and Johnsrud's arbitration-

22   related conduct are subject to claim preclusion and barred from being relitigated.

23

24

1    "Under the doctrine of claim preclusion, a final judgment forecloses 'successive litigation

2    of the very same claim, whether or not relitigation of the claim raises the same issues as the

3    earlier suit.'" Taylor v. Sturgell, 553 U.S. 880, 892, (2008) (quoting New Hampshire v. Maine,

4    532 U.S. 742, 748 (2001)). "[C]laim preclusion prevents parties from raising issues that could

5    have been raised and decided in a prior action—even if they were not actually litigated." Lucky

6    Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc., 140 S. Ct. 1589, 1594 (2020). By

7    "preclud[ing] parties from contesting matters that they have had a full and fair opportunity to

8    litigate," the doctrine protects against "the expense and vexation attending multiple lawsuits,

9    conserv[e] judicial resources, and foste[r] reliance on judicial action by minimizing the

10   possibility of inconsistent decisions." Montana v. United States, 440 U.S. 147, 153–154 (1979).

11    "A prior proceeding has preclusive effect where it (1) involved the same claim or cause

12   of action as the later suit, (2) reached a final judgment on the merits, and (3) involved identical

13   parties or privies." First Pacific Bancorp, Inc. v. Helfer, 224 F.3d 1117, 1128 (9th Cir. 2000).

14   And "[a]n arbitration decision can have res judicata or collateral estoppel effect. . . ." See Clark

15   v. Bear Stearns & Co., 966 F.2d 1318, 1320–21 (9th Cir. 1992) (noting that estoppel can apply if

16   after making "an examination of the record  . . . the issue for which preclusion is sought is the

17   only rational one the factfinder could have found, then that issue is considered foreclosed"); see

18   also Restatement (Second) of Judgments § 84 (1982) ("[A] valid and final award by arbitration

19   has the same effects under the rules of res judicata, subject to the same exceptions and

20   qualifications, as a judgment of a court.").

21    Of the three elements of claim preclusion, only the first is contestable—the identity of

22   claims—because the parties are identical and there was finality given the dismissal with

23   prejudice. Identity of claims depends on whether: "(1) whether the two suits arise out of the same

24

transactional nucleus of facts; (2) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (3) whether the two suits involve infringement of the same right; and (4) whether substantially the same evidence is presented in the two actions." ProShipLine Inc. v. Aspen Infrastructures Ltd., 609 F.3d 960, 968 (9th Cir. 2010) (quotation and citation omitted). Applying the four-part test reveals that Spivak's arbitration-related claims are sufficiently identical and are barred by res judicata.

The Court finds the first element satisfied—a common nucleus of facts. The shared facts are Johnsrud's and Google's purported discovery misconduct and false statements in the EEOC and arbitration, submission of altered emails, and interference with Spivak's ability to contact friendly witnesses. It also include Spivak's claims that Google was attempting to harm her or have her criminally charged, including her claim that Google and Johnsrud were spying on her during the arbitration, that Google interfered with her Facebook application, and that Google was involved in "gaslighting" her through the medical malpractice case involving a different Spivak. Spivak raised or could have raised these issues or complaints during the arbitration. Indeed, the Arbitrator considered and rejected all of the claims she did raise and sanctioned her for making many of the same assertions she makes here. The Court finds that Spivak's claims here stem from the same conduct and nucleus of facts. And, ultimately, Spivak seeks to vindicate the same Title VII rights that were at issue in the arbitration, as is evident in the relief she seeks and the injuries she claims in this case—"the loss of [her] Claims in Arbitration." (See Compl. at ¶¶ 315, 317, 321, 333 p. 88-89, prayer for relief 1.a, 2.a.)

In opposition, Spivak argues that because the arbitration concerned Title VII claims about her employment in 2012-2015, they cannot relate to events that occurred during the arbitration and after. But this is an overly narrow review claims raised in the arbitration. She raised nearly every single claims of misconduct she presses here in the arbitration, and even sought leave to

1    add specific claims about them. (See Dkt. No. 32-3.) Spivak's reliance on Watson v. Las Vegas

2    Valley Water Dist., 378 F. Supp. 2d 1269, 1274 (D. Nev. 2005) is misplaced because the two

3    sets of claims there relied on entirely different evidence as to two different time periods. Here the

4    facts are entirely overlapping.

5        Spivak also argues that she could not have brought her conspiracy claims until she

6    learned of them well after the arbitration. Res judicata only "precludes recovery on claims

7    arising prior to [the first judgment's] entry, [but] it cannot be given the effect of extinguishing

8    claims which did not even then exist and which could not possibly have been sued upon in the

9    previous case." Lawlor v. Nat'l Screen Serv. Corp., 349 U.S. 322, 328 (1955). But here the

10   fundamental facts of the alleged misconduct and claimed interference were known to Spivak

11   during the arbitration and she specifically raised them. See Kearney v. Foley & Lardner LLP,

12   No. 05-CV-2112-AJB-JLB, 2016 WL 5405552, at *9 (S.D. Cal. Sept. 28, 2016), aff'd, 747 F.

13   App'x 478 (9th Cir. 2018) ("[F]raud intrinsic to an underlying litigation has no impact on that

14   judgment's res judicata effect."). There are no material facts that Spivak claims were concealed

15   and this is not a means of avoiding claim preclusion.

16       The Court also finds the other three elements of identity of claims are satisfied. First, the

17   rights established in the arbitration—that Google and Johnsrud did not engage in discovery abuse

18   or witness intimidation and that Google faced no liability for the alleged Title VII violations—

19   would be destroyed in this action if Spivak is successful. Second, the two suits involve the

20   infringement of the same rights—ultimately Spivak's Title VII rights as evidenced by the relief

21   she seeks in this case. Third, the evidence here is essentially identical with regard to the

22   arbitration-related conduct. The Court therefore finds that res judicata bars all three of Spivak's

23   claims related to any conduct that was raised or could have been raised in the arbitration. This

24

1   leaves only Spivak's § 1985 and RICO claims premised on her allegations of Google's post-

2   arbitration conduct that she claims impacts her ability to participate in federal or state actions and

3   her invasion of privacy claims based on conduct occurring after the arbitration.

4   **D.   Collateral Estoppel – Issue Preclusion**

5          The Court also agrees with Google and Johnsrud that issue preclusion/collateral estoppel

6   is an alternative ground for dismissal of Spivak's arbitration-related claims.

7          Issue preclusion "bars successive litigation of an issue of fact or law actually litigated and

8   resolved in a valid court determination essential to the prior judgment, even if the issue recurs in

9   the context of a different claim." Taylor, 553 U.S. at 892 (quotation and citation omitted). "The

10  doctrine of collateral estoppel prevents relitigation of an issue after the party estopped has had a

11  full and fair opportunity to present its case." LaFrance v. Kitsap Cty., No. CV07-05347RBL,

12  2008 WL 269009, at *4 (W.D. Wash. Jan. 29, 2008). Issue preclusion applies to arbitration

13  proceedings and requires: "(1) the issue at stake must be identical to the one alleged in the prior

14  litigation; (2) the issue must have been actually litigated in the prior litigation; and (3) the

15  determination of the issue in the prior litigation must have been a critical and necessary part of

16  the judgment in the earlier action." Clark, 966 F.2d at 1320.

17         Here, all three elements of issue preclusion apply to Spivak's arbitration-related claims.

18  First, the issues at stake are identical. Spivak claims that Google and Johnsrud prevented her

19  from prosecuting her Title VII claims before the arbitrator due to various acts of misconduct or

20  threats and intimidation. The same question of whether Johnsrud and Google engaged in

21  misconduct that improperly impacted her Title VII claims is at issue in this case. Second, Spivak

22  actually litigated the issues of purported misconduct that arose during the arbitration. This

23  includes: (1) Johnsrud and Google's purported submission of false emails, (2) preventing her

24  access to witnesses, (3) seeking to have her found to be delusional, and (4) threatening her

through "the backchannel." Third, the determination of Spivak's claims against Google and Johnsrud appear to have been significant in the arbitration, based on the facts alleged in the complaint. According to Spivak, the two orders on discovery-related issues had a large impact on her claims and led to her decision to terminate the arbitration with prejudice. (See Compl. ¶ 105 (noting that when she lost a motion to compel that sought "data critical to issues of liability and damages" she was "devastated").) And in opposing Google's motion, she makes no specific response on this issue, which can be construed as evidence Google's position has merit. See, e.g., Oliver v. Ocwen Loan Servs., LLC, No. C12-5374 BHS, 2012 WL 5207548, at *1 (W.D. Wash. Oct. 22, 2012) ("If a party fails to respond to a portion of a motion, the Court may consider such failure as an admission that the motion has merit.").

The Court finds that collateral estoppel/issue preclusion is an alternative basis on which Spivak's claims premised on the arbitration-related conduct are barred.

**E.     Federal Arbitration Act**

Google and Johnsrud argue that Spivak's arbitration-related claims are also barred by the time limits set by the Federal Arbitration Act. The Court agrees. Because the JAMS rules that governed Spivak's arbitration appear to conform to the Act, the Court finds that the Act's time limits apply. See Dkt. No. 32-5 at 12 (applying FAA rules); Lafarge Conseils Et Etudes, S.A. v. Kaiser Cement & Gypsum Corp., 791 F.2d 1334, 1338 (9th Cir. 1986) (noting application of FAA to awards made "within its purview"). Under the FAA, Spivak must have moved to set aside the dismissal within three months, 9 U.S.C. § 12, including on the theory that the dismissal was "procured by corruption, fraud, or undue means" 9 U.S.C. § 10(a). But Spivak waited over a year to file this case—far too late. Spivak fails to address this argument, which the Court deems as an admission it has merit. See, e.g., Oliver, 2012 WL 5207548, at *1. The Court finds this as another independent basis on which to dismiss Spivak's arbitration-related claims.

**E.     Spivak's remaining claims rest of implausible allegations**

The only aspects of Spivak's claims that remain are those premised on her post-arbitration allegations that Google and Johnsrud orchestrated a conspiracy to "discredit Plaintiff as a witness in future federal prosecution" and invaded her privacy. (Pl. Opp. to MTD at 13 (Dkt. No. 41).) As explained below, Spivak's core allegations are either legally barred or rest on attenuated beliefs and strained conclusions which do not satisfy Federal Rule of Civil Procedure 8. See Iqbal, 556 U.S. at 679; Adams, 355 F.3d at 1183. The Court DISMISSES all of these claims.

**1.     Civil Rights Conspiracy**

Of her three 42 U.S.C. § 1985 claims Spivak abandons all but one—her claim to have been barred or intimidated from providing testimony in a federal case in violation of 42 U.S.C. § 1985(2).[1] But Spivak fails to identify any federal litigation from which she has been barred, and there are no plausible allegations that Spivak has been barred from testifying in any future federal criminal matter involving Google or Johnsrud. In her surreply Spivak now claims that she is a potential witness in an antitrust case against Google brought by the Department of Justice. But there are no allegations about what her testimony would be, that she has been identified as a witness, or that she is prevented or limited in any way from providing testimony or being involved. This is not sufficient to state a claim under § 1985(2).

Even if Spivak had identified a federal or state proceeding, she has failed to allege any plausible allegations of a conspiracy involving Google and/or Johnsrud to interfere with her ability to participate or testify in any state or federal proceeding. All of Spivak's § 1985 claims

---

[1] Spivak's claims premised on the arbitration and arbitration-related conduct are barred by issue and claim preclusion and the FAA time bar. The Court therefore focuses on her alleged conspiracy to intimidate her as a witness. (See Compl. ¶ 314.)

1   require her to "first show that the defendants conspired—that is, reached an agreement—with

2   one another." <u>Ziglar v. Abbasi</u>, 137 S. Ct. 1843, 1868 (2017) (considering § 1985(3)). Spivak

3   alleges that Google and Johnsrud conspired with Bayern, Kayal, and "other defendants" to "have

4   Plaintiff diagnosed with a delusional disorder and, by force, be disqualified as a future witness in

5   subsequent criminal prosecutions or civil actions." (Compl. ¶¶ 313-14.) But the allegations fail to

6   show any actual agreement. At best there is parallel conduct from which no reasonable inference

7   can be drawn that there was an agreement. The only alleged connection between

8   Google/Johnsrud and the Florida arrest and prosecution is to Luke Adams, who Spivak alleges

9   she "quickly assumed and understood [he] was working for Google." (Compl. ¶ 255.) This

10  speculative assumption cannot suffice to show any agreement or conspiracy. It is, instead an

11  "unwarranted deduction[] of fact" and an "unreasonable inference." <u>See</u> <u>Sprewell</u>, 266 F.3d at

12  988. This is yet another reason Spivak fails to state a claim under 42 U.S.C. § 1985.

13          The Court DISMISSES all of these claims.

14  **2.      RICO**

15          Google and Johnsrud seek dismissal of Spivak's RICO claims because: (1) Spivak lacks

16  standing; (2) Spivak has not alleged an enterprise; and (3) Spivak's alleged predicate acts of

17  racketeering are inadequate. The Court agrees as to all three arguments. The Court DISMISSES

18  her RICO claims and dependent RICO conspiracy claim.

19          **a.      Standing**

20          Spivak lacks standing to bring her RICO claims because none of the injuries she alleges

21  is a cognizable injury to "business or property" as required under RICO. Spivak's alleged

22  injuries are that: (1) the RICO conspiracy caused her to lose her job due to the "false charges . . .

23

24

1   filed against her"; and (2) "she will be limited in future employment and business opportunities."

2   (Compl. ¶ 334.)[2]

3          To state a claim under RICO, the plaintiff must show that a predicate act proximately

4   caused an injury to business or property. See 18 U.S.C. § 1964(c); Canyon County v. Syngenta

5   Seeds, Inc., 519 F.3d 969, 972 (9th Cir. 2008); Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S.

6   479, 496 (1985). Whether an interest amounts to property is typically resolved under state law.

7   Diaz v. Gates, 420 F.3d 897, 899 (9th Cir. 2005). "Without a harm to a specific business or

8   property interest—a categorical inquiry typically determined by reference to state law—there is

9   no injury to business or property within the meaning of RICO." Id. at 900.

10         Spivak has failed to allege a cognizable injury. First, under Washington law, there is no

11  business expectancy in continued at-will employment, and thus no property interest in such

12  employment. See Woody v. Stapp, 146 Wn. App. 16, 24 (2008). Spivak provides no contrary

13  authority or allegation that she was anything other than an at-will employee. The Court finds that

14  this alleged injury does not confer standing under RICO. Second, Spivak's claims about future

15  employment and business opportunities are too speculative to constitute an injury. A plaintiff

16  cannot maintain a RICO claim where the loss she has suffered is "purely speculative." Berg v.

17  First State Ins. Co., 915 F.3d 460, 463-64 (9th Cir. 1990). Both of Spivak's unsupported and

18  conclusory allegations as to this injury are purely speculative and not sufficient to confer

19  standing.

20         The Court finds that Spivak lacks standing under RICO which is an independent basis for

21  dismissal of her RICO claims.

22

23  ───────────────────
    [2] Spivak's RICO claims premised on her allegation that the RICO conspiracy caused her to lose
24  her "Title VII and State Claims" are barred by issue and claim preclusion and the FAA time bar.

1

        **b.**     **Enterprise**

2

       Google and Johnsrud correctly point out that there are no credible allegations of an

3

enterprise involving them. An enterprise is "a group with a common purpose and course of

4

conduct." <u>Boyle v. United States</u>, 556 U.S. 938, 950 (2009) (quotation omitted). An enterprise

5

"is proved by evidence of an ongoing organization, formal or informal, and by evidence that the

6

various associates function as a continuing unit." <u>United States v. Turkette</u>, 452 U.S. 576, 583

7

(1981).

8

       Spivak fails to make specific allegations of how the various parties to the alleged

9

enterprise shared a common purpose and what the course of conduct was. She merely alleges that

10

there were "explicit agreements" between Facebook and Google, but she fails to allege what the

11

agreements were or the enterprise's organizational structure. (Compl. ¶ 332.) Moreover, she fails

12

to allege how Google and Johnsrud led or organized the alleged enterprise. The allegations are

13

simply too attenuated and implausible to allege an enterprise in which Google or Johnsrud

14

participated. <u>See</u> <u>Sprewell</u>, 266 F.3d at 988.

15

        **c.**     **Pattern of Racketeering**

16

       Spivak has also failed to allege plausible claims of racketeering activity in which Google

17

or Johnsrud was involved. Spivak's post-arbitration claims are that Google and Johnsrud

18

influenced/corrupted judges and threatened violence against her and her family. (<u>See</u> Compl. ¶¶

19

335, 336, 341-43, 348-52.) But these allegations are based on subjective beliefs and

20

unreasonable inferences, not credible factual allegations that can be accepted as true. <u>See</u> <u>United</u>

21

<u>Bhd. of Carpenters & Joiners of Am. v. Bldg. & Const. Trades Dep't, AFL-CIO</u>, 770 F.3d 834,

22

842 (9th Cir. 2014) (affirming dismissal of RICO claim premised on allegations of "veiled death

23

threats" based on "interpretation of emails").

24

### d.    RICO Conspiracy

Because there are no plausible allegations to support a substantive RICO claim under § 1962(c), Spivak's RICO conspiracy claim under § 1962(d) also fail. <u>See</u> <u>Sanford v. MemberWorks, Inc.</u>, 625 F.3d 550, 559 (9th Cir. 2010).

### 3.    Invasion of Privacy

Spivak's invasion of privacy claims fail because they rest on implausible allegations and speculation. Spivak's invasion of privacy claims appear to center largely on her belief that she was being spied on because she received emails or messages linked to things she or her children were doing in their home. But there are no plausible allegations Google or Johnsrud was spying on her or involved in any of the transmissions of which Spivak complains. Spivak's invasion of privacy claims revolve around her subjective beliefs, suspicions, and conclusions, which are not sufficient to state a claim. <u>See, e.g.</u>, <u>Akmal v. City of Kent</u>, 2014 WL 1648475, at *5 (W.D. Wash. Apr. 24, 2014); <u>Little v. Washington</u>, No. C11-1387JLR 2011 WL 5877779, at *3 (W.D. Wash. Nov. 23, 2011). While Spivak suggests that she can prove her claims circumstantial evidence, her actual claims raise only the "mere possibility of misconduct," <u>Iqbal</u>, 556 U.S. at 679, and rely on "unwarranted inferences," which is insufficient to state a claim, <u>Adams</u>, 355 F.3d at 1183. The Court DISMISSES these claims.

### F.    Dismissal with Prejudice

In general, dismissal with prejudice and without leave to amend is not appropriate unless it is clear "that the complaint could not be saved by any amendment." <u>Polich v. Burlington Northern, Inc.</u>, 942 F.2d 1467, 1472 (9th Cir. 1991). While there is a "strong policy in favor of allowing amendment," <u>Royal Ins. Co. of Am. v. SW Marine</u>, 194 F.3d 1009, 1016 (9th Cir. 1999) (citation omitted), leave need not be granted where the amendment is sought in bad faith,

would prejudice the opposing party, would result in undue delay, or is futile. Id. "Under Ninth Circuit case law, district courts are only required to grant leave to amend if a complaint can possibly be saved. Courts are not required to grant leave to amend if a complaint lacks merit entirely." Lopez v. Smith, 203 F.3d 1122, 1129 (9th Cir. 2000).

The Court finds dismissal with prejudice appropriate. None of Spivak's arbitration-related claims can be saved by amendment due to issue and claim preclusion and untimeliness. The remainder of Spivak's claims rely on such strained conclusions and unwarranted inferences that they do not appear to be redeemable through amendment. See Lopez, 203 F.3d at 1129. Plaintiff has not asked for leave to amend or provided any rebuttal to Google's and Johnsrud's request for dismissal with prejudice—an admission Google's request for dismissal with prejudice has merit. See, e.g., Oliver, 2012 WL 5207548, at *1. The Court finds that dismissal with prejudice is appropriate as to all of the claims Spivak pursues.

**CONCLUSION**

Spivak's complaint fails to state any viable claims. Issue and claim preclusion and the FAA's time limit bar Spivak's arbitration-related claims. Spivak's post-arbitration claims fail to satisfy Rule 8—they rest on implausible allegations and unwarranted inferences. Spivak does not seek leave to amend and the Court finds that leave should not be granted. The Court DISMISSSES all of the claims against Google and Johnsrud WITH PREJUDICE, which terminates this action in full. The Court DENIES the Motion to Strike as MOOT.

The clerk is ordered to provide copies of this order to all counsel.

Dated February 12, 2021.

Marsha J. Pechman
United States District Judge