UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

Rivka Spivak,

Plaintiff,

v.

Alphabet Inc., et al.,

Defendants.

Case No. 2:20-cv-01480-MJP

EXHIBIT 3

Google's June 27, 2018 eDiscovery Brief

Filed in Support of Plaintiff's Motion to Vacate

Judgment Under Rule 60(d)(3)

**CURLEY, HURTGEN & JOHNSRUD LLP**
COUNSELORS AT LAW
4400 BOHANNON DRIVE
SUITE 230
MENLO PARK, CA 94025
www.chjllp.com

**Brian L. Johnsrud**
**650.600.5310**
**bjohnsrud@chjllp.com**

June 27, 2018

**VIA ELECTRONIC AND HAND DELIVERY**

Hon. Robert A. Baines (Ret.)
JAMS
160 W. Santa Clara St., Suite 1600
San Jose, CA 95113

Re: Google's Letter Brief Regarding eDiscovery Protocol
*Spivak v. Google* - JAMS Ref. No. 1110018238

Dear Judge Baines:

This is a single-plaintiff case in which Claimant Spivak alleges discrimination and retaliation, based primarily on her disagreement with the assessment of her performance by various male and female leaders at Respondent Google. The Parties disagree on the scope and breadth of eDiscovery, which is governed by the JAMS Rules, JAMS' Minimum Standards of Procedural Fairness No. 4. requiring the exchange of only "core information," the overarching goals of the Federal Arbitration Act, and the allegations set forth in Ms. Spivak's Amended Notice of Claims. Google seeks an Order entering its eDiscovery protocol (both as to search terms for Google and for Spivak), without prejudice to Spivak seeking specific documents once she has reviewed Google's eDiscovery production.

Counsel for the Parties had previously nearly agreed on a stipulated eDiscovery plan. Ms. Spivak is now representing herself and has disavowed that plan. The Arbitrator then ordered Ms. Spivak to make proposed revisions to the pending eDiscovery plan. She disregarded that Order and instead sent Google her own new plan, see Exhibit A. It attempts to impose voluminous search terms that would have Google reviewing several hundred thousand documents (and millions of actual pages) in this single-plaintiff employment case.

Specifically Ms. Spivak seeks "all non-privileged emails, texts, 'hangouts', shared 'docs' or any other electronic communications" for 18 different custodians, including Neal Mohan, a Senior Vice President to whom hundreds of employees reported (directly or skip-level) and who barely interacted with Ms. Spivak. Compounding matters, Ms. Spivak proposes search terms that include common business terms (like "feedback" or "promotion" or "congratulations") that will each result in tens of thousands of "miss-hits" if the search terms are not tied to any reference to Spivak.

After reviewing Ms. Spivak's proposal, Google responded with its proposed revisions, see Exhibit B. Google's protocol will still have it collecting and reviewing well more than a hundred thousand documents (and a corresponding multiplier in terms of actual pages of text), see Exhibit B. Google's proposal provides for the exchange of the "core information" required under JAMS' Minimum Standards of Procedural Fairness No. 4.

Further, Google has continued to express its commitment to a "phased" eDiscovery approach. That is, if Ms. Spivak believes she needs specific additional documents after she reviews Google's eDiscovery production, Google will meet and confer with her as to any additional specific documents she believes are relevant and necessary to a fair hearing on her claims. Ms. Spivak, however, rejected Google's proposed revisions, and instead responded with scattershot one-off suggestions that did little to narrow the overbreadth and burden of her proposal, see Exhibit C.

eDiscovery is not unlimited and must be evaluated against the allegations in the case. This is a single-plaintiff case where Ms. Spivak's employment ended after she refused to relocate from Seattle to Los Angeles. It is not a systemic class action, though Ms. Spivak seeks discovery as broad (or broader) than class counsel would seek in a class action case.

The EEOC's investigation (which Ms. Spivak aggressively pushed for and supported) provides a common sense check on Ms. Spivak's unreasonable eDiscovery protocol. There, the EEOC requested additional documents from Google, which were provided (and which Ms. Spivak now has) and then interviewed a total of four witnesses before declining to issue a cause determination. Ms. Spivak also has the robust Initial Disclosures that Google previously served. There is no basis for the mass discovery of documents that have no connection to Ms. Spivak and the discrete alleged adverse employment actions in this case.

In sum, and as explained below, there must be some reasonable limit on eDiscovery, where the burden falls disproportionately on Google since Ms. Spivak has just one custodian to review (her own accounts). Google respectfully requests that, after reviewing the competing eDiscovery proposals, the Arbitrator enter Google's proposal as the eDiscovery order, without prejudice to Ms. Spivak requesting further specific additional documents once she reviews initial Google's eDiscovery production, with the parties to meet and confer on same.

## I. The Applicable Discovery Standard

JAMS Rule 17 requires the parties to cooperate in good faith in the voluntary exchange of non-privileged documents and electronically stored information "relevant to the dispute or claim." The limitation to only "relevant" documents and data is consistent with, and qualified by, the Federal Arbitration Act's prime objective "to achieve 'streamlined proceedings and expeditious results.'" *AT&T Mobility LLC v. Concepcion*, 131 S.Ct. 1740, 1749 (2011) *quoting Preston v. Ferrer*, 552 U.S. 346, 357-358 (2008).

Similarly, the JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness provides in pertinent part: "Standard No. 4: Access to Information/Discovery. The procedures must provide for an exchange of <u>core information</u> prior to the arbitration." (Emphasis added). Even if Ms. Spivak's case was in Washington State Court, discovery would be limited that "which is relevant to the subject matter involved in the pending action." Wash. State Superior Court Civil Rule 26(b)(1).

## II. This Single-Plaintiff Case Involves A Handful Of Alleged Adverse Employment Actions By Three Managers, Yet Spivak Attempts To Litigate It As A Class Action.

Ms. Spivak's Amended Notice of Claims (consisting of just 2 pages of allegations) frames this case. As outlined in her Demand, her claims include alleged adverse employment actions in New York, and later, in Washington State. Both are discussed below.

**A. The Limited Alleged Adverse Employment Actions And The Single Manager For The New York Time Period.**

The New York component of Spivak's case involves the denial of equity grants in July 2012 and July 2013 by her then manager, Scott Spencer, and rating Spivak as "Meets Expectations" instead of "Exceeds Expectations." For Mr. Spencer's account, Google has offered to produce all non-privileged emails for the proposed search terms that also refer to "Rivka," "Spivak," or "Rebecca" (so long as it relates to Claimant Spivak).[1]

Spivak rejected that offer and instead seeks any and all emails for custodian Scott Spencer containing any of the following terms, regardless of whether such emails reference or relate to Spivak. Her proposal is unreasonable for the reasons set forth below:

| **Spencer Objectionable Terms** | **Why The Terms Are Objectionable** |
|---|---|
| "Admeld Migration" or "Admeld" or "TYM" | These proposed search terms are product names and commonly used terms that would capture tens of thousands of documents with no connection to Spivak or her claims. (Google has offered to produce hits for these terms if also connected to a reference to Claimant.) |
| "Manager Discretion" or "Stock Refresh" or "GSU" or "RSU" or "Stock Grant" | These proposed search terms would capture thousands of documents with no connection to Spivak and invade the privacy rights of many other employees. |
| "Maternity Leave" or "Emotional" or "Baby" or "Return to work" or "Backfill" | These proposed search terms would capture thousands of documents with no connection to Spivak and invade the privacy rights of other employees. (Google has offered to produce hits for these terms if also connected to a reference to Claimant.) |
| "Buyside" or "under the radar" or "unimportant" | These proposed search terms are commonly used and would capture thousands of documents with no connection to Spivak or her claims. |

Spivak seeks to impose several of the same overbroad search terms as to New York coworker Drew Bradstock. Spivak seeks any and all emails for custodian Bradstock containing any of the following terms, regardless of whether such emails reference or relate to Spivak. Her proposal is unreasonable for the reasons set forth below:

| **Bradstock Objectionable Terms** | **Why The Terms Are Objectionable** |
|---|---|
| "Admeld Migration" or "Admeld" or "TYM" | These proposed search terms are product names and commonly used terms that would capture tens of thousands of documents with no connection to Spivak or her claims. (Google has offered |

[1] Google can collect, review, and produce email. Instant messages or texts are not preserved at Google unless saved in an email.

| | |
|---|---|
| | to produce hits for these terms if also connected to a reference to Claimant.) |
| "Buyside" or "Inventory Discovery" or "RTB Dashboard" or "RTB Alerts" | These proposed search terms are commonly used and would capture thousands of documents with no connection to Spivak or her claims. |
| "Hormonal" | Google has offered to produce hits for this term if also connected to a reference to Claimant. |

For **Senior Vice President Neal Mohan** (who bridges the New York and Washington time periods), Google offered to produce all non-privileged emails for the proposed search terms that also refer to "Rivka," "Spivak," or "Rebecca" (so long as it relates to Claimant Spivak). Spivak rejected that offer, and instead seeks any and all emails for custodian Mohan containing any of the following terms, regardless of whether such emails reference or relate to Spivak. Her proposal is unreasonable for the reasons set forth below:

| **Mohan Objectionable Terms** | **Why The Terms Are Objectionable** |
|---|---|
| "Promotion" or "Promotion Announcement" or "Promo" | These proposed search terms are commonly and would capture tens of thousands of documents with no connection to Spivak and invade the privacy rights of many other employees. |
| "Interactive Benchmarks", "Inventory Discovery", "RTB Dashboard", "Buyside Alerts", "Buyer Alerts", "Frontline" | These proposed search terms are product names that would capture thousands of documents with no connection to Spivak or her claims. |
| "Congratulations" or "Launched" | These proposed search terms are common business terms and would capture tens of thousands of documents with no connection to Spivak and invade the privacy rights of many other employees. |

### B. The Additional Alleged Adverse Employment Actions And The Two Managers For The Washington Time Period.

Spivak's claims for the Washington time period involve several more alleged adverse employment actions, but only two managers (Jens Skakkebaek and Aaron Rothman):

1. The alleged promotion of Vince Lacey to a "lead" position (it was not a "promotion" as that term is used at Google) (Skakkebaek);
2. Placing Ms. Spivak on a Performance Improvement Plan (Skakkebaek);
3. Rating Ms. Spivak as "Consistently Meets Expectations" instead of a higher rating (Skakkebaek and Rothman);
4. Allegedly promoting Aaron Rothman (again, it was not a promotion as Google uses that term) (Skakkebaek);

5. Limiting Spivak's role in a presentation regarding Interactive Benchmarks (Rothman);
6. Allegedly downgrading Ms. Spivak's rating, allegedly due to her use of leave (Rothman);
7. Relocating Interactive Benchmarks (and four other projects) from Seattle to Los Angeles (impacting over 30 employees) (Dustin Jackson in Los Angeles); and
8. Terminating her employment following her refusal to relocate and her inability to find another role in Seattle, despite ample opportunity to do so.

For **custodian Jens Skakkebaek**, Google offered to produce all non-privileged emails for the proposed search terms that also refer to "Rivka," "Spivak," or "Rebecca" (so long as it relates to Claimant Spivak). Spivak rejected that offer, and instead seeks any and all emails for custodian Skakkebaek containing any of the following terms, regardless of whether such emails reference or relate to Spivak. Her proposal is unreasonable for the reasons set forth below:

| **Skakkebaek Objectionable Terms** | **Why The Terms Are Objectionable** |
|---|---|
| "completely honest" or "feedback" | These proposed search terms are commonly used words that would capture tens of thousands of documents with no connection to Spivak or her claims. Google already provided to the EEOC the responsive documents it believes Ms. Spivak is really seeking (and Spivak produced those documents as part of her own Initial Disclosures). |
| "toxic" or "PIP" or "Performance Improvement Plan" | These proposed search terms would capture thousands of documents with no connection to Spivak and invade the privacy rights of other employees. |
| "Frontline" or "AMP" or "PitchX" or "Quicksilver" or "Unified Estimates" | These proposed search terms include product names that would capture thousands of documents with no connection to Spivak or her claims. (Google offered to produce hits for these terms if also connected to a reference to Claimant.) |
| "Interactive Benchmarks" or "IB" | These proposed search terms are product names that would capture thousands of documents with no connection to Spivak or her claims. Not every single document regarding this product is relevant. |
| "Relocation" or "Remotely" | These proposed search terms are commonly used words that would capture thousands of documents with no connection to Spivak or her claims. |

For **custodian Aaron Rothman**, Google offered to produce all non-privileged emails for the proposed search terms that also refer to "Rivka," "Spivak," or "Rebecca" (so long as it relates to Claimant Spivak). Spivak rejected that offer, and instead seeks any and all emails for custodian Rothman containing any of the following terms, regardless of whether such emails reference or relate to Spivak. Her proposal is unreasonable for the reasons set forth below:

| **Rothman Objectionable Terms** | **Why The Terms Are Objectionable** |
|---|---|
| "Frontline" or "AMP" or "PitchX" or "Quicksilver" or "Unified Estimates" | These proposed search terms include product names that would capture tens of thousands of documents with no connection to Spivak or her claims. |
| "Interactive Benchmarks" or "IB" | These proposed search terms are product names that would capture thousands of documents with no connection to Spivak or her claims. |
| "Relocation" or "Remote PM" | These proposed search terms are commonly used words that would capture thousands of documents with no connection to Spivak or her claims. |
| Tantrum or Vacation or Petulant | These proposed search terms are commonly used words that would capture documents with no connection to Spivak or her claims and invade the privacy rights of other employees. (Google offered to produce hits for these terms if also connected to a reference to Claimant.) |

For **engineers Michael English** and **Doug Bengtson**, Google has offered to produce all non-privileged emails for the proposed search terms that also refer to "Rivka," "Spivak," or "Rebecca" (so long as it relates to Claimant Spivak). Spivak rejected that offer, and instead seeks any and all emails for custodians English and Bengtson containing any of the following terms, regardless of whether such emails reference or relate to Spivak. Her proposal is unreasonable for the reasons set forth below:

| **English & Bengtson Objectionable Terms** | **Why The Terms Are Objectionable** |
|---|---|
| "Frontline" or "AMP" or "PitchX" or "Quicksilver" or "Unified Estimates" | These proposed search terms include product names that would capture tens of thousands of documents with no connection to Spivak or her claims. |
| "Interactive Benchmarks" or "IB" | These proposed search terms are product names that would capture thousands of documents with no connection to Spivak or her claims. (Google offered to produce hits for these terms if also connected to a reference to Claimant.) |

**C. The Human Resources And Employee Relations Custodians.**

For **Human Resources and Employees Relations custodians Caroline Bremner, Cindy Treloar, Paul Higson, Lauren Thomas Ewing, Ariana Tortorici,** and **Laney Dailo,** Google has offered to produce all non-privileged emails for the proposed search terms that also refer to "Rivka," "Spivak," or "Rebecca" (so long as it relates to Claimant Spivak). Spivak rejected that offer, and instead seeks any and all emails for custodians Bremner, Treloar, Higson, Ewing, Tortorici, and Dailo containing

any of the following terms, regardless of whether such emails reference or relate to Spivak. Her proposal is unreasonable for the reasons set forth below:

| **HR Custodian Objectionable Terms** | **Why The Terms Are Objectionable** |
|---|---|
| "Performance Improvement Plan" or "Severance" | These proposed search terms are commonly used in Human Resources and Employee Relations, and would capture thousands of documents with no connection to Spivak and invade the privacy rights of other employees. |
| "Employee Relations" or "Interrogation" or "Retaliation" or "neutral party" or "Ethics" | Same as above. |
| "Managing Low Performers" or "Managing Low Performance" or "PIP" or "Performance Improvement Plan" | Same as above. |
| "Frontline" or "Interactive Benchmarks" or "IB" | These proposed search terms are product names that would capture thousands of documents with no connection to Spivak or her claims. (Google offered to produce hits for these terms if also connected to a reference to Claimant.) |
| "Relocation" or "Remote PM" | These proposed search terms are commonly used in Human Resources and Employee Relations, and would capture thousands of documents with no connection to Spivak and invade the privacy rights of other employees. |
| "Rothman" or "Aaron" | Not every document mentioning "Rothman" is relevant, and "Aaron" results in large volume of miss-hits. These terms must have a connection to Aaron Rothman and Spivak. |
| "plusmail" or "warning" or "dirt" or "flirt" or "insubordination" | These proposed search terms are commonly used in varying degrees and would capture thousands of documents with no connection to Spivak and invade the privacy rights of many other employees. |
| "Relocation Letter" or "contract" | These proposed search terms are commonly used and would capture thousands of documents with no connection to Spivak and invade the privacy rights of many other employees. |

**D. Custodians Involved In The Relocation Of Five Projects Impacting Over 30 Employees.**

For **custodians Dustin Jackson and Scott Silver**, who were involved in the decision to relocate Interactive Benchmarks and four other projects (from Seattle to LA), impacting over 30 employees, Google offered to produce all non-privileged emails for the proposed search terms that also refer to "Rivka," "Spivak," or "Rebecca" (so long as it relates to Claimant Spivak). Spivak rejected that offer, and instead seeks any and all emails for custodians Jackson and Silver containing any of the following terms, regardless of whether such emails reference or relate to Spivak. Her proposal is unreasonable for the reasons set forth below:

| **Jackson & Silver Objectionable Terms** | **Why The Terms Are Objectionable** |
|---|---|
| "Frontline" or "AMP" or "PitchX" or "Quicksilver" or "Unified Estimates" | These proposed search terms include product names that would capture tens of thousands of documents with no connection to Spivak or her claims. |
| "Interactive Benchmarks" or "IB" | These proposed search terms are product names that would capture thousands of documents with no connection to Spivak or her claims. |
| "Relocation" | These proposed search terms are commonly used words that would capture thousands of documents with no connection to Spivak or her claims and invade the privacy rights of many other employees. |

**E. Custodians Regarding Spivak's Opportunity To Search For Another Role At Google.**

For **custodians Nicholas Weng Kan and Emily Rapp**, Google offered to produce all non-privileged emails for the proposed search terms that also refer to "Rivka," "Spivak," or "Rebecca" (so long as it relates to Claimant Spivak). Spivak rejected that offer, and instead seeks any and all emails for custodians Kan and Rapp containing any of the following terms, regardless of whether such emails reference or relate to Spivak. Her proposal is unreasonable for the reasons set forth below:

| **Kan & Rapp Objectionable Terms** | **Why The Terms Are Objectionable** |
|---|---|
| "Lead PM" or "SPM" | These proposed search terms are commonly used words that would capture documents with no connection to Spivak or her claims and invade the privacy rights of many other employees. |
| "Open Role" or "Opportunity" | Same as above. |
| "Interview" or "Presentation" | Same as above. |

| | |
|---|---|
| "HRBP" or "relocation" | Same as above. |
| "Frontline" or "Bigler" or "Jason" or "thaw" or "Interactive Benchmarks" | These proposed search terms include product names and commonly used words that would capture documents with no connection to Spivak or her claims and invade the privacy rights of many other employees. |

## III. eDiscovery Sought From Spivak

Spivak objects to Google's eDiscovery search terms for Spivak's documents and data that are directly relevant to Google's defenses, including its after-acquired evidence defense, as well as Spivak's lack of damages, see Exhibit D.

Within weeks of Spivak's termination, Google obtained after-acquired evidence of Spivak's misconduct during her employment that cuts off her alleged damages. Specifically, in connection with Spivak's termination, she returned the Google laptop she had been using during her employment. In reviewing the contents of that laptop, Google learned that Spivak had been day-trading Facebook options during her employment with Google, with the value of Spivak's Facebook options holdings exceeding $1 million. Facebook is identified by name as one of Google's biggest competitors in each of its SEC Annual Reports since at least 2010. (At one point, Spivak bragged in writing that her complaint at Google made her "unfireable" long enough for her to get a job at Facebook.) Spivak's Facebook options trading plainly violated Google's Code of Conduct in effect at the time, which states:

> **Is the investment in a competitor?**
> **If the answer is yes, the investment creates a conflict of interest.**
>
> **If you are considering making an investment that creates a conflict of interest, don't make the investment.** (Emphasis added).

The Code further mandates: "if you face a potential conflict of interest, review the situation with your manager and Ethics & Compliance and get their approval." (Emphasis original.) Spivak **never** disclosed her trades to her manager or with Ethics & Compliance, and never sought their approval, in violation of both requirements. Thus, under the after-acquired evidence doctrine, Spivak's misconduct cuts off her alleged damages from the date Google discovered the misconduct (within weeks of her termination).

In light of the above, Google's proposed search terms logically include the following:

> Facebook or FB or option or portfolio or margin or leverage or trade or invest or investment or Ameritrade or TDAmeritrade (for the period from January 1, 2010 through April 30, 2017)

Even though Spivak's trading in the options of Google's largest competitor is a central issue in this case, Spivak refuses to produce her trading records. During the Parties' meet and confer efforts, Spivak wrote:

> [I]t is a huge overreach to ask for me to hand it over. I do not deny that I traded facebook stock and options while employed at Google, and I do not deny that there were large gains, and I do not deny that some trades executed during business hours. I may be willing to concede the factual claims that you are trying to prove. Alternatively, I may agree to a third party summarizing the pertinent data.

To get to the bottom of Spivak's Facebook stock and options trading, Google responded by explaining why Spivak's position was not acceptable, writing:

> We do not agree with your attempt to shield these facts because these facts relate directly to our after-acquired evidence defense as well as the nature and extent of your alleged economic damages, and we need to prove our defense with specific facts, not generalized concessions on your part.

Similarly, both of Spivak's prior sets of counsel previously indicated that Spivak would not be pursuing emotional distress damages. Spivak has now changed course, thereby putting her emotional state or condition at issue, as well as alternative causes of Spivak's alleged emotional distress. Google therefore seeks documents and data containing the following search terms: "Yell" or "scream" or "pressure" or "emotion" or "emotional" or "prescription" or "doctor" or "Rachel" or "Torrez." These terms are narrowly tailored to specific damages and Dr. Rachel Torrez is identified by Ms. Spivak as a witness in Spivak's Initial Disclosures.

For all of the foregoing reasons, Google respectfully requests an Order entering its eDiscovery protocol (both as to search terms for Google and for Spivak), without prejudice to Spivak seeking specific documents once she has reviewed Google's eDiscovery production.

Respectfully submitted,

CURLEY, HURTGEN & JOHNSRUD LLP

Brian L. Johnsrud

Enclosures

# EXHIBIT A

Google Accounts and Search Terms for e-discovery

All non-privileged emails, texts, "hangouts", shared "docs" or any other electronic communications sent by or received by the following individuals, for the specified search terms:

**Mohan VP Timeframe 7/1/11 - 7/1/15**

| **Custodian** | **Rationale** | **Relevant Terms** | **Date Range** |
|---|---|---|---|
| Neal Mohan | Spivak's VP for both NY and Seattle. Promotion descriptions for individuals on Mohan's team are material to the claims in the case. Recognition and Attribution of product launches is material to the claims in the case. | • "Promotion" or "Promotion Announcement" or "Promo"<br>• any emails sent to or received from Spivak, or that mention Spivak by Name (Rebecca, Rivka, Spivak)<br>• "Interactive Benchmarks", "Inventory Discovery", "RTB Dashboard", "Buyside Alerts", "Buyer Alerts", "Frontline"<br>• "Congratulations" or "Launched" | 12/1/11 - 7/1/15 |
| Rebecca Spivak | Spivak's communication is material to the case | All emails sent or received for rivka@google.com | 12/1/11 - 11/20/15 |

**New York Ads Timeframe - 7/1/11 - 12/31/13**

| **Custodian** | **Rationale** | **Relevant Terms** | **Date Range** |
|---|---|---|---|
| Scott Spencer - NY Manager | Spivak's Manager in NY | * any emails sent to or received from Spivak, or that mention Spivak by name (Rebecca, Rivka, Spivak) "Admeld Migration" or "Admeld" or "TYM"<br>* "Manager Discretion" or "Stock Refresh" or "GSU" or "RSU" or "Stock Grant"<br>* "Maternity Leave" or "Emotional" or "Baby" or "Return to work" or "Backfill"<br>* "Buyside" or "under the radar" or "unimportant" | 7/1/11 - 12/31/13 |
| Drew Bradstock - NY Product Manager | Was given credit for Spivak's work and multiple opportunities to publicly present it | * any emails sent to or received from Spivak, or that mention Spivak by name (Rebecca, Rivka, Spivak)<br>* "Admeld Migration" or "Admeld" or "TYM"<br>* "Buyside" or "Inventory Discovery" or "RTB Dashboard" or "RTB Alerts"<br>* "Hormonal" | 1/1/12 - 3/1/14 |

**Seattle Timeframe - 1/1/14 - 12/31/15**

Spivak's Manager/Lead

| Custodian | Rationale | Relevant Terms | Date Range |
|---|---|---|---|
| Jens Skakkebaek | Spivak's Manager | * any emails sent to or received from Spivak, or that mention Spivak by name (Rebecca, Rivka, Spivak)<br>* "completely honest" or "feedback"<br>* "toxic" or "PIP" or "Performance Improvement Plan"<br>* "Frontline" or "AMP" or "PItchX" or "Quicksilver" or "Unified Estimates"<br>* "Interactive Benchmarks" or "IB"<br>* "Relocation" or "Remotely" | 1/1/14 - 9/1/15 |
| Aaron Rothman | Spivak's Lead | * any emails sent to or received from Spivak, or that mention Spivak by name (Rebecca, Rivka, Spivak)<br>* "Frontline" or "AMP" or "PItchX" or "Quicksilver" or "Unified Estimates"<br>* "Interactive Benchmarks" or "IB"<br>* "Relocation" or "Remote PM"<br>* Tantrum or Vacation or Petulant | 7/1/14 - 7/1/15 |

Engineers

| Custodian | Rationale | Relevant Terms | Date Range |
|---|---|---|---|
| Michael English | Spivak's coworker and also a Manager | * any emails sent to or received from Spivak, or that mention Spivak by name (Rebecca, Rivka, Spivak)<br>* "Frontline" or "AMP" or "PItchX" or "Quicksilver" or "Unified Estimates"<br>* "Interactive Benchmarks" or "IB" | 1/1/2014 - 11/30/2015 |
| Doug Bengtson | Engineering Manager and Michael English's supervisor | * any emails sent to or received from Spivak, or that mention Spivak by name (Rebecca, Rivka, Spivak)<br>* "Frontline" or "AMP" or "PItchX" or "Quicksilver" or "Unified Estimates"<br>* "Interactive Benchmarks" or "IB" | 10/1/2013 - 10/1/2014 |

### Product Managers

| **Custodian** | **Rationale** | **Relevant Terms** | **Date Range** |
|---|---|---|---|
| Nicholas Weng Kan (in London) | Interviewed Spivak for a potential role on Google Compare | * any emails sent to or received from Spivak, or that mention Spivak by name (Rebecca, Rivka, Spivak)<br>* "Lead PM" or "SPM"<br>* "Open Role" or "Opportunity"<br>* "Interview" or "Presentation" | 9/1/2015 - 11/30/2015 |
| Emily Rapp | Spivak's Coworker who senior leaders confided in | * any emails sent to or received from Spivak, or that mention Spivak by name (Rebecca, Rivka, Spivak)<br>* "pissed" or "remote PM" or "HRBP" or "relocation"<br>* "Frontline" or "Bigler" or "Jason" or "thaw" or "Interactive Benchmarks" | 1/1/2015 - 4/1/2015 |

### Human Resources

| **Custodian** | **Rationale** | **Relevant Terms** | **Date Range** |
|---|---|---|---|
| Caroline Bremner | Communicated with Spivak re: her allegations | * any emails sent to or received from Spivak, or that mention Spivak by name (Rebecca, Rivka, Spivak)<br>* "Performance Improvement Plan" or "Severance" | 2/1/2014 - 11/30/2015 |
| Cindy Treloar (ER) | Communicated with Spivak re: her allegations | * any emails sent to or received from Spivak, or that mention Spivak by name (Rebecca, Rivka, Spivak)<br>* "Employee Relations" or "Interrogation" or "Retaliation" or "neutral party" or "Ethics"<br>* "Managing Low Performers" or "Managing Low Performance" or "PIP" or "Performance Improvement Plan"<br>* "non-regretted attrition" or "nonregretted attrition" or "unregretted attrition" | 5/1/2014 - 11/30/2015 |
| Paul Higson | Communicated with Spivak re: her allegations | * any emails sent to or received from Spivak, or that mention Spivak by name (Rebecca, Rivka, Spivak)<br>* "Frontline" or "Interactive Benchmarks" or "IB"<br>* "Relocation" or "Remote PM" | 2/1/2014 - 11/30/2015 |
| Lauren Thomas Ewing | Communicated with Spivak re: her allegations | * any emails sent to or received from Spivak, or that mention Spivak by name (Rebecca, Rivka, Spivak)<br>* "Rothman" or "Aaron" | 10/1/2014 - 11/30/2015 |
| Ariana Tortorici (ER) | Communicated with Spivak re: her allegations | * any emails sent to or received from Spivak, or that mention Spivak by name (Rebecca, Rivka, Spivak)<br>* "Frontline" or "Interactive Benchmarks" or "IB"<br>* "plusmail" or "warning" or "dirt" or "flirt" or "insubordination" | 2/1/2015 - 11/30/2015 |
| Lainey Dailo | Relocation Specialist during IB re-org | *any emails sent to or received from Spivak, or that mention Spivak by name (Rebecca, Rivka, Spivak)<br>* "Relocation Letter" or "contract" | 2/1/2015 - 3/1/2015 |

**Other Senior Leaders**

| **Custodian** | **Rationale** | **Relevant Terms** | **Date Range** |
|---|---|---|---|
| Dustin Jackson (in LA) | Was Bengtson's Supervisor and Director of IB when it was relocated | * any emails sent to or received from Spivak, or that mention Spivak by name (Rebecca, Rivka, Spivak)<br>* "Frontline" or "AMP" or "PItchX" or "Quicksilver" or "Unified Estimates"<br>* "Interactive Benchmarks" or "IB"<br>* "Relocation" | 7/1/2014 - 11/30/2015 |
| Scott Silver | Jackson's Supervisor | * any emails sent to or received from Spivak, or that mention Spivak by name (Rebecca, Rivka, Spivak)<br>* "Frontline" or "AMP" or "PItchX" or "Quicksilver" or "Unified Estimates"<br>* "Interactive Benchmarks" or "IB"<br>* "Relocation" | 2/1/2015 - 3/1/2015 |

# EXHIBIT B

Google Accounts and Search Terms for e-discovery

All non-privileged emails **and attachments**~~, texts, "hangouts", shared "docs" or any other electronic communications~~ sent by or received by the following individuals, for the specified search terms:

**Mohan VP Timeframe 7/1/11 - 7/1/15**

| Custodian | Spivak's Rationale | Google's Rationale | Relevant Terms | Date Range |
|---|---|---|---|---|
| Neal Mohan | Spivak's VP for both NY and Seattle. Promotion descriptions for individuals on Mohan's team are material to the claims in the case. Recognition and Attribution of product launches is material to the claims in the case. | **Mohan is a senior leader who was several levels above Spivak. He had little if any interaction with Spivak.** **Spivak's proposed search terms are overbroad to the extent that they do not also require reference Spivak, resulting in a very high volume of miss-hits that have no bearing on any claim or defense.** **The time and expense of processing and reviewing these proposed terms vastly outweighs any arguable probative value as to any hits that do not reference Spivak.** **Some of the proposed search terms impermissibly invade the constitutional right to privacy of third parties (e.g. "promotion").** | ~~• "Promotion" or "Promotion Announcement" or "Promo"~~ • any emails sent to or received from Spivak, or that mention Spivak by Name (Rebecca, Rivka, Spivak) ~~• "Interactive Benchmarks", "Inventory Discovery", "RTB Dashboard", "Buyside Alerts", "Buyer Alerts", "Frontline"~~ ~~• "Congratulations" or "Launched"~~ | 12/1/11 - 7/1/15 |
| Rebecca Spivak | Spivak's communication is material to the case | **While overbroad, Google will agree to this request in the spirit of compromise.** | All emails sent or received for rivka@google.com | 12/1/11 - 11/20/15 |

## New York Ads Timeframe - 7/1/11 - 12/31/13

| **Custodian** | **Spivak's Rationale** | **Google's Rationale** | **Relevant Terms** | **Date Range** |
|---|---|---|---|---|
| Scott Spencer - NY Manager | Spivak's Manager in NY | **Spivak's proposed search terms are overbroad to the extent that they do not also require reference Spivak, resulting in a high volume of miss-hits that have no bearing on any claim or defense.**<br>**The time and expense of processing and reviewing these proposed terms vastly outweighs any arguable probative value as to any hits that do not reference Spivak.**<br>**Some of the proposed search terms impermissibly invade the constitutional right to privacy of third parties.** | * **(rivka OR spivak OR rebecca) AND (admeld OR TEXT=TYM OR TITLE=TYM)**~~any emails sent to or received from Spivak, or that mention Spivak by name (Rebecca, Rivka, Spivak) **and** "Admeld Migration" or "Admeld" or "TYM"~~<br>~~* "Manager Discretion" or "Stock Refresh" or "GSU" or "RSU" or "Stock Grant"~~<br>* "Maternity Leave" or "Emotional" or "Baby" or "Return to work" or "Backfill"<br>~~* "Buyside" or "under the radar" or "unimportant"~~ | 7/1/11 - 12/31/13 |
| Drew Bradstock - NY Product Manager | Was given credit for Spivak's work and multiple opportunities to publicly present it | **Spivak's proposed search terms are overbroad to the extent that they do not also require reference Spivak, resulting in a high volume of miss-hits that have no bearing on any claim or defense.**<br>**The time and expense of processing and reviewing these proposed terms vastly outweighs any arguable probative value as to any hits that do not reference Spivak.** | * **(rivka OR spivak OR rebecca) AND (admeld OR TEXT=TYM OR TITLE=TYM)**~~any emails sent to or received from Spivak, or that mention Spivak by name (Rebecca, Rivka, Spivak) **and**~~<br>~~* "Admeld Migration" or "Admeld" or "TYM"~~<br>~~* "Buyside" or "Inventory Discovery" or "RTB Dashboard" or "RTB Alerts"~~<br>* "Hormonal" | 1/1/12 - 3/1/14 |

**Seattle Timeframe - 1/1/14 - 12/31/15**

Spivak's Manager/Lead

| **Custodian** | **Spivak's Rationale** | **Google's Rationale** | **Relevant Terms** | **Date Range** |
|---|---|---|---|---|
| Jens Skakkebaek | Spivak's Manager | **Spivak's proposed search terms are overbroad to the extent that they do not also require reference Spivak, resulting in a high volume of miss-hits that have no bearing on any claim or defense.** **The time and expense of processing and reviewing these proposed terms vastly outweighs any arguable probative value as to any hits that do not reference Spivak.** **Some of the proposed search terms impermissibly invade the constitutional right to privacy of third parties (e.g. PIP of third parties).** | * any emails sent to or received from Spivak, or that mention Spivak by name (Rebecca, Rivka, Spivak) * **feedback AND honest***~~"completely honest" or "feedback"~~ * "toxic" or "PIP" or "Performance Improvement Plan" **so long as it relates to Spivak** ~~* "Frontline" or "AMP" or "PItchX" or "Quicksilver" or "Unified Estimates"~~ * "Interactive Benchmarks" **OR TEXT=IB OR TITLE=IB**~~or "IB"~~ * "Relocation" or "Remotely" **so long as it relates to IB** | 1/1/14 - 9/1/15 |
| Aaron Rothman | Spivak's Lead | **Spivak's proposed search terms are overbroad to the extent that they do not also require reference Spivak, resulting in a high volume of miss-hits that have no bearing on any claim or defense.** **The time and expense of processing and reviewing these proposed terms vastly outweighs any arguable probative value as to any hits that do not reference Spivak.** | * any emails sent to or received from Spivak, or that mention Spivak by name (Rebecca, Rivka, Spivak) ~~* "Frontline" or "AMP" or "PItchX" or "Quicksilver" or "Unified Estimates"~~ * "Interactive Benchmarks" or **TEXT=IB OR TITLE=IB**~~"IB"~~ * "Relocation" or "Remote PM" **so long as it relates to IB** * Tantrum or Vacation or Petulant | 7/1/14 - 7/1/15 |

Engineers

| **Custodian** | **Spivak's Rationale** | **Google's Rationale** | **Relevant Terms** | **Date Range** |
|---|---|---|---|---|
| Michael English | Spivak's coworker and also a Manager | **Spivak's proposed search terms are overbroad to the extent that they do not also require reference Spivak, resulting in a high volume of miss-hits that have no bearing on any claim or defense.**<br>**The time and expense of processing and reviewing these proposed terms vastly outweighs any arguable probative value as to any hits that do not reference Spivak.** | * any emails sent to or received from Spivak, or that mention Spivak by name (Rebecca, Rivka, Spivak)<br>~~* "Frontline" or "AMP" or "PItchX" or "Quicksilver" or "Unified Estimates"~~<br>* "Interactive Benchmarks" or **TEXT=IB OR TITLE=IB**~~"IB"~~ | 1/1/2014 - 11/30/2015 |
| Doug Bengtson | Engineering Manager and Michael English's supervisor | **Spivak's proposed search terms are overbroad to the extent that they do not also require reference Spivak, resulting in a high volume of miss-hits that have no bearing on any claim or defense.**<br>**The time and expense of processing and reviewing these proposed terms vastly outweighs any arguable probative value as to any hits that do not reference Spivak.** | * any emails sent to or received from Spivak, or that mention Spivak by name (Rebecca, Rivka, Spivak)<br>~~* "Frontline" or "AMP" or "PItchX" or "Quicksilver" or "Unified Estimates"~~<br>* "Interactive Benchmarks" or **TEXT=IB OR TITLE=IB**~~"IB"~~ | 10/1/2013 - 10/1/2014 |

**Product Managers**

| **Custodian** | **Spivak's Rationale** | **Google's Rationale** | **Relevant Terms** | **Date Range** |
|---|---|---|---|---|
| Nicholas Weng Kan (in London) | Interviewed Spivak for a potential role on Google Compare | **Spivak's proposed search terms are overbroad to the extent that they do not also require reference Spivak, resulting in a high volume of miss-hits that have no bearing on any claim or defense.**<br>**The time and expense of processing and reviewing these proposed terms vastly outweighs any arguable probative value as to any hits that do not reference Spivak.** | * any emails sent to or received from Spivak, or that mention Spivak by name (Rebecca, Rivka, Spivak)<br>~~* "Lead PM" or "SPM"~~<br>* "Open Role" or "Opportunity" **so long as it relates to Spivak**<br>* "Interview" or "Presentation" **so long as it relates to Spivak** | 9/1/2015 - 11/30/2015 |
| Emily Rapp | Spivak's Coworker who senior leaders confided in | **Spivak's proposed search terms are overbroad to the extent that they do not also require reference Spivak, resulting in a high volume of miss-hits that have no bearing on any claim or defense.**<br>**The time and expense of processing and reviewing these proposed terms vastly outweighs any arguable probative value as to any hits that do not reference Spivak.** | * any emails sent to or received from Spivak, or that mention Spivak by name (Rebecca, Rivka, Spivak)<br>* "pissed" or "remote PM"~~ or "HRBP"~~ or "relocation"<br>* ~~"Frontline" or "Bigler" or "Jason" or "thaw" or~~ "Interactive Benchmarks" | 1/1/2015 - 4/1/2015 |

**Human Resources**

| Custodian | Spivak's Rationale | Google's Rationale | Relevant Terms | Date Range |
|---|---|---|---|---|
| Caroline Bremner | Communicated with Spivak re: her allegations | **Spivak's proposed search terms are overbroad to the extent that they do not also require reference Spivak, resulting in a high volume of miss-hits that have no bearing on any claim or defense.**<br>**The time and expense of processing and reviewing these proposed terms vastly outweighs any arguable probative value as to any hits that do not reference Spivak.**<br>**Some of the proposed search terms impermissibly invade the constitutional right to privacy of third parties (e.g. PIP or Severance).** | * any emails sent to or received from Spivak, or that mention Spivak by name (Rebecca, Rivka, Spivak)<br>* "Performance Improvement Plan" or "Severance" **so long as it relates to Spivak** | 2/1/2014 - 11/30/2015 |
| Cindy Treloar (ER) | Communicated with Spivak re: her allegations | **Spivak's proposed search terms are overbroad to the extent that they do not also require reference Spivak, resulting in a high volume of miss-hits that have no bearing on any claim or defense.**<br>**The time and expense of processing and reviewing these proposed terms vastly outweighs any arguable probative value as to any hits that do not reference Spivak.**<br>**Some of the proposed search terms impermissibly invade the constitutional right to privacy of third parties (e.g. PIP and attrition).** | * any emails sent to or received from Spivak, or that mention Spivak by name (Rebecca, Rivka, Spivak)<br>* "Employee Relations" or "Interrogation" or "Retaliation" or "neutral party" or "Ethics" **so long as it references Spivak**<br>* "Managing Low Performers" or "Managing Low Performance" or "PIP" or "Performance Improvement Plan" **so long as it relates to Spivak**<br>* "non-regretted attrition" or "nonregretted attrition" or "unregretted attrition" **so long as it relates to Spivak** | 5/1/2014 - 11/30/2015 |
| Paul Higson | Communicated with Spivak re: her allegations | **Spivak's proposed search terms are overbroad to the extent that they do not also require reference Spivak, resulting in a high volume of miss-hits that have no bearing on any claim or defense.**<br>**The time and expense of processing and reviewing these proposed terms vastly outweighs any arguable probative value as to any hits that do not reference Spivak.** | * ~~"Frontline" or~~ "Interactive Benchmarks" or **TEXT=IB OR TITLE=IB**~~"IB"~~<br>* "Relocation" or "Remote PM" **so long as it relates to Spivak** | 2/1/2014 - 11/30/2015 |

| | | | | |
|---|---|---|---|---|
| Lauren Thomas Ewing | Communicated with Spivak re: her allegations | **Spivak's proposed search terms are overbroad to the extent that they do not also require reference Spivak, resulting in a high volume of miss-hits that have no bearing on any claim or defense.**<br>**The time and expense of processing and reviewing these proposed terms vastly outweighs any arguable probative value as to any hits that do not reference Spivak.**<br>**The proposed search terms impermissibly invade the constitutional right to privacy of third parties.** | * any emails sent to or received from Spivak, or that mention Spivak by name (Rebecca, Rivka, Spivak)<br>* "Rothman" or "Aaron" **so long as it relates to Spivak** | 10/1/2014 - 11/30/2015 |
| Ariana Tortorici (ER) | Communicated with Spivak re: her allegations | **Spivak's proposed search terms are overbroad to the extent that they do not also require reference Spivak, resulting in a high volume of miss-hits that have no bearing on any claim or defense.**<br>**The time and expense of processing and reviewing these proposed terms vastly outweighs any arguable probative value as to any hits that do not reference Spivak.**<br>**Some of the proposed search terms impermissibly invade the constitutional right to privacy of third parties.** | * any emails sent to or received from Spivak, or that mention<br>Spivak by name (Rebecca, Rivka, Spivak)<br>* ~~"Frontline" or~~ "Interactive Benchmarks" or **TEXT=IB OR TITLE=IB**~~"IB"~~<br>* "plusmail" or "warning" or "dirt" or "flirt" or "insubordination" **so long as it relates to Spivak** | 2/1/2015 - 11/30/2015 |
| Lainey Dailo | Relocation Specialist during IB re-org | **Spivak's proposed search terms are overbroad to the extent that they do not also require reference Spivak, resulting in a high volume of miss-hits that have no bearing on any claim or defense.**<br>**The time and expense of processing and reviewing these proposed terms vastly outweighs any arguable probative value as to any hits that do not reference Spivak..**<br>**Some of the proposed search terms impermissibly invade the constitutional right to privacy of third parties.** | *any emails sent to or received from Spivak, or that mention Spivak by name (Rebecca, Rivka, Spivak)<br>* "Relocation Letter" or "contract" **so long as it relates to IB** | 2/1/2015 - 3/1/2015 |

## Other Senior Leaders

| Custodian | Rationale | Google's Rationale | Relevant Terms | Date Range |
|---|---|---|---|---|
| Dustin Jackson (in LA) | Was Bengtson's Supervisor and Director of IB when it was relocated | **Spivak's proposed search terms are overbroad to the extent that they do not also require reference Spivak, resulting in a high volume of miss-hits that have no bearing on any claim or defense.**<br>**The time and expense of processing and reviewing these proposed terms vastly outweighs any arguable probative value as to any hits that do not reference Spivak.** | * any emails sent to or received from Spivak, or that mention Spivak by name (Rebecca, Rivka, Spivak)<br>~~* "Frontline" or "AMP" or "PItchX" or "Quicksilver" or "Unified Estimates"~~<br>* "Interactive Benchmarks" or **TEXT=IB OR TITLE=IB**~~"IB"~~<br>* "Relocation" **so long as it relates to IB** | 7/1/2014 - 11/30/2015 |
| Scott Silver | Jackson's Supervisor | **Spivak's proposed search terms are overbroad to the extent that they do not also require reference Spivak, resulting in a high volume of miss-hits that have no bearing on any claim or defense.**<br>**The time and expense of processing and reviewing these proposed terms vastly outweighs any arguable probative value as to any hits that do not reference Spivak.** | * any emails sent to or received from Spivak, or that mention Spivak by name (Rebecca, Rivka, Spivak)<br>~~* "Frontline" or "AMP" or "PItchX" or "Quicksilver" or "Unified Estimates~~"<br>* "Interactive Benchmarks" or **TEXT=IB OR TITLE=IB**~~"IB"~~<br>* "Relocation" **so long as it relates to IB** | 2/1/2015 - 3/1/2015 |

# EXHIBIT C

**From:** Brian Johnsrud
**To:** "Rebecca Spivak"
**Subject:** RE: Ediscovery Revisions
**Date:** Wednesday, June 20, 2018 12:56:10 PM

Rebecca,

This is supposed to be a meet and confer about specific search terms and custodians, not a mish mash of argument and questions on custodians as you happen to bring them up in scattershot approach. Because we're not making (and have not made) material progress here, we'll submit our position to the Arbitrator by this coming Wednesday by 5 pm, copying you. We assume you will do the same.

Best regards,

Brian

Brian Lee Johnsrud
**Curley, Hurtgen & Johnsrud LLP**
Counselors at Law
4400 Bohannon Drive, Suite 230
Menlo Park, CA 94025
(d) 650.600.5310
(c) 650.722.2733
bjohnsrud@chjllp.com
www.chjllp.com

**From:** Rebecca Spivak [mailto:rebeccaspivak@outlook.com]
**Sent:** Wednesday, June 20, 2018 12:43 PM
**To:** Brian Johnsrud
**Subject:** Re: Ediscovery Revisions

My responses below in green

In addition, here are some other questions/revisions

My Discovery:

1) What is your justification for insisting on discovery going back more than 3 months prior to my start date with Google?

2) "Emotional State or Condition." I will not agree to this except when it is relevant to my claims against Google.

Google's Discovery

1) re: Cindy Treloar: I will not agree to limiting this discovery to things directly related to me. I made a protected ethics complaint and Cindy Treloar - who asserted that she was impartial and from Employee Relations - was assigned to handle my complaint. The evidence will show that Cindy Treloar actually prided herself on forcing undesirable employees out of the company. She ran a course on how to get people to quit. She openly bragged about this on group chats and on her internal Google resume. Cindy Treloar's communication prior to her being assigned to investigate my complaint (where she certainly would not have mentioned my name) establish Google's early retaliation and bad faith.

2) Lauren Ewing: Lauren's communications regarding Rothman's performance/ management mistakes/ remedial-training is relevant to my claims even if that communication was not directly about me.

3) Lainey Dailo: I need more than just IB to establish differential treatment in the relocation offer

4) Dustin Jackson: "Relocation" so long as it relates to IB - OR FRONTLINE

Best Regards,
Rebecca

---

**From:** Brian Johnsrud <BJohnsrud@chjllp.com>
**Sent:** Wednesday, June 20, 2018 11:27 AM
**To:** 'Rebecca Spivak'
**Subject:** RE: Ediscovery Revisions

Rebecca,

My response are below in highlighting and please let me know if you have any follow up questions or proposals.

Best regards,

Brian

Brian Lee Johnsrud
**Curley, Hurtgen & Johnsrud LLP**

Counselors at Law
4400 Bohannon Drive, Suite 230
Menlo Park, CA 94025
(d) 650.600.5310
(c) 650.722.2733
bjohnsrud@chjllp.com
www.chjllp.com

---

**From:** Rebecca Spivak [mailto:rebeccaspivak@outlook.com]
**Sent:** Monday, June 18, 2018 9:01 PM
**To:** Brian Johnsrud
**Subject:** Re: Ediscovery Revisions

Hi Brian -

I definitely want to work with you on specific provisions. I do believe we can find creative approaches here that will allow us to provide each other with the material evidence while minimizing the e-discovery efforts and any perceptions of overreaching.

Here are a few examples of where I can certainly compromise with a creative approach

**Neal Mohan / "Promotion"**
<u>Compromise: The promotion announcements and packets for individuals promoted in Neal's Org</u>
The ads organization under Neal Mohan was especially biased at Google. Men and Women were promoted under a completely different standard. In fact, the traits that I was penalized for were the same traits that were praised in men. I can concede that I don't need every email where "promotion" is mentioned - but I do need, at the very least, every promotion announcement sent out for those in Neal's organization as well as the promotion packets. I remember noticing this in the promotion announcements while I was still employed at Google. And it might very well be that I would get most of these emails anyway once you share all email that was received to rivka@google.com (so that we're on the same page - this should include all email where I was on a group list, as well as anything sent to me directly).
On your rationale for not providing these emails - Neal was not so far removed from me at all - For the majority of my time at Google Neal was my skip-manager and his approval was directly needed for any promotion I would receive. This was true in NY and in Seattle. He was my boss's boss and I also met with him directly one-on-one at least twice. If you can share the promotion announcements/packets - either as an e-discovery item or as as a document production (since I still have a few left on that list), then I think we're good.

CHJ: Relevance is defined in large part by the pleadings. Your Amended Demand for

Arbitration specifically identifies Mr. Skakkebaek and Mr. Rothman as alleged discriminators, and your manager in NY was Scott Spencer. Our understanding is that you barely interacted with Mr. Mohan – you cite just 2 meetings and no alleged wrongful conduct by Mr. Mohan. We thus won't be agreeing to broad discovery into the many employees who reported into Mr. Mohan while he was the SVP for Display and Ads. Further, you never went through the promotion process so these promotion requests are not relevant, let alone for Mr. Mohan's entire organization.

RS: Neal Mohan was directly responsible for the biased culture of his organization and the actions of his direct reports, who made it very clear that Neal was involved in the decisions they made. The culture and bias within the Ads organization and within Google as a whole - along with the policies that enabled these biases - is absolutely relevant to

If you are referencing the Notice of Claims filed back in July of 2015 while I was still employed at Google, then I agree that this notice should be updated to better reflect the actual claims we have been discussions for the past 3 years. I will raise this with the arbitrator on our call. Google has had notice in multiple legal documents and in the EEOC process of claims that go beyond this notice. In fact, in Google's mediation letter, it acknowledges and attempts to refute claims that go beyond the claims in the July 2015 notice.
We should update the claims to include the damages we have actively been discussing - including the NY damages, the Compare role, and Google's public disclosure that I was on a PIP

**Scott Spencer / "Ad Meld"**
Compromise: Emails relating to staffing/ ownership of Admeld
After I told Scott I was pregnant, he told me he needed to tell Neal. And I have very good reason to believe that he asked others to step in. He would not necessarily have mentioned my name - but the proof is in the time. So, I don't need every email that Scott sent where he mentioned Admeld. But I do need the emails where he made arrangements for others to drive my projects, even though I was still there and eager to continue owning these products for the next 6 months. I'm not sure exactly how to continue to narrow this - but we can brainstorm ways to limit this just to conversations that Scott had around staffing/continuity - including emails where he did not mention my name.

CHJ: We agreed to produce email for Scott where he uses your name and Admeld. That would certainly seem to cover emails where he made arrangements for others to allegedly drive your projects. If after reviewing the email we produce you believe there would be something else, we would agree to meet and confer on it.

RS: It is important that I receive emails where Scott discussed Admeld staffing regardless of whether he mentioned my name (and especially when he did not mention my name). We can limit the time frame. This should not be controversial.

**Chat/Hangouts** -- I see that you crossed this out. I'm not very flexible on this. I received chats from HR and I also received biased chats from some key individuals. I saved some of those chats - but not all of them.

CHJ: This should be a non issue. We informed your former counsel of this and we assumed it was shared: chats/hangouts are preserved only if they are saved in email. And, if they were saved in email, they will be picked up by the search terms and produced as part of the email review.

RS: Are you confirming that Google did not preserve relevant chat/ instant message communications post June 2015?

**My Financial Record**

I believe that Google already has most of the emails and documents that it is asking me to produce for e-discovery. Still, it is a huge overreach to ask for me to hand it over. I do not deny that I traded facebook stock and options while employed at Google, and I do not deny that there were large gains, and I do not deny that some trades executed during business hours. I may be willing to concede the factual claims that you are trying to prove. Alternatively, I may agree to a third party summarizing the pertinent data.

CHJ: We do not agree with your attempt to shield these facts because these facts relate directly to our after-acquired evidence defense as well as the nature and extent of your alleged economic damages, and we need to prove our defense with specific facts, not generalized concessions on your part.

RS: I am not attempting to shield any facts. I would be happy to work with a 3rd party who can summarize the facts that you need, subject to the arbitrator's ruling.

Those are a few of the provisions I would propose. Is there room here? Does the above seem more acceptable to Google? It should cut down on the e-discovery even more than I have already reduced it. If so, I can continue to work on revisions.

Best Regards,
Rebecca

---

**From:** Brian Johnsrud <BJohnsrud@chjllp.com>
**Sent:** Monday, June 18, 2018 11:12:13 AM
**To:** 'Rebecca Spivak'
**Subject:** RE: Ediscovery Revisions

Rebecca,

If you have any specific proposed revisions, we are open to reviewing them. From your message below, however, you seem intent on pressing for everything you demanded. If that's the case, we can both just prepare for the call with the Arbitrator.

Best regards,

Brian

Brian Lee Johnsrud
**Curley, Hurtgen & Johnsrud LLP**
Counselors at Law
4400 Bohannon Drive, Suite 230
Menlo Park, CA 94025
(d) 650.600.5310
(c) 650.722.2733
bjohnsrud@chjllp.com
www.chjllp.com

---

**From:** Rebecca Spivak [mailto:rebeccaspivak@outlook.com]
**Sent:** Friday, June 15, 2018 7:01 PM
**To:** Brian Johnsrud
**Subject:** Re: Ediscovery Revisions

Hello Brian -

Unfortunately, I am not ok with your proposed revisions. They are largely problematic. It does not seem like you welcome my specific concerns or further negotiation, but please do let me know if this is not the case, and if I am misunderstanding your message. I also do not agree with other claims that you have made in this email.

I am also prepared, as necessary, to argue this before the arbitrator.

As you know, I am seeking more than $10 million in damages, and my actual damages are at least an order of magnitude higher than the damages I am pursuing. Given the damages and stakes in this case, the discovery burden is proportionally modest, by any measure.

If you would like to engage in further discussion and negotiation prior to the call with the arbitrator at the end of this month, I welcome the chance to do so, and hope we will be able to reach some resolution. If you are firm with your current stance, then I will focus on preparing arguments to present to Judge Baines.

Best Regards,
Rebecca

---

**From:** Brian Johnsrud <BJohnsrud@chjllp.com>
**Sent:** Monday, June 11, 2018 4:33:05 PM
**To:** Rebecca Spivak (rebeccaspivak@outlook.com)
**Subject:** FW: Ediscovery Revisions

Hi Rebecca,

We expected you to send proposed revisions to our pending e-discovery proposal given the Arbitrator's Order stating:

> The parties are ordered to meet and confer regarding an e-discovery plan appropriate for this matter, using the above-mentioned document as the starting point. Claimant Spivak shall, by the end of the day on Monday, June 4, 2018**,** forward to Respondent's counsel her proposed revisions to that document.

Instead of doing that, you created your own proposal, which would add exponentially to Google's collection, review and production.

Our reasonable revisions to your proposal are attached and we are prepared, as necessary, to argue them before the Arbitrator. We do want to note that our proposal is intended to get this process moving and is **without prejudice** to your right to seek specific documents you believe are relevant after you review the documents produced under the protocol.

Separately, since you now are refusing the stipulation that previously addressed your Facebook trading activity and alleged emotional distress, we have added those terms and others to your search obligations. We've also added the names of the custodians you are insisting that Google review to your search protocol.

Please let us know if you are okay with the updated protocols by noon Pacific this Friday the 15th.

Best regards,

Brian Lee Johnsrud
**Curley, Hurtgen & Johnsrud LLP**
Counselors at Law

4400 Bohannon Drive, Suite 230
Menlo Park, CA 94025
(d) 650.600.5310
(c) 650.722.2733
bjohnsrud@chjllp.com
www.chjllp.com

---

**From:** Rebecca Spivak [mailto:rebeccaspivak@outlook.com]
**Sent:** Tuesday, June 05, 2018 1:05 AM
**To:** Brian Johnsrud
**Subject:** Ediscovery Revisions

Hello Brian -

Here are my proposed revisions to Exhibits A, B, and C.

For Exhibit C, my only change was to limit the discovery to relevance.

For Exhibit A and B - I agree with you that this discovery was quite extensive. In reviewing the proposal, I roughly calculated the time-period x custodian volume as follows:

Exhibit A: 18 Custodians - totaling ~34 custodian-years of email
Exhibit B: 15 Custodians - totaling ~24 custodian-years of email

Overall, this was 33 Custodians and 58 custodian-years. I was able to reduce this quite a bit. My revisions combine the custodian to a single set of 18 custodians, and to cut the custodian-years by half.

I think these proposed revisions are very reasonable, and help focus both sets of discovery to evidence that will be useful without being overly burdensome.

As to the stock trades and emotional distress, I do not agree to the stipulation on either of those points, but we can add additional discovery terms if relevant.

Let me know your thoughts.

Best Regards,
Rebecca

# EXHIBIT D

**Spivak Accounts And Search Terms for e-discovery:**

Custodian: Rivka Spivak

Accounts: (1) rspivak@gmail.com; (2) Plusmail (whether stored in Ms. Spivak's Gmail account or elsewhere); (3) Facebook Messenger; (4) LinkedIn; (5) Instagram; and (6) any text or instant messaging accounts or applications - for the time period of April January 1, 2010 to April 2017present (unless another time period is specified below) so long as (for terms #21 through #32) it is also relevantrelates to at least one of the following

Spivak's claims against Google

Spivak's Employment with Google

Any other employment, prospective employment, attempts to obtain employment, or earned Spivak's income or compensation from any source, including her Facebook stock and option trading that Spivak had

Any other factors in or possible causes of Spivak's alleged Emotional Distress, or which reflect Spivak's emotional state or condition

Search Terms:

All non-privileged emails, texts, and any other electronic communications containing any of the following search terms:

1. Doug or Bengtson (insofar as the term "Doug" relates to "Doug Bengtson," with this protocol also applying to the names in categories 2-1020)

2. Michael or English

3. Judy or Hsu

4. Dustin or Jackson

5. Vince or Lacey

6. Aaron or Rothman or Baron or Roth

7. Scott or Silver

8. Barbara or Stanley

9. Scott or Spencer

10. Jens or Skakkebaek

11. Neal or Mohan

12. Drew or Bradstock

13. Emily or Rapp

14. Nick or Nicholas or Weng or Kan

15. Caroline or Bremner

16. Cindy or Treloar

17. Paul or Higson

18. Lauren or Thomas or Ewing

19. Ariana or Tortorici

20. Lainey or Dalio

21. Google

~~12~~22. Extort or extortion or blackmail or gamble or gambler or desperate

~~13~~23. Problematic or dirt or freedom or "own company"

~~14~~24. Yell or scream or pressure or emotion or emotional or prescription or doctor or Rachel or Torrez

~~15~~25. Code name or codename or saga

~~16~~26. EEOC or Toni or Haley

~~17~~27. Fire or fired or unfireable or terminate or discriminate or retaliate or skewer or insubordinate or insubordination

~~18~~28. Re-org or reorg or reorganization or re-organization or relocate or transfer

~~19~~29. Fucktard or retard or dumb or stupid or clueless or idiot or incompetent or hate or boss or manager

~~20~~30. Diary or journal

~~21~~31. Job search or application or network

32. Facebook or FB or option or portfolio or margin or leverage or trade or invest or investment or Ameritrade or TDAmeritrade (for the period from January 1, 2010 through April 30, 2017)

# PROOF OF SERVICE

I am a resident of the State of California and over the age of eighteen years, and not a party to the within action; my business address is 4400 Bohannon Drive, Suite 230, Menlo Park, California 94025.

On June 27, 2018, I served the within document(s):

**Google's Letter Brief Regarding eDiscovery Protocol**

☐ by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

☐ by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Menlo Park, California addressed as set forth below.

☐ by placing the document(s) listed above in a sealed Federal Express envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to a Federal Express agent for delivery.

☒ by causing the document(s) listed above to be personally delivered to the person(s) at the address(es) set forth below.

☐ by transmitting via electronic mail the document(s) listed above to each of the person(s) as set forth below.

**Hon. Robert A. Baines (Ret.)**
**JAMS**
**160 W. Santa Clara St.**
**Suite 1600**
**San Jose, CA 95113**

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

Executed on June 27, 2018, at Menlo Park, California.

I declare under penalty of perjury, under the laws of the State of California, that the above is true and correct.

LENORE G LIVINGSTON

# PROOF OF SERVICE

I am a resident of the State of California and over the age of eighteen years, and not a party to the within action; my business address is 4400 Bohannon Drive, Suite 230, Menlo Park, California 94025.

On June 28, 2018, I served the within document(s):

**GOOGLE'S LETTER BRIEF REGARDING EDISCOVERY PROTOCOL**

☐ by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

☐ by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Menlo Park, California addressed as set forth below.

☐ by placing the document(s) listed above in a sealed Federal Express envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to a Federal Express agent for delivery.

☐ by causing the document(s) listed above to be personally delivered to the person(s) at the address(es) set forth below.

☒ by transmitting via electronic mail the document(s) listed above to each of the person(s) as set forth below.

| | |
|---|---|
| Rebecca Spivak<br>Email: rebeccaspivak@outlook.com | **CLAIMANT** |
| Hon. Robert A. Baines (Ret.)<br>JAMS<br>160 W. Santa Clara Street, Suite 1600<br>Santa Clara, CA 95113<br>Email: MPenuliar@jamsadr.com<br>cvictory@jamsadr.com | **ARBITRATOR** |

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

Executed on June 28, 2018, at Menlo Park, California. I declare under penalty of perjury, under the laws of the State of California, that the above is true and correct.

LYNETTE POLA