UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

Rivka Spivak,

Plaintiff,

v.

Alphabet Inc., et al.,

Defendants.

Case No. 2:20-cv-01480-MJP

EXHIBIT 13

Google's Opposition to Spivak's Discovery Protection Order Motions

Filed in Support of Plaintiff's Motion to Vacate

Judgment Under Rule 60(d)(3)

**CURLEY, HURTGEN & JOHNSRUD LLP**
**COUNSELORS AT LAW**
**4400 BOHANNON DRIVE, Suite 230**
**MENLO PARK, CA 94025**
**www.chjllp.com**

**Brian L. Johnsrud**
**650.600.5310**
**bjohnsrud@chjllp.com**

April 23, 2019

**VIA ELECTRONIC DELIVERY**

Hon. Robert Baines (Ret.)
JAMS
160 W. Santa Clara Street, Suite 1600
San Jose, Ca 95113

Re: *Spivak v. Google* - JAMS Ref. No. 1110018238
**Google's Opposition To Spivak's Motion For Protective Order, Motion To Compel, And For Sanctions And Other Relief**

Dear Judge Baines:

Claimant Spivak's inflammatory motions have no merit and should be denied in their entirety. Far from carrying her burden, Spivak offers no evidence that Google or its counsel violated any JAMS Rule or any prior Order. Instead, Spivak's motions contain nothing more than baseless accusations. Her motions are yet another transparent attempt to avoid her discovery obligations, excuse or justify her ongoing refusal to comply with previously issued Orders, and re-litigate rulings that did not go her way.

Spivak's motions reinforce the conclusion that she continues to operate in bad faith. Spivak bases her motion for a protective order on the following accusations: "Google is trying to gather evidence through discovery to support filing a criminal complaint against me" and "I was certain that Google had just threatened to file false criminal charges against me." (Motion for Protective Order at 1; Spivak's Annotated Exhibits at 11) Spivak makes those accusations with total certainty but offers zero evidence to support them. That she would even make such assertions based on the written correspondence at issue demonstrates her tendency to make serious accusations with no evidence, while trying to excuse her own demonstrable misconduct.

While Spivak previously defended her unprofessional behavior, she now offers an apology to the Arbitrator (not to the people she repeatedly taunted and mocked) and asserts that she learned her lesson following the award of monetary sanctions against her in Pre-Hearing Order No. 10. But Spivak's apology is meaningless because her actions over the last four months since that Order, including in bringing the instant motions, show that her misconduct not only continues, it has escalated.

In light of Spivak's inability or refusal to comport herself with even a minimum level of professionalism despite prior warnings and sanctions, and her ongoing refusal to follow the JAMS Rules and the Arbitrator's Orders, issue and monetary sanctions are fully justified, for the reasons set forth below.

## I. ARGUMENT

### A. Spivak's Motion For A Protective Order Lacks Any Evidentiary Support, And Instead Demonstrates Her Tendency To Make False Accusations About Serious Matters With No Evidence.

Spivak's motion for a protective order repeatedly references her emotional reactions to routine emails as an attempt to justify her unprofessional behavior and her ongoing defiance of the Arbitrator's Orders. For example, Spivak tries to explain away her rude response to the proposed stipulation about her Facebook trading by relying on her own fears and emotions:

> When I saw this, it elicited a **strong fear response**. I sort of knew what was **setting me off**, but I didn't consciously know why. I sent Google an unfortunate and very unprofessional reply, and followed it with two more unfortunate and unprofessional responses. I regret all of these replies. These emails were me being my worst self. **I was letting fear take over and lashing out** at the unknown threat. (Motion for Protective Order "MPO" at 8) (emphasis added)

Some additional examples of Spivak's heavy reliance on her own emotions as the basis for her conduct include the following:

- "I reminded Mr. Johnsrud of Google's 2015 lawsuit and told him that I was concerned about whether Google had something similar planned. I was suddenly **afraid**." (MPO at 4) The Arbitrator has already rejected Spivak's arguments that there was anything improper in Google's 2015 lawsuit, in Order No. 10.

- "I relied on my email group of close friends as a primary outlet to discuss whatever might be on my mind. This was especially true when **I was stressed – or after I had too many glasses of wine."** (MPO at 6)

- "Why was this the thing that **set me off**? What am I pointing to to justify **going on such a rant** against Google? It seems **completely irrational**." (MPO at 8)

- "Why should I care? **Why should I be fearful or get angry?** (MPO at 8)

- "I sensed a threat, but I didn't know what it was. Knowing I faced an unknown threat **triggered a fear response** in me." (MPO at 9) Spivak has provided the parties' correspondence for the Arbitrator, and it does not contain any threat, express or implied.

- "I wavered between signing it, and ultimately **realized it wasn't safe**, even though I didn't know why." (MPO at 9) Nothing in the instant dispute implicates Spivak's safety in any way. Her attempts to portray herself as a victim or seek sympathy are baseless; it is Spivak who sent multiple unprofessional emails taunting Google employees like Neal Mohan and Emily Rapp.

- "I wish I knew how to tell you this in the right way, and in a way that is respectful. I am **scared** and I am **trying to stay in control**." (MPO at 13) Spivak's fears are irrelevant because they are baseless, and her behavior over the last four months demonstrates an abject lack of self-control.

- "I am **worried about my safety**. I don't know if there are lines that Google won't cross –especially now." (MPO at 14) But Spivak has no evidence that Google has crossed any lines, nor has it made any threat to Spivak's safety. It is Spivak who sent troubling messages to Google employees and repeatedly violated the Arbitrator's Orders.

Spivak also uses her emotions to try to justify her multi-million dollar leveraged trading in the stock and options of Google's largest competitor. Spivak's excuse: "I experienced a tremendous amount of anxiety at work during this time period" and "it was truly my coping mechanism for dealing with anxiety..." (MPO at 10-11)[1] Spivak's purported excuse does not make sense, as she appears to have traded while she was supposedly working on her big idea, but claims she did not trade around the time of her termination, presumably a stressful event.

Spivak's after-the-fact attempt to explain away her day-trading is not credible in light of the more contemporaneous documentation. For example, Spivak does not dispute referring to her mindset about her Facebook trading as that of a "desperate gambler," which is why that search term was used in the protocol. (*See* MPO at 6: "I can recognize that Google's keywords appear to be chosen to match on certain specific emails and entries from my diary.") Nor does Spivak dispute referencing a desire to accumulate significant assets from her trading so she could quit her job and start her own company. In short, her attempt to blame her leveraged trading in Google's largest competitor on stress (or on Google) is not credible given her own contemporaneous writings.[2]

Ultimately, Spivak's excuse is irrelevant because there is no exception in Google's Code of Conduct permitting employees to trade in a competitor's stock if the employee feels stress or anxiety. One of the primary reasons for having a Code of Conduct is to guide employees' actions, **especially** in potentially stressful situations.

---

[1] The Arbitrator repeatedly held that Spivak's Facebook trading is discoverable, yet her motion for a protective order attempts to re-litigate that issue for at least the third time. Spivak now submits a chart of what she claims is her trading activity, asking Google to accept her assertions about her trading without providing the underlying records. Her motion only reinforces the discoverability of her trading records.

[2] Spivak's latest arguments about the search terms, five months **after** her production deadline, illustrates both the untimeliness of her motion and the fact that she refuses to comply with Orders with which she does not agree, making a mockery of these proceedings at Google's expense.

In short, these arbitration proceedings are not a therapy session for Spivak, and her beliefs and feelings are not evidence. Nor do her unsupported beliefs or feelings provide any excuse for her ongoing refusal to comply with the Arbitrator's Orders and the JAMS Rules.

Notably, while Spivak now makes baseless accusations about an alleged plot to have her criminally charged with extortion, the email she purports to base that allegation on was **sent over one month <u>after</u> the deadline for her to produce her eDiscovery documents**. Thus, under even the most charitable interpretation of Spivak's thought process and behavior, the alleged threat can hardly be used to justify her refusal to comply with the eDiscovery Orders when her non-compliance came some **<u>five weeks before</u>** the alleged threat.

To make matters worse, Spivak makes countless serious accusations in her motion without citing to **<u>any</u>** supporting evidence. The following are some illustrative examples:

- "Google's entire focus is on getting this criminal complaint filed before any further progress in the arbitration is made." (MPO at 2)
- "They have been planning this for at least a year given the search terms in exhibit D of their eDiscovery protocol. I also suspect that this may have actually been the original plan in 2015." (MPO at 2)
- "[I]t will be clear that this was a setup to try get me to make an unreasonable and unwelcome demand…." (MPO at 3)
- "I begged Google not to do whatever they were planning.... Google instead responded with a thinly-veiled threat that they would take action against me without warning and that time was running out." (MPO at 4)
- "Now I realize that they needed to receive these emails in discovery in order to attach them to a criminal complaint. Evidence obtained in discovery can be disseminated." (MPO at 7)
- "Furthermore, the public probably wouldn't like a complaint supported by evidence that Google acquired by way of monitoring an employee's personal diary." (MPO at 7)
- "It's unfortunate when opposing counsel has read your entire diary and knows your triggers and insecurities." (MPO at 7)
- "They need to get the charges filed before I get a chance to get their discovery. That's why they've insisted that they get time to review my discovery before any further rounds." (MPO at 13) Spivak already has Google's production of well over 50,000 eDiscovery documents, so her assertion makes zero sense.
- "This is a giant setup for something I didn't do." (MPO at 13)
- "I am going to end up in handcuffs anyway. Please see it." (MPO at 14)

Contrary to Spivak's litany of false and unsupported accusations, the true facts are as follows:

- Google and its counsel discuss potential resolution in nearly all cases as they progress, and there was nothing unique in Google doing so here, as counsel specifically pointed out to Spivak in its written correspondence. (Johnsrud Decl. ¶3; Spivak's Annotated Exhibits at 10). The parties previously participated in a mediation, after which Spivak's first set of legal counsel withdrew. (Johnsrud Decl. ¶2)

- Google's communications about potential resolution do not contain any threat or reflect any improper motive, and none of them support Spivak's paranoid accusations. (*See* Spivak's Annotated Exhibits at 4-10)

- At the time Google's counsel communicated regarding possible resolution, counsel believed in good faith that Spivak would and should have **materially reduced** her settlement demand, and it certainly did not expect her to increase her demand or make one that could be construed as "extortionate" (however Spivak might understand that term).

- Spivak has no evidence that Google or its counsel ever accessed her Gmail account as part of this case, or accessed her Plusmail account or her diary. As Spivak knows, some of her Plusmail messages were anonymously forwarded to Google. Other information was stored on the Google laptop issued to Spivak, and it was returned to Google by her counsel pursuant to stipulation.

- Even though Spivak's motion for a protective order is based entirely on her "extortion" theory, she has not even produced or attached the emails she wrote using that word, **though she admits to using it**. (*See* MPO at 6: "I can recognize that Google's keywords appear to be chosen to match on certain specific emails and entries from my diary.")

- Spivak ignores why the word "extortion" was used as a search term: as she admits, she used that term in reference to her dispute with Google. Obviously, if Spivak's allegations were driven in whole or in part by any such improper motive, that is directly relevant to her credibility and to whether her allegations were made in bad faith.

Perhaps most importantly, Spivak's motions are nothing more than an attempt to distract from the real issue here: Google complied with the Arbitrator's Orders, at substantial time and expense, while Spivak has repeatedly defied those same Orders. Spivak has now had Google's eDiscovery production for some five months (and tries to leverage some of the documents that Google produced), while Google has **less than one percent** of Spivak's responsive documents. (As noted in Google's motion to compel, Spivak's untimely eDiscovery production amounted to fewer than 700 of her estimated 160,000 responsive documents, and most of that production was comprised of automated trade confirmation emails that do not include information about the stock or option involved or the size of the trade.)

As Spivak's motions make clear, her refusal to comply with the Arbitrator's Orders is not some excusable oversight or the result of some innocent misunderstanding. To the contrary, she made a series of deliberate choices to defy the Arbitrator's Orders, despite repeated warnings, sanctions, and multiple opportunities to change her approach. Since those prior measures have not worked, issue and monetary sanctions are fully justified.

**B. Spivak's "Motion To Compel" And For Other Relief Has No Merit.**

**1. The JAMS Rules Govern This Dispute, And They Do Not Contain Any Meet And Confer Requirement (Telephonic Or Otherwise).**

Spivak's "Motion to Compel" is a desperate attempt to void all prior discovery Orders with a meritless argument about telephonic meet and confer requirements, purporting to rely on a Washington State Court rule. The defective nature of Spivak's argument is readily apparent from the language she herself quotes at the beginning of her brief, from her arbitration agreement, as follows:

> I AGREE THAT ANY ARBITRATION UNDER THIS AGREEMENT SHALL BE CONDUCTED IN ACCORDANCE WITH THE LAWS OF THE STATE IN WHICH I AM EMPLOYED, AND THAT THE ARBITRATOR SHALL APPLY THE SUBSTANTIVE AND PROCEDURAL LAWS OF THAT STATE, WITHOUT REFERENCE TO RULES OF CONFLICT OF LAW. **TO THE EXTENT THAT THE JAMS RULES CONFLICT WITH THE LAWS OF THE STATE IN WHICH I AM EMPLOYED, <u>THE JAMS RULES SHALL TAKE PRECEDENCE</u>**. (Spivak's Motion to Compel at 2) (emphasis added).

Spivak's argument about Washington State Court procedural law ignores the fact that the JAMS Rules contain no meet and confer requirement, much less a telephonic one, and instead disclaim any such requirement. JAMS Rule 17(d) expressly mandates that parties promptly raise discovery disputes to the Arbitrator. It provides: "The Parties <u>shall promptly notify JAMS</u> when a dispute exists regarding discovery issues. A conference shall be arranged with the Arbitrator, either by telephone or in person, and the Arbitrator shall decide the dispute." JAMS Rule 17(d) (emphasis added). The difference between the JAMS Rules and Washington State Court rules is not at all surprising, in part because "a prime objective" of arbitration is "to achieve streamlined proceedings and expeditious results." *Preston v. Ferrer*, 552 U.S. 346, 357 (2008).

Simply put, the JAMS Rules conflict with Washington State Court procedural rules in that the JAMS Rules disclaim any meet and confer requirement prior to bringing a discovery motion. Under the plain terms of the arbitration agreement, when there is a conflict between the state procedural rules and the JAMS Rules, the JAMS Rules control. For that reason alone, Spivak's motion to compel and for relief from previously ordered discovery should be summarily rejected and she should be sanctioned.

**2. Google Made Clear That It Would Not Be Engaging In Telephonic Communications With Spivak As Soon As Her Counsel Withdrew.**

As with most matters that do not go Spivak's way, this is not the first time she is attempting to re-litigate Google's position that it would only communicate with her in writing. Spivak initially complained about this during one of the first telephonic conferences with the Arbitrator after her counsel withdrew, and Google made it clear at that conference that it would only be communicating with Spivak in writing. The Arbitrator never ordered Google to confer telephonically with Spivak.

To the extent Spivak is only now asking for the Arbitrator to rule on this non-issue, Spivak waived her argument by waiting nearly one year to raise it, after several discovery Orders have been entered, and after Google has incurred significant time and expense complying with those Orders. Spivak's argument about a non-existent telephonic meet and confer requirement to try to void all discovery orders to date is a desperate and untimely attempt to try to exculpate herself from her flagrant defiance of those Orders. Given Spivak's reckless accusations, is it any wonder that Google's counsel declines to speak with her by telephone?

**3. Google Met And Conferred Exhaustively Before Bringing Its Motion To Compel And For Sanctions, Giving Spivak Many Opportunities To Comply With The Arbitrator's Orders And The JAMS Rules.**

Even putting aside that the applicable JAMS Rules do not contain any meet and confer requirement prior to bringing a discovery motion, Google nonetheless met and conferred **<u>exhaustively</u>** with Spivak to try to get her to comply with her discovery obligations and the Arbitrator's Orders.

First, Google conferred telephonically with Spivak's prior counsel on multiple occasions regarding the eDiscovery protocol (prior to their withdrawal). Those calls were professional, and as noted in the prior email correspondence, counsel made substantial progress on agreeing to an eDiscovery protocol. Spivak then appears to have disagreed with her counsel about the protocol, and her second set of lawyers promptly withdrew.

As with other matters involving pro per plaintiffs, Google's counsel preferred to communicate with Spivak in writing. Spivak's conduct since her counsel withdrew has strongly reinforced why that approach is appropriate, whether it be her mocking and taunting of Google's employees and counsel, her lack of professionalism in bringing her prior sanctions motion, or her baseless and incredible accusations, including her latest speculative theory about an alleged plot to have her charged with the crime of extortion.

Spivak's entire motion for a protective order is based on her paranoid misinterpretation of a half-page email about potential resolution. (*See* Spivak's Annotated Exhibits at 4). That email simply asked Spivak if she had thought over the holidays about whether she really wanted to continue to pursue this case because it does not appear to be going the way she hoped or anticipated. That is why the email referenced the withdrawal of her two prior sets of counsel and

the fact that she had recently been sanctioned. (Johnsrud Decl. ¶¶ 2-3) Most arbitration and arbitration matters settle at some point, and Google's counsel reasonably wondered if Spivak had reconsidered whether and how she wanted to move the case forward after a failed mediation, the departure of two sets of counsel, and the imposition of monetary sanctions. (*Id*.)

Rather than taking Google's email at face value, Spivak instead asserts: "I was certain that Google had just threatened to file false criminal charges against me." (Spivak's Annotated Exhibits at 11) (emphasis added). There is not a single fact supporting Spivak's purported "certainty" and she did not respond at the time with any such assertion. It is hard to imagine anything constructive coming out of verbal communications with Spivak, and it seems far more likely to increase the time and expense of arbitration by multiplying disputes about what was said, and requiring written confirmation after every verbal communication. That would hardly streamline the proceedings. Moreover, in light of Spivak's misconduct, verbal communications would likely increase the number of baseless accusations that she will make. In short, Spivak's lack of professionalism to date illustrates the importance of communicating with her only in writing.

It is Spivak's right to represent herself, and Google understands that judges and arbitrators provide self-represented parties some degree of latitude, due in part to their lack of familiarity with the litigation process. Here, however, as the Arbitrator noted in Order No. 10, Spivak "obviously understands the nature of the tactics in which she has engaged." (Order No. 10 at 9) She has abused any benefit of the doubt by repeatedly disregarding the Arbitrator's Orders, making highly inflammatory allegations with purported certainty but without any evidentiary support, and engaging in inexcusable misconduct that has prejudiced Google, delayed the proceedings, and increased their cost.

Spivak has had numerous opportunities to change course and conduct herself with some basic measure of professionalism. She has completely failed to do so. The Arbitrator should issue meaningful sanctions to deter further misconduct and ensure compliance with the Orders and the JAMS Rules.

## IV. CONCLUSION

Spivak has repeatedly defied the Arbitrator's Orders and violated the JAMS Rules. Rather than correct her behavior after being sanctioned, Spivak has now doubled down on more baseless and inflammatory accusations. She also opposes Google's motion to compel by arguing for an interpretation of her arbitration agreement that is directly contradicted by its plain terms, which she quotes in her moving papers.

Spivak's refusal to comply with prior Orders and the JAMS Rules has resulted in significant delay and expense, and has prejudiced Google's ability to prepare its defense and move the case forward. Whether Spivak is unwilling or unable to control herself is beside the point. Spivak's demonstrated lack of self-control, her refusal to comply with Orders, and her attempt to re-litigate rulings she does not like should no longer be indulged or tolerated. Since requests,

warnings, instructions, and monetary sanctions have not persuaded Spivak to change course and conduct her case in a professional manner, Google respectfully requests an Order:

(1) granting issue sanctions in Google's favor on its after-acquired evidence defense, cutting off all potential damages from the date Google discovered evidence of her Facebook trading;

(2) requiring Spivak to immediately produce all responsive documents and data previously ordered by the Arbitrator as part of the eDiscovery protocol, as well as all other responsive documents and data otherwise in her possession, custody or control;

(3) sanctioning Spivak with a meaningful financial penalty for each future day of her non-compliance going forward;

(4) prohibiting Spivak from pursuing any additional discovery until she has fully complied with all of her obligations under the prior Orders and the JAMS Rules, and provide Google with a reasonable amount of time to review her long overdue production; and

(5) awarding monetary sanctions to Google for its attorneys' fees incurred for responding to Spivak's motion for a protective order and motion to compel.

Respectfully submitted,

CURLEY, HURTGEN & JOHNSRUD LLP

Brian L. Johnsrud

cc: Claimant Spivak