UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

Rivka Spivak,

Plaintiff,

v.

Alphabet Inc., et al.,

Defendants.

Case No. 2:20-cv-01480-MJP

EXHIBIT 15

Arbitration Hearing Transcript (May 2019)

Filed in Support of Plaintiff's Motion to Vacate

Judgment Under Rule 60(d)(3)

Powerful
LITIGATION SUPPORT

COURT REPORTING
LEGAL VIDEOGRAPHY
VIDEOCONFERENCING
TRIAL PRESENTATION
MOCK JURY SERVICES
LEGAL TRANSCRIPTION
COPYING AND SCANNING
LANGUAGE INTERPRETERS



NAEGELI
Expect Excellence
DEPOSITION AND TRIAL
CELEBRATING 35 YEARS IN BUSINESS
(800) 528-3335
NAEGELIUSA.COM

**JAMS ARBITRATION**

RIVKA (REBECCA) SPIVAK,

Petitioner,

-vs- CASE NO. 111018238

GOOGLE, INC., a Delaware corporation,

Respondent.

---

**TRANSCRIPT OF**

**TELEPHONE ARBITRATION PROCEEDINGS**

**HELD ON**
**FRIDAY, MAY 3, 2019**
**10:05 A.M.**

**HONORABLE ROBERT BAINES**

**JAMS**
**150 WEST SANTA CLARA STREET, SUITE 1600**
**SAN JOSE, CALIFORNIA 95113**

**APPEARANCES**

**On behalf of the Petitioner, Rebecca Spivak:**
RIVAK (REBECCA) SPIVAK (VIA TELEPHONE)
**PRO SE**
128 Northeast 51st Street
Seattle, Washington 88105
(617) 519-1100
RebeccaSpivak@outlook.com

**On behalf of the Respondent, Google, Inc.:**
PATRICK SHERMAN, ESQUIRE, VIA TELEPHONE
**CURLEY, HUNTGEN & JOHNSRUD, LLP**
4400 Bohannon Drive, Suite 230
Menlo Park, California 94025
(650) 600-5310
PSherman@chjllp.com

**Also present:**
Honorable Robert Baines, Arbitrator
Nikki Howell, Court Reporter, Barkley Court Reporters

**TRANSCRIPT OF**

**TELEPHONE ARBITRATION PROCEEDINGS**

**HELD ON**

**FRIDAY, MAY 3, 2019**

**10:00 A.M.**

**HONORABLE ROBERT BAINES**

**MR. BAINES:** We're taking up the discovery matters in the Spivak and Google case. Let me find out at the beginning who's on the call. Do we have Claimant, Spivak, on the call?

**MS. RIVAK:** I'm here. Good morning, your Honor.

**MR. BAINES:** Yes. Good morning. Thank you.

Who's appearing today on behalf of Google?

**MR. SHERMAN:** Good morning, your Honor. It's Patrick Sherman on behalf of Google. I think we also have a couple court reporters with us today.

**MR. BAINES:** Sure, and I'll take that up just to clarify that. Yes, I did request this counsel and parties -- I did request yesterday that we have a reporter for these proceedings today because I had a number questions, and I thought it would be good to have those on the record as well as

the answers. So let me ask for the identify of each of the reporter.

The -- sort of the official reporter that I requested, who's that today?

**MS. HOWELL:** I don't know, sir. My name is Nikki Howell, and I'm appearing on behalf of Barkley Court Reporters.

**MR. BAINES:** Let me ask Mr. Sherman if I directed the request to find a reporter through your office, do you know if Ms. Howell is the reporter that you hired?

**MR. SHERMAN:** I don't know by name.

**MR. BAINES:** So let me ask the other reporter who's on the call is whom?

**MS. KNORR:** Lora Knorr, K-N-O-R-R, with Naegeli Deposition and Trial.

**MR. BAINES:** Thank you. Who's reporting of the proceedings.

All right. Let's move forward. I want to give, just for the benefit of our record, a little bit of brief history as to why we're having this conference today, and it's basically that about six weeks ago we had another discovery status conference, and during that conference both sides indicated they had discovery issues that they wanted

to have heard and resolved. I set up then a briefing and hearing schedule for the various issues, and today's hearing is, indeed, the hearing that's a culmination of that particular process.

As I understand it, we have basically three motions before me for hearing. Two of them are by Ms. Spivak, one being a Motion to Compel to compel certain discovery, the other being a request for a Protective Order, the other, the third motion that's on for today is Google's motion, which is also a Motion to Compel.

Let's take matters in the order or let's start with Claimant's side, let's put it that way. As indicated, Ms. Spivak, you've filed two motions, and I'll break it down a little bit, but the main one is a Motion to Compel as relates to certain discovery. I did notice that you added, if that's the right term, to your Motion to Compel, four other, I guess, companion motions.

As I read the papers, the first is a Motion For Relief From Prior Discovery Orders. The next is a request for a Default Judgment against Google. The next is a request for monetary and issue sanctions, and the final additional motion appears to be addressing a determination that

Google's Motion to Compel Discovery should not be considered or heard.

So we'll take those motions in order. Again, Ms. Spivak, with your Motion to Compel, which relates to the discovery that I previously ordered in this matter, I had a hard time, and that's why I wanted to ask a question. I had a hard time determining exactly what it was that you're asking me to order to be produced. The papers, at least unless I missed something, were not very specific. It only made reference to documents mentioned in the e-discovery, but not produced.

So can you add some specificity to -- what were the deficiencies in the e-discovery production from Google?

**MS. RIVAK:** Well, so, Google didn't work with me in the beginning to figure out the discovery protocol. So most of what was produced wasn't what I had hoped we could work out, but it was very filtered. It's hard for me to identify the specificity of what's missing because there's just a lot missing.

There are conversations where there's reference to multiple responses, but I only have one response, and the one response is, you know,

negative, whereas, there would be many other responses that would have been positive that were clearly made, but are not in the production. There's just a lot of that, and it's hard for me to go, you know, through it because there's just many thousands that are missing, but the -- you know, the main problem is that Google never worked with me to figure out what was going to be in that production in the first place.

**MR. BAINES:** Okay. Let me ask Mr. Sherman -- actually, before I question Mr. Sherman, let me just make an observation for the benefit of our record. What we are talking about in terms of this e-discovery search was the search that I ordered almost, I think, a year ago. I think it was in -- near the end of June of last year, and my Order called for Google to search some 18 different custodians and using various search terms with regard to each of those 18 custodians.

So I think my first question for Mr. Sherman is did Google perform a search as ordered of those 18 custodians using the search terms that I ordered?

**MR. SHERMAN:** At a high level, yes, it did, your Honor. As reflected in our papers, we

produced well north of 50,000 e-mails and documents as part of this e-discovery protocol. We covered the relevant custodians identified in the Orders.

As we also mentioned in our papers, there's a small subset of data that we held back for third-party privacy reasons; and, to give you an example of the type of document I'm talking about, pregnancy and birth announcements of other Google employees that were picked up by search criteria. That's one example, which some of those require a fair amount of redaction if they're gonna be produced, but other than that category, which I think was a small single-digit percent, if not less than 1 percent of the responsive documents, Ms. Spivak has everything else.

**MR. BAINES:** Let me ask both of you how should I resolve this? Obviously I don't have and I don't intend to have the 50,000 emails in front of me and -- to cull through them and make a determination as to whether they're responsive to the search.

Ms. Spivak, what's your proposal as to how I deal with your concerns?

**MS. RIVAK:** I think this wasn't the production that I asked for in the first place, so

it's not pressing for this one production. Even though Google did not -- you know, left off many attachments and left out many e-mails. It's not the production I asked for. So I'm okay if you rule against me on that one. I don't know what else to say.

**MR. BAINES:** All right.

**MR. SHERMAN:** Your Honor, again, I would just point out --

**MR. BAINES:** Go ahead.

**MR. SHERMAN:** I would just point, you know, in and our meet and confer with Ms. Spivak, when she raised this generalized concern, we asked her to provide specifics about what her concerns were, and I don't think we ever received a response on that.

**MR. BAINES:** Yes, I think that's accurate. I did look through the emails that Ms. Spivak had submitted as part of her motions, the some 90 pages of emails of correspondence between both sides; and, yes, I did see Google asking Ms. Spivak to tell us what's deficient, and I never did see a clear response. Given that posture and given Ms. Spivak's statements, then I'm not gonna order anything further in terms of Google's initial e-discovery

production.

Moving next to those four -- what I call the four other motions, Ms. Spivak, that you attached or filed with the Motion to Compel, as I read the papers, they were all -- at least the relief that you requested was all based on a contention that Google had not complied with certain Washington Superior Court Civil Rules, particularly those that appear to require an in-person meet and confer or a telephonic meet and confer.

Am I correct that those four motions were based on the allegation or the contention that Google didn't comply with those Washington Civil Court Rules?

**MS. RIVAK:** Yes, your Honor, you know, in addition to other Orders to meet and confer, but, yes, you are correct.

**MR. BAINES:** Okay. I mean, my take -- and I'll hear some argument on this. My take is that those superior court trial rules don't directly apply in this arbitration. I know -- as pointed out by Ms. Spivak, I know that the underlying Arbitration Agreement does make reference to using state proceedings to some degree, but those rules also say if there's a conflict or a variance between

the state rules and the JAMS arbitration rules the JAMS rule prevail, and my take is that the JAMS rule don't require an in-person or a telephonic meet and confer.

In fact, I think the JAMS rules are fairly silent about the meet and confer format or requirement, but I've yet to order in this case that there be in-person or telephonic discussions as part of the meet and confer process. I'm well aware that fairly early on, particularly after you went pro per in this matter, Ms. Spivak, that Google took the position that they wanted a record of everything, and they wanted it all by way of email as opposed to phone calls.

My take is that request was not unreasonable, and the bottom line is I'm not gonna order otherwise. When I do order a meet and confer in this case I'm fully happy to have it take place by way of emails. That way we have a complete record, and nobody later says, but I thought someone said such and such during the phone call. So my tentative ruling on those four motions, which, again, are all based on alleged noncompliance with a Washington State court trial rule, tentative ruling is to deny those motions.

Ms. Spivak, do you wish -- since that ruling goes against your position, do you want to argue the matter first?

**MS. RIVAK:** No, your Honor.

**MR. BAINES:** Okay.

**MR. SHERMAN:** Very well.

**MR. BAINES:** So with -- let's see, moving then to the other motion by Ms. Spivak -- and this is captioned, "Motion For a Protective Order, and, yes, that was one of the orders that I -- or one of the motions that I said could be brought when we had our last conference back in June. Again, I have questions, and these are directed to Ms. Spivak.

In your initial moving papers requesting a Protective Order, you gave one basis and one basis only, and that was your fear or assumption that Google was engaging in discovery to gather information to go to the authorities and request that criminal charges be filed. Then in your later papers, your opposition papers, which technically should have been limited to just opposing Google's motion, but that you included some additional -- it looked like additional basis for requesting a Protective Order, you made no mention of the criminal prosecution fear, but you did talk about or

had complaints about how Google had allegedly misbehaved in the discovery communications in this case.

So my first question in terms of clarification is which basis or bases is your Protective Order request tethered to, is it the fear of criminal prosecution? Is it the other matters? Is it both?

**MS. RIVAK:** I think it's just the other matters, general misconduct in trying to gather various information. I would rather keep the focus there on the criminal charges.

**MR. BAINES:** Certainly. I mean, for your -- maybe you've already researched this. There is -- in terms of the question of a party talking about a criminal prosecution of another party, there are ethical rules I think in most every state, and California has one.

It's Rule 3.10, and it does make it improper for an attorney to threaten to go to the authorities or threaten to initiate a criminal prosecution if that threat is used to obtain an advantage in the civil litigation, but I didn't see in your papers any indication that Google had threatened to go to the authorities. It appeared to

be more your concern that that was a motivation behind their discovery, but, again, since you've indicated that that's not a basis currently for the Protective Order request, then we'll move off of that one.

In terms of the alleged misconduct in the discovery process, again, I have looked closely. I've read carefully the 90 pages of emails that, as I understand it, contain every communication between the parties starting with when Ms. Spivak went pro per back in May of last year. So basically I have a full year of emails that includes all of the discovery communications between the parties.

I can say yes, certainly as is normal in many discovery disputes, some of the communications are -- I won't say heated, but they are sometimes intense or demanding. That's not -- again, that's not unusual. I don't think that's anything improper.

It looked like there was frustration on both sides with the other side's voluntary cooperation in discovery. Again, that's not unusual. In fact, that's fortunately way too common, but as I looked at those communications, I did not see anything that rose to the level of

attorney improper or attorney unethical conduct.

I realize that litigation itself can be intimidating, and dealing with the other side can be intimidating always, and I know every litigant would hope that the other side would simply cave and not fight the matter. That's obviously not gonna be the case here, and it's usually the case in most litigation that the parties fight vigorously, but there's nothing wrong with Google fighting your claims, Ms. Spivak, and fighting them vigorously and wanting to have the discovery that they feel they need in order to represent their client.

And, so, again, I didn't see anything there that arose to the level of being sanctionable conduct or requiring a Protective Order, but, again, since that's going against your request, Ms. Spivak, do you want to add to your papers or make your best pitch in terms of what you believe was improper or unethical about Google's discovery communications?

**MS. RIVAK:** I believe that Google did threaten me in their communications. They -- Google was pursuing, first of all, an after-acquired evidence defense that they should have withdrawn and that they should have been pursuing in the first place.

I provided them evidence that Google had knowledge of my Facebook trading well before I was terminated, and Google continued in their discovery communications to push -- to push for discovery against that allegation. They sent me demands that were still with traps and contradictions of fact in the other demand that I have to respond the same day or the next day. It was constantly hostile, oppressive.

There was -- I don't even -- I don't even know how to explain how it affected my life. There was no cooperation. There was just -- everything was an attack. Every email felt like an attack. It was like if I didn't spend five or six hours responding to it they were going to catch me on some technicality.

There was -- they would say things in their emails that were not true. They would say the arbitrator ordered this, and that's not what was ordered. It felt like most of my response had to be just to correct the wrong facts that they would send me, and I never had any time -- you know, the fact that I didn't respond to the request for specificity on what was missing in their production, they didn't give me any time to work on my own case. It was

just a constant -- it was a constant attack, a constant demand. I don't know what else to say.

**MR. BAINES:** Well, I will indicate, yes, I think the tone of some of the emails was -- I'm not sure of the best word, but forceful. At the time same time I think you should feel free to push back.

I know from your papers, yes, you were very concerned about the e-mail from Mr. Sherman on December 7th where he basically said tell me by the end of the day your protocol that you used in performing your e-discovery search. Yeah, that had to be a little bit intimidating, and it obviously upset your schedule to have to attend to that immediately.

At the same time I don't think he had any authority necessarily to have you complete that task that day. I think you could have easily pushed back and said, sorry, I'm busy today, I'll get it to you in the next couple of days, but, yes, I agree that Google has pursued its discovery vigorously, but, again, at the same time I'm not finding breaches of ethical duties or breaches of professional conduct.

In terms of the misstatement --

**MR. SHERMAN:** Your Honor --

**MR. BAINES:** Just a moment.

In terms of the misstatement of orders, I looked carefully at that. I didn't find that -- there's always wiggle room I understand. I didn't find direct misstatements of what I had ordered in terms of the e-discovery.

I mean, we all have -- again, in terms of the e-discovery that you, Ms. Spivak, was to -- ordered to conduct, that was made fairly clear, again, in that exhibit, Exhibit D to a previous discovery motion; and, yes, that Order did allow some wiggle room or some filtering, if that's the right term, with regard to some of the searches, but not all of the searches.

As to the Facebook trading issue, the after-acquired evidence issue, we'll talk about that more when I get to Google's motion since they're still requesting that information, but as to that issue, the fact that you, Ms. Spivak, tell your opposition that they should drop a defense that they're making, and you point to the evidence that you think should persuade them to drop that particular defense, that doesn't mean that they have to accede to your request. They may be relying upon other and different facts besides the ones you pointed out to them, and it's not misconduct for a

party to pursue a matter that they think has a colorable claim.

It is, perhaps, misconduct to pursue claims that a party absolutely knows has no validity whatever, but I thought -- you know, I don't -- from what I've seen so far, I'm certainly not to the point of saying that Google is acting in bad faith as it pursues that particular affirmative defense. I suspect there's a whole lot more discovery that needs to be done as to how the information about the Facebook trading was or was not conveyed to the supervisors at Google and/or to the Ethics Committee, that type of thing, but I suspect -- and, again, I haven't seen all the facts, but I suspect that we're gonna have a dispute at the end of the day, at the end of our arbitration hearing, and I'm gonna have to decide, that is if Google continues to pursue that affirmative defense, I'm gonna hear the evidence in support of it, I'm gonna hear the evidence in opposition, and I'm gonna rule as part of my award whether that defense has been sustained or not and what effect it might have.

I've rambled for a long time, so, Mr. Sherman, I know you wanted to get a word in, so go ahead.

**MR. SHERMAN:** Yes, your Honor, and just to put a little context around -- since we have asked for the same day or very prompt responses from Ms. Spivak, that has not been our standard operating procedure, and it isn't in this case or any other case. The times that that has happened is where Mr. Spivak has already blown a deadline and has not complied with an order.

In the specific December 7th, I think there was e-mail you're referring to. That -- the reason we asked that inquiry is because Mr. Spivak had not complied -- even vaguely complied with the Order. Instead of producing the responsive documents in a pdf format, she instead sends a M-Box that is like a totally different format. So we wanted to understand what is this link you're sending us to, and that's why we asked for a prompt response.

I would also note, more broadly, that there have been a number of instances in this matter over the last however long its been pending where Ms. Spivak has asked for an extension or request or that we not contact her for some period of time, and I think we have quite a good track record honoring that one if it was practicable to do so.

**MR. BAINES:** All right. Well, my only additional comment is as we move forward the two of you are gonna have to continue to deal with each other because we're just embarking upon discovery at this point, and I would encourage everybody to be as civil and as professional as can be.

I realize the case is heated, feelings are strong on both sides, but that doesn't mean that we can't move forward in a profession mode. So that's certainly my request. As to, again, the various items of requested relief, those have to be denied because I'm not finding that there's grounds for a Protective Order.

Let me, by the way, on somewhat of a side or maybe an adjunct to what we're just now talking about, I know, Ms. Spivak, part of the relief you wanted in terms of a Protective Order, you wanted me to basically enter a No Contact Order, call an end to all discovery order, Google to return all discovery that they've received so far. You asked me to reconsider previous Order Number 10. You wanted to amend your claims in this arbitration procedure. You wanted me to enter a Default Judgment against Google, issue sanctions, strike their affirmative defenses and basically prevent

them from defending them self.

With regard to all of those requests, they have to be respectfully denied. They're not warranted under the facts that we have here.

One thing that came to my mind, by the way, as I was reviewing the papers here, I know, Ms. Spivak, you have great concern about how Google might use information it acquires in discovery. My observation is this, although we have a Protective Order in place that was stipulated to early on in the case, and the parties are entitled to mark information as attorneys' eyes only or confidential, that generally only applies to certain matters produced by a party in discovery.

Anyway, you, Ms. Spivak, may, pursuant to that Order that you or your attorney previously stipulated to, you may mark items as confidential, and there is a process under that Protective Order to have those designations reviewed, but initially you can mark them as confidential, and they remain as confidential unless and until challenged and overruled.

Also, sort of an archaic point in arbitration proceedings, but arbitrations are not inherently or not, by statute, confidential, and by

that, under the law the parties, that's the parties themselves or the attorneys, are free to talk to third parties about information that they acquired in the arbitration process. They can talk about what they obtained in discovery, what they heard from a witness who testified at a hearing.

All of that is not prohibited unless -- and I would encourage this in this case here -- unless the parties agree to what I normally call a Confidentiality Order; and, again, that's a little different than a Protective Order, and the Confidentiality Order is one where the parties agree that they will not share the information that they obtain in the course of the arbitration other than with persons who have a need to know, and I realize that's sort of general, but what it means is that if Google obtains information and -- they can share it with their legal team, they can share it with perhaps witnesses who are gonna be asked questions about that information, but that they can't share it with third parties. They can't call up the press and say, hey, guess what we learned in arbitration.

And, so, if, in addition to the Protective Order, you, Ms. Spivak, want a Confidentiality Agreement, I would suggest propose one to the other

side. See if they won't stipulate to it. If they won't stipulate to it, you can make a motion and request that I enter an order that makes everything confidential. That's usually the way we deal with those concerns, okay?

I've said enough in terms of Ms. Spivak's motion, so I'm going to move now to the other motion that's on calendar, which is Google's motion, and it's a motion basically to compel completion of the initial e-discovery; and let me make an observation for the benefit or our record, and then I'll open it up for further argument and discussion.

What I see from the materials submitted is that once Ms. Spivak had completed her e-discovery -- and, again, this goes back to what she was ordered to do in Order Number 6. Once she completed that, she put the materials into -- and I'm not familiar with the technology, but it's not -- I don't want to tread on trademark names, but, anyway, she put the materials in a drop-box format called M-Box. She apparently put the materials in there on December 6th of last year and then, for whatever reason, deactivated that about three weeks later on December 27th.

I've read Google's statement, and I'll ask

Mr. Sherman about this in a minute, but in his papers Google has represented that nobody on Google's side accessed the M-Box files during those three weeks, and what Google is asking at this point is to have Ms. Spivak reactive the box so they can access that initial e-discovery production.

I have seen the communications between the parties with regard to that, and I've seen Ms. Spivak's flat-out refusal to not reactivate that box, and I don't quite understand that refusal, and we'll talk about that, but I think that the next -- or I can give you a clue. My tentative is to order that the box be reactivated so that Google may review the e-produced documents by Ms. Spivak.

I realize Google has some concerns about whether the process used by Ms. Spivak was the process that I ordered back in Order Number 6, but I think before we can even reach that issue I think Google has to see what's been produced. That may answer the questions as to how thorough the search was and whether it complied with Order Number 6 or not, but let me ask Ms. Spivak what is the problem with reactivating the account so that Google may see what you -- you obviously took a fair amount to of time to produce, and it's something that you're

gonna need to produce. So what's the problem with reactivating it?

**MS. RIVAK:** Your Honor, Google is threatening me. I don't know what else to say. Whether it was criminal or civil, they've made reference -- they've made reference to diary entries where I discuss very private matters, and that has nothing to do with the case.

Every single -- every -- the intimidation and the threats, I don't know how to explain it. I can't survive this. I don't --

**MR. BAINES:** Let me make an observation. I mean, we're only, at this point -- maybe "only" is not the right word, but we're only talking discovery. We're not talking about what's gonna be produced necessarily at the hearing, and, again, we've talked about confidentiality. We're not talking about information that's gonna go beyond the parties to this lawsuit, at least that's my expectation.

Again, this information is legitimate discovery, and Google is entitled to have it. Again, if there's misuse of it, that's a very different matter, but not -- we're not at that stage yet.

And let me back up, by the way, and ask

Mr. Sherman am I reading your papers correctly that neither counsel, nor individuals at Google or are affiliated with Google accessed the M-Box during the three weeks that it was available?

**MR. SHERMAN:** That's correct, your Honor. We wanted to understand what process she went through to put materials in there. Ms. Spivak provided us with a pretty detailed response, and based on that response we raised other concerns about the procedure she used, but Google doesn't have the underlying data.

By the time we were done with the prior sanctions and briefing and the intervening holidays, we didn't try to access that until, I believe, early January, at which point the link was no longer active.

**MR. BAINES:** Right. Okay. Turning back to Ms. Spivak, I realize discovery can be intimidating, and people on both sides probably don't want to open up their internal records and communications, but that's a normal and reasonable part of litigation depending on what the claims are in the litigation. And, so, I mean, I'm just troubled by the fact that you were comfortable setting up the box, putting information in there and

then, for whatever reason, three weeks later, before it had been accessed by the other side, deactivated that.

So I'm gonna have to order that it be reactivated. I'm not asking you to do a new or different search or anything else, but to reactivate that account or create a new one that has that information, let Google know when it's there, and for the time being leave it there until Google at least certifies that they had an opportunity to review it or download or it do whatever they need to do in order for them to be begin to analyze the information that's in there.

Ms. Spivak, if you want to say something, go ahead.

**MS. SPIVAK:** I'm going to have to withdraw from arbitration. I can't. I can't.

**MR. BAINES:** Well, that's not a matter that's before us today, but -- and it's not my role to give you advice. It's not my role to give either side advice, but if you -- you know, and I can tell you truly feel you have some very important claims here, and it's an important legal issue in terms of gender discrimination by a company such as Google. I encourage you to pursue those matters.

I realize -- and I don't need the details. It's not anything that I need to know or want to know. I realize on, I guess, two previous occasions you had attorneys represent you in this matter. I would encourage you to find an attorney or group of attorneys to represent you. That takes you out of the loop in terms of these discovery battles, and you don't have to deal with the sometimes angry communications between the parties over discovery and other matters.

So what I would encourage you to do is not make an on-the-spot decision to withdraw from arbitration, but think about it. You are -- yes, you are free to -- I'll have to check the rules, but I think there's some limitation, but I think you're free to dismiss your arbitration claims, but, again, I don't encourage you to do that on the spur of the moment, and I don't encourage you to do that without consulting with an attorney.

Part of the reason is you may not have another chance to do so. I'm not giving legal opinions on where the statute of limitations lie on this or any other matters, but once you've pursued this arbitration for going on, what, four, five years now, if you withdraw, you may not -- if you

change your mind later you may not be able to resume.

So, with all due respect, I'm not accepting your representation that you want to withdraw. I'm saying I'll look at it if you put it in writing after you've consulted with an attorney or at least taken time to thoroughly think about that decision, okay?

**MS. RIVAK:** Your Honor, the communications are not hostile. They were deceptive. They were deceptive in that no attorney could keep up with. The reason I have to represent myself is because I'm the only one who understands the details and who can spot all of the lies and deception in Google's communications.

**MR. BAINES:** Well, I don't know quite how to respond other than I have looked at what you have submitted, okay, the 90 pages, which consists of the entire year of communication between you and Google. At the very most, all I could find was perhaps a slight -- you know, putting a slant on a previous order that might be different than the slant that you put on it, and I have to admit my orders are never 100 percent clear.

There's usually always room for

interpretation, but as I look through all those communications, I didn't see anything that rose to the level of being deceptive or misstatement of previous orders that have been made in the case, but you're entitled to your opinions on that, but, you know, if you bring an attorney back in, you can certainly communicate with your attorney and tell your attorney what you are attempting to tell me here in terms of what false facts, what false statements are made in those communications, and, in fact, I think your attorney would have -- if you tell your attorney, he or she would have a duty to share those communications with you before responding to Google about those communications.

Having said all that, I guess my question is where do we stand at this point? And, again, I've indicated the orders that I'm intending to make, and I'm assuming, Ms. Spivak, even though you may not be happy with any of the orders that I make that at least you would want a record here, that is you'd want me to at least issue those orders, and you'd have those in front of you when making any decisions that you want to make with regard to pursuing or not pursuing the arbitration. Am I right that you would like me to memorialize the

orders that I make here?

**MS. RIVAK:** Yes, your Honor.

**MR. BAINES:** Yeah, okay. Then I'll definitely do that. I'm not gonna, at this stage, move on to something that I thought we might at least talk about generally, which is the next phase of discovery in terms of further requests for productions and/or taking depositions.

We'll put that on the back burner for the moment, but let me ask Ms. Spivak -- and I'm not trying to put pressure on you. How much time do you think you will need to make a decision about pursuing the arbitration?

**MS. SPIVAK:** I don't know. This is pretty destructive to me right now. I don't know. I can't talk to Google's lawyers. I don't know. I need to -- I need to -- I need to sleep on it.

**MR. BAINES:** Yeah, I understand. I mean, what I was thinking about is making an order that basically imposes a standstill at the moment, and I would still go ahead and issue the orders that -- from the current motions, but as part of that I would indicate that there is an imposed standstill for a certain period of time. It can be like one week, two weeks, it can be a month while a decision

is made as to whether to pursue, and then once that decision is made, if the decision is to pursue the arbitration, then we'd quickly have another conference, and we talk about where we go as we move ahead.

On the other hand, if the decision is to dismiss the arbitration proceedings, then we won't -- we won't have further proceedings. So I guess my only question, again, is how much time reasonably should I put in my order for the standstill?

**MS. SPIVAK:** I actually have an appointment with the EEOC in a week from today, and I probably need at least that much time and see what they have to say.

**MR. BAINES:** Certainly. Again, I've tried to telegraph. I'll give you a number of weeks, up to a month's time if that's what you're requesting.

**MS. SPIVAK:** Okay. Yes, I would like a month.

**MR. BAINES:** That's fine. That is granted. So my standstill order will be for the one-month period. Neither side is to pursue any further discovery or any other actions in the matter during that time, and I'll make that clear in my order, okay?

**MR. SHERMAN:** Your Honor, before we close out on that, I understand that you're gonna issue an order on what we've talked about today and that there will be a standstill. I have some concerns about the timing here in terms of when we can start reviewing Ms. Spivak's production. So I guess I would just ask if that's not going to be produced in this intervening month that we give that some consideration if the matter doesn't move forward.

**MR. BAINES:** Certainly, and I think that's actually a very good point. I've thought about that.

I think as part of the -- yes, as part of this standstill, Ms. Spivak, I'm not gonna order that you reactive the M-Box account, but if you, at the end of the month or whenever you make your decision, if you indicate you want to proceed with the arbitration, then that order will go into effect promptly at that point; is that understood?

**MS. RIVAK:** Yes, your Honor.

**MR. BAINES:** All right. Anything else for the good of the cause for today?

**MR. SHERMAN:** Your Honor, I would just request that you address the relief we requested in our Motion to Compel in your order. I don't feel I

need to delve into it today on the record. I'd just ask that you those address those requests in your order.

**MR. BAINES:** I will -- yes, I will address them. My normal approach toward discovery matters and arbitrations is generally to not have them become sanction driven, if that's the right term, but, anyway, I will look at your request for sanctions and for other relief and include my ruling in my order.

**MR. SHERMAN:** Thank you, your Honor.

**MR. BAINES:** All right. Then thank you all, and thanks to our reporters, and then we'll end the conference at this point. Have a good day everybody. Thanks.

**MS. SPIVAK:** Thank you.

**MR. SHERMAN:** Thank you.

**(Thereupon, the proceedings were concluded at 10:25 a.m.)**

COURT CERTIFICATE

STATE OF FLORIDA )
COUNTY OF DUVAL )

I, LORA LEE KNORR-FIERRO, Registered Professional Court Reporter and Florida Professional Reporter, State of Florida at Large, certify that I was authorized to and did stenographically report the foregoing proceedings and that the transcript is a true and complete record of my stenographic notes.

Dated this 14th day of May, 2019.

LORA LEE KNORR-FIERRO, RPR, FPR

LORA LEE KNORR-FIERRO
MY COMMISSION # GG 303687
EXPIRES: April 30, 2023
Bonded Thru Notary Public Underwriters

1
**1** 8:14
**10** 21:21
**10:00** 3:5
**10:25** 35:19
**100** 30:24
**18** 7:17 7:19 7:22

2
**2019** 3:4
**27th** 24:24

3
**3** 3:4
**3.10** 13:19

5
**50,000** 8:1 8:18

6
**6** 24:16 25:17 25:21
**6th** 24:22

7
**7th** 17:9 20:9

9
**90** 9:19 14:8 30:18

A
**a.m** 3:5 35:19
**able** 30:1
**absolutely** 19:4
**accede** 18:23
**accepting** 30:4
**access** 25:6 27:14
**accessed** 25:3 27:3 28:2
**account** 25:23 28:7 34:15
**accurate** 9:17
**acquired** 23:3
**acquires** 22:8
**acting** 19:7
**actions** 33:23
**active** 27:16
**actually** 7:11 33:11 34:11
**add** 6:13 15:17
**added** 5:17
**addition** 10:16 23:23
**additional** 5:24 12:22 12:23 21:2
**address** 34:24 35:2 35:4
**addressing** 5:25
**adjunct** 21:15
**admit** 30:23
**advantage** 13:23
**advice** 28:20 28:21
**affected** 16:11
**affiliated** 27:3
**affirmative** 19:8 19:18 21:25
**after-acquired** 15:22 18:15
**against** 5:22 9:5 12:2 15:16 16:5 21:24
**ago** 4:23 7:15
**Agreement** 10:23 23:25
**ahead** 9:10 19:25 28:15 32:21 33:5
**allegation** 10:12 16:5
**alleged** 11:23 14:6
**allegedly** 13:1
**allow** 18:10
**already** 13:14 20:7
**am** 10:11 27:1 31:24
**amend** 21:22
**amount** 8:11 25:24
**analyze** 28:12
**and/or** 19:12 32:8
**angry** 29:8
**announcements** 8:8
**answer** 25:20
**answers** 4:1
**anything** 9:24 14:18 14:25 15:13 28:6 29:2 31:2 34:21
**anyway** 22:15 24:19 35:8
**apparently** 24:21
**appear** 10:9
**appeared** 13:25
**appearing** 3:16 4:6
**appears** 5:25
**applies** 22:13
**apply** 10:21
**appointment** 33:12
**approach** 35:5
**arbitration** 3:2 10:21 10:23 11:1 19:16 21:22 22:24 23:4 23:14 23:22

28:17 29:13 29:16 29:24 31:24 32:13 33:3 33:7 34:18
**arbitrations** 22:24 35:6
**arbitrator** 16:19
**archaic** 22:23
**argue** 12:3
**argument** 10:19 24:12
**arose** 15:14
**assuming** 31:18
**assumption** 12:16
**attached** 10:4
**attachments** 9:3
**attack** 16:13 16:13 17:1
**attempting** 31:8
**attend** 17:13
**attorney** 13:20 15:1 15:1 22:16 29:5 29:19 30:6 30:11 31:6 31:7 31:8 31:11 31:12
**attorneys** 22:12 23:2 29:4 29:6
**authorities** 12:18 13:21 13:25
**authority** 17:16
**available** 27:4
**award** 19:21
**aware** 11:9

B

**bad** 19:7
**BAINES** 3:6 3:8 3:14 3:20 4:8 4:13 4:17 7:10 8:16 9:7 9:10 9:17 10:18 12:5 12:7 13:13 17:3 17:25 21:1 26:12 27:17 28:18 30:16 32:3 32:18 33:15 33:20 34:10 34:21 35:4 35:12
**Barkley** 4:7
**based** 10:6 10:12 11:23 27:9
**bases** 13:5
**basically** 4:22 5:5 14:11 17:9 21:18 21:25 24:9 32:20
**basis** 12:15 12:15 12:23 13:5 14:3
**battles** 29:7
**become** 35:7
**begin** 28:12
**beginning** 3:10 6:17
**behalf** 3:16 3:18 4:6
**behind** 14:2
**believe** 15:18 15:20 27:14
**benefit** 4:20 7:12 24:11
**besides** 18:24
**best** 15:17 17:5
**beyond** 26:18
**birth** 8:8
**bit** 4:21 5:15 17:12
**blown** 20:7
**bottom** 11:16
**box** 25:5 25:10 25:13 27:25
**breaches** 17:21 17:22
**break** 5:15
**brief** 4:21
**briefing** 5:2 27:13
**bring** 31:6
**broadly** 20:19
**brought** 12:11
**burner** 32:9
**busy** 17:18

C

**calendar** 24:8
**California** 13:18
**captioned** 12:9
**carefully** 14:8 18:2
**case** 3:9 11:7 11:18 13:3 15:7 15:7 16:25 20:5 20:6 21:7 22:11 23:8 26:8 31:4
**catch** 16:15
**category** 8:12
**cause** 34:22
**cave** 15:5
**certain** 5:8 5:16 10:7 22:13 32:24

**certainly** 13:13 14:14 19:6 21:10 31:7 33:15 34:10
**certifies** 28:10
**challenged** 22:21
**chance** 29:21
**change** 30:1
**charges** 12:19 13:12
**check** 29:14
**civil** 10:8 10:13 13:23 21:6 26:5
**claim** 19:2
**Claimant** 3:11
**Claimant's** 5:13
**claims** 15:10 19:4 21:22 27:22 28:22 29:16
**clarification** 13:5
**clarify** 3:21
**clear** 9:22 18:8 30:24 33:24
**clearly** 7:3
**client** 15:12
**close** 34:1
**closely** 14:7
**clue** 25:12
**colorable** 19:2
**comfortable** 27:24
**comment** 21:2
**Committee** 19:13
**common** 14:24
**communicate** 31:7
**communication** 14:9 30:19
**communications** 13:2 14:13 14:15 14:24 15:19 15:21 16:4 25:7 27:21 29:9 30:9 30:15 31:2 31:10 31:13 31:14
**companion** 5:19
**company** 28:24
**compel** 5:7 5:8 5:11 5:16 5:18 6:1 6:4 10:4 24:9 34:25
**complaints** 13:1
**complete** 11:19 17:16
**completed** 24:14 24:16
**completion** 24:9
**complied** 10:7 20:8 20:12 20:12 25:21
**comply** 10:13
**concern** 9:13 14:1 22:7
**concerned** 17:8
**concerns** 8:23 9:14 24:5 25:15 27:9 34:4
**concluded** 35:18
**conduct** 15:1 15:15 17:22 18:8
**confer** 9:12 10:10 10:10 10:16 11:4 11:6 11:9 11:17
**conference** 4:22 4:24 4:24 12:12 33:4 35:14
**confidential** 22:12 22:17 22:20 22:21 22:25 24:4
**confidentiality** 23:10 23:12 23:24 26:17
**conflict** 10:25
**consideration** 34:9
**considered** 6:2
**consists** 30:18
**constant** 17:1 17:1 17:2
**constantly** 16:8
**consulted** 30:6
**consulting** 29:19
**contact** 20:23 21:18
**contain** 14:9
**contention** 10:7 10:12
**context** 20:2
**continue** 21:3
**continued** 16:3
**continues** 19:17
**contradictions** 16:6
**conversations** 6:23

**conveyed** 19:11
**cooperation** 14:22 16:12
**correct** 10:11 10:17 16:21 27:5
**correctly** 27:1
**correspondence** 9:20
**counsel** 3:22 27:2
**couple** 3:19 17:19
**course** 23:14
**court** 3:19 4:7 10:8 10:14 10:20 11:24
**covered** 8:2
**create** 28:7
**criminal** 12:19 12:25 13:7 13:12 13:16 13:21 26:5
**criteria** 8:9
**cull** 8:19
**culmination** 5:4
**current** 32:22
**currently** 14:3
**custodians** 7:18 7:19
7:22 8:3

D

**data** 8:5 27:11
**day** 16:7 16:8 17:10 17:17 19:16 20:3 35:14
**days** 17:19
**deactivated** 24:23 28:2
**deadline** 20:7
**deal** 8:23 21:3 24:4 29:8
**dealing** 15:3
**December** 17:9 20:9 24:21 24:23
**deception** 30:14
**deceptive** 30:10 30:11 31:3
**decide** 19:17
**decision** 29:12 30:8 32:12 32:25 33:2 33:2 33:6 34:17
**decisions** 31:23
**Default** 5:22 21:23
**defending** 22:1
**defense** 15:23 18:19 18:22 19:8 19:18 19:21
**defenses** 21:25
**deficiencies** 6:14
**deficient** 9:22
**definitely** 32:4
**degree** 10:24
**delve** 35:1
**demand** 16:7 17:2
**demanding** 14:17
**demands** 16:5
**denied** 21:11 22:3
**deny** 11:25
**depending** 27:22
**Deposition** 4:16
**depositions** 32:8
**designations** 22:19
**destructive** 32:15
**detailed** 27:8
**details** 29:1 30:13
**determination** 5:25 8:20
**determining** 6:8
**diary** 26:6
**different** 7:17 18:24 20:15 23:11 26:23 28:6 30:22
**direct** 18:4
**directed** 4:9 12:13
**directly** 10:20
**discovery** 3:8 4:23 4:25 5:8 5:17 5:21 6:1 6:5 6:17 12:17 13:2 14:2 14:7 14:13 14:15 14:22 15:11 15:19 16:3 16:4 17:20 18:10 19:9 21:4 21:19 21:20 22:8 22:14 23:5 26:15 26:22 27:18 29:7 29:9 32:7 33:23 35:5
**discrimination** 28:24

**discuss** 26:7
**discussion** 24:12
**discussions** 11:8
**dismiss** 29:16 33:7
**dispute** 19:15
**disputes** 14:15
**document** 8:7
**documents** 6:11 8:1 8:14 20:14 25:14
**done** 19:10 27:12
**download** 28:11
**driven** 35:7
**drop** 18:19 18:21
**drop-box** 24:20
**due** 30:3
**during** 4:24 11:21 25:3 27:3 33:23
**duties** 17:22
**duty** 31:12

E

**early** 11:10 22:10 27:14
**easily** 17:17
**e-discovery** 6:12 6:14 7:14 8:2 9:25 17:11 18:5 18:7 24:10 24:14 25:6
**EEOC** 33:12
**effect** 19:22 34:18
**either** 28:20
**else** 8:15 9:5 17:2 26:4 28:6 34:21
**email** 11:13 16:13
**e-mail** 17:8 20:10
**emails** 8:18 9:18 9:20 11:19 14:8 14:12 16:18 17:4
**e-mails** 8:1 9:3
**embarking** 21:4
**employees** 8:9
**encourage** 21:5 23:8 28:25 29:5 29:11 29:17 29:18
**engaging** 12:17
**enter** 21:18 21:23 24:3
**entire** 30:19
**entitled** 22:11 26:22 31:5
**entries** 26:6
**e-produced** 25:14
**ethical** 13:17 17:22
**Ethics** 19:12
**everybody** 21:5 35:15
**everything** 8:15 11:12 16:12 24:3
**evidence** 15:23 16:1 18:15 18:20 19:19 19:20
**exactly** 6:8
**example** 8:7 8:10
**exhibit** 18:9 18:9
**expectation** 26:20
**explain** 16:11 26:10
**extension** 20:22
**eyes** 22:12

F

**Facebook** 16:2 18:14 19:11
**fact** 11:5 14:23 16:6 16:22 18:18 27:24 31:11
**facts** 16:21 18:24 19:14 22:4 31:9
**fair** 8:11 25:24
**fairly** 11:5 11:10 18:8
**faith** 19:7
**false** 31:9 31:9
**familiar** 24:17
**fear** 12:16 12:25 13:6
**feel** 15:11 17:6 28:22 34:25
**feelings** 21:7
**felt** 16:13 16:20
**fight** 15:6 15:8
**fighting** 15:9 15:10
**figure** 6:17 7:8
**filed** 5:14 10:4 12:19
**files** 25:3

**filtered** 6:20
**filtering** 18:11
**final** 5:24
**finding** 17:21 21:12
**fine** 33:20
**first** 5:20 7:9 7:20 8:25 12:3 13:4 15:22 15:24
**five** 16:14 29:24
**flat-out** 25:9
**focus** 13:11
**forceful** 17:5
**format** 11:6 20:14 20:15 24:20
**fortunately** 14:23
**forward** 4:19 21:2 21:9 34:9
**free** 17:6 23:2 29:14 29:16
**FRIDAY** 3:4
**front** 8:18 31:22
**frustration** 14:20
**full** 14:12
**fully** 11:18

G

**gather** 12:17 13:10
**gender** 28:24
**general** 13:10 23:16
**generalized** 9:13
**generally** 22:13 32:6 35:6
**given** 9:23 9:23
**giving** 29:21
**gonna** 8:11 9:24 11:16 15:6 19:15 19:17 19:18 19:19 19:20 21:3 23:19 26:1 26:15 26:18 28:4 32:4 34:2 34:14
**Google** 3:9 3:16 3:18 5:23 6:15 6:16 7:7 7:17 7:21 8:8 9:2 9:21 10:7 10:13 11:11 12:17 13:1 13:24 15:9 15:20 15:21 16:1 16:3 17:20 19:7 19:12 19:17 21:19 21:24 22:7 23:17 25:2 25:4 25:13 25:15 25:19 25:23 26:3 26:22 27:2 27:3 27:10 28:8 28:9 28:24 30:19 31:14
**Google's** 5:10 6:1 9:25 12:21 15:19 18:16 24:8 24:25 25:3 30:14 32:16
**granted** 33:21
**great** 22:7
**grounds** 21:12
**group** 29:5
**guess** 5:19 23:22 29:3 31:15 33:8 34:6

H

**hand** 33:6
**happened** 20:6
**happy** 11:18 31:19
**hard** 6:6 6:7 6:20 7:4
**haven't** 19:14
**having** 4:21 31:15
**hear** 10:19 19:18 19:19
**heard** 5:1 6:2 23:5
**hearing** 5:2 5:3 5:3 5:6 19:16 23:6 26:16
**heated** 14:16 21:7
**held** 3:3 8:5
**hey** 23:22
**high** 7:24
**hired** 4:11
**history** 4:21
**holidays** 27:13
**Honor** 3:13 3:17 7:25 9:8 10:15 12:4 17:24 20:1 26:3 27:5 30:9 32:2 34:1 34:20 34:23 35:11
**HONORABLE** 3:6
**honoring** 20:24

**hope** 15:5
**hoped** 6:19
**hostile** 16:8 30:10
**hours** 16:14
**Howell** 4:5 4:6 4:10

I

**I'd** 35:1
**identified** 8:3
**identify** 4:1 6:20
**I'll** 3:20 5:15 10:19 17:18 24:11 24:25 29:14 30:5 32:3 33:16 33:24
**I'm** 3:12 4:6 8:7 9:4 9:24 11:9 11:16 11:18 17:4 17:18 17:21 19:6 19:16 19:18 19:19 19:20 21:12 24:7 24:17 27:23 28:4 28:5 28:16 29:21 30:3 30:5 30:12 31:17 31:18 32:4 32:10 34:14
**immediately** 17:14
**important** 28:22 28:23
**imposed** 32:23
**imposes** 32:20
**improper** 13:20 14:19 15:1 15:18
**include** 35:9
**included** 12:22
**includes** 14:12
**indeed** 5:3
**indicate** 17:3 32:23 34:17
**indicated** 4:25 5:14 14:3 31:17
**indication** 13:24
**individuals** 27:2
**information** 12:18 13:11 18:17 19:10 22:8 22:12 23:3 23:13 23:17 23:20 26:18 26:21 27:25 28:8 28:13
**inherently** 22:25
**initial** 9:25 12:14 24:10 25:6
**initially** 22:19
**initiate** 13:21
**in-person** 10:9 11:3 11:8
**inquiry** 20:11
**instances** 20:20
**instead** 20:13 20:14
**intend** 8:18
**intending** 31:17
**intense** 14:17
**internal** 27:20
**interpretation** 31:1
**intervening** 27:13 34:8
**intimidating** 15:3 15:4 17:12 27:19
**intimidation** 26:9
**isn't** 20:5
**issue** 5:24 18:14 18:15 18:18 21:24 25:18 28:23 31:21 32:21 34:2
**issues** 4:25 5:3
**items** 21:11 22:17
**I've** 11:7 14:8 19:6 19:23 24:6 24:25 25:8 31:17 33:15 34:11

J

**JAMS** 11:1 11:2 11:2 11:5
**January** 27:15
**Judgment** 5:22 21:24
**June** 7:16 12:12

K

**Knorr** 4:15 4:15
**K-N-O-R-R** 4:15
**knowledge** 16:2

L

**last** 7:16 12:12 14:11 20:21 24:22
**later** 11:20 12:19 24:23 28:1 30:1
**law** 23:1

**lawsuit** 26:19
**lawyers** 32:16
**learned** 23:22
**least** 6:9 10:5 26:19 28:10 30:7 31:20 31:21 32:6 33:13
**leave** 28:9
**legal** 23:18 28:23 29:21
**legitimate** 26:21
**less** 8:13
**let's** 4:19 5:12 5:12 5:13 12:7
**level** 7:24 14:25 15:14 31:3
**lie** 29:22
**lies** 30:14
**life** 16:11
**limitation** 29:15
**limitations** 29:22
**limited** 12:21
**line** 11:16
**link** 20:16 27:15
**litigant** 15:4
**litigation** 13:23 15:2 15:8 27:22 27:23
**little** 4:20 5:15 17:12 20:2 23:10
**long** 19:23 20:21
**longer** 27:15
**loop** 29:7
**Lora** 4:15
**lot** 6:22 7:4 19:9

M

**main** 5:15 7:6
**mark** 22:11 22:17 22:20
**materials** 24:13 24:17 24:20 24:21 27:7
**matter** 6:6 11:11 12:3 15:6 19:1 20:20 26:24 28:18 29:4 33:23 34:9
**matters** 3:9 5:12 13:7 13:10 22:13 26:7 28:25 29:10 29:23 35:5
**may** 3:4 14:11 18:23 22:15 22:17 25:13 25:19 25:23 29:20 29:25 30:1 31:19
**maybe** 13:14 21:15 26:13
**M-Box** 20:14 24:20 25:3 27:3 34:15
**mean** 10:18 13:13 18:6 18:22 21:8 26:13 27:23 32:18
**means** 23:16
**meet** 9:12 10:9 10:10 10:16 11:3 11:6 11:9 11:17
**memorialize** 31:25
**mention** 12:24
**mentioned** 6:11 8:4
**mind** 22:5 30:1
**minute** 25:1
**misbehaved** 13:2
**misconduct** 13:10 14:6 18:25 19:3
**missed** 6:10
**missing** 6:21 6:22 7:6 16:24
**misstatement** 17:23 18:1 31:3
**misstatements** 18:4
**misuse** 26:23
**mode** 21:9
**moment** 17:25 29:18 32:10 32:20
**monetary** 5:23
**month** 32:25 33:19 33:22 34:8 34:16
**month's** 33:17
**morning** 3:12 3:14 3:17
**motion** 5:7 5:9 5:10 5:11 5:16 5:18 5:21 5:24 6:1 6:4 10:4 12:8 12:9 12:22 18:10 18:16 24:2 24:7 24:7 24:8 24:9 34:25
**motions** 5:6 5:14 5:19 6:3 9:19 10:3 10:11 11:22 11:25 12:11 32:22
**motivation**

14:1
**move** 4:19 14:4 21:2 21:9 24:7 32:5 33:4 34:9
**moving** 10:2 12:7 12:14
**multiple** 6:24
**myself** 30:12

N

**Naegeli** 4:16
**necessarily** 17:16 26:16
**negative** 7:1
**neither** 27:2 33:22
**Nikki** 4:6
**nobody** 11:20 25:2
**noncompliance** 11:23
**nor** 27:2
**normal** 14:14 27:21 35:5
**normally** 23:9
**north** 8:1
**note** 20:19
**nothing** 15:9 26:8
**notice** 5:17

O

**observation** 7:12 22:9 24:10 26:12
**obtain** 13:22 23:14
**obtained** 23:5
**obtains** 23:17
**obviously** 8:17 15:6 17:12 25:24
**occasions** 29:3
**office** 4:10
**official** 4:3
**okay** 7:10 9:4 10:18 12:5 24:5 27:17 30:8 30:18 32:3 33:18 33:25
**ones** 18:24
**on-the-spot** 29:12
**open** 24:11 27:20
**operating** 20:4
**opinions** 29:22 31:5
**opportunity** 28:10
**opposed** 11:13
**opposing** 12:21
**opposition** 12:20 18:19 19:20
**oppressive** 16:9
**order** 5:9 5:12 6:3 6:9 7:16 9:24 11:7 11:17 11:17 12:9 12:15 12:24 13:6 14:4 15:12 15:15 18:10 20:8 20:13 21:13 21:17 21:18 21:19 21:21 22:10 22:16 22:18 23:10 23:11 23:12 23:24 24:3 24:16 25:12 25:17 25:21 28:4 28:12 30:22 32:19 33:10 33:21 33:24 34:3 34:14 34:18 34:25 35:3 35:10
**ordered** 6:5 7:14 7:21 7:23 16:19 16:20 18:4 18:8 24:15 25:17
**orders** 5:21 8:3 10:16 12:10 18:1 30:23 31:4 31:17 31:19 31:21 32:1 32:21
**otherwise** 11:17
**overruled** 22:22

P

**pages** 9:19 14:8 30:18
**papers** 5:20 6:9 7:25 8:4 10:5 12:14 12:20 12:20 13:24 15:17 17:7 22:6 25:2 27:1
**particular** 5:4 18:22 19:8
**particularly** 10:8 11:10
**parties** 3:22 14:10 14:13 15:8 22:11 23:1 23:1 23:3 23:9 23:12 23:21 25:8 26:19 29:9
**party** 13:15 13:16 19:1 19:4 22:14

**Patrick** 3:18
**pdf** 20:14
**pending** 20:21
**people** 27:19
**per** 11:10 14:11
**percent** 8:13 8:14 30:24
**perform** 7:21
**performing** 17:11
**perhaps** 19:3 23:19 30:20
**period** 20:23 32:24 33:22
**persons** 23:15
**persuade** 18:21
**phase** 32:6
**phone** 11:14 11:21
**picked** 8:9
**pitch** 15:18
**point** 9:9 9:11 18:20 19:7 21:5 22:23 25:4 26:13 27:15 31:16 34:11 34:19 35:14
**pointed** 10:21 18:25
**position** 11:12 12:2
**positive** 7:2
**posture** 9:23
**practicable** 20:25
**pregnancy** 8:8
**press** 23:21
**pressing** 9:1
**pressure** 32:11
**pretty** 27:8 32:14
**prevail** 11:2
**prevent** 21:25
**previous** 18:9 21:21 29:3 30:21 31:4
**previously** 6:5 22:16
**prior** 5:21 27:12
**privacy** 8:6
**private** 26:7
**pro** 11:10 14:10
**probably** 27:19 33:13
**problem** 7:7 25:22 26:1
**procedure** 20:5 21:23 27:10
**proceed** 34:17
**proceedings** 3:2 3:23 4:18 10:24 22:24 33:7 33:8 35:18
**process** 5:4 11:9 14:7 22:18 23:4 25:16 25:17 27:6
**produce** 25:25 26:1
**produced** 6:9 6:12 6:18 8:1 8:12 22:14 25:19 26:16 34:7
**producing** 20:13
**production** 6:14 7:3 7:8 8:25 9:1 9:4 10:1 16:24 25:6 34:6
**productions** 32:8
**profession** 21:9
**professional** 17:22 21:6
**prohibited** 23:7
**prompt** 20:3 20:17
**promptly** 34:19
**proposal** 8:22
**propose** 23:25
**prosecution** 12:25 13:7 13:16 13:22
**Protective** 5:9 12:9 12:15 12:24 13:6 14:4 15:15 21:13 21:17 22:9 22:18 23:11 23:23
**protocol** 6:18 8:2 17:10
**provide** 9:14
**provided** 16:1 27:8
**pursuant** 22:15
**pursue** 19:1 19:3 19:18 28:25 33:1 33:2 33:22
**pursued** 17:20 29:23
**pursues** 19:8
**pursuing** 15:22 15:24 31:24 31:24 32:13
**push** 16:4

16:4 17:6
**pushed** 17:17
**putting** 27:25 30:21

Q

**question** 6:7 7:11 7:20 13:4 13:15 31:15 33:9
**questions** 3:24 12:13 23:19 25:20
**quickly** 33:3
**quite** 20:24 25:10 30:16

R

**raised** 9:13 27:9
**rambled** 19:23
**rather** 13:11
**reach** 25:18
**reactivate** 25:9 28:6
**reactivated** 25:13 28:5
**reactivating** 25:23 26:2
**reactive** 25:5 34:15
**reading** 27:1
**realize** 15:2 21:7 23:15 25:15 27:18
29:1 29:3
**reason** 20:11 24:22 28:1 29:20 30:12
**reasonable** 27:21
**reasonably** 33:9
**reasons** 8:6
**received** 9:15 21:20
**reconsider** 21:21
**record** 3:25 4:20 7:13 11:12 11:20 20:24 24:11 31:20 35:1
**records** 27:20
**redaction** 8:11
**reference** 6:11 6:24 10:23 26:6 26:6
**referring** 20:10
**reflected** 7:25
**refusal** 25:9 25:10
**regard** 7:19 18:12 22:2 25:8 31:23
**relates**
5:16 6:5
**relevant** 8:3
**relief** 5:21 10:6 21:11 21:16 34:24 35:9
**relying** 18:23
**remain** 22:20
**reporter** 3:23 4:2 4:3 4:9 4:10 4:14
**reporters** 3:19 4:7 35:13
**reporting** 4:17
**represent** 15:12 29:4 29:6 30:12
**representation** 30:4
**represented** 25:2
**request** 3:21 3:22 4:9 5:8 5:22 5:23 11:15 12:18 13:6 14:4 15:16 16:23 18:23 20:22 21:10 24:3 34:24 35:8
**requested** 4:4 10:6 21:11 34:24
**requesting** 12:14 12:23 18:17 33:17
**requests** 22:2 32:7 35:2
**require** 8:10 10:9 11:3
**requirement** 11:7
**requiring** 15:15
**researched** 13:14
**resolve** 8:17
**resolved** 5:1
**respect** 30:3
**respectfully** 22:3
**respond** 16:7 16:23 30:17
**responding** 16:15 31:14
**response** 6:25 6:25 9:15 9:23 16:20 20:18 27:8 27:9
**responses** 6:24 7:2 20:3
**responsive** 8:14 8:20 20:13
**resume** 30:2
**return** 21:19

**review** 25:14 28:11
**reviewed** 22:19
**reviewing** 22:6 34:6
**RIVAK** 3:12 6:16 8:24 10:15 12:4 13:9 15:20 26:3 30:9 32:2 34:20
**ROBERT** 3:6
**role** 28:19 28:20
**room** 18:3 18:11 30:25
**rose** 14:25 31:2
**rule** 9:4 11:2 11:2 11:24 13:19 19:20
**rules** 10:8 10:14 10:20 10:24 11:1 11:1 11:5 13:17 29:14
**ruling** 11:22 11:24 12:2 35:9

S

**sanction** 35:7
**sanctionable** 15:14
**sanctions** 5:24 21:24 27:13 35:9
**schedule** 5:2 17:13
**search** 7:14 7:14 7:17 7:18 7:21 7:22 8:9 8:21 17:11 25:20 28:6
**searches** 18:12 18:13
**seen** 19:6 19:14 25:7 25:8
**self** 22:1
**send** 16:21
**sending** 20:17
**sends** 20:14
**sent** 16:5
**setting** 27:25
**share** 23:13 23:17 23:18 23:20 31:13
**Sherman** 3:17 3:18 4:8 4:12 7:10 7:11 7:21 7:24 9:8 9:11 12:6 17:8 17:24 19:24 20:1 25:1 27:1 27:5 34:1 34:23 35:11 35:17
**sides** 4:24 9:20 14:21 21:8 27:19
**side's** 14:21
**silent** 11:6
**simply** 15:5
**single** 26:9
**single-digit** 8:13
**sir** 4:5
**six** 4:22 16:14
**slant** 30:21 30:22
**sleep** 32:17
**slight** 30:21
**small** 8:5 8:13
**someone** 11:20
**somewhat** 21:14
**sorry** 17:18
**sort** 4:3 22:23 23:16
**specific** 6:10 20:9
**specificity** 6:13 6:21 16:23
**specifics** 9:14
**spend** 16:14
**Spivak** 3:9 3:11 5:7 5:14 6:4 8:15 8:22 9:12 9:18 9:21 10:3 10:22 11:11 12:1 12:8 12:13 14:10 15:10 15:16 18:7 18:18 20:4 20:7 20:11 20:22 21:16 22:7 22:15 23:24 24:14 25:5 25:14 25:16 25:22 27:7 27:18 28:14 28:16 31:18 32:10 32:14 33:11 33:18 34:14 35:16
**Spivak's** 9:23 24:6 25:9 34:6
**spot** 30:14
**spur** 29:17
**stage** 26:24 32:4
**stand** 31:16
**standard** 20:4
**standstill** 32:20 32:23 33:10 33:21 34:4 34:14
**start** 5:13

34:5
**starting** 14:10
**state** 10:24 11:1 11:24 13:17
**statement** 24:25
**statements** 9:24 31:10
**status** 4:23
**statute** 22:25 29:22
**stipulate** 24:1 24:2
**stipulated** 22:10 22:17
**strike** 21:24
**strong** 21:8
**submitted** 9:19 24:13 30:18
**subset** 8:5
**suggest** 23:25
**superior** 10:8 10:20
**supervisors** 19:12
**support** 19:19
**sure** 3:20 17:5
**survive** 26:11
**suspect** 19:9 19:13 19:14
**sustained** 19:21

T

**taking** 3:8 32:8
**talk** 12:25 18:15 23:2 23:4 25:11 32:6 32:16 33:4
**talked** 26:17 34:3
**talking** 7:13 8:7 13:15 21:15 26:14 26:15 26:18
**task** 17:16
**team** 23:18
**technicality** 16:16
**technically** 12:20
**technology** 24:18
**telegraph** 33:16
**TELEPHONE** 3:2
**telephonic** 10:10 11:3 11:8
**tentative** 11:22 11:24 25:12
**term** 5:18 18:12 35:7
**terminated** 16:3
**terms** 7:13 7:18 7:22 9:25 13:4 13:15 14:6 15:18 17:23 18:1 18:5 18:6 21:17 24:6 28:23 29:7 31:9 32:7 34:5
**testified** 23:6
**tethered** 13:6
**thank** 3:14 4:17 35:11 35:12 35:16 35:17
**thanks** 35:13 35:15
**themselves** 23:2
**there's** 6:21 6:23 7:3 7:5 8:5 10:25 15:9 18:3 19:9 21:12 26:23 29:15 30:25
**Thereupon** 35:18
**they're** 8:11 8:20 18:16 18:20 22:3
**they've** 21:20 26:5 26:6
**third** 5:9 23:3 23:21
**third-party** 8:6
**thorough** 25:20
**thoroughly** 30:7
**thousands** 7:5
**threat** 13:22
**threaten** 13:20 13:21 15:21
**threatened** 13:25
**threatening** 26:4
**threats** 26:10
**today** 3:16 3:19 3:23 4:4 4:22 5:10 17:18 28:19 33:12 34:3 34:22 35:1
**today's** 5:3
**tone** 17:4
**totally** 20:15
**toward** 35:5
**track** 20:24
**trademark** 24:19
**trading**

16:2 18:14 19:11
**TRANSCRIPT** 3:1
**traps** 16:6
**tread** 24:19
**trial** 4:16 10:20 11:24
**tried** 33:15
**troubled** 27:24
**true** 16:18
**truly** 28:22
**try** 27:14
**trying** 13:10 32:11
**Turning** 27:17
**type** 8:7 19:13

U

**underlying** 10:22 27:11
**understand** 5:5 14:9 18:3 20:16 25:10 27:6 32:18 34:2
**understands** 30:13
**understood** 34:19
**unethical** 15:1 15:19
**unless** 6:10 22:21
23:7 23:9
**unreasonable** 11:16
**unusual** 14:18 14:23
**upon** 18:23 21:4
**upset** 17:13
**usually** 15:7 24:4 30:25

V

**vaguely** 20:12
**validity** 19:4
**variance** 10:25
**various** 5:2 7:18 13:11 21:10
**vigorously** 15:8 15:10 17:20
**voluntary** 14:21

W

**warranted** 22:4
**Washington** 10:8 10:13 11:24
**wasn't** 6:18 8:24
**we'd** 33:3
**week** 32:25 33:12
**weeks** 4:23 24:23 25:4 27:4 28:1 32:25 33:16
**we'll** 6:3 14:4 18:15 25:11 32:9 35:13
**we're** 3:8 4:21 19:15 21:4 21:15 26:13 26:14 26:15 26:17 26:24
**we've** 26:17 34:3
**whatever** 19:5 24:22 28:1 28:11
**whenever** 34:16
**whereas** 7:1
**whether** 8:20 19:21 25:16 25:21 26:5 33:1
**whole** 19:9
**whom** 4:14
**who's** 3:10 3:16 4:4 4:14 4:17
**wiggle** 18:3 18:11
**wish** 12:1
**withdraw** 28:16 29:12 29:25 30:5
**withdrawn** 15:23
**witness** 23:6
**witnesses** 23:19
**work** 6:16 6:19 16:25
**worked** 7:7
**writing** 30:6
**wrong** 15:9 16:21

Y

**yesterday** 3:22
**yet** 11:7 26:24
**you've** 5:14 13:14 14:2 29:23 30:6