UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

Rivka Spivak,

Plaintiff,

v.

Alphabet Inc., et al.,

Defendants.

Case No. 2:20-cv-01480-MJP

EXHIBIT 19

2025 Motion for Protective Order (MPO) in State Court

Filed in Support of Plaintiff's Motion to Vacate Judgment Under Rule 60(d)(3)

FILED
2025 JUL 31 09:00 AM
KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE #: 23-2-23572-0 SEA

The Honorable James E. Rogers
Courtroom: E-733
Noted Date: August 13, 2025, 9:00 am

**IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON**
**COUNTY OF KING**

| | |
|---|---|
| **Google LLC**<br>**Plaintiff**<br>**v.**<br>**Rivka Spivak**<br>**Defendant** | **No. 23-2-23572-0 SEA**<br>**MOTION FOR PROTECTIVE ORDER, SEALING OF THE COURT RECORD, APPOINTMENT OF COUNSEL FOR MINORS, AND OTHER JUST RELIEF** |

## I. INTRODUCTION

Defendant Spivak respectfully moves for a protective order including, but not limited to, relief to prevent the dissemination, use, or disclosure of highly sensitive medical, mental health, and family court records relating to herself and her children. She also seeks temporary sealing of the entire court record and appointment of counsel for her minor children, who are at risk of



Rivka Spivak, Pro Se
128 NE 51st Street, Seattle, WA 98105
617.519.1100

ongoing harm and violations of their independent rights. This motion is necessary because confidential records remain unprotected despite Spivak's repeated good-faith attempts to seal them and Google's stated refusals to redact records or maintain confidentiality—even for legally protected information regarding Spivak's children.

Even if these confidential records exist solely because of Google's actions—including a sustained campaign of harassment, retaliation, and procedural abuse—their legal protections remain undiminished. Google's deliberate role in provoking the underlying events to discredit Spivak and her prior allegations does not entitle it to publicly use or disseminate otherwise protected sensitive information, especially regarding Spivak's children. The law protects these records regardless of their origin or cause, and Google's efforts to weaponize them in litigation only underscore the urgent need for immediate and comprehensive judicial protection.

Recent developments—including Spivak's renewed motion to seal, direct notice to Google's counsel, growing recognition of Google's tactics to provoke further public filings, and Spivak's increased procedural awareness—have put Google on notice, creating a heightened risk that Google may act to disseminate or exploit sensitive records before the Court can intervene. Judicial intervention is necessary to prevent further harm to the privacy rights of Spivak and her children.

Sealing the entire record is necessary as an immediate, interim measure to prevent further harm while the Court considers the sealing or redaction of individual records. In addition, a protective order is essential to provide ongoing protection against the abuse and dissemination,


Rivka Spivak, Pro Se
128 NE 51st Street, Seattle, WA 98105
617.519.1100

or disclosure of these sensitive materials throughout the remainder of this litigation and beyond, as warranted by the circumstances.

## II. FACTUAL BACKGROUND

Spivak has consistently sought to protect the privacy of her and her children's medical, mental health, and family court records throughout this litigation (Exhibits A, B, and C). The record demonstrates both actual and constructive notice to Google and its counsel of Spivak's intent to maintain confidentiality, and a troubling pattern by Google of refusing to redact sensitive information from its own filings while employing tactics and legal arguments that pressure Spivak to make additional confidential material public.

### A. December 2023 Email Exchange and Google's Refusal to Redact

In December 2023, Spivak asked Google to remove her children's names, photographs, and medical information from their public filings, making clear she did not consent to disclosure and lacked the procedural knowledge to protect these rights. She expressly warned Google not to rely on her to remedy any legal violation and put the burden on Google to act on its own filings. (Exhibit A). She also sent a letter the arbitrator, including Google, detailing other significant confidentiality violations in Google's filing.

Despite these explicit requests, Google offered no assurances that it had or would redact such information, and refused to modify the filing, stating that it "contains no medical records subject to the protective order" and that the evidence was "crucial to establishing the need for the relief we seek." Spivak specifically identified that the filing she was served with included her



Rivka Spivak, Pro Se
128 NE 51st Street, Seattle, WA 98105
617.519.1100

children's names, vulnerable photographs, and sensitive medical and mental health conditions. She wrote: "You put the names, photos, and medical information of minors into the public record. I did not." She further noted, "You easily could have redacted their faces and names without weakening your claim for the 'relief' you seek—unless your point was to extort me …" Google's filing included a private and graphic photo so disturbing it surely would have been blocked by Google's own "safe search" filtering. Most egregiously, Google included emails in which Spivak referenced the trauma and emotional impact of a private court proceeding involving her children—a matter kept strictly confidential, even from those in her children's immediate social circles. Spivak's children face profound emotional distress by Google's actions. The refusal to redact these details, over Spivak's objections, violates statutory protections for minors and/or professional obligations in communications. Google's position demonstrates a shocking disregard for the law and basic fairness.

In its filings, Google claims to have spent hundreds of thousands of dollars in legal fees defending against Spivak's pro se claims. Google is far too well-resourced to have filed sensitive data about Spivak or her children inadvertently or without understanding the consequences. Given these resources and the sophistication of its legal team, Google's failure to protect sensitive information or offer Spivak any assurances cannot be excused as inadvertent. It is baffling as Google is aware that courts have inherent authority to issue sanctions for bad faith conduct, including the unnecessary disclosure of, or threats to disclose, confidential or irrelevant information for the purpose of harassment, embarrassment, or to gain an unfair advantage. The refusal to redact or seal protected information after notice—especially when the information concerns minors—demonstrates willful disregard of both legal and ethical obligations. That



Rivka Spivak, Pro Se
128 NE 51st Street, Seattle, WA 98105
617.519.1100

Google did not do so even when Spivak pointed out that her children's information could be redacted without any loss of evidentiary value suggests that Google considers itself immune from the rules that protect vulnerable parties, and raises serious concerns about whether even sealing and a protective order would be sufficient to prevent further harm. Spivak therefore respectfully submits that stronger action from the court is necessary. Spivak also asks this court for clarification on whether the injunction previously issued in this court reaches or purports to bar any independent claims that may be held by her children..

Unlike Spivak, Google's attorneys have significant professional training and motion practice. As such, they know far better than Spivak does that the standard for public disclosure of sensitive information in litigation is not simply whether the information was "created by" a party or "crucial" in some broad sense, but whether it is actually relevant and what is necessary to the specific relief sought. If the information is not relevant, its disclosure is not justified and may be considered an abuse of the litigation process. Google brought this action seeking a vexatious litigant designation and permanent injunction against Spivak, not her children. That still did not stop Google from weaponizing Spivak's desire to protect her children from harm – by publicizing her children's private data and/or by letting her believe they had done so and would continue to do so. This court granted Google's motion and has direct understanding of whether the confidential information about Spivak's children was relevant evidence, and whether Google was justified in filing it at all and refusing to redact it on Spivak's repeated requests -- with the indefensible insistence that it was "crucial" to gaining the requested relief. Spivak asks the court to make an explicit finding on the issue of what Google did or what they need, as an additional protective measure.



Rivka Spivak, Pro Se
128 NE 51st Street, Seattle, WA 98105
617.519.1100

**B. Repeated Motions to Seal and Related Communications**

Throughout this litigation, Spivak has consistently sought to protect the privacy of her and her children's records (Exhibits A, B, C), providing both actual and constructive notice to Google and its counsel. Despite repeated requests, objections, and motions to seal—including those filed on September 11, 2024, and July 16, 2025—Google has refused to redact sensitive information or cooperate in protecting these materials. Procedural deficiencies stemming from Spivak's pro se status do not excuse Google's refusal to act, especially given its awareness of the ongoing risk to privacy.

**C. Recent Confidentiality Request and Google's Non-Response**

On July 19, 2025, Spivak again requested that Google and its counsel agree to maintain confidentiality regarding all medical, mental health, and family court records while the motion to seal is pending. Google did not respond (Exhibit C). This silence, in the context of Google's prior refusals to redact or protect highly sensitive information despite repeated, explicit notice, is concerning. Google's refusal to even acknowledge a reasonable, temporary confidentiality request—particularly after being put on notice of the risks to minor children—demonstrates a continuing disregard for statutory obligations and the court's authority. This ongoing non-response, especially with judicial review pending, highlights the urgent need for immediate court intervention to prevent further harm.

**D. Google's Deliberate Exploitation of Confidential Records and the Irreparable Harm to Minor Children**



Rivka Spivak, Pro Se
128 NE 51st Street, Seattle, WA 98105
617.519.1100

In its response to Spivak's recent motion to set aside judgments, Google's signed opposition asserted that Spivak is a practicing lawyer and implied that the litigation actions she has taken were intentional and fully informed. This narrative is not only misleading—it is weaponized to justify and perpetuate a pattern of conduct that has harmed Spivak's children and placed them at further risk.

Google's opposition attempted to bait Spivak into making arguments about "unsound mind" under CR 60(b)(2)—a theory she failed to raise—and then countered her request for appointed counsel by introducing case law and using language that feigned ignorance of a confidential family court matter, while unmistakably evoking that very matter by their own citation. Google certainly knew the details of the confidential matter, having previously demanded production of those records in discovery. The suggestion, in Google's presented argument and factual contentions, that no such records existed, was not just disingenuous—it forced Spivak into a corner.

Google made these arguments—framed by its assertions of Spivak's legal qualifications and awareness—while knowing she had tried but repeatedly failed to obtain an order to file under seal and had inadvertently made sensitive records public. This pattern—painting Spivak as legally sophisticated while exploiting her procedural missteps and provoking disclosure of confidential material—can only reasonably be understood as a deliberate effort to create procedural confusion, manufacture unintended waiver, and undermine Spivak's and her children's privacy rights. This is not zealous advocacy; it is a calculated strategy to leverage the


Rivka Spivak, Pro Se
128 NE 51st Street, Seattle, WA 98105
617.519.1100

vulnerabilities of a pro se litigant who previously made well-supported claims (Exhibits D and E) that caused Google and its attorneys trouble, in order to discredit her.[1]

Spivak's young daughters cannot be faulted for Spivak's filings against Google. They live with ongoing fear that their friends might discover information that would cause them profound emotional distress. Google's initial filings, made with full knowledge of the consequences, have already placed this information in the court record. The harm is not hypothetical; it is immediate, ongoing, and irreparable.

Such conduct is not only contrary to the letter and spirit of the rules governing confidentiality and the protection of minors, but it is a textbook example of the use of legal

[1] Google's EEOC statement swore Spivak did not complain of gender discrimination until February 2015; internal emails show repeated notice before that date (Exhibit D(2)). Google claimed Spivak's project relocation was a business decision by business leaders; internal emails show HR and Employee Relations (Google's legal arm of HR) made the decision, and that business leaders disagreed but were required to adopt HR's messaging (Exhibit D(3)). Google's arbitration brief stated Spivak had little to no interaction with Executive Neal Mohan. Taking that contention as truthful, the arbitrator blocked Spivak from access to this crucial discovery. Internal emails show Mohan met with Spivak one-on-one, was directing many of Spivak's adverse employment decisions, and had been warned by HR that Spivak was making gender bias complaints (Exhibit D(4)). Google's court filings include a sworn declaration from its HR representative asserting that she investigated Spivak's discrimination claims and determined they were meritless; an email from the prior month shows her investigation concluded that gender bias had occurred and that she instructed the involved manager to treat male and female employees equally in the future (Exhibit D(5)). Although these records speak for themselves, Spivak is the one who surfaced them, and Google's subsequent tactics suggest that they believe that discrediting Spivak somehow neutralizes any risk. These exhibits are offered to show that Spivak's prayer for protection for her family is made in good faith and with a genuine fear for her children's safety.



Rivka Spivak, Pro Se
128 NE 51st Street, Seattle, WA 98105
617.519.1100

process to harass, intimidate, or needlessly increase the risk of harm to parties and non-parties alike. The court's inherent authority exists precisely to address and remedy this kind of abuse.

The court should not countenance a pattern of advocacy that treats the well-being of children as collateral damage. The record here is clear: Google's actions have already caused irreparable harm, and absent immediate and comprehensive judicial protection, that harm will only deepen.

**E. Appointment of Counsel for Minors**

Google's insistence that the private information of Spivak's children is "crucial" to this action blurs the line between parties and non-parties and raises an urgent question as to whether the children's independent rights are being adequately protected. Spivak's highest, and perhaps, only, priority is to protect her children as their mother, but she is not licensed or authorized to represent her children's independent legal interests. She therefore cannot legally protect their rights or assert independent claims or objections on their behalf. In light of Google's position that the children's private information is too "crucial" to be redacted, and given Google's attempts to bait Spivak into filing evidence from protected cases into the public record, Spivak respectfully submits that the Court should consider that additional safeguards—including the appointment of independent counsel for the minors—are necessary to ensure they are fully protected.

**F. Summary**


Rivka Spivak, Pro Se
128 NE 51st Street, Seattle, WA 98105
617.519.1100

The cumulative record—including Google's initial filings, the December 2023 email exchanges putting Google on notice, Spivak's repeated docketed motions to seal, ongoing communications with the court, Spivak's unacknowledged confidentiality request, and Google's litigation tactics—demonstrates that Spivak has never intended to waive privacy rights, has repeatedly acted to protect sensitive information, and that Google has consistently refused to follow statutory law or cooperate absent a court order.

Spivak has consistently given Google notice that her children's privacy rights were not for sale or negotiation. Spivak has made clear to Google that any settlement of her own claims, no matter how comprehensive, would not, and could not, release the claims held by her children.

Google has repeatedly engaged in litigation tactics that both bait Spivak into making further public filings of confidential material and frame her as a legally sophisticated party fully aware of the consequences. By asserting that Spivak is a practicing lawyer, implying her actions are intentional and informed, and structuring arguments to force her to choose between waiving privacy or leaving key points unrefuted, Google has deliberately exploited procedural missteps and attempted to manufacture waiver. This pattern of conduct—combining strategic baiting with a narrative of legal sophistication—has heightened the risk that sensitive records will be further exposed or misused before the Court can intervene.

The risk of irreparable harm remains ongoing and urgent, and only judicial intervention can clear Google's apparent need to engage in these tactics, and protect Spivak's children.

## III. ARGUMENT



Rivka Spivak, Pro Se
128 NE 51st Street, Seattle, WA 98105
617.519.1100

The Court has both the inherent and express authority to issue protective orders and to seal or redact court records to protect compelling privacy interests, particularly where sensitive medical, mental health, or family court records are at issue.

**A. Sealing and Redaction of Court Records**

Under GR 15, the Court may seal or redact records upon finding compelling privacy or safety concerns that outweigh the public interest. The Washington Supreme Court has held that sealing is appropriate where a compelling interest exists, the order is narrowly tailored, and no less restrictive means are available. Medical, mental health, and family court records—especially those involving minors—are entitled to the highest protection.

**B. Special Protection for Medical, Mental Health, and Family Court Records**

General Rule 22 ("GR 22") and related authority recognize that medical, mental health, and family court records are among the most sensitive categories of information and are routinely sealed to protect privacy.

Washington law and public policy strongly favor the protection of minors' privacy and the confidentiality of their medical and mental health information. The Court has both the authority and the obligation to act to prevent irreparable harm to these interests.

**C. No Waiver by Inadvertent Filing and Obligations to Redact**



Rivka Spivak, Pro Se
128 NE 51st Street, Seattle, WA 98105
617.519.1100

Under Washington law, a minor's identifying information and should not be publicly filed in court records unredacted, especially when combined with other sensitive or confidential information (see Wash. Admin. Code § 484-50-010; Wash. Gen. R. 15; Wash. Rev. Code § 13.50.100). The statutory and regulatory protections for a minor's privacy are not waived by a parent's disclosure of this information; a parent cannot legally waive their child's right to privacy, as these protections are established by statute and regulation for the benefit of the child and are not subject to unilateral waiver (see Wash. Rev. Code § 13.50.100; Rogers v. Dep't of Children, Youth & Families, No. C21-5248-RAJ-MLP, 2021 WL 5237192 (W.D. Wash. Nov. 10, 2021)).

**D. Court's Proactive Role**

The Court is not limited to acting only upon party agreement. GR 15 expressly provides that the Court may act sua sponte or upon motion to protect compelling privacy interests. Inadvertent public filing of sensitive records does not constitute a knowing waiver of privacy rights, especially where the record reflects ongoing, good-faith efforts to seal and protect those records.

**D. Protective Orders**

Washington law, including WAC 162-08-096 and RCW 7.105.310, grants courts broad discretion to issue protection orders and to fashion such relief as the court deems proper to protect parties from harassment and related conduct. Under Wash. Rev. Code § 7.105.310, the court may restrain a respondent from a wide range of conduct—including harassment, following,



Rivka Spivak, Pro Se
128 NE 51st Street, Seattle, WA 98105
617.519.1100

monitoring, surveillance, and both physical and electronic contact—and may grant any relief necessary for the protection of the petitioner or other protected parties. The Washington Court of Appeals has confirmed that courts possess this broad authority, emphasizing that anti-harassment protection orders require sufficient findings, as outlined in this motion, and that the statutory scheme is designed to provide robust and flexible remedies to address ongoing or serious harassment. See Orvold v. Mershon.

**E. Arguments Supporting Immediate Broad Relief**

The facts of this case establish a real and immediate risk that Google may misuse, disseminate, or further expose highly sensitive medical, mental health, and family court records relating to Spivak and her children. This risk is not speculative; it is grounded in a documented pattern of conduct by Google and its counsel, as well as the ongoing public accessibility of these records despite Spivak's repeated efforts to secure judicial protection.

**F. Google's Attempts to Bait and its Refusal to Voluntarily Protect Sensitive Information**

The December 2023 email exchange demonstrates that Google, through its counsel, was fully aware of the sensitivity of the records and Spivak's intent to protect them. Nevertheless, Google explicitly refused to redact or remove the information, stating that it would not do so unless compelled by a protective order. This refusal was not based on legal necessity, but on a strategic and tactical choice to require court intervention before taking any remedial action.

This position has persisted throughout the litigation. Spivak has made multiple good-faith but unsuccessful motions to seal and has included Google on numerous communications with the


Rivka Spivak, Pro Se
128 NE 51st Street, Seattle, WA 98105
617.519.1100

court and sealing coordinator, all of which made her intent clear. Google's continued refusal to act, even in the face of repeated requests and actual notice, underscores the <u>inadequacy of relying on voluntary cooperation</u> and the necessity of immediate judicial intervention.

Google's failure to respond to Spivak's recent confidentiality request further demonstrates a lack of good faith and an ongoing risk that the records could be used or disseminated while the motion to seal is pending. In its opposition filings, Google has repeatedly implied that Spivak consented to public disclosure, despite being on notice of her repeated attempts to seal and her explicit statements that any public filing was unintentional and not a waiver. Google has also engaged in litigation tactics designed to create procedural confusion and pressure Spivak to make additional sensitive information public, including baiting arguments about "unsound mind" and feigned ignorance regarding the family court case, even within signed filings opposing Spivak's motion.

These actions reflect a well-documented pattern of tactics used by powerful corporations to discredit former employees who have made prior complaints to regulatory agencies: character attacks, abuse of the legal process, procedural baiting, and efforts to force impossible choices between self-defense and privacy. Such strategies are designed not to advance legitimate discovery, but to shift the focus from the merits of the underlying claims to the credibility and competence of the opposing party. The record here demonstrates that Google's conduct fits squarely within this playbook, and that the resulting harm to Spivak is not incidental, but the foreseeable outcome of a deliberate campaign to undermine and exhaust a meritorious, but



Rivka Spivak, Pro Se
128 NE 51st Street, Seattle, WA 98105
617.519.1100

vulnerable, litigant. Google's demonstrated willingness to extend the harm to children is less commonplace and more shocking.

**G. Procedural Safeguards Are Necessary to Prevent Irreparable Harm**

The ongoing risk of irreparable harm is not speculative; it is grounded in Google's documented refusal to redact or protect sensitive records, despite repeated notice. The only effective safeguard is for the Court to (1) immediately seal the entire record pending more specific sealing and redaction; (2) issue a necessary order for protection; (3) prohibit any public dissemination, use, or disclosure of these records; (4) Consider stronger action given Google's violations of the rights of minors and refusal to correct on notice; and (5) appoint independent counsel for Spivak's minor children, whose rights have already been violated. Courts have consistently recognized that once private information is disclosed, the harm cannot be undone, and the need for immediate protection is paramount.

**H. Protective Order and Prompt Sealing of the Entire Docket is Warranted**

Absent immediate relief, Spivak and her children face the prospect of further harm to their privacy and well-being, with no adequate remedy once the information is disseminated by Google, which they are more likely to attempt given notice of Spivak's motion to seal. The Court's authority under GR 15 , CR 26(c), WAC 162-08-096, and Wash. Rev. Code § 7.105.310 is specifically designed to prevent such harm before it occurs, and the facts of this case fully justify the exercise of that authority on an urgent basis. Given that review, identification, and seal


Rivka Spivak, Pro Se
128 NE 51st Street, Seattle, WA 98105
617.519.1100

or redaction of individual records will require significant time and procedure, immediate seal of the entire docket is necessary as an interim measure.

**I. Summary**

In sum, the record demonstrates not only a real and immediate risk of misuse or dissemination of highly sensitive family court records by Google, but also a pattern of conduct—including harassment and intimidation—that extends beyond ordinary litigation tactics. Statutory and regulatory protections, including Wash. Rev. Code § 13.50.100 and Wash. Admin. Code § 484-50-010, establish that a minor's identifying information is confidential, not subject to waiver by a parent, and requires corrective action if made public. Case law confirms that these protections are robust and not lost by inadvertent or limited disclosure, and that once private information is disclosed, the harm is irreparable and the need for immediate protection is paramount. Urgent relief is necessary to prevent irreparable harm and to ensure that the privacy rights of Spivak and her children are protected. The Court has clear authority under GR 15, GR 22, and controlling case law to issue the relief requested, particularly when it concerns minors and sensitive family court records.

**IV. CONCLUSION**

Spivak respectfully requests that the Court grant the following relief:



Rivka Spivak, Pro Se
128 NE 51st Street, Seattle, WA 98105
617.519.1100

1. Issue written findings on whether any protected data regarding minors was made public by Google, to mitigate the harm of Google's tactics.
2. Issue written finding on whether Google's emails asserting that it would not redact its filings was inconsistent with statutory requirements involving protected data, to mitigate the harm of Google's tactics.
3. Issue written findings on whether Google's responses to Spivak's concerns and requests regarding her children's data violated professional obligations regarding communications with other parties.
4. Order that the entire case record be sealed as an interim measure until all medical records, mental health records, family court records, and any related exhibits or filings containing or referencing such information—whether pertaining to Spivak or her children—can be identified and individually sealed or redacted from public access, to the extent not already under seal.
5. Prohibit Google LLC, its counsel, agents, and representatives from disseminating, using, or disclosing any medical records, mental health records, family court records, or any filings or emails that specifically incorporate, reference, or expose the sensitive contents of such records, except as necessary for this litigation and only as permitted by further order of the Court.
6. Appoint counsel for Spivak's minor children.
7. To fully and finally protect Spivak's children give Google what they actually need or what is legally warranted on any issue raised in this motion.



Rivka Spivak, Pro Se
128 NE 51st Street, Seattle, WA 98105
617.519.1100

8. Any other relief the Court deems just and proper to protect Spivak and her children, repair harm, and to end more than ten years of adversarial behavior that has devastated Spivak's family, including but not limited to interim orders, remedial or corrective action, or further instructions to the clerk.

Dated this 31st day of July 2025, at Seattle, Washington.

s/ Rivka Spivak
Rivka Spivak, Pro Se
128 NE 51st Street
Seattle, WA 98105
617.519.1100
rebeccaspivak@outlook.com

I certify that this memorandum contains 4185 words, in compliance with the Local Civil Rules.

FILED
2025 JUL 31 09:00 AM
KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE #: 23-2-23572-0 SEA

The Honorable James E. Rogers
Courtroom: E-733
Noted Date: August 13, 2025, 9:00 am

**IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON**
**COUNTY OF KING**

| | |
|---|---|
| **Google LLC**<br>**Plaintiff**<br>**v.**<br>**Rivka Spivak**<br>**Defendant** | **No. 23-2-23572-0 SEA**<br>**DECLARATION OF RIVKA SPIVAK ISO MOTION FOR PROTECTIVE ORDER, SEALING, APPOINTMENT OF COUNSEL FOR MINORS, and RELATED RELIEF** |

I, Rivka Spivak, am the defendant in this matter and the mother of the minor children referenced herein. I make this declaration based on personal knowledge and review of relevant records, in support of my Motion for Protective Order, Sealing of the Court Record, Appointment of Counsel for Minors, and Other Relief.



Rivka Spivak, Pro Se
128 NE 51st Street, Seattle, WA 98105
617.519.1100

1. I was employed by Google from 2010 to 2015 and made formal internal complaints of gender discrimination in 2014 and 2015. Since 2015, I have been involved in ongoing regulatory and legal actions with Google, including an EEOC complaint and subsequent litigation initiated by Google to compel arbitration. My goal throughout has been to have my claims heard on the merits, which has not occurred.

2. My allegations against Google, which Google has labeled "inflammatory," have led to efforts by Google to discredit me and to create circumstances in which damaging or protected information about me and my family could be publicized. As a result, my children and I have suffered severe and ongoing harm and trauma.

3. I have never intended to waive my own privacy rights or those of my family, and I do not believe I am authorized to waive my children's rights. Any public filing of protected information by me was inadvertent and not intended as a waiver. To the best of my knowledge, sensitive records remain publicly accessible, some filed by Google and others inadvertently by me due to procedural inexperience.

4. I have made repeated, good-faith efforts to protect the privacy of sensitive records relating to myself and my children, including direct requests to Google and its counsel. Google has either refused or failed to respond. In December 2023, I specifically requested redaction of my children's names, photographs, and medical information; Google refused, claiming the information was "crucial" to its claims. On July 19, 2025, I again requested confidentiality while my motion to seal was pending; Google did not respond. Google's refusal to respond, even after repeated notice and explicit requests, demonstrates a pattern of disregard for privacy and statutory obligations.


Rivka Spivak, Pro Se
128 NE 51st Street, Seattle, WA 98105
617.519.1100

5. I have filed multiple motions to seal sensitive records and have included Google's counsel on all related communications with the court and sealing coordinator, making my intent clear and seeking procedural guidance.

6. I am deeply concerned for my children's well-being, privacy, and emotional safety.

7. Attached as exhibits to this declaration are true and correct copies of the following, with highlighting added by me for the court's convenience:

   - **Exhibit A:** Letter and email to the arbitrator in my second arbitration, and a December 2023 email exchange with Google's counsel regarding redaction of my children's information.
   - **Exhibit B:** Emails to Google's counsel, the court, and the sealing coordinator documenting my efforts to protect sensitive records and seek guidance on sealing.
   - **Exhibit C:** My July 19, 2025 email to Google's counsel requesting confidentiality while my motion to seal was pending; Google did not respond.
   - **Exhibit D:** Pages from Google's filings to the EEOC, court, and arbitration, internal Google emails produced in discovery, and a letter from my former attorney to the EEOC, demonstrating a pattern of misrepresentation and the need for protection.
   - **Exhibit E:** 2018 email exchange with Google's attorney summarizing my concerns about Google's tactics during my employment, the EEOC investigation, and arbitration, consistent with the documentation in Exhibit D.


Rivka Spivak, Pro Se
128 NE 51st Street, Seattle, WA 98105
617.519.1100

I declare under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

Dated this 31st day of July 2025, at Seattle, Washington.

s/ Rivka Spivak
Rivka Spivak
128 NE 51st Street
Seattle, WA 98105
617.519.1100
rebeccaspivak@outlook.com

# Exhibit A - Emails Asking Google to Redact

---

**Subject:** RE: Letter to Judge McDermott
**Date:** Tuesday, December 5, 2023 at 1:43:06 PM Pacific Standard Time
**From:** Rebecca Spivak
**CC:** JAMS, Michelle Nemeth, Brown, Jim, Witczak, Timothy J., Lane, Allison
**Attachments:** document list.jpg

As best I as I can tell, Ms. Lane's Declaration was not filed under seal

It includes at least two pictures each of my children, their names, and [redacted] and [redacted] information (illegal on multiple fronts, I believe).

It includes my [redacted] (totally unnecessary for their filing)
It includes multiple pictures of [redacted] (totally unnecessary for their filing)

And more.

---

From: Rebecca Spivak
Sent: Tuesday, December 5, 2023 1:27 PM
Cc: JAMS; Michelle Nemeth; Brown, Jim; Witczak, Timothy J.; Lane, Allison
Subject: RE: Letter to Judge McDermott

I know that reporters follow Google's legal filings like Hawks. Last time Google frivolously sued me (to compel arbitration, which I wasn't contesting), I had a reporter call me even before I was served with the summons.
If it wasn't originally filed redacted or under seal, it's too late. It's already out there.

---

From: Rebecca Spivak
Sent: Tuesday, December 5, 2023 1:21 PM
Cc: JAMS; Michelle Nemeth; Brown, Jim; Witczak, Timothy J.; Lane, Allison
Subject: RE: Letter to Judge McDermott

Correction - it's not in exhibit A, it's in the Declaration of Allison Lane In Support Of Google's Motion for Vexatious Litigant Designation and Preliminary Injunction

---

From: Rebecca Spivak
Sent: Tuesday, December 5, 2023 1:12 PM
To: rmcdermott@jamsadr.com
Cc: JAMS; Michelle Nemeth; Brown, Jim; Witczak, Timothy J.; Lane, Allison; rmcdermott@jamsadr.com; mnemeth@jamsadr.com; JamesBrown@duanemorris.com; TWitczak@duanemorris.com
Subject: Letter to Judge McDermott

Dear Judge McDermott,

Google has filed an action against me in Washington Superior Court. In the summons I received, I do not see any indication that it was filed under seal.

In the exhibits filed, Google includes many of my emails. Those emails include pictures of my children, confidential medical information about me and my children, and photos of [redacted]
I believe there was a protection order in place preventing Google from using any medical information received during the course of this arbitration outside of this arbitration.
And pictures and medical information of my children should obviously be hugely forbidden from being filed unreacted in Superior Court.

If Google cannot confirm that the redacted or filed all this material under seal, please sanction them heavily. It's all in the exhibits. [redacted]. My kids names and photos. Their medical status. Lots and lots of material that is life-ending for me and brutal for my children's future.

This is unforgivable. I can seek redress in Superior Court, but the violation of the protective order is within your jurisdiction, I believe.

The case is No. 23-2-23572-0. Exhibit A

Thank you.
Rebecca Spivak

**Subject:** RE: Spivak v. Google (5160000362) / Google LLC v. Rivka ("Rebecca") Spivak, Superior Court of the State of Washington, County of King
**Date:** Wednesday, December 6, 2023 at 1:37:34 PM Pacific Standard Time
**From:** Rebecca Spivak
**To:** Lane, Allison
**CC:** Brown, Jim, Morgan, Trina C., rmcdermott@jamsadr.com

You easily could have redacted their faces and names without weakening your claim for the "relief" you seek - unless your point was to extort me, which of course it was.

Hopefully my children will find comfort from the harm you've done to them in their adjoining private islands.

---

From: Rebecca Spivak
Sent: Wednesday, December 6, 2023 1:28 PM
To: Lane, Allison
Cc: Brown, Jim; Morgan, Trina C.; rmcdermott@jamsadr.com
Subject: RE: Spivak v. Google (5160000362) / Google LLC v. Rivka ("Rebecca") Spivak, Superior Court of the State of Washington, County of King

You put the names, photos, and medical information of minors into the public record.

I did not.

---

From: Lane, Allison [ALane@duanemorris.com]
Sent: Wednesday, December 6, 2023 11:51 AM
To: Rebecca Spivak
Cc: Brown, Jim; Morgan, Trina C.; Lane, Allison
Subject: RE: Spivak v. Google (5160000362) / Google LLC v. Rivka ("Rebecca") Spivak, Superior Court of the State of Washington, County of King

Ms. Spivak, we decline to modify our filing. It contains no medical records subject to the protective order, and no evidence that you yourself did not create in the course of the arbitration proceedings or earlier. Moreover, the evidence you did create is crucial to establishing the need for the relief we seek.

Allison Lane
Partner

Duane Morris LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA 94105-1127
P: +1 415 957 3045

F: +1 415 520 0670

ALane@duanemorris.com
www.duanemorris.com<https://na01.safelinks.protection.outlook.com/?url=http%3A%2F%2Fwww.duanemorris.com%2F&data=05%7C01%7C%7C9fdc33e5c008478377c208dbf694b4b9%7C84df9e7fe9f640afb435aaaaaaaaaaaa%7C1%7C0%7C638374890796876372%7CUnknown%7CTWFpbGZsb3d8eyJWIjoiMC4wLjAwMDAiLCJQIjoiV2luMzIiLCJBTiI6Ik1haWwiLCJXVCI6Mn0%3D%7C3000%7C%7C%7C&sdata=P%2B654C1ui0V8cO6v%2F%2FrJXpU2LTMK9DCDDaKVgFVRudk%3D&reserved=0>
From: Rebecca Spivak <rebeccaspivak@outlook.com>
Sent: Wednesday, December 6, 2023 3:56 AM
To: Lane, Allison <ALane@duanemorris.com>
Cc: Brown, Jim <JamesBrown@duanemorris.com>; Morgan, Trina C. <TCMorgan@duanemorris.com>; rmcdermott@jamsadr.com
Subject: RE: Spivak v. Google (5160000362) / Google LLC v. Rivka ("Rebecca") Spivak, Superior Court of the State of Washington, County of King

To be clear:

1: Please IMMEDIATELY remove the names, pictures, and health records of my children from the public record

2: Please inform me when this is done.

Thank you.

---

From: Rebecca Spivak

Sent: Tuesday, December 5, 2023 4:40 PM

To: Lane, Allison

Cc: Brown, Jim; Morgan, Trina C.; rmcdermott@jamsadr.com<mailto:rmcdermott@jamsadr.com>

Subject: RE: Spivak v. Google (5160000362) / Google LLC v. Rivka ("Rebecca") Spivak, Superior Court of the State of Washington, County of King

Thank you.

Please take notice of the following:

1. I deny your assertion that I am a trained lawyer. Washington State considers that I don't even have a valid law degree.

2. I believe you have legally violated my rights, and more importantly, my children's rights, with your filing, but I do not know how to protect those rights. I do not know what emergency motion I need to file or who to contact or anything. It will take me time to figure this out.

In sum, you cannot rely on me to take timely action to remedy any legal violation that you have committed with your filing. I give you this notice so that you recognize the need for you to fix this ASAP and not rely on me to do it. That will not be a defense, because it's not reasonable for you to think that I know what to do.

If you believe you have not violated anything, then I guess you don't have to worry about anything. But if you believe you have, then you need to take action. Every minute counts. It will take me days or longer to get up to speed. Google's filings are high interest to the media. My children are minors. I have signed no release allowing you to make their names, pictures, and medical information public. All our health information is under a protection order.

Please consult an attorney if you are unsure of the appropriate remedial action to take.

Thank you

Rebecca

---

From: Lane, Allison [ALane@duanemorris.com]

Sent: Tuesday, December 5, 2023 4:17 PM

To: Rebecca Spivak

Cc: Brown, Jim; Morgan, Trina C.

Subject: Re: Spivak v. Google (5160000362) / Google LLC v. Rivka ("Rebecca") Spivak, Superior Court of the State of Washington, County of King

The docket is available online. My understanding is that retrieving documents requires a user account and payment of a fee.

Allison Lane

Duane Morris LLP

On Dec 5, 2023, at 3:04 PM, Rebecca Spivak <rebeccaspivak@outlook.com<mailto:rebeccaspivak@outlook.com>> wrote:

Ms. Lane, would you please let me know if your declaration is publicly available? Or otherwise available to people uninvolved with either action?

Thank you,

Rebecca

---

From: Lane, Allison [ALane@duanemorris.com]

Sent: Tuesday, December 5, 2023 2:29 PM

To: JAMS; Michelle Nemeth; Rebecca Spivak (rebeccaspivak@outlook.com<mailto:rebeccaspivak@outlook.com>)

Cc: Lane, Allison; Brown, Jim; Morgan, Trina C.

# EXHIBIT B - Emails with Court Clerk and Google re: Sealing

**From:** Rebecca Spivak <rebeccaspivak@outlook.com>
**Date:** Tuesday, January 28, 2025 at 3:53 PM
**To:** DJA Caseflow <dja.caseflow@kingcounty.gov>
**Cc:** CustomerServiceEmail, DJA <DJA.CustomerServiceEmail@kingcounty.gov>, Gillum, Monica <Monica.Gillum@kingcounty.gov>, Heidtke, Daniel B. <DBHeidtke@duanemorris.com>, LMCase@duanemorris.com <LMCase@duanemorris.com>, RMares@duanemorris.com <RMares@duanemorris.com>, Lane, Allison <ALane@duanemorris.com>
**Subject:** Re: CORRECTION RE: GOOGLE V SPIVAK; 23-2-23572-0 SEA - MOTION FOR RELIEF FROM JUDGMENTS

I contacted the clerk's office the following day - within the timeframe you mentioned. So I don't know why it couldn't be rejected then.

I already submitted a motion to seal. And Ms. Gillum already previously informed me that motions to seal are without argument and do not require a date from her, so I'm not sure asking her the same question again will be well received, since I'm clearly asking it wrong and don't know how to ask it right.

So I asked within the timeframe. I submitted a motion. I asked for a date. Somehow I still didn't do any of it correctly.

I can only assume that I need a lawyer. Because I can't follow what seems to me to be conflicting information. Google already destroyed my life when they discriminated against me and destroyed my career. Having highly sensitive mental health records broadcast to the world is a rounding error on the immeasurable harm I've already suffered.

Thank you

**From:** DJA Caseflow <dja.caseflow@kingcounty.gov>
**Date:** Tuesday, January 28, 2025 at 2:50 PM
**To:** Rebecca Spivak <rebeccaspivak@outlook.com>
**Cc:** CustomerServiceEmail, DJA <DJA.CustomerServiceEmail@kingcounty.gov>, Gillum, Monica <Monica.Gillum@kingcounty.gov>, Heidtke, Daniel B. <DBHeidtke@duanemorris.com>, LMCase@duanemorris.com <LMCase@duanemorris.com>, RMares@duanemorris.com <RMares@duanemorris.com>, Lane, Allison <ALane@duanemorris.com>
**Subject:** CORRECTION RE: GOOGLE V SPIVAK; 23-2-23572-0 SEA - MOTION FOR RELIEF FROM JUDGMENTS

Apologies for the duplicate email – please see highlighted portion below. Ms. Gillum is not your Judge, she is Judge Rogers' bailiff:

**From:** DJA Caseflow <dja.caseflow@kingcounty.gov>
**Sent:** Tuesday, January 28, 2025 2:49 PM
**To:** Rebecca Spivak <rebeccaspivak@outlook.com>
**Cc:** CustomerServiceEmail, DJA <DJA.CustomerServiceEmail@kingcounty.gov>; Gillum, Monica <Monica.Gillum@kingcounty.gov>; Heidtke, Daniel B. <DBHeidtke@duanemorris.com>; LMCase@duanemorris.com; RMares@duanemorris.com; Lane, Allison <ALane@duanemorris.com>
**Subject:** RE: GOOGLE V SPIVAK; 23-2-23572-0 SEA - MOTION FOR RELIEF FROM JUDGMENTS

Good afternoon,

I reviewed your referenced documents and note that they were filed on 1/21/2025. The Clerk's Office is held to a Service Level Agreement with the Court that we shall process all documents filed within 24-48 hours from the date of filing. Once this time has elapsed, rejecting a document at the filer's request is not allowed as this would then constitute altering the court docket.

I am unable to reject your documents at your request. You must file a motion and obtain an order to seal these subs if you wish for them to not be accessible to the public. Once an order to seal has been signed, the Clerk will process it in accordance to what is ordered.

You may contact your assigned Judge's bailiff to inquire about hearing availability at Monica.Gillum@kingcounty.gov.

Should you have any further questions related to document processing, please let me know.

Respectfully,

FRANCISCO J. GONZALES-ALBIAR
*Caseflow Division Special Duty Lead*
King County Superior Court Clerk's Office
Department of Judicial Administration
Superior Court Clerk's Office - King County, Washington

**From:** CustomerServiceEmail, DJA <DJA.CustomerServiceEmail@kingcounty.gov>
**Sent:** Monday, January 27, 2025 8:51 AM
**To:** DJA Caseflow <dja.caseflow@kingcounty.gov>
**Subject:** FW: GOOGLE V SPIVAK; 23-2-23572-0 SEA - MOTION FOR RELIEF FROM JUDGMENTS

Good morning,

Is this something with which you can help?

Best,

**Pamela (she/her)**
**Legal Administrative Specialist III**

King County Superior Court Clerk's Office
Department of Judicial Administration
(206) 296-9300 |DJA.CustomerServiceEmail@kingcounty.gov

***Our E-Filing system has moved to*** **KC Script Portal | KC-Script Portal**

**From:** Rebecca Spivak <rebeccaspivak@outlook.com>
**Sent:** Wednesday, January 22, 2025 3:47 PM
**To:** Gillum, Monica <Monica.Gillum@kingcounty.gov>; Heidtke, Daniel B. <DBHeidtke@duanemorris.com>; Case, Lauren M. <LMCase@duanemorris.com>; CustomerServiceEmail, DJA <clerksofficecustomerservice@kingcounty.gov>
**Cc:** Mares, Roxanne <RMares@duanemorris.com>; Lane, Allison <ALane@duanemorris.com>
**Subject:** Re: GOOGLE V SPIVAK; 23-2-23572-0 SEA - MOTION FOR RELIEF FROM JUDGMENTS

[EXTERNAL Email Notice! ] External communication is important to us. Be cautious of phishing attempts. Do not click or open suspicious links or attachments.

To the King County Clerk's Office:

I need assistance with an erroneously(?) filed motion to seal.
I filed a motion yesterday to file a motion for relief from judgment under seal, as it discusses [redacted] in detail, and includes them directly in the exhibits. If they are currently accessible, please take them down or guide me how to do so. [redacted] should not be publicly accessible under any circumstances.

Thank you
Rivka Spivak

**From:** Rebecca Spivak <rebeccaspivak@outlook.com>
**Date:** Wednesday, January 22, 2025 at 3:33 PM
**To:** Gillum, Monica <Monica.Gillum@kingcounty.gov>, Heidtke, Daniel B. <DBHeidtke@duanemorris.com>, Case, Lauren M. <LMCase@duanemorris.com>
**Cc:** Mares, Roxanne <RMares@duanemorris.com>, Lane, Allison <ALane@duanemorris.com>
**Subject:** Re: GOOGLE V SPIVAK; 23-2-23572-0 SEA - MOTION FOR RELIEF FROM JUDGMENTS

Are you able to tell me how to contact the clerk?

**From:** Gillum, Monica <Monica.Gillum@kingcounty.gov>
**Date:** Wednesday, January 22, 2025 at 3:28 PM
**To:** Rebecca Spivak <rebeccaspivak@outlook.com>, Heidtke, Daniel B. <DBHeidtke@duanemorris.com>, Case, Lauren M. <LMCase@duanemorris.com>
**Cc:** Mares, Roxanne <RMares@duanemorris.com>, Lane, Allison <ALane@duanemorris.com>
**Subject:** RE: GOOGLE V SPIVAK; 23-2-23572-0 SEA - MOTION FOR RELIEF FROM JUDGMENTS

Bailiffs are prohibited to give legal advice which includes on filing motions. You may contact the clerk's office for information since they handling the filings. Pro se individuals are held to the same standard and rules as attorneys.

*Best,*

*Monica*
*Bailiff to Judge James (Jim) E. Rogers*

**From:** Rebecca Spivak <rebeccaspivak@outlook.com>
**Sent:** Wednesday, January 22, 2025 3:23 PM
**To:** Gillum, Monica <Monica.Gillum@kingcounty.gov>; Heidtke, Daniel B. <DBHeidtke@duanemorris.com>; Case, Lauren M. <LMCase@duanemorris.com>
**Cc:** Mares, Roxanne <RMares@duanemorris.com>; Lane, Allison <ALane@duanemorris.com>
**Subject:** Re: GOOGLE V SPIVAK; 23-2-23572-0 SEA - MOTION FOR RELIEF FROM JUDGMENTS

[EXTERNAL Email Notice! ] External communication is important to us. Be cautious of phishing attempts. Do not click or open suspicious links or attachments.

I also request all leniencies and accommodations for a pro-se defendant. Asking for guidance navigating a recently-changed court filing process is not the same thing as asking for legal advice. I'm literally just asking for clarification for how to file a motion to seal for the motion for relief and exhibits under the current filing system and process. It seems appropriate for a pro-se defendant to ask a clerk for technical and procedural guidance on this. Thank you.

**From:** Rebecca Spivak <rebeccaspivak@outlook.com>
**Date:** Wednesday, January 22, 2025 at 3:19 PM
**To:** Gillum, Monica <Monica.Gillum@kingcounty.gov>, Heidtke, Daniel B. <DBHeidtke@duanemorris.com>, Case, Lauren M. <LMCase@duanemorris.com>
**Cc:** Mares, Roxanne <RMares@duanemorris.com>, Lane, Allison <ALane@duanemorris.com>
**Subject:** Re: GOOGLE V SPIVAK; 23-2-23572-0 SEA - MOTION FOR RELIEF FROM JUDGMENTS

Ok, I need to review this. If the documents are filed are publicly available because I filed them, can you remove them from public access? They are protected health records and I had not intent to file them publicly. The new system did not show any obvious way to file a motion to seal.

**From:** Gillum, Monica <Monica.Gillum@kingcounty.gov>
**Date:** Wednesday, January 22, 2025 at 3:09 PM
**To:** Rebecca Spivak <rebeccaspivak@outlook.com>, Heidtke, Daniel B. <DBHeidtke@duanemorris.com>, Case, Lauren M. <LMCase@duanemorris.com>
**Cc:** Mares, Roxanne <RMares@duanemorris.com>, Lane, Allison <ALane@duanemorris.com>
**Subject:** RE: GOOGLE V SPIVAK; 23-2-23572-0 SEA - MOTION FOR RELIEF FROM JUDGMENTS

Good Afternoon~

Motions to seal are without argument and you do not need a date from me. Please follow the local rules for any questions you may have.

# EXHIBIT C - Confidentiality Request to Google

**Subject:** Request for Short-Term Confidentiality Agreement (Pending Sealing Process)
**Date:** Saturday, July 19, 2025 at 3:00:23 PM Pacific Daylight Time
**From:** Rebecca Spivak
**To:** Lane, Allison, Case, Lauren M., Heidtke, Daniel B.

Dear Ms. Lane and Counsel,

As we await any pending orders from the Court, I would like to request that Google consider a short-term, mutual confidentiality agreement covering all aspects of this action and its litigation history. As you know, I have asked that my medical records be sealed, and I would like that process to proceed without any public discussion. My medical records are confidential to me, and they also reference my employment history and related matters. I hope we can agree not to bring any unnecessary attention to the filings or their contents while the sealing process is pending (subject to some reasonable near-term expiration if my motion to seal is not granted).

If this is acceptable, I am amenable to signing Google's standard mutual confidentiality agreement.

Please let me know either way.

Best Regards,
Rebecca Spivak

**CURLEY, HESSINGER & JOHNSRUD LLP**
COUNSELORS AT LAW
4400 BOHANNON DRIVE
SUITE 230
MENLO PARK, CA 94025
www.curleyhessinger.com

**Telephone: 650.600.5300**
**Facsimile: 650.898.1998**

**Brian L. Johnsrud**
**650.600.5310**
**bjohnsrud@curleyhessinger.com**

September 14, 2015

**VIA FEDERAL EXPRESS**

Hattie Y. Reed
U.S. Equal Employment Opportunity Commission
Seattle Field Office
909 First Avenue, Suite 400
Seattle, WA 98104-1061

SEP 21 2015
EEOC SEATTLE

Re: *Rivka (Rebecca) Spivak v. Google Inc.*
EEOC Charge No.: 551-2015-00827

Dear Ms. Reed:

The following position statement is submitted on behalf of Google Inc. ("Google") in response to the above-referenced complaint of alleged discrimination and retaliation filed by complainant Rivka (Rebecca) Spivak ("Spivak"). As set forth below, there is no factual nor legal merit to her claims.

Spivak is a Product Manager at Google. This means she helps develop new products. To do so, she has to work effectively with software engineers (who build the products) and sales operations employees (who rely on the products). These employees thus become key contributors to Spivak's performance reviews.

Spivak's performance history is uneven and inconsistent. She has very good product ideas. Turning those ideas into products, however, has not gone well or smoothly. Spivak has regularly failed to build productive relationships with engineers and sales operations employees. She also has failed to consistently produce the documentation necessary to drive product development. These concerns are shared by male and female employees alike.

As a result of her performance shortcomings, Spivak was demoted in 2011 by a female Vice President. Spivak does not claim that demotion was discriminatory. Following that demotion, Spivak's performance has generally met expectations, albeit on the low end at times, which at one point resulted in her being placed on a Performance Improvement Plan, which she satisfied.

Spivak disagrees with her "meets expectations" rating and believes she should be rated as "exceeds expectations." Spivak has not received that higher rating because she continues to

(Exhibit 13). Spivak admitted that "I really said enough to warrant getting fired for insubordination or something. Every third word was 'fuck.'" And getting fired might still happen I suppose." (*Id*).

Later that same day, Spivak told friends that she was afraid to leave Google because:

> I make north of $300K. I probably work a 30 hour week at most, because the bulk of my work is in communicating strategic direction that I know is right. In April I will hit my 5-year tenure and then have 5 weeks vacation in addition to company holidays.
>
> My organization sucks. The politics suck. My biggest battle involves things like "no fucktards – I'm not going to position things about how we can reduce the sales staff by 10% even though that's easy to measure."

(Exhibit 14). The next day, Spivak spoke with Lauren Thomas Ewing (HRBP) and Nina Sakellariou (HRBP). During that conversation, Spivak expressed concerned with receiving a meets expectations performance rating. Spivak never mentioned anything about any alleged discrimination.

**3. February 2, 2015: Spivak Complains For The First Time About Alleged Gender Discrimination, Admitting She Did So Because She Believed It Made Her "Unfireable."**

On Monday, February 2, 2015, Spivak complained for the first time about alleged gender discrimination. (Exhibit 15). In doing so, she threw many successful women at Google under the bus by claiming that they "were rewarded for being submissive or coy." She then went on to fault HR saying "I know that HR's first reaction is likely to be to discredit this assertion rather than consider it."

Why did Spivak complain at this time? The answer is in a separate email that Spivak wrote that same day she complained. Spivak wrote that her discrimination complaint "makes me unfireable long enough for me to interview and get hired at facebook." (Exhibit 16). Spivak's candor reveals her bad faith.

Human Resources (through Ariana Tortorici) investigated Spivak's allegations. Tortorici met with Spivak once to gather information, but Spivak did not want to share any alleged specifics. Tortorici attempted to meet with Spivak on several additional occasions to get more information but Spivak refused to meet.

Based on the information available after reading Spivak's complaint and speaking with her once, Tortorici investigated her concerns. She reviewed performance documentation and spoke with witnesses who provided further background information. She concluded that Spivak has

**From:** Cindy Treloar <cindyt@google.com>
**To:** Paul Higson <paulhigson@google.com>
**Sent:** Fri, 16 May 2014 10:31:37 -0700
**Subject:** Re: Welcome back!
**Cc:** Ashley Wilson <ashleywilson@google.com>

Hi Paul,
Thanks so much for offering up different times. Yes, she has. I think we should plan on having a full hour with you so that we don't potentially run out of time. If you can afford the full hour at 3:00 on Monday, that'd be great. If not, let's stick with the time we have for Tuesday. Is that okay with you?

On Thu, May 15, 2014 at 9:36 PM, Paul Higson <paulhigson@google.com> wrote:

> Hi
> Has she filed a complaint? I can meet on Monday if that's helpful. I have very little involvement with her and only met her once right before I went on leave. Would 30 min work? We can do 3pm or 3:30pm on Monday?

Thanks

On Thu, May 15, 2014 at 10:51 AM, Cindy Treloar <cindyt@google.com> wrote:

> Hi Paul,
> We are looking into an issue involving Rivka, and have already spoken with Caroline Bremner. We'd love to get some of your time as well. I'm sending you an invitation for Tuesday (it looks like you're available but please let me know if you aren't). If you can meet on Monday, please just let us know. It would be great to move quicker, although I realize you probably need "catch up" time too. ;)

Cheers.

--
Cindy Treloar
Performance Management Enthusiast!
(650) 214-2847

--
Paul Higson | HRBP SEA/KIR | paulhigson@google.com | 1-206-499-1118

Exhibit D(2)(b) - Dated Google Internal Compliance Report

GLOBAL COMPLIANCE

Type text here

## ALERTLINE SYSTEM REPORT

ALLEGED FACTS ARE UNSUBSTANTIATED AND CONFIDENTIAL

| | | | | |
|---|---|---|---|---|
| **Report Number:** | GGL-14-05-0002 | [7397] | **Received By:** | WRIGHTA |
| **Report Type:** | WPA Initial Report | | **Source:** | Hotline |
| **Awareness Resource:** | Intranet | | **Duration:** | 00:34:17 |
| **Language Used:** | English | | **Reviewed By:** | WRIGHTA |
| **Date/Time Received:** | 5-May-2014 05:31 pm | Eastern Time Zone | | |
| **Followup Date:** | | | | |
| **Report Priority:** | C | | | |

### WORKPLACE ALERT INITIAL REPORT

| Allegation | Class | Priority |
|---|---|---|
| Retaliation or Retribution | Diversity, Equal Opportunity and Respect in the Workplace | C |

**Location Details**

United States
(exact street address unknown)
North 34th St.
Seattle, WA 98103

| Party Type | Party Name | Party Job Title |
|---|---|---|
| Caller<br>rspivak@gmail.com<br>Mobile Phone: 1 617 519-1100 | Rivka Spivak | senior product manager |
| Other Involved Party | Paul Higson | human resources business partner |
| Subject | Caroline Bremner | human resources business partner |
| Subject | Jens Skakkebaek | group product manager |

**Report Summary**

Rivka Spivak was issued an unfair performance improvement plan (PIP) in retaliation for uncovering an engineering problem.



IMPORTANT NOTE: If you are not the intended recipient of this document, please delete it and send an email to privacy@globalcompliance.com to report the error. This document may contain "personal data", "individually identifiable health information" or other similar data protected by international privacy laws. As the recipient, you may be held civilly and/or criminally liable for its disclosure or misuse. The allegations in this document are allegations only, made by individuals reporting to a company telephone or website hotline. Companies receiving the reported allegations are responsible for protecting and using the personal data according to prevailing laws, including, without limitation, notifying data subjects, use of allegations in investigations and the timing for deletion of personal data.

Exhibit D(2)(c) - Dated HR Email to VP Neal Mohan

**From:** Lauren Thomas <laurenth@google.com>
**To:** Neal Mohan <nmohan@google.com>
**Sent:** Mon, 6 Oct 2014 10:10:40 -0700
**Subject:** TIME SENSITIVE: Info for your meeting with rivka@

Hi Neal,
Nina informed me that you're meeting with Rivka this morning prior to the calibration session. As promised, here 's some context and talking points that might be helpful. Probably more than what you'll need, but good to have in your back pocket.

Caroline Bremner will be my backfill October 7-14 so please feel free to loop her in if you need HR assistance following your meeting with Rivka.

Regards,
Lauren

**Background:**

- Though Rivka successfully completed her PIP, she has continued to raise her issues with the PIP with HR and with Aaron Rothman. She persistently believes that the PIP caused a negative impact to her comp/equity (Caroline and I have assured her more than once that it did not given the timing of when the PIP was delivered) and is now seeking special favor in terms of YE rating and comp to "make things right". She has already been told that she cannot be guaranteed an "Exceeds" rating this cycle nor can anyone guarantee her specific amounts of money.
- There is continued concern that she's litigious, and she's very quick to attribute much of the feedback she receives to gender bias or something other than taking ownership for her actions.
- Jens recommends a "**Meets Expectations**" rating for her for this cycle, but says that she'd be on track to get an Exceeds next cycle if she meets some key milestones with her project

**Recommended Talking Points:**

- If she talks about the PIP again:
  - PIPs are part of our performance management process and at the point in time when it was delivered, there were some key developmental areas identified for you. I'm aware that you were successful in completing the PIP, and I hope you can be forward-looking at this stage. Since then, what have been your biggest accomplishments on your current project?
  - Comp planning and equity were completed independent of the PIP.
- If she indicates that she's owed a better rating/comp this cycle:
  - We have every intention to continue using a fair process to evaluate performance, as we do every cycle. We benchmark against the expectations detailed in the PM career ladder to determine fair ratings and then calibrate against others at your same role and level.
- What it takes to be successful in Display (and at Google in general):

Exhibit D(2)(d) - EEOC Interview

RECORD OF INTERVIEW

| | |
|---|---|
| Case Name: | Spivak v. Google |
| Charge Number: | 551-2015-00827 |
| Witness: | Michael English |
| Others Present: | Brian Johnsrud, R's atty |
| Telephone No. | (650) 600-5310 |
| Investigator: | Toni Haley |
| Date: | 10/30/15 |

Do you swear or affirm that the testimony you're about to give is true and correct to the best of your knowledge? Michael English: I do.

Michael is a software engineer for R. He directly manages about 20 people. He has been with R about 10 ½ yrs. When he started, Jen Skaateback was managing the Project Mgrs (PM) engaged with Mike's team.

Starting about Jan 2014, he worked very closely with CP, a PM. A PM's role is to try to develop a vision for what R should be building, what the business justification for that is, why they should be building. PMs work closely with engineering, who take the high level ideas and determine what they're going to build to solve the problem. It becomes a back and forth between PMs and engineers.

He worked with CP on a project from Jan 2014 to March 2015 which eventually got the name Interactive Benchmarks (IB). It didn't have a name initially; they were trying to figure out what to do.

**I asked about CP's technical skills.** "She did a great job helping us figure out what to do. She helped up figure out that direction. Another aspect of that is documenting that and making the idea more concrete. Initially, we had difficulty seeing eye–to-eye on that. You need to come up with a vision. Your work product is communication, providing the groundwork for that. Getting everyone on the same page, communicating that to the end team. She was reluctant to do that initially. Eventually, she did quite well at documenting things." He doesn't remember the timing, but at some point she started producing real documentation. It was early on. They eventually had a summit where they brought in sales ops people and engineers and a lot of documentation was produced at that time – he'd guess this was around spring 2014.

I asked if the difficulties he had with CP's documentation created difficulties. It created some difficulty for him, he wanted to figure out which direction they were going to go. There were also other people on his team that were reluctant to change w/o first understanding what was being proposed.

The positives and negatives boil down to that. We had lot of brainstorming and lots of arguments about whether she should produce the detailed documentation. Jens wasn't involved the arguments.

When there was a performance review, Jens asked for his feedback. Michael gave Jens approximately the same feed back as he just gave to the EEOC. They didn't talk about it, it was an email exchange. There was only 1 email exchange about CP between Jens and Michael. When he talked to Jens, he thinks he

made it clear that CP"'s documentation was a problem. I asked how closely did he work with Jens Skaakebaek. Not closely. Jens came to me because I worked closely with CP.

I asked how he would rate CP's performance. Michael wasn't CP's mgr and doesn't know what her rating was. He doesn't have the expertise to determine how much this or that is worth.

I asked CP what "Googleyness" meant. It's not super well defined. People can interpret it different ways. He would interpret it as a person is kind and respectful to teammates, interested and excited about getting things done.

As for Rivka's Googleyness, "I need a while to think about it. It's strange to slot that in. I guess it is reasonable. She certainly is interested in learning and going after big ideas. The degree she didn't want to do things everyone thought was as important is not as Googley.'

I asked for his impression about Jen's and CP's working relationship. "At some point, she started complaining. I don't remember specifics, just that she didn't think she had a good working relationship with him. She obviously told me that she was put on a PIP. I don't know if she told me why specifically. I want to say because of documentation, but I don't remember if it was documentation." He's just assuming that that's what it was related to.

I asked if CP complained to him that she believed she was being treated differently because of her sex. "At some point she started talking about that. I don't remember the time frame. She said something along the lines that because she had proposed a change and was a woman, and that was seen as a negative thing, whereas if she was a man, that was a positive thing. At some point, she started saying this." I asked how often. Michael had difficulty guessing and finally estimated that it was around 10 times. I asked if CP made the same comment each time. She did.

At some point, he understood that she was complaining about discrimination. He didn't understand her complaints to be sex discrimination. "She was clearly complaining to me." I asked if it was his obligation as a mgr to report discrimination? "I probably should have, but there wasn't any specific person that was a target she was complaining of. I didn't think about it at the time."

"We had conversations and maybe around 10 occasions, she talked about this. All the conversations pretty much took that form."

I asked if he was aware of whether CP complained to anyone else in mgmt. "I don't know if she complained, but at some point she indicated she was talking to HR about being treated differently because she a female." Michael doesn't remember anything else. He doesn't remember if she told him what she said to HR. He doesn't think she told him who in HR she was talking to.

I asked if he told CP to talk to HR. Michael doesn't remember if he did.

I asked how much training he had about discrimination. Managing within the law, unconscious basis and a follow up on how to prevent situation. Managing within the law is every 2 yrs. He doesn't know if the other 2 trainings have a recurring schedule. He doesn't remember any other training.

I asked if he had any reason to believe that Jens was discriminating v. CP because she was female. No.

He never saw any of CP's evaluations.

I asked if it was different to work with CP versus males. "She was different to work with than males. The best way to describe it is we would have discussions and they were more like discussion as equals than other previous PMs." He and CP were both the same level (6). Before that, PMs would defer to his opinion more. I asked if deferring to his opinion was a good thing. "I don't think that 's a great thing." I asked if it was good that CP challenged him. It was.

He's worked with 2 other female PMs. 1 challenged him; the other didn't.

Of the male PM's, he's worked with 2 male PM. The current PM challenges him; the other did not so much.

He didn't have any reason to believe that any implicit bias was happening with CP. The reason is they were having success.

I asked if CP was critical to the IB project. "She was ultimately critical to the success of the project. Initially she did a great job coming up with the idea. She convinced me the idea was good. The next thing was we got to get this down and make sure we go in the right direction, this was difficult, and slowed things down but we ultimately got over it and the project was a success.

I asked if it would have been a problem had they lost CP. Had they lost CP and not been able to replace her with someone that would have been a problem. His personal opinion was most people are not unique and had they been able to find a replacement, the product would have been okay.

The key insight from a products perspective was it was much more focused on what the user needed. Previous efforts had been missing the mark. Before CP joined, he was starting to have the realization that some things they were doing weren't going to be successful and they needed to switch direction. The PM on previous stuff was focusing more and more on different things, so a large part of his team was left without a PM.

There was no IB project before CP came. There was just this realization. His team was doing a variety of different things. He was realizing they weren't a great path to go down. And they needed to find something different. I asked if any PM would do. Not just any PM would do.

I asked if he would he expect CP to get high evaluation if the project was successful. Not until it launches. Once you're [level] 6, your eval is tied to your measurable successful. I noted that he said they were having success and asked if the project was successful. We had an alpha launch in Dec 2014, then a Beta launch in March 2015. Realistically that launch is the one we're seeing lots of usage. Viral. Beyond the ones we released it to. That's the subjective measure of success.

I asked about his evaluations from 2013-15. He was meet expectations once he got promoted to 6 until the spring 2015, where he got an "exceeds." He was promoted to 6 when he was on the team. It might have been early 2013.

I asked that, since the project was seen as successful, would he expect CP to have the same increase. He would.

He had a team of people who worked on projects. Some projects weren't great. He asked for ideas on different things they could do. They brought CP in. She came in Jan 2014. Both were a level 6.

**Feb relocation announcement.** Doug Bankson, his mgr and an engineer, at the time was moving to a different part of R and all the projects under him were moving to LA. He'd say 5 projects were under him.

All projects were relocated. He doesn't think any of the PMs relocated. Most moved on to something different. A couple PMs stayed on in a transitory role for a time and moved onto something different. 1 stayed with the project, Vince Lacey. He's located in Mt. View. He doesn't think Vince relocated. He thinks CP went on medical leave.

Vince was a PM of a product that transferred to LA. Vince reported to Jens, then changed to Aaron. He never reported to Doug

I asked if PMs need to be with project or if they were allowed to work a different location that where the project engineers worked. They're definitely allowed to work remotely. He personally thinks it's more effective when they're right there, but they're allowed to.

He has no idea if CP was allowed to work remotely.

Of the 5 projects, the only projects he knows for sure that's still going is IB and Ads Media Planner. He doesn't know who the PM on the IB is.

Aaron Rothman was the PM brought in to lead the PM for all of the sales tools under Doug.
That was most , but not all of Doug's projects.

**Leave**. I asked if he took a 4-day leave in Jan 2015 to go to Hawaii and how much advance notice he gave. He did, but he doesn't remember how much advance notice he gave.

He doesn't know if here's a policy on how much advance time is needed to request.

**Misc.** I asked if he believed CP created inventions which led to sell/advertise Google services and she did not get credit for it. He thinks the IB project certainly helped advertisers. I don't know she didn't get credit for that though.

I asked how likely was for R to change PMs when a product is believed to be successful. It happens and is called defragged (defragmentation). It happens, he doesn't know how often.

**Promotions.** 2 engineering on his team rec'd promotion while working on project: Serhiy Tykhansky and Yamcheng LNU

Michael has since moved to a new organization. He's in supply chain. HE thinks he could get promoted.

Generally, the key to being promoted is you put together a promotion packet, provide all background info on the projects you worked on, how impactful they were. If your rated meet expectation, it's not likely you'll get a promotion, but not impossible. I asked if him being rated as exceeds in March make it more likely that he'll be promoted. Having a rating in March 2015, doesn't have much impact. He's done a number of things since then which will help -- he joined the supply chain organization, joined a team and grew a nonexistent team and built out a new planning product for the service supply chain for R . Those accomplishments are likely why he can get promoted soon.

**CP's complaints of sex based discrimination.** At some point in time, CP came to him and said I'm proposing a change and think that's a negative, but if I was male, that it would be a positive. Largely, his response was, "We're meeting with success. These changes you proposed, people are open to them, we just need to be more specific about what you're suggesting."

He didn't have similar documentation problems with other PMs, male or female.

Exhibit D(3) - Page 14 of Google's EEOC Response, Making Claim on Relocation



legitimate performance issues which are appropriate for management to address, which have been identified by a number of male and female employees, and are not motivated by Spivak's gender.

**4. February 11, 2015: Google Announces A Work Relocation Impacting 31 Software Engineers and 3 Product Managers (Including Spivak).**

By the time Spivak raised her purported concerns, the business leaders for her project had already been finalizing a plan to transfer the work performed by Spivak, 2 other Product Managers, and 31 Software Engineers from Seattle to Los Angeles. This transfer impacted 5 different projects. The business leaders for this work, Scott Silver and Dustin Jackson, wanted the work located in Los Angeles (where Jackson is based) after two Seattle leaders (Doug Bengtson and Barbara Stanley) decided to join Google's Cloud initiative.

On February 11, 2015, the employees impacted by this relocation – including Spivak – were notified. The plan was to find suitable projects for all impacted employees. All three impacted Product Managers were given six months either to have either (1) move to Los Angeles or (2) find a new project in Seattle or Mountain View. All 31 impacted software engineers were provided less time (30 days) to decide whether to move to Los Angeles and 60 days thereafter to find a new project in Seattle if they decided not to move to Los Angeles. Spivak decided not to relocate.

Spivak claims that HR made this relocation decision because of her internal complaint. There is no basis for her assertion. HR does not make those relocation decisions, business leaders make those decisions. Moreover, the decision had been in the planning stage for some time when it was announced on February 11, 2015. Nevertheless, Spivak attacked Paul Higson, a Human Resources Business Partner, in late February 2015, stating:

> This complete bs you've pulled in the re-org … you are a bad person. How simplistic – not sure I've ever said that to anyone before. But, seriously. You have no ethics. I don't care if you were 'following orders': I understand that we each have professional responsibility … but you take it to the extreme. Your actions are not defensible. You have no morality – you are a puppet of a system that will hurt people without regard for what's right. If my entire career depended on it, I would never, ever do what you've done.
>
> Stop and think if this is who you wanted to be when you were a kid. I think young paul would be ashamed of now-paul.
>
> You are hurting people who don't deserve to be hurt. You are just … bad. I will spend the rest of like [sic] knowing this.

(Exhibit 17). This unprofessional tirade was part of the basis for Spivak receiving a written warning, which also addressed her unprofessional conduct toward her manager. (Exhibit 18.)

# Exhibit D(3)(a) - Dated Internal HR Emails

**From:** Lauren Thomas Ewing <laurenth@google.com>
**To:** Ariana Tortorici <ablute@google.com>, Craig Hazenfield <hazenfield@google.com>
**Sent:** Thu, 5 Mar 2015 07:23:25 -0800
**Subject:** Fwd: Quick question/request

Hi Ariana,

I was able to sync with Jasmine and Paul yesterday. Below are the recommendations for "decision makers" around the reorg:

- Jens Skakkebaek (and maybe Brad Bender if you want Director representation on the PM side but I don't think Brad is critical)
- Scott Silver
- Dustin Jackson
- Thomas Williams
- Bill Reardon (who according to Jasmine denies having said what Rebecca claims he said)

Were you going to reach out to these folks to set up the meeting?

Regards,
~Lauren

---------- Forwarded message ----------
From: **Lauren Thomas Ewing** <laurenth@google.com>
Date: Wed, Mar 4, 2015 at 10:34 AM
Subject: Quick question/request
To: Jasmine Vallejo <jasminev@google.com>, Paul Higson <paulhigson@google.com>
Cc: "Nina R. Sakellariou" <ninarc@google.com>

Hi Jasmine and Paul,

Hope all is well. I got a request from ER to help them identify the decision makers (or any who could be considered influential) involved in the defrag of the SEA/KIR projects. Context is that it seems that there have been mixed messages floating around the past couple of weeks as to whether or not working remotely on these projects would actually be acceptable for PMs going forward (long term) and ER thinks it best to get all of these people in a meeting to get clear on what the messaging should be from here on out.

Could you please confirm who should be included?

- Jens Skakkebaek
- Dustin Jackson
- Bill Reardon
- Anyone else? (Should Scott Silver be included or is Dustin a sufficient proxy?)

Appreciate your help,
~Lauren

# Exhibit D(3)(b) - Dated Internal Business Leader Emails

**From:** Dustin Jackson <dustin@google.com>
**To:** Jens Skakkebaek <jskakkebaek@google.com>
**Sent:** Fri, 13 Feb 2015 07:49:05 -0800
**Subject:** Re: No remote pm'ing
**Cc:** Brad Bender <bradbender@google.com>, Aaron Rothman <aarothman@google.com>

Let's talk. I think this is potentially problematic.

On Fri, Feb 13, 2015 at 7:45 AM, Jens Skakkebaek <jskakkebaek@google.com> wrote:

> FYI, to be consistent across pm and eng, HR is asking to not allow remote PMing. We can discuss more in person.
>
> Jens

# Exhibit D(3)(c) - Dated Internal HR Emails

**From:** Paul Higson <paulhigson@google.com>
**To:** "Nina R. Sakellariou" <ninarc@google.com>
**Sent:** Fri, 6 Feb 2015 14:16:11 -0800
**Subject:** Re: talking points
**Cc:** Jens Skakkebaek <jskakkebaek@google.com>, Lauren Thomas Ewing <laurenth@google.com>

Hi - There is a talking points section in the comms doc: https://docs.google.com/document/d/1MCn_qDcYouw4UsigBelzy4poAnHgcjmIZRZFuKcTW44/edit#
I'm waiting on Dustin and Scott to validate the points.

Thanks

On Fri, Feb 6, 2015 at 1:33 PM, Nina R. Sakellariou <ninarc@google.com> wrote:

+Paul

Paul and team are working with the Comms folks to finalize the comms plan (e.g., FAQs, etc). Paul, any idea when these will be communicated to managers?

Nina

2015-02-06 12:52 GMT-08:00 Jens Skakkebaek <jskakkebaek@google.com>:

Hi both,
When do you expect that we will have the talking points ready? Will they be there when I talk to Aaron on Monday?

Thanks,
Jens

--

Nina R Sakellariou | HRBP - Ads & Commerce | 650-214-2634

--

Paul Higson | HRBP SEA/KIR | paulhigson@google.com | 1-206-499-1118

Exhibit D(3)(d) - Dated Internal HR Emails

**From:** Lauren Thomas Ewing <laurenth@google.com>
**To:** "Nina R. Sakellariou" <ninarc@google.com>
**Sent:** Tue, 10 Feb 2015 14:49:38 -0800
**Subject:** Re: status update on ER investigation
**Cc:** Ariana Tortorici <ablute@google.com>

Thanks for the update Nina and apologies for the slow response. Feeling marginally better than this morning but hopefully I'll be back on track by tomorrow.

I'm fine with sitting in on the 1:1 with Aaron and Rebecca. Also agree that having Dustin join the meeting with her this week would be a good idea. Should we have him sit in on the meetings with the other two impacted PMs so that there won't be any perception that she's getting special treatment?

On Feb 10, 2015 11:50 AM, "Nina R. Sakellariou" <ninarc@google.com> wrote:

Lauren,

I'm sorry to hear you're not feeling well :( I hope you get better soon!

I wanted to let you know that I met with Ariana and Aaron just now to continue the ER investigation. There were a couple of outcomes that I wanted to make you aware of:

1. Ariana recommended that Aaron respond to Rebecca's last email by saying that he'd like to discuss this in person with someone from HR in the room. Ariana said that I should *not* be the one in that meeting since I'm partaking in the ER investigation. Aaron will reach out to her/you to set that meeting up. **Are you okay with this?**
2. For the upcoming reorg, Aaron and Jens are flying up to SEA/KIR tomorrow. Ariana recommended that their should be a 3rd party in the meeting room when Aaron/Jens have the 1:1 with Rebecca. Aaron is reaching out to Dustin Jackson to see if he can join so that Dustin can shine more light on the context of this change.

Nina
--
Nina R Sakellariou | HRBP - Ads & Commerce | 650-214-2634

# CURLEY, HURTGEN & JOHNSRUD LLP

COUNSELORS AT LAW
4400 BOHANNON DRIVE
SUITE 230
MENLO PARK, CA 94025
www.chjllp.com

Brian L. Johnsrud
650.600.5310
bjohnsrud@chjllp.com

June 27, 2018

**VIA ELECTRONIC AND HAND DELIVERY**

Hon. Robert A. Baines (Ret.)
JAMS
160 W. Santa Clara St., Suite 1600
San Jose, CA 95113

Re: Google's Letter Brief Regarding eDiscovery Protocol
*Spivak v. Google* - JAMS Ref. No. 1110018238

Dear Judge Baines:

This is a single-plaintiff case in which Claimant Spivak alleges discrimination and retaliation, based primarily on her disagreement with the assessment of her performance by various male and female leaders at Respondent Google. The Parties disagree on the scope and breadth of eDiscovery, which is governed by the JAMS Rules, JAMS' Minimum Standards of Procedural Fairness No. 4. requiring the exchange of only "core information," the overarching goals of the Federal Arbitration Act, and the allegations set forth in Ms. Spivak's Amended Notice of Claims. Google seeks an Order entering its eDiscovery protocol (both as to search terms for Google and for Spivak), without prejudice to Spivak seeking specific documents once she has reviewed Google's eDiscovery production.

Counsel for the Parties had previously nearly agreed on a stipulated eDiscovery plan. Ms. Spivak is now representing herself and has disavowed that plan. The Arbitrator then ordered Ms. Spivak to make proposed revisions to the pending eDiscovery plan. She disregarded that Order and instead sent Google her own new plan, see Exhibit A. It attempts to impose voluminous search terms that would have Google reviewing several hundred thousand documents (and millions of actual pages) in this single-plaintiff employment case.

Specifically Ms. Spivak seeks "all non-privileged emails, texts, 'hangouts', shared 'docs' or any other electronic communications" for 18 different custodians, including Neal Mohan, a Senior Vice President to whom hundreds of employees reported (directly or skip-level) and who barely interacted with Ms. Spivak. Compounding matters, Ms. Spivak proposes search terms that include common business terms (like "feedback" or "promotion" or "congratulations") that will each result in tens of thousands of "miss-hits" if the search terms are not tied to any reference to Spivak.

After reviewing Ms. Spivak's proposal, Google responded with its proposed revisions, see Exhibit B. Google's protocol will still have it collecting and reviewing well more than a hundred thousand documents (and a corresponding multiplier in terms of actual pages of text), see Exhibit B. Google's proposal provides for the exchange of the "core information" required under JAMS' Minimum Standards of Procedural Fairness No. 4.

# Exhibit D(4)(a) - Dated email

**From:** Rebecca Spivak <rivka@google.com>
**To:** Neal Mohan <nmohan@google.com>
**Sent:** Thu, 11 Dec 2014 18:20:06 -0800
**Subject:** Specific Eng Feedback

Hi Neal -
Thank you for taking the time to meet with me today. I know you have been given the story do not get along with Engineering and cannot execute. My perf consistently says the opposite. It's important for you to know this because that would allow me to be even more effective in your org.

You will read how Eng managers, TLs, and Directors - consistently praise my ability to work well with them, inspire morale, and execute in an impactful way. The wording goes far beyond perfunctory politeness and explicitly praises my performance as above that of the other PMs.

I am a very strong PM in your org. I am impact-focused and my performance has been promotion worthy. And engineers recognize it. And sales recognizes it. But I have challenged the status quo on which other PMs have rested their laurels. This resulted in ad hominem manager feedback.

Please read the attached document and you will question the stories you have been told. It includes all the eng feedback I received while in your org.

https://docs.google.com/document/d/1sgPJJ5L-WiVD3I8tN1pIMb_s1eWxWPqe2w5c93v2bvw/edit#

Additionally, feel free to play around with Interactive Benchmarks go/ibx

Rebecca

# Exhibit D(4)(b) - Dated email

**From:** Jens Skakkebaek <jskakkebaek@google.com>
**To:** Caroline Bremner <cbremner@google.com>
**Sent:** Fri, 27 Jun 2014 16:56:41 -0700
**Subject:** Rivka PIP exit discussion

Hi Caroline,

I want to synch on how we exit Rivka from the PIP. Officially done on 7/1. Neal wanted me to give her a "don't do that again" message -- would like to discuss how we do this.
Thanks,
Jens

# Exhibit D(4)(c) - Dated email,

**From:** Lauren Thomas <laurenth@google.com>
**To:** Caroline Bremner <cbremner@google.com>
**Sent:** Fri, 5 Sep 2014 14:17:02 -0700
**Subject:** Fwd: 1:1 Request

I know you've warned me about this employee...I wonder what she wants to talk to Neal about...

---------- Forwarded message ----------
From: **Nina Yai** <nyai@google.com>
Date: Fri, Sep 5, 2014 at 11:50 AM
Subject: Fwd: 1:1 Request
To: Lauren Thomas <laurenth@google.com>

Hi Lauren,
Hope you're feeling better! Do you know when this needs to happen by? I know Neal is in promo committee on 10/15, but wasn't sure if there's a different timeline that I'm unaware of.

Thanks,
Nina

---------- Forwarded message ----------
From: **Rebecca Spivak** <rivka@google.com>
Date: Fri, Sep 5, 2014 at 8:47 AM
Subject: Re: 1:1 Request
To: Nina Yai <nyai@google.com>

Hi Nina
I'd like to talk with Neal before perf/comp decisions are made this cycle. I'm not sure when that happens at the VP level.

Thanks,
Rebecca

On Fri, Sep 5, 2014 at 8:02 AM, Nina Yai <nyai@google.com> wrote:

> Hi,
> Hope you're doing well! Is there a specific topic you wanted to chat about, or is this more of a general catch-up 1:1? Neal's schedule today is tight, so I'm not sure if we can squeeze you in -- let me see what I can figure out and I'll be back in touch.

Thanks!

On Thu, Sep 4, 2014 at 8:29 PM, Rebecca Spivak <rivka@google.com> wrote:

> Hi Neal - I'd like to get some time with you 1:1.
> I am still in town tomorrow (Friday) if there's any chance to meet in person, otherwise I hope there's a way we can meet in the next week or two via VC.

Thanks

--
Nina Yai I Google, Inc. I Direct: 650.253.4498 I nyai@google.com

--
Nina Yai I Google, Inc. I Direct: 650.253.4498 I nyai@google.com

--

Lauren Thomas | HR Business Partner | laurenth@google.com | 650-861-1451

# Exhibit D(4)(d) - Dated email

**From:** Jens Skakkebaek <jskakkebaek@google.com>
**To:** Neal Mohan <nmohan@google.com>
**Sent:** Fri, 13 Jun 2014 14:44:25 -0700
**Subject:** Agenda for 1:1

* Compass - need steering
* Skyray
* BrandO
* Rivka
* CAWFE + Frontline Summit
* Perf

Exhibit D(5) - Declaration in Google's Suit to Compel Arbitration

BRIAN L. JOHNSRUD, State Bar No. 184474
PATRICK SHERMAN, State Bar No. 229959
CURLEY, HESSINGER & JOHNSRUD LLP
4400 Bohannon Drive, Suite 230
Menlo Park, CA 94025
Telephone: 650.600.5300
Facsimile: 650.323.1002
E-mail: bjohnsrud@curleyhessinger.com
psherman@curleyhessinger.com

Attorneys for Petitioner
GOOGLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION

| | |
|---|---|
| GOOGLE INC.,<br><br>Petitioner,<br><br>v.<br><br>RIVKA SPIVAK,<br><br>Respondent. | Case No. ______________<br><br>**DECLARATION OF ARIANA TORTORICI IN SUPPORT OF GOOGLE INC.'S PETITION TO COMPEL ARBITRATION PURSUANT TO WRITTEN AGREEMENT TO ARBITRATE**<br><br>[Hearing Date/Time/Dept to be determined after assignment to Judge or Magistrate] |

I, Ariana Tortorici, declare and state as follows:

1. **My Position.** I am currently employed as a Human Resources Business Partner – Employee Relations & Investigations by Petitioner Google Inc. ("Google") and have held this role since June 2011. My responsibilities include employee relations, performance management, workplace investigations, reorganizations, and staffing programs. At all times during my employment with Google, I have lived in the San Francisco Bay Area and worked out of Google's corporate headquarters in Mountain View (or in nearby Sunnyvale) California. I have direct and personal knowledge of the facts set forth in my declaration, and, if called as a witness, I would competently testify to these facts.

2. **Respondent Spivak's Employment With Google.** By reason of my work at Google, I am familiar with the Respondent in this matter, Rivka Spivak, and the contents of her

personnel file. In my position as a Human Resources Business Partner, I am a custodian of records for and have access to employee personnel files, which are kept and maintained in the normal course of Google's business. I have reviewed the contents of Spivak's personnel file and attached to my declaration are (1) a true and correct copy of Spivak's Employment Application, attached as Exhibit A, which among other things sets forth her education background and prior employment, and (2) a true and correct copy of Spivak's Offer Letter, attached as Exhibit B. Spivak's educational background as reflected on her Employment Application includes a Bachelor's of Science degree in Computer Science from Yale University, a Master's in Computer Science from Yale, a Master's in Business Administration from Harvard Business School, and a Juris Doctorate from Concord Law School. Spivak's employment prior to Google, as reflected on her Employment Application, included a position as a VP of Product Management at Roubini Global Economics in New York City earning in excess of $200,000 per year, as well as a prior job as a Senior Product Manager at Rearden Commerce in Foster City, California, earning in excess of $150,000 per year. Google offered Spivak employment on or about February 26, 2010 as reflected in her offer letter, and Spivak began working at Google in April 2010. Spivak's starting annual base salary in 2010 was $155,000, and over time that has increased to $215,000, per year. She is eligible for annual bonuses in the amount of 20 percent of the median salary of her peer group, and received a grant of 500 shares of Google stock at the time of her hire, which have fully vested and at yesterday's closing price (approximately $535 per share) have a current market value in excess of $250,000.

3. **Spivak's Arbitration Agreement.** Attached to my declaration as Exhibit C is a true and correct copy of Spivak's At-Will Employment, Confidential Information, Invention Assignment, and Arbitration Agreement ("Agreement"). Spivak accepted this Agreement through her electronic signature on April 12, 2010, as indicated on page 6. She did so as a new employee by setting up a google.com work account with a private password and then accessing GHR (Google's online human resources system) to open and agree to an Electronic Signature Consent Agreement (ESCA), a true and correct copy of which for Spivak is attached to my declaration as Exhibit D. After agreeing to the ESCA, Spivak then opened and accepted the

Case5:15-cv-02981-HRL Document3 Filed06/26/15 Page3 of 4

Agreement and other new hire documents. After Spivak accepted the Agreement, it was routed to her personnel file where it is kept and maintained in the normal course of Google's business.

4. **Spivak's Roles At Google.** From 2010 until the end of 2013, Spivak worked for Google out of its New York City office and resided in New York City. In New York, Spivak worked as a Product Manager. As a Product Manager, her work included participating in the launch of new or updated versions of software products used by Google and its customers across the country and throughout the world, including advertising optimization platforms that allow publishers and customers to interact and conduct business. At the end of 2013, Spivak transferred to Google's office in Seattle, Washington, where she continued to work as a Product Manager. While employed by Google in Washington, Spivak has worked on software products that among other things require her to validate the needs of customers and help develop engineering strategies that assist Google customers around the world. Spivak has been a resident of the State of Washington since moving there at the end of 2013, and at no time during Spivak's employment with Google has she been a resident or citizen of California.

5. **Spivak's Internal Complaints At Google.** Spivak has raised a number of gender discrimination and retaliation allegations regarding her employment at Google (concerning her employment both in New York and Washington), including not being selected as a project lead, allegedly unfair performance evaluations, being placed on a Performance Improvement Plan, failure to promote, denial of stock grants, and denial of a transfer (notably, to a role in Los Angeles, California). Spivak's allegations regarding her time in New York are attributed to a manager who lives and works in New York and who travels to Google's headquarters in Mountain View, California several times a year for work. Spivak's allegations regarding her employment in the State of Washington are attributed primarily to two different managers, both of whom live in the San Francisco Bay Area and both of whom work in Google's headquarters in Mountain View, California. I and another Human Resources employee based in Mountain View have reviewed Spivak's various allegations and have concluded they are without merit.

///

///

Case5:15-cv-02981-HRL Document3 Filed06/26/15 Page4 of 4

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 25 day of June 2015, at Sunnyvale, California.

[signature]

ARIANA TORTORICI

# Exhibit D(5)(a) - Dated email

**From:** Ariana Tortorici <ablute@google.com>
**To:** Scott Spencer <scottspencer@google.com>
**Sent:** Fri, 29 May 2015 13:50:20 -0700
**Subject:** Confidential: Follow up from our discussion

Hi Scott,
Thanks again for meeting with me earlier this week. As you know, we were looking into Rebecca's concerns of gender bias and being treated different based on her gender. As part of this, we looked into a comment you wrote in a perf review as well as a couple of comments you made.

We found that you used the word "emotional" in one of Rebecca's previous perf reviews. This word can have gender connotations, so in the future, please provide a specific example rather than using a term like "emotional". Feel free to utilize Sally if you have questions about this in the future.

We also talked about a particular comment, "Once she looked into her baby's eyes, she wouldn't want to come back to work" which you admitted asking her and nobody else on the team. You mentioned Rebecca was having perf problems at the time and while there may be a perf aspect here, it does appear that Rebecca was being treated differently based on gender, although, it does not appear that any adverse action was taken against her.

We also discussed a conversation where she believed that you told her that she should move to the Sales Tools team so she could focus on her kid and her work would be under the radar. I find more likely than not that you and Rebecca discussed her relocating to Seattle per her request after she returned from maternity leave. I also find more likely than not that you helped her find a project that was less intense at her request due to her personal circumstances. It appears that you also made an accommodation for a male employee to travel less based on his personal circumstances. Overall, I didn't find that the conversation you had with Rebecca to be inappropriate or improperly motivated by gender.

I found that the "emotional" perf comment and comment "Once she looked into her baby's eyes, she wouldn't want to come back to work" created the appearance of unfair treatment, however, it doesn't appear that there was any adverse action taken against her. For the future, please make sure to treat males/females the same with regard to their upcoming/return from parental leave even if there are ongoing performance issues.

As we mentioned, we'll be keeping this as confidential as possible, only disclosing on a business need to know basis. Also, we have a non-retaliation policy, so please don't take any action that could be construed as retaliatory.

Lastly, I appreciate your cooperation throughout this process and openness to discussing the feedback.

Thanks,
Ariana

--

Exhibit D(6)

FRANK FREED
SUBIT & THOMAS LLP
ATTORNEYS AT LAW

*Via Email and U.S. Mail*

October 15, 2015

Toni Healy
Investigator
Equal Employment Opportunity Commission
Federal Office Building
909 First Avenue, Suite 400
Seattle, WA 98104-1061

HOGE BUILDING
705 SECOND AVENUE
SUITE 1200
SEATTLE, WASHINGTON
98104-1798

*Phone* (206) 682-6711
*Fax* (206) 682-0401

2015 OCT 16 PM 12 45
RECEIVED
SEATTLE FO

**Re:** ***Rivka (Rebecca) Spivak v. Google***
**EEOC Charge No. 551-2015-00827**

Dear Ms. Healy:

Steve Frank and I represent Ms. Spivak in the above claim.

Ms. Spivak experienced years of both implicit and explicit gender bias as a female Product Manager in Google's male-dominated workplace. She was disciplined, downgraded, marginalized, and ultimately pushed out of projects *she* created for failing to comply with gender stereotypes and complaining about her mistreatment. I am writing in advance of your upcoming phone interview with Ms. Spivak to provide you with additional information and evidence demonstrating that Google discriminated and retaliated against Ms. Spivak.

STEVEN B. FRANK
CLIFFORD FREED
MICHAEL C. SUBIT
JOYCE L. THOMAS
SEAN MARSHALL PHELAN
BETH BARRETT BLOOM
JILLIAN M. CUTLER
CHRISTIE J. FIX
MUNIA F. JABBAR

First, enclosed please find an excerpt (pages 1-19, with attachments) of Mr. Frank's June 18, 2015 letter to Kent Walker, Senior Vice President General Counsel of Google, setting forth the factual and legal bases for Ms. Spivak's gender discrimination and retaliation claims. Exhibit A. This letter provides the EEOC with a more detailed picture of the insidious gender discrimination and retaliation Ms. Spivak experienced at Google.

Second, Google has provided us with a copy of the position statement it submitted to the Agency on September 14, 2015. That letter deeply distorts Ms. Spivak's experience at Google. Indeed, Google has gone as far as to submit altered evidence to the Agency. Exhibits 13 and 14 of Google's position statement include emails Ms. Spivak sent using her personal Gmail account to a group email list of

her college friends. However, Google has selectively redacted certain emails to convey the false impression that Ms. Spivak was not devoted to her job. Google's decision to alter evidence and submit it as authentic is not only deeply troubling but also exposes the weakness of its position. *See, e.g.,* Exhibit B (comparing redacted and full versions of emails cited by Google).[1] I am writing to correct the record regarding Google's distortions of the factual record in this case.

In an effort to defeat Ms. Spivak's failure to promote claim, Google asserts that Ms. Spivak was "demoted" in 2010 and that "even Spivak agreed she was not ready to be promoted in 2013." Neither claim is accurate. First, Ms. Spivak was not demoted. Rather, she was "down-slotted" shortly after arriving at Google. Approximately half of Google employees are "down-slotted" from the level for which they were recruited. Those employees routinely go on to ascend Google's promotional ladder. In Ms. Spivak's case, she was down-slotted despite wide-spread recognition that it was too soon to "slot" her, she had not yet been assigned to a team, and, as a result, was not in a position to demonstrate her true capability and value. As one of her peers aptly put it, "Although she'd never say it out loud, Rivka appears to be between a rock and a hard place. She has no engineers and no clear product mandate (yet). Until this situation is resolved, it's hard to assess her effectiveness in the typical Google PM sense." *See* Exhibit 3 at 7 of Google's Position Statement.

Second, Ms. Spivak never indicated she was not ready for promotion. Employees at Google submit one of two on-line forms for their annual performance reviews. The first is the standard review form and the second is for employees who are initiating the promotion process with their managers' support. Ms. Spivak asked her then-supervisor, Scott Spencer, to support her for promotion in 2013 and he refused. Mr. Spencer expressly instructed Ms. Spivak not to select the "promotion" review option. Complying with Mr. Spencer's direction does *not* mean Ms. Spivak "agreed she was not ready to be promoted."

Next, Google goes to great lengths to present Ms. Spivak as a person with "big ideas," who fails to document and execute those ideas. The historical record belies this claim. It is true that Ms. Spivak had the "big idea" to replace Google's floundering AMP/Quicksilver program with Interactive Benchmarks ("IB"). Ms. Spivak developed IB after participating in countless meetings with Google sales teams who were dissatisfied with the existing system, responding to their concerns, and carefully documenting the case for IB with extensive data. Ms. Spivak will make her documentation of IB available to the Agency upon request. Google's claim that Ms. Spivak could not execute on her big ideas is a red herring. It is indisputable that Ms. Spivak successfully launched IB and that it swiftly overtook the AMP/Quicksilver platform.

---

[1] We also suspect that Exhibit 3 of Google's position statement is selectively edited, but do not have access to the original document at this time.

Google's claim that Ms. Spivak failed to collaborate effectively with her colleagues also misses the mark. Ms. Spivak worked most directly with Engineering Manager Michael English and his team of 12 engineers. Mr. English quickly became one of her greatest champions. Similarly, the engineers who reported to Mr. English – and who worked directly with Ms. Spivak – reported widespread satisfaction with Ms. Spivak's work and leadership. In January of each year, Google administers "Goolegeist," a survey given to each employee allowing them to provide feedback about their work and coworkers. The survey responses are anonymous. Based on the information available to us, we believe that data will show that Ms. Spivak's team registered higher ratings than any of the teams led by her male colleagues for (1) overall satisfaction with the Product Manager performance; (2) satisfaction with the documentation related to their work; (3) satisfaction with the speed of product launches; and (4) the high impact of the team's work. Moreover, in his first performance review of Ms. Spivak, in the fall of 2014, Mr. English stack-ranked Ms. Spivak higher than her predecessor, Vince Lacey.

We encourage the EEOC to interview Mr. English and to request the Googlegeist data that his engineering team submitted about Ms. Spivak.

Google's suggestion that Ms. Spivak manufactured a gender discrimination complaint for job protection is entirely unwarranted. Ms. Spivak complained about gender discrimination *repeatedly* in the year prior to the relocation of her IB team to California. Ms. Spivak complained about discriminatory treatment on or about April 2, April 4, and May 5, 2014. She complained formally to Human Resources and to Global Compliance. The latter complaint was routed to Employee Relations and treated internally as a gender discrimination complaint. Ms. Spivak reported that Engineering Manager Doug Bengston was unfairly criticizing her and trying to drown out her voice. In addition to challenging her discriminatory PIP, Ms. Spivak complained that Mr. Bengston told her she was "too ambitious," criticized her for "pushing ideas," and warned her she did not fit in Google's (overwhelmingly male) engineering culture. These are gendered complaints. Indeed, it is hard to imagine Mr. Bengston would fault a male PM for the same conduct. Mr. English will confirm that Ms. Spivak raised concerns about experiencing gender discrimination – including the April 2014 PIP – with him and others long before the February 2015 discrimination complaint highlighted in Google's position statement.

In defense against Ms. Spivak's retaliation claim, Google asserts that five teams and 31 software managers were "impacted" by the February 2015 relocation. In fact, IB was the *only* team that was actually relocated from Seattle to California. It is our understanding that the four other teams were decommissioned and de-staffed. Therefore, while those teams were "moved" to California on paper, they were never staffed, and the engineers who had been working on them were reassigned to other teams.

# EXHIBIT E - May 2018 Email with Google's Attorney

**From:** Rebecca Spivak <rebeccaspivak@outlook.com>
**Date:** Thursday, May 24, 2018 at 10:18 PM
**To:** Brian Johnsrud <bjohnsrud@chjllp.com>
**Subject:** Re: Communication

Hi Brian –

I wasn't interested in chatter. I wanted to try to work things out in good faith so that we don't have to dispute every single detail in front of Judge Baines.

I have not given up on the hope that Google will drop the bad faith/intimidation stuff. It doesn't work. The reason we're at this point is because Google responded to my requests for fairness with retaliation, intimidation, fabrication/falsification of evidence, gas-lighting and lots more. When I asked Caroline Bremner for help in making the situation more fair, she told Jens to PIP me. We both know that this is true -and Jens largely admitted it under oath to the EEOC. A little bit of effort to rectify things at that time, and there would be no case right now - even with all the bad stuff in NY - even with the damages at the time, I would have dropped it. I would have put everything else in the past and moved on. If Cindy Treloar had actually investigated my bias complaint instead of interrogating me and telling me she was impartial in the same breath she tried to force me to self-incriminate ... pen in hand, I would have moved on. If Google had given me credit for IB, as Michael promised me they would ... then, despite ... everything ... I would have moved on. Each time I asked for fairness ... this could have resolved. And each time Google seemed to think that the solution was to double-down on the bad faith. I gave Google about a dozen chances to just acknowledge and validate ... even just half of what was fair.

But your legal approach ... It's like trying to put out a fire by throwing kerosene on it. It won't ever work. Try to understand me ... even if just for the past 4 years. I have done so much for Google ... I can prove, with a lot of peer support, that I am in that top tier ... the ones that Lazslo Bock argues should be paid "unfairly". I can prove that, and I think you know that - which is why you're fighting so hard on the discovery. Because the discovery will prove it too. And I have to reconcile this accomplishment with the years I spent at Google being demeaned and penalized for the same things that got men promoted ... I don't know how much you believe when it comes to the documents you send out, and how much you are just doing your "job" in trying to kill my credibility and fabricate nonsense about whether I shouldn't get credit for my multi-billion-dollar impact because you think I picked my nose in the office and wiped it on a company stapler. I just can't believe that you don't believe this bias dynamic is true for women in tech. Will you get up and say that most women in tech work on a level playing field? It's not true. Stand up and say it's true. You know it's not true. You can't believe that's true. And even if you argue it, you can't believe that I think that's true and I'm somehow fabricating all this. I

can bring 100 people from my life - both inside and outside of Google - who absolutely know how much I believe this -and how much they believe this. You can try to argue that a 42 year old woman who was first in Computer Science at Yale and has an MBA from Harvard, who launched products that made Google Billions of dollars ... and who was fired for it while earning less than men 10 years her junior with half her qualifications- is just playing the gender card game and doesn't really believe any of it. That when you cut and paste sentences together from emails, it almost looks like you've made her say it. And you can plug your ears when it's pointed out that these patched-together complete distortion was submitted under oath to the EEOC. Because maybe if you plug your ears, the serious implications of having done that sort of thing will just dissipate.

You can argue this nonsense , but I can't believe that you can believe it. You can say I had a failed EEOC claim, but we both know that Google doctored evidence (submitted under oath), fabricated evidence (submitted under oath), and withheld evidence that the EEOC needed to calculate damages. We both know that while you accuse me of dragging out this process with an EEOC claim that failed, it's the fact that Google refused the EEOC request for pay data that dragged this all out... the EEOC needed this data to compute my damages, but Google never shared it ... and so eventually my EEOC claim led to the larger DOL investigation against Google.

You know you're playing a game when you keep spinning this. Don't you? Maybe it energizes you. I do understand what it's like to be energized by a hard problem and challenge. It's fun. I just don't do it when the hard problem is about how to discredit a good person. That wouldn't energize me. I get energized by hard problems that come down to figuring out how to help people and customers. It's so much more fun - I promise.

If you want to know where the missing women are in Tech leadership ... you just have to look across the aisle to the woman you are trying to destroy and demean in this process. You can try to present the email I sent to Paul Higson as evidence to discredit me. You can try to argue that when tech stomps on a woman's head hard enough and robs her of all the recognition that she would have received if she had been a man, she should just take it rather than fight back. You can add this email that I am sending you right now alongside the email I sent to Paul. And you can paint me as an angry, irrational, hysterical woman who is playing a game and a card ... in order to cover up that she's just somehow irrationally hysterical and angry, and not for any cause. If you like the game, then you might find it fun. But, of course, it's not true.

I've been a pioneer in this industry -- launching great products and setting best practices that were adopted even beyond Google I was always well-intentioned and wanted nothing more than for Google to succeed. And I helped that happen. And the people who worked with me liked me and appreciated how my work skyrocketed their careers. It's just the people looking over across the fence, and seeing a confident woman, who didn't. I launched many products that made Google billions of dollars. Billions. Really. You think the FB stock is your winning bet. It's not. It wasn't against policy and you know it, and had to cut/paste sentences (removing a critical sentence from the middle) from an employment agreement from a

different year to even try to make it seem like it might-could have been. There's nothing here, and I know it and so do you. And all my coworkers know that I really cared about helping Google succeed. We already have this under oath. I wanted Google to win, to a fault. And whether trades executed on company time ... you'll have to argue that this was a problem while Pac-Man arcade games lined the walls and while boys played fuzball in the halls without a girl in sight. I wasn't hourly, was hugely focused on helping Google crush the Facebook threat (which no one besides me seemed to think was real until finally others saw it), and I made Google billions of dollars. I am not scared of the guns you think you have on this. It only further demonstrates Google's bad faith.

I will admit to a fault ... I don't understand why so many people play dirty. You don't have to play this dirty.

I am motivated by fairness. Some of the misfires are head-scratchers. You want all my emails that use the word "extortion." I'm happy to share those with you. Great. I will give you every email where I mention "extortion." I would love to give you all those emails. I don't know whether Google altered them before sharing them with you, but all of plusmail has those originals. I discussed how I expected Google to extort me. I have never thought or discussed in any way the idea of extorting Google. I wondered whether Google would try to use bad faith extortion to get me to drop the case. It seems like my concern that Google would attempt this was well founded. Regardless, I am more than happy to send all my emails that mention extortion to you, the arbitrator, and anyone who wants to see them. I'm happy to put every email where I mention "Extortion" and "Google" on a billboard. I am so happy you want to see those emails. It will only surface how much I anticipated that Google would play dirty.

Look, Brian. You are an attorney. You're smart. You have a duty to your client,. I don't know what you're planning to do next. I can only imagine that you are trying to figure out how to crush me or scare me. But please understand that good faith works a lot better than bad faith. It's been more than 4 years since I first filed the complaint with Google's ethics hotline. The attempts to crush/scare have been many. I'm still here. Look at history. There's been so much waste here. Good Faith resolves this. Bad Faith escalates it. For your client's sake, you should understand that, like many people, I respond well to good faith. Just think about it. What does a good faith path forward look like. What does a bad faith path forward look like?

Best Regards,

Rebecca

**From:** Brian Johnsrud <BJohnsrud@chjllp.com>
**Sent:** Thursday, May 24, 2018 9:43:46 AM
**To:** 'Rebecca Spivak'
**Subject:** RE: Communication

Rebecca,

There's no need for email dialog or chatter because we have a call set with the Arbitrator and we'll go from there on next steps in this arbitration.

Best regards,

Brian Lee Johnsrud

**Curley, Hurtgen & Johnsrud LLP**
Counselors at Law
4400 Bohannon Drive, Suite 230

Menlo Park, CA 94025
(d) 650.600.5310
(c) 650.722.2733
bjohnsrud@chjllp.com
www.chjllp.com

---

**From:** Rebecca Spivak [mailto:rebeccaspivak@outlook.com]
**Sent:** Wednesday, May 23, 2018 11:18 PM
**To:** Brian Johnsrud
**Subject:** Communication

Hi Brian,

I don't understand why you won't respond to my emails and why you ignore them. I can understand why you might worry about spoken communication. But you are even ignoring my written communication.

If you believe in your case and the things you've asserted about me, then this is a bonus opportunity to get me to say things against my interest that you can introduce as evidence. You just have to ask. And I will respond - honestly and in good faith. I promise you both of those things. And you can use it as evidence. You don't even need a subpoena. I'm emailing you and offering to freely respond to any questions you have. I just want to have open communication. I will freely agree that anything I say is something you can use against me. I'm not concerned about that since I am communicating in good faith. Please work with me.

Rebecca

FILED
2025 AUG 08 01:12 PM
KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE #: 23-2-23572-0 SEA

The Honorable James E. Rogers
Courtroom: E-733
Noted Date: August 13, 2025

**IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON**

**COUNTY OF KING**

| | |
|---|---|
| **Google LLC**<br>**Plaintiff**<br>**v.**<br>**Rivka ("Rebecca") Spivak**<br>**Defendant** | **No. 23-2-23572-0 SEA**<br>**REPLY ISO MOTION FOR PROTECTIVE ORDER, SEALING, APPOINTMENT OF COUNSEL FOR MINORS, AND OTHER JUST RELIEF**<br>**ORAL ARGUMENT REQUESTED**<br>**REQUEST FOR ORDER REQUIRING GOOGLE LLC'S COUNSEL TO APPEAR AT HEARING** |



Rivka Spivak, Pro Se
128 NE 51st Street, Seattle, WA 98105
617.519.1100

## I. INTRODUCTION

Spivak's moving papers set forth serious allegations against Google and its counsel, describing a distressing course of conduct in an ongoing scheme directed at Spivak that has persisted for over a decade. Spivak attested to Google's long-running campaign of harassment intended to intimidate and discredit her, and documented Google's most recent willful violations of statutory protections for minors and the genuine harm inflicted on her children—serving as the catalyst for the motion, but not its only basis. The motion also detailed Google's repeated false statements to federal investigators, false declarations in district court, and false briefing in Title VII arbitration, as supported by unassailable documentary evidence in the exhibits. These facts are sufficient to support significant civil, criminal, and regulatory findings against Google in appropriate forums.

Google's failure to oppose a motion with such damning allegations and exhibits has staggering implications. Google is well-resourced, fully represented by teams of attorneys, and had ample notice and opportunity to respond. Unlike Spivak's prior nonappearance—caused by incapacitating distress and lack of representation—Google's non-opposition is a deliberate tactic to avoid a merits-based adjudication and to later characterize any adverse order as a procedural default. The Court should not allow Google to evade accountability, especially given the allegations of retaliation targeting Spivak's minor children. Either the allegations are outrageous, or the conduct is. A default finding that avoids the merits would not serve the public interest or protect the vulnerable.


Rivka Spivak, Pro Se
128 NE 51st Street, Seattle, WA 98105
617.519.1100

Google is likely hoping to spin negative findings as mutual default or parallel circumstances, furthering its false narrative that Spivak is a trained attorney litigating on an even playing field. This is inaccurate: Spivak's prior nonappearance was due to genuine constraints, while Google's current silence is strategic. Spivak has consistently asserted that prior orders against her would have been avoided had she been able to present her defense. In contrast, Google's silence is a strategic effort to mitigate the consequences of a loss that is inevitable on the merits, to avoid additional exposure by being forced to answer allegations it cannot credibly deny, to preserve the posture that findings are not based on any evidentiary record or adversarial engagement, and to argue that Spivak is estopped from claiming otherwise based on her prior position regarding her own loss-by-default in this action. Spivak has chased the merits and tried to avoid default; Google has chased default and tried to avoid the merits. Any future claim by Google that all orders on unopposed motions in this action should carry the same evidentiary weight would be a red herring.

A merits finding is essential to the relief Spivak seeks. Unlike a vexatious litigant designation, which offers the same relief whether granted by default or on the merits, a harassment protective order requires significant findings and allows broad, discretionary relief. Furthermore, Spivak's motion raised the issue of sanctions and requested comprehensive judicial action. A merits-based determination regarding Google's motives not only justifies extraordinary relief, but mitigates Spivak's ongoing reputational harm and is itself protective. Relief without findings of retaliatory intent gives Google a free pass and will not fully protect Spivak and her family—or anyone else who falls into Google's crosshairs. Google recognized this and made the choice to lose by default, in the hopes that the Court would find the need to review the evidence


Rivka Spivak, Pro Se
128 NE 51st Street, Seattle, WA 98105
617.519.1100

moot. Such a tactic is consistent with Google's procedural gamesmanship in circumventing accountability for its conduct.

## II. CONCLUSION

When a sophisticated party like Google, represented by experienced counsel, chooses not to oppose serious allegations—including those evidenced in Exhibits A and D (showing Google's refusal to redact protected information of minors and its pattern of misrepresentation and federal obstruction of justice)—the court should treat this as a strong indicator that the allegations are indefensible and that comprehensive relief is warranted. The court's duty, especially where judicial integrity and the rights of minors are at stake, is to provide full and effective protection. The court should not reward Google's strategic non-participation or procedural gamesmanship by limiting relief, findings, referrals, or sanctions that are justified by the merits.

Spivak respectfully requests that the court grant all relief requested in her motion, supported by the motion's citations to GR 15, GR 22, WAC § 162-08-096 and § 484-50-010, RCW § 7.105.310 and § 13.50.100, and the court's inherent authority. This includes, but is not limited to:

- immediate and comprehensive sealing of the court record, **excluding this motion, reply, and any resulting order (which are themselves protective and should remain public),** as an interim measure;
- explicit findings regarding Google's conduct;


Rivka Spivak, Pro Se
128 NE 51st Street, Seattle, WA 98105
617.519.1100

- issuance of an anti-harassment protective order based on the evidence of Google's course of conduct (false public statements and regulatory claims, publication/disclosure of Spivak's protected information and her children's protected information, procedural baiting) aimed at Spivak and her children for no legitimate purpose (obstruction, intimidation) that reasonably would and did cause Spivak substantial emotional distress (as evidenced, including by the sensitive records themselves);
- appointment of counsel for Spivak's minor children; and
- all further just and necessary relief within the court's discretion, including corrective and remedial action (with referrals or sanctions as appropriate), as warranted by Google's decade-long campaign to cover up its federal obstruction and its retaliation that targeted not only Spivak but her children too.

**Based on Google's non-response, Spivak additionally requests:**

- That the Court set the hearing for oral argument to address the full scope of the motion, including the need for explicit findings and remedial action;
- That the Court order counsel for Google LLC to appear at the hearing for adversarial participation;
- That the Court, in reviewing the motion, declaration, and supporting exhibits, make explicit findings on the merits based on the uncontested and substantiated record;
- That the Court deem the material factual allegations as established for purposes of this proceeding, and clarify that such findings are entered on the merits, not solely by default or lack of opposition.


Rivka Spivak, Pro Se
128 NE 51st Street, Seattle, WA 98105
617.519.1100

These requests are made to ensure protective relief for Spivak and her family, prevent Google from evading substantive accountability, and provide the order with full evidentiary and remedial effect.

Respectfully Submitted this 8th day of August 2025.

s/ Rivka Spivak
Rivka Spivak, Pro Se
128 NE 51st Street
Seattle, WA 98105
617.519.1100
rebeccaspivak@outlook.com

I certify that this memorandum contains 1011 words, in compliance with the Local Civil Rules.